UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 22-mj-22 (RMM) |
| v. | : | |
| | : | |
| ILYA LICHTENSTEIN | : | |
| | : | |
| And | : | |
| | : | |
| HEATHER MORGAN, | : | |
| | : | |
| Defendants. | : | |

**OPPOSITION OF ILYA LICHTENSTEIN AND HEATHER MORGAN
TO THE GOVERNMENT'S MOTION FOR REVIEW OF THEIR BAIL CONDITIONS**

We respectfully submit this opposition memorandum on behalf of our clients, Heather R. Morgan and her husband Ilya Lichtenstein, in advance of the February 14, 2022 hearing on the Government's application to review the bail conditions set at our clients' presentment on February 8, 2022, before United States Magistrate Judge Debra Freeman in the Southern District of New York.

At the conclusion of Tuesday's lengthy contested bail hearing, after careful consideration of the Government's risk-of-flight arguments, the defense's responses, and the bail factors set forth in 18 U.S.C. § 3142, Judge Freeman correctly decided that the Government has failed to meet its burden of showing that there are no bail conditions that would reasonably assure that Ms. Morgan and Mr. Lichtenstein will appear as required for further court proceedings in this case. This Court should uphold Judge Freeman's well-reasoned bail rulings. Judge Freeman's bail directives — which ordered that our clients be detained unless and until they meet stringent conditions, including home incarceration with location monitoring and bonds of $5 million (for Mr. Lichtenstein) and $3 million (for Ms. Morgan) to be partially secured by their respective parents'

homes and co-signed by multiple individuals — are more than sufficient to ensure that our clients will come to court as required if released into home incarceration. Copies of Judge Freeman's bail orders are attached as Exhibits 1 and 2.[1]

*First*, as Judge Freeman correctly recognized on Tuesday, the Government's flight risk concerns are belied by the fact that Ms. Morgan and Mr. Lichtenstein both stayed put in their residence in lower Manhattan in New York even after learning of the Government's investigation targeting them in this case. Ms. Morgan, a 31-year-old journalist and CEO of her own sales consulting business, and Mr. Lichtenstein, a 34-year-old entrepreneur and cryptocurrency investor, are both U.S. citizens, both hold degrees from U.S. schools, both have parents and extended family in the U.S., and both have no prior arrests or criminal convictions.[2] For months before the Government arrested our clients, Ms. Morgan and Mr. Lichtenstein were aware of the Government's investigation targeting them. In November 2021, Ms. Morgan and Mr. Lichtenstein were notified by an internet service provider ("ISP") that the Government had served a grand jury subpoena on the ISP a year earlier seeking records pertaining to them. On January 5, 2022, the Government had law enforcement agents execute a search warrant at their New York residence. Although federal agents seized Ms. Morgan's and Mr. Lichtenstein's travel documents, numerous electronic devices, and other property from their home on January 5 (and left a copy of the warrant indicating that it was granted as part of an investigation into money laundering conspiracy and

---

[1] The transcript of the bail hearing is also attached as Exhibit 3.

[2] Mr. Lichtenstein was born in Russia, and he and his family emigrated to the U.S. when he was a child to avoid religious persecution there. Accordingly, he is a dual citizen of the U.S. and Russia, and he had Russian travel documents that the Government has seized. But Mr. Lichtenstein spent the bulk of his childhood in a suburb outside Chicago where his parents still live. His mother, father and brother all reside and are employed in the U.S.

other alleged offenses), the couple took no steps to flee. Rather, after those January 5 seizures, Ms. Morgan and Mr. Lichtenstein retained us as their counsel to engage on their behalf with the Government, and signed a one-year lease renewal for their rental apartment in New York.[3]

Furthermore, Ms. Morgan and Mr. Lichtenstein continued to remain at home in New York throughout the course of telephonic and email discussions between us and the Government from January 11 through 31, 2022. During those discussions, the Government provided a written summary of its alleged money laundering theory pertaining to our clients,[4] and we informed the Government that we would respond after Ms. Morgan underwent a pre-planned surgery on January 31, 2022 to remove a lump of tissue from her right breast. In a disappointing turn of events, the Government had both of our clients arrested Tuesday on a complaint without affording us any prior warning or opportunity to address the Government's allegations. Notably, the arresting agents found our clients in the same place where they were living during the January 5 search: in their New York apartment.

In addition, Ms. Morgan and Mr. Lichtenstein previously froze several of her embryos at a hospital in New York in anticipation of starting a family together, as she can only conceive through in vitro fertilization because she suffers from endometriosis. The couple would never flee from the country at the risk of losing access to their ability to have children, which they were discussing having this year until their lives were disrupted by their arrests in this case.

---

[3] Ms. Morgan and Mr. Lichtenstein retained our firm to represent both of them for purposes of pre-indictment advocacy in this matter.

