

U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

---

*Patrick Henry Building*
*601 D Street, N.W.*
*Washington DC, 20530*

July 13, 2023

**BY E-MAIL**
Eugene V. Gorokhov
Charles Burnham
Burnham & Gorokhov PLLC
1424 K St. NW
Suite 500
Washington, DC 20005
*Counsel for Defendant Heather Rhiannon Morgan*

> Re:  United States v. Ilya Lichtenstein & Heather Morgan
> Criminal Case No. ~~22-mj-22~~ **23-239 (CKK)**

Dear Counsel:

This letter sets forth the full and complete plea offer to your client, Heather Rhiannon Morgan (hereinafter referred to as "your client" or "defendant"), from the U.S. Department of Justice, Computer Crime & Intellectual Property Section and the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). This plea offer expires on **July 14, 2023**. If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement ("this Agreement"). The terms of the offer are as follows:

### 1.   Charges and Statutory Penalties

Your client agrees to plead guilty to a criminal Information, a copy of which is attached, charging your client with one count of Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 371 and 1956(a)(1)(B)(i), and one count of Conspiracy To Defraud the United States, in violation of 18 U.S.C. § 371.

Your client understands that a violation of 18 U.S.C. § 371 carries a maximum sentence of 5 years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense,

pursuant to 18 U.S.C. § 3571(b)(2)-(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia.  Your client also understands that, pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the United States Sentencing Commission, *Guidelines Manual* (2021) (hereinafter "Sentencing Guidelines," "Guidelines," or "U.S.S.G."), the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation.  Further, your client understands that, if your client has two or more convictions for a crime of violence or felony drug offense, your client may be subject to the substantially higher penalties provided for in the career-offender statutes and provisions of the Sentencing Guidelines.

**2.     Wiring**

Your client understands and acknowledges that this Agreement and any plea of guilty which your client may enter pursuant to this Agreement are contingent upon the entry of a guilty plea by Ilya Lichtenstein in this case.  If Mr. Lichtenstein fails to enter a guilty plea, this Agreement and any proceedings pursuant to this Agreement may be withdrawn or voided at the option of this Office.

**3.     Factual Stipulations**

Your client agrees that the attached "Statement of Offense" fairly and accurately describes your client's actions and involvement in the offense(s) to which your client is pleading guilty.  Please have your client sign and return the Statement of Offense as a written proffer of evidence, along with this Agreement.

**4.     Additional Charges**

In consideration of your client's guilty plea to the above offense(s), your client will not be further prosecuted criminally by the U.S. Department of Justice, Computer Crime & Intellectual Property Section or the Office of the United States Attorney for the District of Columbia for the conduct set forth in the attached Statement of Offense.

After the entry of your client's plea of guilty to the offense(s) identified in paragraph 1 above, your client will not be charged with any non-violent criminal offense in violation of Federal or District of Columbia law which was committed within the District of Columbia by your client prior to the execution of this Agreement and about which this Office was made aware by your client prior to the execution of this Agreement.  However, the United States expressly reserves its right to prosecute your client for any crime of violence, as defined in 18 U.S.C. § 16 and/or 22 D.C. Code § 4501, if in fact your client committed or commits such a crime of violence prior to or after the execution of this Agreement.

### 5.   Sentencing Guidelines Analysis

Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the applicable guidelines and policies promulgated by the Sentencing Guidelines.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties agree to the following:

### A.   Estimated Offense Level Under the Guidelines

Your client agrees and will acknowledge at the time of the plea of guilty to the offense stated above that, pursuant to U.S.S.G. § 1B1.3, your client is accountable for conspiring to launder approximately 119,754 BTC in wire fraud proceeds, worth approximately $71 million at the time of the wire fraud, which quantity represents the total amount involved in your client's relevant criminal conduct and in jointly understaken criminal activity that was reasonably foreseeable by your client and within the scope of your client's conspiratorial agreement.