[4] With respect to the 119,754 Bitcoin stolen from the cryptocurrency exchange Bitfinex during a hack in 2016, the Government's January 22 email alleged, in pertinent part, that: "The stolen Bitfinex funds have been traced through varying, independent transaction paths to numerous accounts controlled by your clients. **We will not be providing further details regarding our tracing methodology at this time.**" (Bold in original).

*Second*, the detention of Ms. Morgan and Mr. Lichtenstein will unfairly prejudice their ability to defend themselves in this case, and poses potentially grave health risks for Ms. Morgan in particular. The money laundering accusations in the Government's complaint are predicated on a series of circumstantial inferences and assumptions drawn from a complex web of convoluted blockchain and cryptocurrency tracing assertions that we and our clients first received Tuesday in the Government's complaint. It is critical that we have as much access to our clients as possible to confer with them to prepare for the upcoming bail review hearing before this Court, to review with them the Government's tracing allegations and what we expect will be voluminous discovery from the Government's multi-year investigation, and to contest the merits of the Government's charges. In light of COVID-19 protocols at Bureau of Prisons' detention facilities, it will be challenging enough for us to confer with our clients while they are detained at facilities in New York near their residence and our office. If they are not only detained but also transferred to jails in the District of Columbia as the Government has requested, it will be extremely burdensome and costly for us to meet with our clients in person, hundreds of miles from their home and our firm. Indeed, it has been three days since our clients were detained, and yet today was the first time we were allowed to speak with Mr. Lichtenstein.

*Third*, Ms. Morgan is still recovering from her January 31 breast surgery and has other acute medical issues that undercut any risk that she would flee if released on bail and present a grave risk to her well-being if she remains incarcerated. While the tissue removed from Ms. Morgan's right breast appears to have been benign, she has surgical wounds that are still healing and are at a heightened risk of infection in a custodial environment, she has limited mobility in her right arm, and she is supposed to have a follow-up appointment with her surgeon next week to confirm that there are no complications from her recent surgery. She is currently experiencing

pain from those incisions, which makes it all the more vital for her to have the follow up visit. Moreover, being jailed exposes Ms. Morgan to a heightened risk of contracting and suffering severe complications from COVID-19, because she suffers from asthma (for which she has been proscribed an inhaler) and has pre-existing lung damage from a prior bout of Middle East Respiratory Syndrome or "MERS." Although Ms. Morgan was previously vaccinated against COVID-19, recent events throughout the nation demonstrate that break-through COVID-19 infections are fairly common in vaccinated individuals.

*Fourth*, Ms. Morgan and Mr. Lichtenstein have no reason to flee to avoid the Government's allegations, as the Government's complaint reveals significant holes in the Government's case against them, especially as to Ms. Morgan. For example, the complaint cites no witness in a position to testify to the existence of the charged conspiracy (let alone that Ms. Morgan or Mr. Lichtenstein were part of it); no wiretap or consensual recording of either of them making admissions about the purposes of the transactions that the complaint characterizes as criminal money laundering; no emails, no text messages, and no other communications between any of the alleged conspirators concerning the purported conspiracy; and nothing else resembling direct proof of the charges. Instead, the complaint depends on circumstantial inferences drawn from so-called "tracing" analysis of a confusing series of blockchain transactions (without disclosing the cryptocurrency tracing software or methodology used by law enforcement to conduct the analysis), as well as conclusory allegations and assumptions imputing nefarious intentions to critical links in the chain of transactions alleged to be criminal money laundering. For example, the complaint presumes that transactions involving units of the privacy cryptocurrency called Monero reflect criminal intent to conceal the source of the funds, when in fact, this is a common cryptocurrency used for legitimate purposes in thousands of transactions. Similarly, the complaint asserts that

transactions involving "chainhopping" (when, for example, Bitcoin is changed for another type of cryptocurrency) are indicative of a criminal scheme to conceal the source of the funds, when in reality, exchanges of one type of currency for another are the bedrock for numerous lawful currency trading markets and exchanges (such as legitimate trades of U.S. dollars for British pounds). The 20-page statement of facts in the complaint and its glossy flow charts cannot mask the many deficiencies in the Government's proof and unsupported, conclusory leaps.