The parties agree that the following Sentencing Guidelines sections apply:

**Count One: Money Laundering Conspiracy, 18 U.S.C. §§ 371 & 1956(a)(1)(B)(i)**

| | | |
|---|---|---|
| §§ 2X1.1(a) & 2S1.1(a)(1) | Base offense level: see § 2B1.1(a)(2) (wire fraud) | 6 |
| § 2B1.1(b)(1)(M) | More than $65 million | +24 |
| § 2B1.1(b)(2)(A) | Substantial financial hardship to 1 victim | +2 |
| § 2B1.1(b)(10) | Sophisticated means | +2 |
| § 2X1.1(b)(2) | Incomplete conspiracy | -3 |
| § 3B1.2(b) | Minor Participant | -2 |
| | **Total** | **29** |

**Count Two: Conspiracy To Defraud the United States, 18 U.S.C. § 371**

| | | |
|---|---|---|
| § 2C1.1(c)(1) | Cross reference: Offense committed to facilitate money laundering conspiracy; apply calculation for money laundering conspiracy, above. | 29 |
| | **Total** | **29** |

Grouping:

Pursuant to U.S.S.G. §§ 3D1.1(a)(1), 3D1.2(d), and 3D1.3(b), Counts One and Two are grouped together, and the prevailing guideline is that which produces the highest offense level.  The resulting offense level for this group is **29**.

When sentencing on multiple counts of conviction, if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment (that is, less than the Guidelines Range determined by the Court based on the applicable Offense Level and Criminal History Category), then, pursuant to U.S.S.G. § 5G1.2(d), the sentence imposed on one or more other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

Acceptance of Responsibility:

The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1, provided that your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution, adherence to every provision of this Agreement, and conduct between entry of the plea and imposition of sentence. Furthermore, assuming your client has accepted responsibility as described in the previous sentence, the Government agrees that an additional 1-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1(b), because your client has assisted authorities by providing timely notice of your client's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and/or imposition of an adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, regardless of any agreement set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined by the Government that your client has either (a) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice, or (b) engaged in additional criminal conduct after signing this Agreement.

In accordance with the above, the Estimated Offense Level will be **26**.

### B.      Estimated Criminal History Category

Based upon the information now available to this Office (including representations by the defense), your client has no criminal convictions.

Accordingly, your client is estimated to have 0 criminal history points and your client's Criminal History Category is estimated to be I (the "Estimated Criminal History Category"). Your client acknowledges that after the pre-sentence investigation by the United States Probation Office, a different conclusion regarding your client's criminal convictions and/or criminal history points may be reached and your client's criminal history points may increase or decrease.

### C.      Estimated Guidelines Range

Based upon the Estimated Offense Level and the Estimated Criminal History Category set forth above, your client's estimated Sentencing Guidelines range is **63 months to 78 months** (the "Estimated Guidelines Range"). In addition, the parties agree that, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level **26**, the estimated applicable fine range is **$25,000 to $250,000**. Your client reserves the right to ask the Court not to impose any applicable fine.

The parties agree that, solely for the purposes of calculating the applicable range under the Sentencing Guidelines, neither a downward nor upward departure from the Estimated

Guidelines Range set forth above is warranted. Except as provided for in the "Reservation of Allocution" section below, the parties also agree that neither party will seek any offense-level calculation different from the Estimated Offense Level calculated above in subsection A. However, the parties are free to argue for a Criminal History Category different from that estimated above in subsection B.

Your client understands and acknowledges that the Estimated Guidelines Range calculated above is not binding on the Probation Office or the Court. Should the Court or Probation Office determine that a guidelines range different from the Estimated Guidelines Range is applicable, that will not be a basis for withdrawal or recission of this Agreement by either party.

Your client understands and acknowledges that the terms of this section apply only to conduct that occurred before the execution of this Agreement. Should your client commit any conduct after the execution of this Agreement that would form the basis for an increase in your client's base offense level or justify an upward departure (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the probation officer, or the Court), the Government is free under this Agreement to seek an increase in the base offense level based on that post-agreement conduct.

6. **Agreement as to Sentencing Allocution**

The parties agree that a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a), should such a sentence be subject to appellate review notwithstanding the appeal waiver provided below. Nevertheless, your client reserves the right to seek a sentence below the Estimated Guidelines Range based upon factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

7. **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement. The parties also reserve the right to address the correctness of any Sentencing Guidelines calculations determined by the presentence report writer or the court, even if those calculations differ from the Estimated Guidelines Range calculated herein. In the event that the Court or the presentence report writer considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court or the presentence report writer and to allocute for a sentence within the Guidelines

range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein.

In addition, if in this Agreement the Government has agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the Government and your client reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

### 8. <u>Court Not Bound by this Agreement or the Sentencing Guidelines</u>

Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. § 3553(a), upon consideration of the Sentencing Guidelines. Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing or to grant a downward departure based on your client's substantial assistance to the Government, even if the Government files a motion pursuant to 18 U.S.C. § 3553(e) and/or § 5K1.1 of the Sentencing Guidelines. Your client understands that neither the Government's recommendation nor the Sentencing Guidelines are binding on the Court.