The Government's complaint is especially flimsy as to Ms. Morgan. Setting aside the complaint's conclusory assertions, the only alleged facts it cites against Ms. Morgan boil down to assertions that (a) cryptocurrency assets that flowed into cryptocurrency exchange accounts in her name are supposedly indirectly traceable, through several, at times opaque levels, to Bitcoin taken during the 2016 hack, and (b) she made statements in communications with such exchanges that the Government contends are contradicted by its blockchain tracing analysis. The complaint, however, offers no evidence (direct or otherwise) that Ms. Morgan had any knowing involvement in any of the alleged efforts to conceal the source of the funds that she received, or that she had any knowledge of the allegedly illicit nature of the funds, as required for the Government to carry its burden of proof in this case. Even if funds received by Ms. Morgan were in fact traceable to crime proceeds (which the Government has not, and we respectfully submit will not be able, to prove beyond a reasonable doubt), the mere receipt of such funds is not a substitute for evidence that Ms. Morgan had the requisite criminal knowledge. Nor are the statements to the exchanges that the complaint attributes to her. The Government's quarrel with these statements boils down to their inability to corroborate or confirm them, and there is no evidence in the complaint that Ms. Morgan did not genuinely believe in good faith that those statements were accurate. To be sure, the complaint claims that the Government is *now* in a position to disprove the accuracy of those

statements, but that says nothing about whether she had any reason to doubt their veracity at the time.

A close examination of the summary of the Government's case found in paragraph 7 of the complaint's statement of facts illustrates the weakness of the case against Ms. Morgan. According to paragraph 7, federal agents "traced" the stolen Bitcoin hack proceeds to a digital wallet that was allegedly controlled by her husband; then to unattributed accounts at the darknet market AlphaBay; then to seven cryptocurrency exchange accounts that the complaint claims were "interconnected"; then to "various unhosted BTC [Bitcoin] wallets" that the complaint does not attribute to Ms. Morgan or her husband; and finally to accounts owned by Ms. Morgan and her husband at six other exchanges. The complaint cites no evidence that Ms. Morgan had any involvement (knowing or otherwise) in any of the alleged transactions that precede the final step of the agents' "tracing" analysis. This underscores that the complaint's non-conclusory allegations, at best, assert facts suggesting that Ms. Morgan was an unwitting recipient of funds that were supposedly tainted, not a knowing participant in a criminal conspiracy to conceal the source of and launder those funds.

The Government has not argued, and could not credibly argue, that the release of Ms. Morgan and Mr. Lichtenstein subject to home incarceration and the other stringent bail conditions set by Judge Freeman would pose any danger to the community. The Government instead seeks detention based on right-of-flight arguments that rest primarily on its assertion that our clients would have the means to flee, because they allegedly have access to tens of millions of dollars in cryptocurrency traceable to the 2016 hack. These arguments — which were considered, and incorporated by Judge Freeman into the conditions she set — do not justify overturning Judge Freeman's carefully reasoned ruling. As an initial matter, the Government has reportedly seized and secured $3.6 billion in Bitcoin representing the vast majority of the funds that were allegedly

stolen during the 2016 hack, and thus our clients could not possibly have access to those resources. Nor is there any evidence that our clients have access to stolen funds the Government has not traced and seized. In any event, by the logic of the Government's own arguments, our clients would have had access to tens of millions of dollars in assets in November 2021 when they learned of the Government's ISP subpoena, and on January 5, 2022 when federal agents executed a search warrant at their home. Access to wealth, while knowing the Government was zeroing in on them, did not prompt them to flee at those times, and there is no credible reason to believe that it would cause them to flee now, especially if doing so would cause their parents to forfeit their homes, jeopardize their ability to ever see their loves ones in the U.S. or to have children with their frozen eggs in New York, and deprive them of the ability to vigorously contest the circumstantial charges against them.

Judge Freeman appropriately set strict bail conditions that would impose all of those costs on Ms. Morgan and Mr. Lichtenstein if they were to flee, and would make it virtually impossible for them to do so as a logistical matter (especially given their notoriety in light of the media attention that has been attracted by the Government's press conference yesterday concerning this case). Those conditions are more than sufficient to reasonably assure that Ms. Morgan and Mr. Lichtenstein will appear as required for further court proceedings in this case.

For these and other reasons that we can explain at the bail review hearing before the Court, we respectfully request that this Court adhere to Judge Freeman's bail rulings allowing Ms. Morgan and Mr. Lichtenstein to be released from jail once they satisfy the strict conditions set by Judge Freeman.

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

BY: *Anirudh Bansal*

Anirudh Bansal, N.Y. Bar No. 2652469
*Admitted Pro Hac Vice*
32 Old Slip
New York, New York 10005
(212) 701-3207
ABansal@cahill.com

*Samson Enzer*

Samson Enzer, N.Y. Bar No. 4625828
*Admitted Pro Hac Vice*
32 Old Slip
New York, New York 10005
(212) 701-3125
SEnzer@cahill.com

*Angela Collins*

Angela Collins, D.C. Bar No. 473891
1990 K Street, N.W., Suite 950
Washington, D.C. 20006
(202) 862-8930
ACollins@cahill.com

*Attorneys for Defendants Ilya Lichtenstein and Heather R. Morgan*