Your client acknowledges that your client's entry of a guilty plea to the charged offense(s) authorizes the Court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that is outside the Guidelines range or if the Court does not follow the Government's sentencing recommendation. The Government and your client will be bound by this Agreement, regardless of the sentence imposed by the Court. Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement.

### 9. <u>Conditions of Release</u>

Your client acknowledges that, although the Government will not seek a change in your client's release conditions pending sentencing, the final decision regarding your client's bond status or detention will be made by the Court at the time of your client's plea of guilty. The Government may move to change your client's conditions of release, including requesting that your client be detained pending sentencing, if your client engages in further criminal conduct prior to sentencing or if the Government obtains information that it did not possess at the time of your client's plea of guilty and that is relevant to whether your client is likely to flee or pose a danger to any person or the community. Your client also agrees that any violation of your client's release conditions, any misconduct by your client, or any inability or failure on the part

of your client to continue your client's cooperation with the Government, may result in the Government filing an ex parte motion with the Court requesting that a bench warrant be issued for your client's arrest and that your client be detained without bond while pending sentencing in your client's case.

### 10.   **Cooperation**

Your client agrees to cooperate with the Office of the United States Attorney for the District of Columbia on the following terms and conditions:

(a)     Your client shall cooperate fully, truthfully, completely and forthrightly with this Office and other Federal, state and local law enforcement authorities identified by this Office in any and all matters as to which the Government deems the cooperation relevant. Your client acknowledges that your client's cooperation may include, but will not necessarily be limited to: answering questions; providing sworn written statements; taking government-administered polygraph examination(s); and participating in covert law enforcement activities. Any refusal by your client to cooperate fully, truthfully, completely and forthrightly as directed by this Office and other Federal, state and local law enforcement authorities identified by this Office in any and all matters in which the Government deems your client's assistance relevant will constitute a breach of this Agreement by your client, and will relieve the Government of its obligations under this Agreement, including, but not limited to, its obligation to inform this Court and the Departure Guidelines Committee of the United States Attorney's Office for the District of Columbia of any assistance your client has provided. Your client agrees, however, that such breach by your client will not constitute a basis for withdrawal of your client's plea of guilty or otherwise relieve your client of your client's obligations under this Agreement.

(b)     Your client shall promptly turn over to the Government, or other law enforcement authorities, or direct such law enforcement authorities to, any and all evidence of crimes about which your client is aware; all contraband and proceeds of such crimes; and all assets traceable to the proceeds of such crimes. Your client agrees to the forfeiture of all assets which are proceeds of crimes or traceable to such proceeds of crimes.

(c)     Your client shall submit a full and complete accounting of all your client's financial assets, whether such assets are in your client's name or in the name of a third party.

(d)     Your client acknowledges and understands that, during the course of the cooperation outlined in this Agreement, your client will be interviewed by law enforcement agents and/or Government attorneys. Your client waives any right to have counsel present during these interviews and agrees to meet with law enforcement agents and Government attorneys outside of the presence of counsel. If, at some future point, you or your client desire to have counsel present during interviews by law enforcement agents and/or Government attorneys, and you communicate this decision in writing to this Office, the Government will honor this request, and this change will have no effect on any other terms and conditions of this Agreement.

(e)     Your client shall testify fully, completely and truthfully before any and all Grand Juries in the District of Columbia and elsewhere, and at any and all trials of cases or other court

proceedings in the District of Columbia and elsewhere, at which your client's testimony may be deemed relevant by the Government.

(f)     Your client understands and acknowledges that nothing in this Agreement allows your client to commit any criminal violation of local, state or federal law during the period of your client's cooperation with law enforcement authorities or at any time prior to the sentencing in this case. The commission of a criminal offense during the period of your client's cooperation or at any time prior to sentencing will constitute a breach of this Agreement and will relieve the Government of all of its obligations under this Agreement, including, but not limited to, its obligation to inform this Court and the Departure Guidelines Committee of the United States Attorney's Office for the District of Columbia of any assistance your client has provided. However, your client acknowledges and agrees that such a breach of this Agreement will not entitle your client to withdraw your client's plea of guilty or relieve your client of the obligations under this Agreement.

(g)     Your client agrees to abide by any and all release conditions imposed by the Court.

**11.     <u>Waivers</u>**

> **A.     Venue**

Your client waives any challenge to venue in the District of Columbia.

> **B.     Statute of Limitations**

Your client agrees that, should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution, based on the conduct set forth in the attached Statement of Offense, that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution of conduct set forth in the attached Statement of Offense that is not time-barred on the date that this Agreement is signed.

> **C.     Trial Rights**

Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule. Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea. Your client also agrees to waive, among other rights, the right to be indicted by a Grand Jury, the right to plead not guilty, and the right to a jury trial. If there were a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to challenge the

admissibility of evidence offered against your client, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify. If there were a jury trial and your client chose not to testify at that trial, your client would have the right to have the jury instructed that your client's failure to testify could not be held against your client. Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt. If your client were found guilty after a trial, your client would have the right to appeal your client's conviction. Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution. By entering a plea of guilty, your client knowingly and voluntarily waives or gives up your client's right against self-incrimination.

Your client acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights that arise under these rules in the event your client withdraws your client's guilty plea or withdraws from this Agreement after signing it.

Your client also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the Government with the concurrence of the Court. Your client also agrees that the sentencing in this case may be delayed until your client's cooperation has been completed, as determined by the Government, so that the Court will have the benefit of all relevant information before a sentence is imposed. Your client understands that the date for sentencing will be set by the Court.

### D. Appeal Rights

Your client agrees to waive, insofar as such waiver is permitted by law, the right to appeal the conviction in this case on any basis, including but not limited to claim(s) that (1) the statute(s) to which your client is pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of the statute(s). Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances. Your client also agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. Notwithstanding the above agreement to waive the right to appeal the conviction and sentence,

your client retains the right to appeal on the basis of ineffective assistance of counsel, but not to raise on appeal other issues regarding the conviction or sentence.

### E. Collateral Attack

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. Your client reserves the right to file a motion brought under 18 U.S.C. § 3582(c).

### F. Witness Fees

Your client further agrees to waive all rights, claims, or interest in any witness fee that your client may be eligible to receive pursuant to 28 U.S.C. § 1821 for your client's appearance at any grand jury, witness conference, or court proceeding, during the course of your client's cooperation pursuant to this Agreement or any term of your client's incarceration.

## 12. Use of Self-Incriminating Information

The Government and your client agree, in accordance with U.S.S.G. § 1B1.8, that the Government will be free to use against your client for any purpose at the sentencing in this case or in any related criminal or civil proceedings, any self-incriminating information provided by your client pursuant to this Agreement or during the course of debriefings conducted in anticipation of this Agreement, regardless of whether those debriefings were previously covered by an "off the record" agreement by the parties.

## 13. Restitution

Your client understands that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. § 3663A at the time of sentencing. Apart from that determination of mandatory restitution, your client agrees to pay restitution to Bitfinex in an amount to be determined at sentencing.

Payments of restitution shall be made to the Clerk of the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, your client agrees to disclose fully all assets in which your client has any interest or over which your client exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Your client agrees to submit a completed financial statement on a standard financial disclosure form which has been provided to you with this Agreement to the Financial Litigation Unit of the United States Attorney's Office, as it directs. If you do not receive the disclosure form, your client agrees to request one from usadc.ecfflu@usa.doj.gov. Your client will complete and electronically provide the standard financial disclosure form to usadc.ecfflu@usa.doj.gov 30 days prior to your client's sentencing. Your client agrees to be

contacted by the Financial Litigation Unit of the United States Attorney's Office, through defense counsel, to complete a financial statement. Upon review, if there are any follow-up questions, your client agrees to cooperate with the Financial Litigation Unit. Your client promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement could be prosecuted as a separate crime punishable under 18 U.S.C. § 1001, which carries an additional five years' incarceration and a fine.

Your client expressly authorizes the United States Attorney's Office to obtain a credit report on your client in order to evaluate your client's ability to satisfy any financial obligations imposed by the Court or agreed to herein.

Your client understands and agrees that the restitution or fines imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, your client understands that the schedule of payments is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment. If your client is sentenced to a term of imprisonment by the Court, your client agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically imposes a schedule of payments.

Your client certifies that your client has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this Agreement and/or that may be imposed by the Court. In addition, your client promises to make no such transfers in the future until your client has fulfilled the financial obligations under this Agreement.

### 14.   Forfeiture

(a)     Your client agrees to the forfeiture set forth in the Forfeiture Allegation in the Criminal Information to which she is pleading guilty. Your client agrees to the forfeiture of the specific properties listed in Attachment A hereto, the value of which shall be credited toward the forfeiture money judgment in this case upon final order of forfeiture for the specific property, which represents property, real or personal, constituting or derived from proceeds traceable to a violation of Count Two of the Criminal Information. In addition, your client agrees to the entry of a forfeiture money judgment in the amount of $72,618825.60, which is equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Count Two. The amount owed by your client on the forfeiture money judgment in this case shall be credited by the net proceeds realized by the United States collected from the defendant Ilya Lichtenstein pursuant to any forfeiture order issued in *United States v. Ilya Lichtenstein*, D.D.C. No. 22-mj-22-1.

(b)     Your client agrees that in or around January 2022, she and/or her co-defendant, Ilya Lichtenstein (the "Defendants"), sent approximately 6.6 million USD Coin (USDC), which was derived from the 2016 Bitfinex hack, to Aave's virtual currency liquidity/lending pool on the Ethereum network. That position is associated with the Defendants' virtual currency wallet

0x331865e142ACA526B9f75464A2B597ECdaCAF557 (the "Defendants' Aave Token Holder Address"). After depositing those stolen assets into Aave's liquidity/lending pool, the Defendants borrowed approximately 500 Ether (ETH) using the deposited USDC as collateral for the loan. The withdrawal of any remaining USDC contained in the Defendants' Aave Token Holder Address will require repayment of the approximately 500 ETH loan. Your client agrees that her financial interest in the Defendants' Aave Token Holder Address represents property, real or personal, constituting or derived from proceeds traceable to a violation of Count Two of the Criminal Information, and that it is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). At this juncture, the government is not moving to forfeit your client's financial interest in the Defendants' Aave Token Holder Address because your client agrees to cooperate in liquidating her financial interest in the Defendants' Aave Token Holder Address in a commercially reasonable manner and remit the net proceeds to the United States as specific property subject to forfeiture, the value of which shall be credited toward the forfeiture money judgment in this case. In the event your client's financial interest in the Defendants' Aave Token Holder Address is not liquidated within 6 months of entry of this plea agreement, your client consents to the government moving for an Amended Final Order of Forfeiture forfeiting your client's financial interest in the Defendants' Aave Token Holder Address.

(c)      Your client agrees that the proffer of evidence supporting your client's guilty plea is sufficient evidence to support this forfeiture. Your client agrees that the Court may enter a preliminary Consent Order of Forfeiture for this property at the time of her guilty plea or at any time before sentencing. Your client agrees that this Order will become final as to your client when it is issued and will be a part of her sentence pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

(d)      Your client agrees that this plea agreement permits the government to seek to forfeit any of her assets, real or personal, that are subject to forfeiture under any federal statute, whether or not this agreement specifically identifies the asset. Regarding any asset or property, your client agrees to forfeiture of all interest in: (1) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Count Two of the Information to which your client is pleading guilty; and (2) any substitute assets for property otherwise subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p).

(e)      By this plea agreement, your client agrees that she has waived any and all interest she has in the specific assets or property identified above and consented to their forfeiture by whatever process the government chooses. Your client agrees that the government may use this waiver and consent in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, local or federal. If your client already has filed a claim to any of these assets or property in any forfeiture process, she hereby agrees to withdraw it. She also agrees that she will not file a claim to any of these assets or property in any future forfeiture proceeding of whatever type. In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of the property, the defendant hereby abandons any interest she has in such property and consents to its destruction by the law enforcement agency.

(f)      Your client agrees that the government may choose in its sole discretion how it wishes to accomplish forfeiture of the property whose forfeiture your client has consented to in

this plea agreement, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. If the government chooses to effect the forfeiture provisions of this plea agreement through the criminal forfeiture process, your client agrees to the entry of orders of forfeiture for such property and waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Your client understands that the forfeiture of assets is part of the sentence that will be imposed in this case.

(g)     Your client agrees to take all necessary actions to identify all assets over which your client exercises or exercised control, directly or indirectly, at any time since August 2016, or in which your client has or had during that time any financial interest. Your client agrees to take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by your client. Your client agrees to provide and/or consent to the release of your client's tax returns for the previous five years. Your client agrees to take all steps as requested by the Government to pass clear title to forfeitable interests or to property to the United States and to testify truthfully in any judicial forfeiture proceeding.

(h)     Your client agrees to waive all constitutional and statutory challenges in any manner (including, but not limited to, direct appeal) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

(i)     This Office agrees to make a non-binding referral to the Money Laundering and Asset Recovery Section at the Department of Justice that any monies obtained from the defendant through forfeiture be distributed to the victims of the offense in accordance with any restitution order entered in this case. Your client understands that if this request is denied, your client will be liable to pay both the restitution and forfeiture judgments. Your client understands that forfeiture and restitution are separate obligations and that that the Court does not have the authority to offset them against each other.

## 15.    **Breach of Agreement**

Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement. In the event of such a breach: (a) the Government will be free from its obligations under this Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; (d) no motion pursuant to Section 5K1.1 of the Sentencing Guidelines or 18 U.S.C. § 3553(c) will be filed or sought; and (e) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record"

debriefings, and including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. In the event of such a breach, your client will not be allowed to withdraw your client's guilty plea.

## 16.   **Government's Obligations**

The Government will bring to the Court's attention at the time of sentencing the nature and extent of your client's cooperation or lack of cooperation.

The Departure Guideline Committee of the United States Attorney's Office for the District of Columbia will evaluate the full nature and extent of your client's cooperation to determine whether your client has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. If the Departure Guideline Committee determines that your client has provided such substantial assistance, this Office shall file a departure motion pursuant to Section 5K1.1 of the Sentencing Guidelines or pursuant to both Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). A motion pursuant to Section 5K1.1 would afford your client an opportunity to persuade the Court that your client should be sentenced to a lesser period of incarceration and/or fine than indicated by the Sentencing Guidelines. A motion pursuant to both Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) would afford your client the opportunity to persuade the Court that your client should be sentenced to both a lesser period of incarceration and/or fine than indicated by the Sentencing Guidelines *and* to a lesser period of incarceration than any otherwise-applicable statutory mandatory-minimum sentence. The determination of whether your client has provided substantial assistance warranting the filing of a motion pursuant to either Section 5K1.1 of the Sentencing Guidelines or to both Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) is within the sole discretion of the United States Attorney's Office for the District of Columbia and is not reviewable by the Court. In the event your client should fail to perform specifically and fulfill completely each and every one of your client's obligations under this Agreement, the Government will be free from its obligations under this Agreement, and will have no obligation to file a departure motion pursuant to Section 5K1.1 of the Sentencing Guidelines and/or 18 U.S.C. § 3553(e).

17.   **Witness Protection**

The Government agrees that, if requested by your client, and if appropriate in the sole discretion of this Office in order to provide for the protection and security of your client, the United States Attorney's Office for the District of Columbia will sponsor your client for acceptance into the Witness Security Program of the United States Department of Justice. It is understood, however, that the decision to accept your client into the Witness Security Program is at the sole discretion of the United States Department of Justice and not this Office. It is further understood that, once accepted into the Witness Security Program, the continued participation of your client will be governed exclusively by the standard rules and regulations which have been promulgated by the United States Department of Justice to administer the Witness Security Program.

18.   **Complete Agreement**

No agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

Your client further understands that this Agreement is binding only upon the Criminal and Superior Court Divisions of the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

If the foregoing terms and conditions are satisfactory, your client may so indicate by signing this Agreement and the Statement of Offense, and returning both to me no later than **July 14, 2023**.

Sincerely yours,

Matthew M. Graves
United States Attorney

By:

Christopher B. Brown
Assistant United States Attorney

C. Alden Pelker
Jessica Peck
Trial Attorneys, U.S. Department of Justice,
Computer Crime & Intellectual Property Section

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorneys, Eugene V. Gorokhov and Charles Burnham. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 7/13/2023

Heather Rhiannon Morgan
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Heather Rhiannon Morgan, and fully discussed the provisions of this Agreement with my client. These pages accurately and completely set forth the entire Agreement. I concur in my client's desire to plead guilty as set forth in this Agreement.

Date: 7/14/23

Eugene V. Gorokhov
Charles Burnham
Attorneys for Defendant

**ATTACHMENT A**

a.  Approximately 94,643.29837084 in Bitcoin (BTC) (after required fees) seized
    from wallets recovered from Defendants' online storage account and contained in
    the recipient virtual currency addresses of the following transactions:

| |
|---|
| 6e0d701ac2ea3ad87fc8bcaa786b994aa943f5eb9a67a1e345769bb090bf5b9e |
| afdfeeadb9f0a4691cbb8ace33a7c24c052b3608c4c8cc2e25afe053926b6389 |
| 77ad70fadfbbad5191c47c951469095ca845006f25fe9814f30f2853af367459 |
| c49ff6bd054fb386cd02fc94ca34b8773229ed8a5538e023ef7bea772d70c17a |
| 9d06994238d0de958033f42db39a6d2cc0de35e84be0ed080e41f017f02dffb3 |
| ed1812e8310bb25fbd138aae17be738ad3fa20e0783a8598c8dea56d3be5dad7 |
| ee56a9957f1f6166440bea01d0c0c29e4cec6230bb8231eced6ba844bb095d2a |
| c250725cfc9671d3849a3e85343ec5f3d045f805d002e56725c8ea2aebb9131a |
| b0aa2d76fd9463da6a7aff59e37d7ebf7b6aa1b660de2b2e9ab7755cf6f60ac3 |
| b18e40d96906b7b17f337ad6250f0c5aa9db93498832125374102dd2f5e0ed47 |
| 8e5102edd876f71e3482b7602dd9141fbce3ac869fba55a757b4354c70536f34 |
| 11bae40ae4315a1e8f7d9a8df676db6bdb497b153711d1bf7952c540ed1a5966 |
| e6088723889de70fa985e7b8c012c77ea693a6ef9379fb26a951a2bb5c722525 |
| 3fe798be890c7db8beaca9d005cd650e787b1b16bc5e47eef26bfa87124b6a95 |
| d006075f40136ea7733aec2d6f32c31abc09f779de01a33e7e07804907d339c7 |
| 8e53ca8952fbf2d1a272ab376555a1ccee1ff0bcab0747a8c91b0ccfc77cc3fb |
| 97e4eb7ca5d0b2b6d501a53478486d5ed75ce58d1204c6036f25b33439d48627 |
| 658a550600e814f7bf7d032b7984912857f37c96a68e4dd3eb1dce4fc774e26f |
| 98281f388a4441d7bb00537e65b1a4581dcaddd3606fc09f6cf19598343be34d |
| d1dbc472abe47902aa71e639ba2feb2098b474ab20b853168ecdb0d87ce02955 |
| 61594a56cd2ef501cdb55b9037cd5785d1ad2eedfb1a4fab7ded50b1052a0650 |
| b7bf853fd6eb27f66963d219d29b85e13796e315473b7c08484335a0b0da7669 |
| 9af41957244e97e70378a7afd2d41b73d0a64d94c9b2df9049c29dd1919741cb |

b.  Approximately 117,376.52651940 in Bitcoin Cash (BCH) (after required fees)
    seized from wallets recovered from Defendants' online storage account and
    contained in the recipient virtual currency addresses of the following transactions:

| |
|---|
| c29fb28633a9bee7720f7ec021c2441dc6a2289c92e887ac5214c35d49314379 |
| 0b9013f818de45ddfa9068f54f8513f15ae35bd711054d119b483a791c750684 |
| 0ae0e3c0db61a2542015164bdcead1636c614bdd5bf51b9537c5b8312db2b84a |
| 16e1ba9b30fd5c86c9dd4ef3967105c2fbfe7ed9f510900b8acd7f7a0a9cdbd8 |
| 2544551e053688217ececb544bdc065d502db4ff4f227053fa25cc41be907541 |
| 4f24389c09897d50239d0be3ec39044160f65985cfb3fdf11d117a8fa39aaa24 |
| 6ad1a5ef2ed573b010e7ab32b395bed32142c07bf8bb67534880bbb03591215d |
| 7278e247fc3c7bfa81732ba63c628fe30cb160ec9b7fa357a5dcff8a2f6738e3 |
| 739b58b49039856f8db1da64c713372e04c4e09f9ca32437b639b4d37aad920b |

| |
|---|
| 7570b746ecd24f66eb754e100f79c5259e9eecb0c7a0188e6cf5ee84f76d9b21 |
| 7cbd6e7161bbcb80865ef855128bbe1cdeb1e6b87788a99c2559046294bc898f |
| e308fc1199a044f613578e365313008762b8b779b3d92191e6e6ba9a6f5e2182 |
| f8efc360fcd7d6f27b9f7e51911f361b94cb1ff2734be5e301b3cacedda9481e |

c.  Approximately 117,376.58178024 in Bitcoin Satoshi Version (BSV) (after required fees) seized from wallets recovered from Defendants' online storage account and contained in the recipient virtual currency addresses of the following transactions:

| |
|---|
| 2cf808c73bda45a6ee1c266c60da50f01250d9452f7b51e1caaf3ecec605b416 |
| a0ede2c37597976de79a67db2096b3d8f7a4f60f357c09953a7342ad1948b4b5 |
| 6b46c0067f786acf4f5a1925f12b9860ad61817829f30fefd898ad0c3bbaeaf0 |

d.  Approximately 118,102.03258447 in Bitcoin Gold (BTG) (after required fees) seized from wallets recovered from Defendants' online storage account and contained in the recipient virtual currency addresses of the following transactions:

| |
|---|
| a4ba827e99c6cef43ff590457671b63c0d52b2c215797e67c81fc168f499932c |
| 97263227ea621461f3d22132c3e7562b0e401853fd4aced1db1b34aba1a65ab4 |
| 41ad49ad96dfd64eb0293484d4953ccbff7d70839e4c7b75db472c5553db1532 |
| d6e8f7d9aac687cac9af801b4b38cbc8e71db2f21d41f0a6e0d8052d8087456b |
| c2d69e0a0090f201a29d6afb3655b7118b2282146abf64b044481ed99eb2fa27 |
| ec3e2b93e7f7be50bb827ebfd366e2e1f4627dd8ed4550427ec793a3ea20187c |
| 2aa7dbb29d707fb1150c13d1ee6a0a17eeef7326116251cb5d13081fcd297ad8 |
| 70ed72a2c1e2d828f314f5bb327b0e03421bf854c4aba3ea9393258af6fba044 |
| c656cd61fce6c3aebeb0f20818d5d092c04c379d3fc72e3ec7e4f019f71a40ec |
| 2238af7a93f797a32ea20492fffa5e27b4d425c46ee7cb0e4fa262e2cddf3142 |
| ec2f4d2e7c13f19657ad4559a9bfd254437989f0f45e8993a17d84c374ecb02f |
| 5e26b7706b1c53b49d99ac1f501971b3d62c6d7e0ba6a01c9791e0d675cfb6e7 |

e.  Approximately 29,016.98 in Monero (XMR) contained within wallets accessible via private keys contained within the Defendants' online storage account;

f.  Stolen virtual currency contained within the following wallets: 0x8CE693CB0626924583931F25f50AF8fC1C6517F0, which holds approximately 8.56 Ether (ETH) and approximately 4,507.99 USD Coin (USDC), as well as various other ERC-20 tokens; 0x331865e142ACA526B9f75464A2B597ECdaCAF557, which holds approximately 13.88 ETH, approximately 6,656,048 Aave USDC (aUSDC), and approximately 120 Wrapped Ether (WETH), as well as various other tokens; and 0x3b2Cd27cE5a8633160bC7875B35009f010a51B21, which holds approximately 80 WETH, and approximately .39 ETH.

g. Approximately .879544 Curve DAO tokens contained within the following address: 0x612e5774af05cef0626f429d876a315bbdb794fac8fe361ba1d4a01cb3db86a4;

h. Approximately 1,999,723.976 in Tether (USDT) contained within Yearn Finance Liquidity Pool address 0xaC848276B10B2364fA06C206EE1D059acCD17412, approximately 3,689,545.195 USDT contained within Yearn Finance Liquidity Pool address 0xE2F699AB099e97Db1CF0b13993c31C7ee42FB2ac, and approximately 1,700,000 USDT contained within Yearn Finance Liquidity Pool address 0x6811c26b566e9582B68255B2225917AF96dd8Ec2;

i. Assorted U.S. and Canadian gold coins excavated and recovered by law enforcement from LOCATION 1, a premises in California known to the Defendants and the Government;

j. Approximately 2,818.199 BTC (after required fees) seized from wallets recovered from Defendants' online storage account;

k. Approximately 12,267.025 BTC (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

l. Approximately 1,155.901 BTC (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

m. Approximately 901,014 in USDC (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

n. Approximately 290,729 USDT (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

o. Approximately 5,990 USDT (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

p. Approximately 1000.06 in Ether (ETH) (after required fees) seized from wallets recovered from Defendants' online storage account;

q. Approximately 1,030,436.50 in aUSDT cryptocurrency (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

r.  Approximately 17,572,068.53 in aUSDC cryptocurrency (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

s.  Approximately 3,542,129.56 in Yearn Vault USDT (yvUSDT) cryptocurrency (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

t.  Approximately $228,266.02 seized from JPMorgan Chase bank account number 877916952;

u.  Approximately 7.998 BTC (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

v.  Approximately 1,770.049 ETH (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

w.  Approximately 264.863 BTC (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

x.  Approximately $352,381.55 seized from Wells Fargo bank account number 5361262370;

y.  Approximately 0.196 BTC (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

z.  Approximately 1,401.567 ETH (after required fees) seized from wallets recovered from Defendants' online storage account;

aa. Approximately 1,866.624 ETH (after required fees) seized from wallets recovered from an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005;

bb. Approximately $2,460,375 seized from the Flagstar bank account corresponding to Signature Bank account number 1503814168; and

cc. Approximately 1,066 in WETH (after required fees) seized from wallets recovered from Defendants' online storage account and an external hard drive recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005.