**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action |
| | ) | No. 1:23-cr-00239-CKK-1 |
| Plaintiff, | ) | |
| | ) | **Plea** |
| vs. | ) | |
| | ) | |
| Ilya Lichtenstein, | ) | Washington, D.C. |
| | ) | **August 3, 2023** |
| Defendant. | ) | Time:  9:30 a.m. |

_____

**Transcript of Plea**
**Held Before**
**The Honorable Colleen Kollar-Kotelly**
**United States Senior District Judge**


A P P E A R A N C E S

For the Government:     **Christopher B. Brown**
                        UNITED STATES ATTORNEY'S OFFICE
                        FOR THE DISTRICT OF COLUMBIA
                        601 D Street, Northwest
                        Washington, D.C. 20579

                        **Jessica Peck**
                        UNITED STATES DEPARTMENT OF JUSTICE
                        1301 New York Avenue, Northwest
                        Washington, D.C. 20005

                        **C. Alden Pelker**
                        UNITED STATES DEPARTMENT OF JUSTICE
                        950 Pennsylvania Avenue, Northwest
                        Washington, D.C. 20530

For the Defendant:      **Samson Enzer**
                        **Connor O'Shea**
                        CAHILL GORDON & REINDEL LLP
                        32 Old Slip
                        New York, New York 10005

1
_____

2    Stenographic Official Court Reporter:
                          Nancy J. Meyer
3                         Registered Diplomate Reporter
                          Certified Realtime Reporter
4                         333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
5                         202-354-3118

6    Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Criminal Case 23-239, the
 3     United States v. Ilya Lichtenstein.
 4              Counsel, would you please identify yourself for the
 5     record, starting with the government.
 6              MR. BROWN:  Good morning, Your Honor.  AUSA
 7     Christopher Brown for the government.
 8              THE COURT:  Good morning.
 9              MS. PELKER:  Good morning, Your Honor.  Alden Pelker
10     for the United States.
11              THE COURT:  Good morning.
12              MS. PECK:  Good morning, Your Honor.  Jessica Peck
13     for the United States.
14              THE COURT:  All right.  Good morning.
15              MR. ENZER:  Good morning, Your Honor.  Samson Enzer
16     from Cahill Gordon & Reindel for the defendant,
17     Mr. Lichtenstein, who is seated here to my left.
18              THE COURT:  All right.  Good morning.
19              MR. ENZER:  And my colleague is here.
20              MR. O'SHEA:  Good morning, Your Honor.  Connor O'Shea
21     from Cahill Gordon & Reindel on behalf of the defendant.
22              THE COURT:  All right.  And good morning -- is it
23     Lichtenstein?  Lichtenstein?
24              THE DEFENDANT:  Yeah, Lichtenstein.  That's correct.
25     Good morning.
```

1      THE COURT:  All right.  What you can do is if you're

2  speaking, you can take the mask off; otherwise, it's hard to

3  get a record.  If you're not, you can just leave it on.

4      I don't have a problem having the defendant when -- we

5  go through the statement of facts or the discussion, he can

6  stay where he is using the microphone as opposed to having to

7  come up here.  So this is a fairly extensive statement of

8  offense and plea agreement.  So that won't be a problem.

9      Do we want to have one of you on the other side?  If he

10  wants to consult with you, you need to push the button down so

11  we don't all hear what he's talking about.

12      One thing I wanted to ask, I noticed in the plea

13  agreement itself, it talks about 3553(e).  I don't -- there's

14  no mandatory minimum, is there?

15      MR. BROWN:  Your Honor, that's correct.  There is no

16  mandatory minimum for the charged offenses.

17      THE COURT:  Okay.  Because it does refer to that in

18  there.  And I just want to make sure that -- I don't know that

19  we need to take it out, but in explaining it to him, we don't

20  need to worry about that.

21      MR. BROWN:  Yes, Your Honor.

22      THE COURT:  Okay.  And does Mr. Lichtenstein have the

23  paperwork, pleadings, et cetera, in front of him?

24      THE DEFENDANT:  Yes, I have it in front of me.

25      THE COURT:  So that will make it easier in terms of

1    you being able to refer to it.

2         All right.  Then let me proceed and have the clerk

3    administer the oath to the defendant.  That one you do need to

4    stand for.

5              THE COURTROOM DEPUTY:  Stand and raise your right

6    hand, please.

7              (Oath administered.)

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Thank you.  You may be seated.  You can

10   sit down.

11        You can take your mask off because at this point you're

12   going to be the one answering the questions.

13             THE DEFENDANT:  Okay.  Thank you.

14             THE COURT:  So what I'm going to do is explain to you

15   a series of questions.  The Court needs to find at the end that

16   you're making a plea knowingly -- in other words, you

17   understand what it is you've agreed to -- and you're doing this

18   voluntarily.

19        I may explain things differently than you've discussed

20   with your counsel as we go through the agreement,

21   particularly the written plea letter.  If it doesn't sound

22   like what you understood, please ask for a clarification.  Or

23   if you don't understand my question, I don't have a problem.  I

24   don't want you to give me just the answers you think I want to

25   hear.  I want to make sure you know what you're actually

1    agreeing to.

2          If I explain it differently, then we need to discuss

3    that to make sure we have a meeting of the minds.  If you need

4    to consult with your lawyer at any time, you can do so as well.

5    Just make sure you push the button down so we can't hear what

6    you're saying.  But that's not a problem either.

7          So I'm going to discuss the -- in basic terms what the

8    plea agreement is.  I'll go over some background information

9    relating to you.  I'll discuss your basic constitutional rights

10   that you're waiving; by that, I mean giving up.

11         The statement of offense, the government will not

12   summarize it but actually read it, since I think summarizing is

13   going to make it too difficult in terms of finding out what

14   he's actually admitting to.  And I'd ask, then, at the end if

15   you would tie the facts in very summary form to the elements of

16   the offenses that he's -- the offense that he's actually

17   pleading guilty to.

18         What I'm going to do a little differently for the

19   statement of offense is that as we go through each paragraph

20   and the government has read it, I'm going to ask you whether

21   you agree with it so we don't go through this long one and then

22   I go back and go through each one of these things with you.

23   We'll do it along the way.

24         What I want to do is make sure that you're agreeing to

25   the conduct.  If you're not agreeing, you need to speak up.

1    Okay?  I know you signed it, but I still go through it to make

2    sure there's not a problem with it.

3            Then I'll go through the letter that you've agreed to.

4    I'm not going to go through everything in it.  It's fairly

5    long.  But I will go through the -- what I'm required to ask

6    you by the rules and also areas that I know occasionally

7    there's some confusion about, and particularly where you're

8    giving up rights or waiving it in some way.  I'll go through

9    that area.

10           But the fact that I don't bring it up doesn't mean that

11   it's not part of the agreement.  At the end, if your counsel or

12   you want to go through something that I have not brought up to

13   make sure there's no misunderstanding, you know, that's not a

14   problem either.

15           I certainly will go through the statutory penalties, the

16   advisory sentencing guidelines, and explain that.  And then I

17   will also at the end have some questions about the

18   voluntariness of your plea.

19           So that just gives you an idea of what the process is

20   going to be like.

21           So we just placed you under oath.  Do you understand

22   that you're now oath and if you don't answer my questions

23   truthfully, you could be prosecuted for perjury or for making a

24   false statement?

25           Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  My understanding is that

3    the -- he's pleading to an information, and the information has

4    one count.  It's Count 1.  And that's money laundering

5    conspiracy in violation of 18 U.S.C. § 1956(h).  Is that

6    correct?  Ms. Morgan is pleading to the others.

7          MR. BROWN:  Yes, Your Honor.

8          THE COURT:  Okay.  There will also be involved

9    restitution and forfeiture.  The forfeiture amount is

10   $72,618,825.60.

11         You are agreeing also, as part of this basic plea

12   agreement, to remain locked up.  You, obviously, get credit for

13   that, so -- if the Court sentences you to incarceration.

14         In terms of allocution, which is recommendations to the

15   Court about sentencing, the government has reserved that.

16   There are discussions in the plea letter relating to agreements

17   that parties have reached, and I'll go over that as well.

18         But is that your understanding of what it's about?

19         One additional thing.  It's wired, which means both you

20   and Ms. Morgan actually have to plead.  So having the plea for

21   you, if she does not plead or vice versa, the plea will not be

22   sustained.

23         But is that your understanding of just the basics?

24         THE DEFENDANT:  Yes.  Yes, it is.

25         THE COURT:  All right.  Let me go through your

1    background information.  How old are you, sir?

2              THE DEFENDANT:  I'm 35 years old.

3              THE COURT:  Okay.  What's your date of birth?

4              THE DEFENDANT:  It's August 20th, 1987.

5              THE COURT:  All right.  And how far have you gone in

6    school?  What's the highest level of education?

7              THE DEFENDANT:  I have a bachelor's degree.

8              THE COURT:  In what?

9              THE DEFENDANT:  In psychology.

10             THE COURT:  Okay.  And where were you born?

11             THE DEFENDANT:  I was born in Moscow, in Russia.

12             THE COURT:  All right.  Do I need to go through

13   immigration consequences or not, Counsel?

14             MR. ENZER:  Your Honor, he's a U.S. citizen; so we

15   don't think so.

16             THE COURT:  All right.  So I don't need to discuss

17   any immigration consequences.

18        In the last 48 hours, have you taken any kind of

19   medication?

20             THE DEFENDANT:  Just my heartburn medication.

21             THE COURT:  Okay.  I ask that question just to make

22   sure that you -- it doesn't affect your understanding or

23   your -- you know, how clear your mind is at this point.  I

24   assume that medication has no effect on you.

25             THE DEFENDANT:  Yes.  That's correct.

1      THE COURT:  All right.  What was the process that you

2 went through in terms of -- there's the statement of offense

3 and the plea letter.  Did you read it yourself?  Did you go

4 over it with your lawyer?  What was your process?

5      THE DEFENDANT:  It was both.  So I've read it myself

6 pretty extensively, and then we -- we sat down -- with my

7 lawyers and then we went over everything.  And then we also

8 discussed it over the phone before.

9      THE COURT:  All right.  Have you ever received any

10 treatment for any type of mental illness or emotional

11 disturbance?

12      THE DEFENDANT:  Yeah.  I've been treated for

13 attention deficit disorder and anxiety before.

14      THE COURT:  Okay.  Are you -- were you in therapy

15 before you got locked up or not?

16      THE DEFENDANT:  Yeah.  Yeah.  I was in therapy.

17      THE COURT:  Any issues from counsel about competency

18 or anything else in terms of his understanding?

19      MR. ENZER:  No, Your Honor.  We believe he is

20 competent and understands what's happening today.

21      THE COURT:  Okay.  Did you have a copy of the

22 information which sets out the pending charge?  Have you had an

23 opportunity to look at it?

24      THE DEFENDANT:  Yes, I have, Your Honor.

25      THE COURT:  Okay.  And did you actually read it?

1          THE DEFENDANT:  Yes, I read it.

2          THE COURT:  Okay.  Are you completely satisfied with

3     the services of your attorneys in this case?

4          THE DEFENDANT:  Yes, I am.

5          THE COURT:  And have you had enough time to discuss

6     it -- the case and your decision about pleading guilty with

7     your attorney?

8          THE DEFENDANT:  Yes.  It's been about 18 months.  So,

9     yes, definitely.

10          THE COURT:  All right.  So let me go through your

11     constitutional rights.  I'm going to ask whether you understand

12     these, and then at the end I'll ask if you're willing to give

13     them up.

14          So the first thing is you're pleading to what we call a

15     felony information.  So the case has not been indicted;

16     presented before a grand jury and have the grand jury return an

17     indictment.  The grand jury process is certain individuals from

18     the District of Columbia would be selected, similar to the pool

19     for -- for a trial.  So there would be 12 jurors -- grand

20     jurors, at least 16, not more than 23, and the government

21     presents the case.  And they would be the ones who would

22     determine whether you should be indicted.  In other words,

23     whether there was probable cause that the crime was committed

24     and that you were the person who committed it.

25          So do you understand what your right is to a grand jury

1    indictment?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And are you willing to give it up?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  And did you sign a waiver for

6    that?

7              THE DEFENDANT:  Yes, I think so.

8              THE COURT:  Okay.  So you have a right to plead not

9    guilty and have a jury trial in this case.  Again, citizens

10   from the District of Columbia would be summoned to the court.

11   They would be asked questions by the Court and both counsel to

12   determine whether they would be fair and impartial.  Twelve

13   would be selected.

14        They would listen to the evidence presented, the jury

15   instructions applied -- the jury instructed -- deliberate and

16   determine whether or not the government had proved the case

17   beyond a reasonable doubt.  So they would be making the

18   decision as to your guilt or innocence based on the evidence

19   that would be presented in the courtroom.

20        So do you understand your right to a jury trial?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you understand that if you did go to

23   trial, you would have a right to be represented at the trial by

24   an attorney.  If you couldn't afford one, one could be

25   appointed for you.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that at a trial you

3     would have the right, again, through your lawyer, to confront

4     and cross-examine any witnesses against you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that you would have the

7     right to present your own witnesses and that you'd have the

8     right to subpoena them?  In other words, to require them to

9     come and testify in your defense.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if there were a

12     trial, you would have the right to testify, present evidence on

13     your own behalf, if you wanted to, but that you would not have

14     to testify or present any evidence if you did not want to?  And

15     that's because you can't be forced to incriminate yourself;

16     that is, to present evidence of your own guilt.  And if

17     requested, I would tell the jury that they could not infer any

18     guilt from the fact that you had asserted your constitutional

19     right, nor could they hold it against you.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if you went to

23     trial and were convicted, you would have a right to appeal your

24     conviction to a higher court, the Court of Appeals, which

25     was -- three judges?  They would listen to any asserted errors

1     that had been made, basically, in your case.  Again, you could

2     have a lawyer help you prepare it.  If you couldn't afford one,

3     one could be appointed.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, the plea letter addresses the issue

7     of appeals.  And I think -- what I'd ask you to do is to turn

8     to page 8, D. at the bottom.  Let me go through -- because it's

9     fairly complicated in terms of -- what you're giving up in

10    terms of your appeal rights and what you can actually appeal.

11         So do you have it in front of you?

12         THE DEFENDANT:  Yeah, I see it.

13         THE COURT:  Okay.  At the bottom.  All right.  So let

14    me go through it.

15         You're agreeing to waive, which means to give up, your

16    right insofar as such waiver is permitted by law.  And I'll

17    explain that in a minute.  You agree to waive the right to

18    appeal the conviction in this case on any basis, including, but

19    not limited to, claims that the statute to which you're

20    pleading guilty is unconstitutional; and two, that the admitted

21    conduct, the -- what's claimed to be unlawful, doesn't fall

22    within the scope of the statute.

23         Now, at the present time, the statute has been deemed

24    constitutional, and the -- your conduct has been -- would be

25    considered unlawful and within the scope of the statute, so.

1        But if at some later point, insofar as the waiver is

2    permitted by law -- so although you can't appeal it, if at some

3    later point the higher court -- a higher court comes down and

4    says either the statute under which you're pleading guilty is

5    unconstitutional or your conduct is not lawful -- I mean, is

6    lawful or not unlawful, depending on which way they go, then

7    you could appeal.

8        It would be a collateral appeal.  Because at that point,

9    you would be -- the statute under which you're pleading guilty

10    to could not be used against you.

11        Do you understand that?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Okay.  So even though you can't do a

14    direct appeal on that basis, if at a later point there's a

15    change in the law, you could do a collateral appeal.

16        So do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Then moving along -- and this is on 9 --

19    it says you also agree to waive -- and that, again, means to

20    give up -- the right to appeal the sentence in the case,

21    including but not limited to any term of imprisonment, fine,

22    forfeiture, award of restitution, term or condition of

23    supervised release, the authority of the Court to set

24    conditions of release, and the manner in which the sentence

25    was determined.

1       There are exceptions.  And that is, if I sentence you

2  above the statutory maximum -- that would be an unlawful

3  sentence -- or above the guideline range determined by the

4  Court.  That would not necessarily be unlawful, as long as it

5  wasn't above the statutory maximum.  But we'll be getting into

6  the advisory sentencing guidelines, and the -- the Court will

7  determine what the range would be.  If I then departed upward,

8  you would be in a position to appeal.

9       Do you understand that?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  Notwithstanding all of that, in terms of

12 your waivers -- the -- to right -- you're waiving the right to

13 appeal the conviction, the sentence -- you do retain an

14 additional right.  And that's the right to appeal on the basis

15 of ineffective assistance of counsel, but not to raise and

16 appeal the other issues.

17      Is that your understanding and agreement?

18      THE DEFENDANT:  Yes, it is.

19      THE COURT:  Okay.  So in terms of a direct appeal,

20 you would be required to file it within 14 days of judgment

21 being entered.  Obviously, if it was a collateral appeal, it

22 would be at a later point if the higher court came down with a

23 ruling about the statute or your conduct.

24      Again, if you're unable to pay the cost of an appeal,

25 you could ask to have it filed on -- without cost to you.

1  You can have counsel appointed as well if you can't afford

2  one.

3        So do you understand that if you plead guilty and I

4  accept your guilty plea, you're going to be giving up the

5  rights I've just explained to you; there's not going to be a

6  trial; and the appeals are very limited, as I've discussed it

7  with you?

8        THE DEFENDANT:  Yes, I understand.

9        THE COURT:  Do you want to plead guilty in this case,

10  give up your rights to a trial, the rights to appeal, as I've

11  discussed it?

12        THE DEFENDANT:  Yes.

13        THE COURT:  All right.  At this point I'm going to

14  have the government state the evidence they would have

15  presented if the case had gone to trial.  And if you would get

16  your statement of the offense and related conduct out.

17        I would start -- you can do the background.  That's fine

18  as well, because some of it gives the acronyms, which later

19  makes sense.  I realize it's on the long side.

20        But what I'm going to do is -- if you would go through

21  paragraphs 5 through 7, I will then simply ask if he has any

22  dispute with what's been described.  And then we'll go through

23  each of it to see -- you'll set out what the -- you know, the

24  background information and then, specifically, what relates to

25  him.

1          And I want to -- after you go through each of these
2     paragraphs -- or two paragraphs, depending on how they're
3     connected, I'll ask Mr. Lichtenstein -- to tell me whether you
4     agree with it or not.  If you don't agree with it, say so.  If
5     there's something you weren't aware of at the time, then you
6     can bring that up as well.  Okay?
7          THE DEFENDANT:  Okay.
8          THE COURT:  All right.  Go ahead.
9          MR. BROWN:  Yes, Your Honor.
10         Beginning in paragraph 5, background regarding virtual
11    currency.
12         Paragraph 5, virtual currency is a digital form of
13    value --
14         THE COURT:  If you could do it a little slower for
15    the court reporter.  Make sure, since these are fairly long,
16    that the court reporter eventually gets a copy.  But in the
17    meantime, if you'd slow down.
18         MR. BROWN:  I apologize, Your Honor.  Yes.
19         Virtual currency is a digital form of value that is
20    circulated over the internet and is typically not backed by a
21    government.  Bitcoin, BTC, is a decentralized virtual currency.
22    All BTC transactions are posted to a public ledger, the BTC
23    blockchain, accessible via the internet and thereby
24    transmitted worldwide, including in the District of Columbia
25    and elsewhere.  Although transactions are visible on the public

1    ledger, each transaction is only listed by a series of letters

2    and numbers that does not otherwise identify the individuals

3    involved in the transaction.

4         The storage of virtual currency is typically associated

5    with an individual wallet, which is similar to a virtual

6    account.  Wallets are used to store and transact in virtual

7    currency.  A wallet may include many virtual currency

8    addresses, roughly equivalent to anonymous account numbers.

9         Virtual currency wallets hosted by third parties are

10   referred to as hosted wallets because the third party retains

11   the customer's funds until the customer is ready to transact

12   with those funds.  Conversely, wallets that allow users to

13   exercise total independent control over their funds are called

14   unhosted wallets.

15        THE COURT:  All right.  Mr. Lichtenstein, is there

16   anything that you dispute, or would you agree with that?

17        THE DEFENDANT:  I agree with that, Your Honor.

18        THE COURT:  All right.  Then let's move to the

19   next -- I think -- I think paragraphs 8 and 9 and then 10 and

20   11.

21        MR. BROWN:  The Bank Secrecy Act and FinCEN.

22        The Bank Secrecy Act, BSA, and its implementing

23   regulations require financial institutions, including

24   U.S.-based banks, USFIs, and virtual currency exchanges, VCEs,

25   that qualify as money services businesses under the BSA, to the

1   extent they operate wholly or in substantial part within the

2   United States, to conduct due diligence of their customers and

3   to have anti-money laundering, AML, programs in place.  See 31

4   C.F.R. § 1010.100(ff).

5        The Financial Crimes Enforcement Network, FinCEN, a

6   division of the Department of Treasury, is responsible for the

7   implementation, administration, and enforcement of the BSA.

8   FinCEN's website states that its mission is, quote, to

9   safeguard the financial system from illicit use, combat money

10  laundering and its related crimes, including terrorism; and

11  promote national security through the strategic use of

12  financial authorities and the collection and analysis and

13  dissemination of financial intelligence.

14       Financial institutions as defined by the BSA are, thus,

15  required (1) to collect identifying information about their

16  customers; (2) to verify their clients' identities; and (3) to

17  file reports with FinCEN regarding suspicious activity on their

18  platforms.  See 31 U.S.C. § 5331, *et seq*.

19            THE COURT:  Mr. Lichtenstein, do you have any reason

20  to dispute any of that?

21            MR. ENZER:  One moment, Your Honor.

22            THE COURT:  Sure.  I'm just asking if he disputes it,

23  not necessarily that he agrees with it.

24            THE DEFENDANT:  I mean, I don't know much about the

25  Bank Secrecy Act.  I don't dispute it, but I don't really know

1    about it.

2            THE COURT:  Okay.  I'm assuming your attorney has,

3    however, looked at it.  Am I correct?

4            MR. ENZER:  (Nods head.)

5            THE COURT:  Yes?

6            MR. ENZER:  We don't dispute it, Your Honor.

7            THE COURT:  Okay.  All right.  Go ahead.

8            MR. BROWN:  The obligation to report suspicious

9    transactions may be triggered by, among other things,

10   transactions believed to involve funds derived from illegal

11   activity or intended to hide or disguise funds or assets

12   derived from illegal activity; transactions that serve no

13   business or apparent lawful purpose, and for which the

14   financial institution knows of no reasonable explanation after

15   examining the available facts; or transactions that involve the

16   use of the financial institution to facilitate criminal

17   activity.  Such reports are commonly known as Suspicious

18   Activity Reports, SARs.

19           In furtherance of this mission, FinCEN acts as a point

20   of collection for SARs on behalf of the Treasury Department.

21   FinCEN is headquartered in Washington, D.C.

22           THE COURT:  So, again, I would simply ask if either

23   your counsel or you dispute what's in those paragraphs.

24           THE DEFENDANT:  Yeah.  Again, I don't know much about

25   FinCEN and all that, but I don't dispute it.

1          MR. ENZER:  We do not dispute these paragraphs,

2     Your Honor.

3          THE COURT:  All right.  Let's proceed to -- I think

4     at this point, we probably should do each paragraph because it

5     relates to specific conduct.

6          MR. BROWN:  Yes, Your Honor.

7          Scheme to defraud victim VCE.

8          Beginning in or around late winter and early spring of

9     2016, Lichtenstein knowing and willingly devised a scheme to

10    defraud victim VCE by means of materially false or fraudulent

11    pretenses, representations, or promises.  Lichtenstein

12    conducted online research and reconnaissance of the computer

13    infrastructure used by victim VCE.  While physically located in

14    the United States, Lichtenstein identified and compromised

15    computer servers belonging to victim VCE outside the

16    United States.

17         Lichtenstein utilized a number of advanced hacking tools

18    and techniques, commonly known as exploits, to gain

19    unauthorized access to these computer servers.  Lichtenstein

20    also used penetration testing software frequently used by

21    cybercriminals, as well as cybersecurity practitioners, because

22    this software provides data about security vulnerabilities and

23    assists in simulating a cyberattack on a computer system to see

24    how the system would respond.

25         THE COURT:  All right.  Do you agree with that?

23

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  All right.  One question I have is, is I

3   assume victim VCE has a name?

4          MR. BROWN:  Yes, Your Honor.  And it -- it is

5   identified in paragraph 4 of the statement of offense.  The

6   victim's name is Bitfinex, which is a large virtual currency

7   exchange.

8          THE COURT:  Okay.  All right.  Go ahead.

9          MR. BROWN:  Lichtenstein conceived his activities

10  through a variety of means, including by routing his internet

11  traffic through the Tor network, through compromised computers

12  that he purchased via a dedicated Remote Desktop Protocol, RDP,

13  marketplace, and through intermediate proxy servers -- servers

14  that act as a gateway between users and the internet --

15  including SOCKS residential proxies rented via online

16  marketplaces.  SOCKS, or socket secure, is an internet protocol

17  that exchanges network packets between a client and server by

18  using a proxy server.

19          Lichtenstein worked late at night to give the appearance

20  that he was operating from another country.  Though the servers

21  that Lichtenstein initially compromised did not provide access

22  to virtual currency wallets, Lichtenstein was able to use his

23  access to compromise additional servers and subsequently defeat

24  numerous security measures on victim VCE's network.

25          THE COURT:  Would you agree with that?

1      THE DEFENDANT:  Yes, Your Honor.  That's correct.

2      THE COURT:  And SOCKS is an acronym.  That's

3  S-O-C-K-S, for the court reporter.

4      Go ahead.

5      MR. BROWN:  Lichtenstein ultimately gained access to

6  the keys, or credentials, used to authorize transactions

7  involving virtual currencies held by victim VCE, including

8  funds belonging to customers of victim VCE.  In or about

9  August 2016, Lichtenstein used his access to victim VCE's keys

10 to fraudulently authorize more than 2,000 transactions in which

11 approximately 119,754 BTC was transferred from victim VCE's

12 wallets to an outside wallet, Wallet 1CGA4s, under

13 Lichtenstein's custody and control.  At the time of the hack,

14 the stolen virtual currency was valued at approximately

15 $71 million.

16      THE COURT:  Would you agree with that?

17      THE DEFENDANT:  Your Honor, the only thing is I'm not

18 sure about what the exact value was because the price of

19 bitcoin is very volatile.  So the quantity of bitcoin is

20 correct, but I'm not sure what the exact valuation is.

21      THE COURT:  So which of the valuations are you

22 talking about, the 71 million or --

23      THE DEFENDANT:  Yes.

24      THE COURT:  -- the other?  Seventy-one million.

25      What's the source of that?

1          MR. BROWN:  Yes, Your Honor.  That's based on the

2     prevailing market price for bitcoin on the date of the hack in

3     August of 2016.

4          THE COURT:  So I take it that was checked?

5          MR. BROWN:  Yes, Your Honor.  Yes.

6          THE COURT:  Okay.  Any question from counsel as to

7     the accuracy of that?

8          MR. ENZER:  No, Your Honor.  We don't dispute that

9     the value at the time would have been roughly around

10    71 million.

11         THE COURT:  Okay.  All right.  Because it says

12    approximately.

13         All right.  Let's proceed.  You're dropping your voice,

14    Counsel.  You need to keep it up.

15         MR. BROWN:  Following the hack, Lichtenstein took

16    steps to conceal his activity, including by returning to victim

17    VCE's computer systems and deleting access credentials and

18    certain log files that might lead investigators to determine

19    that someone had gained unauthorized access.  In the course of

20    the hack, Lichtenstein, while located in the United States,

21    transmitted and caused to be transmitted writings, signs, and

22    signals by means of wire communication in interstate and

23    foreign commerce over the internet to victim VCE's computer

24    servers located outside the United States.

25         THE COURT:  Would you agree with that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Moving along.

3          MR. BROWN:  During the course of the reconnaissance

4   phase of the hack of victim VCE, Lichtenstein gained

5   unauthorized access to victim VCE's customer login credentials.

6   Lichtenstein used these customer credentials to engage in

7   credential spraying -- that is, using the customer credentials

8   stolen from victim VCE to attempt to log into other accounts --

9   targeting user accounts at other virtual currency exchanges.

10          As a result of these efforts, Lichtenstein fraudulently

11   obtained access to customer accounts at a second virtual

12   currency exchange, VCE A, and stole an estimated several

13   hundred thousand dollars' worth of funds from VCE A customer

14   accounts.  Lichtenstein commingled these funds with the funds

15   from victim VCE.

16          THE COURT:  Okay.  Would you agree with that?

17          THE DEFENDANT:  Yes, Your Honor.  That's correct.

18          MR. BROWN:  Prior to the hack of victim VCE,

19   Lichtenstein engaged in earlier, less significant hacking and

20   financial fraud activity, including as a juvenile.

21   Lichtenstein developed an interest in virtual currency and

22   darknet markets, including through various illicit transactions

23   on darknet markets.  Prior to 2016, and separate from his theft

24   from victim VCE, Lichtenstein located credentials to VCE A's

25   programming interface, API, that allowed him to draw funds

1      through the exchange's API.  Lichtenstein used this access to

2      steal approximately $200,000 from VCE A.  In addition, in or

3      around 2015, Lichtenstein illicitly obtained and transferred a

4      small amount of PayCoin, an alternative form of virtual

5      currency.

6              THE COURT:  Would you agree with that?

7              THE DEFENDANT:  Yes.

8              MR. BROWN:  The money laundering conspiracy and

9      conspiracy to defraud.

10             Lichtenstein studied how transactions are traced on the

11     blockchain and formulated a detailed plan that was designed to

12     reduce any perceived illicit taint over time.

13             THE COURT:  I guess you can move to the next one.

14     It's short enough.  The two together I'll ask.

15             MR. BROWN:  Yes, Your Honor.

16             First, Lichtenstein left the stolen funds sitting

17     dormant in Wallet 1CGA4s until, beginning in or around January

18     of 2017, when Lichtenstein began to move a portion of the BTC

19     out of Wallet 1CGA4s in a series of small, complex transactions

20     across multiple accounts and platforms.  This shuffling, which

21     created a voluminous number of transactions, was designed to

22     conceal the path of the stolen B TC, making it difficult for

23     law enforcement to trace the funds.

24             Next, Lichtenstein moved some of the stolen funds from

25     Wallet 1CGA4s to another large staging wallet; from the staging

1     wallet into other wallets; which were not otherwise linked or

2     associated; through numerous accounts at multiple darknet

3     marketplaces, including AlphaBay and Hydra, using multiple

4     segregated input and withdrawal addresses; and through

5     CoinJoins, mixers, and exchanges that did not require

6     know your customer, KYC, information about their users.

7              THE COURT:  So would you agree with paragraphs 18 and

8     19?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  Moving to 20.

11             MR. BROWN:  Following the hack, Lichtenstein enlisted

12    Morgan's help in laundering the stolen funds.  Morgan was

13    initially unaware of the specific origin of Lichtenstein's

14    proceeds, although she participated with Lichtenstein in

15    efforts to conceal and obscure the source of the funds while

16    knowing and understanding that the funds were the result of

17    some unspecified, unlawful, and fraudulent activity.  Sometime

18    after the hack, but by no later than in or around early 2020,

19    Lichtenstein explicitly told Morgan that Lichtenstein was

20    responsible for the 2016 hack of VCE.

21             THE COURT:  Would you agree with that?

22             THE DEFENDANT:  I mean, I can't speak to Ms. Morgan's

23    knowledge, but everything about me is correct.

24             THE COURT:  Well, did you -- the latter parts

25    indicate that you told --

```
1              THE DEFENDANT:  Yes.
2              THE COURT:  -- Morgan about the hack.  So is that
3     accurate?
4              THE DEFENDANT:  Yes.  That's correct.
5              THE COURT:  Moving along.
6              MR. BROWN:  The following steps were taken in
7     furtherance of the money laundering scheme:
8              Setting up numerous accounts at USFI and VCEs to stay
9     below transaction thresholds that would require enhanced
10    customer due diligence by financial institutions.
11             Converting stolen funds into fiat currency through
12    Russian and Ukrainian bank accounts and then withdrawing the
13    laundered funds at U.S.-based ATMs.
14             Converting BTC into a virtual currency named Monero,
15    XMR, which is an anonymity-enhancing virtual currency with a
16    nontransparent blockchain, via exchanges that did not require
17    KYC.
18             Using intermediate, unhosted wallets to avoid
19    exchange-to-exchange transactions that would undermine the
20    anonymity benefits of using XMR, darknet markets, and
21    CoinJoins/mixers, such as Bitcoin Fog, Helix, and ChipMixer.
22             Converting a portion of the stolen funds to Tether,
23    USDT; and USD Coin, USDC; which are both stablecoins pegged to
24    the U.S. dollar, as a means of avoiding the price volatility
25    associated with holding other virtual currencies, such as BTC,
```

1    the price of which fluctuates daily.

2            Using exchanges with high sale limits and setting up

3    multiple accounts at numerous exchanges in order to launder

4    large amounts stolen of funds.

5            Using preexisting KYC-verified accounts purchased from

6    illicit vendors offering profiles designed to defeat exchange

7    AML controls.

8            And using accounts at USFIs and VCEs opened under

9    Lichtenstein's and Morgan's true names and/or the names of

10   their businesses, including accounts at VCE 5, VCE 6, VCE 7,

11   VCE 8, VCE 9, and VCE 10.

12           And converting a portion of the stolen funds into

13   gold coins, which were further concealed by Morgan when

14   she buried them at a location that has since been disclosed

15   to law enforcement, which has recovered the gold coins in full.

16                THE COURT:  So would you agree with a. through h.?

17                THE DEFENDANT:  Yes, Your Honor.

18                THE COURT:  Okay.  Now in terms of i., in terms of

19   the -- what Ms. Morgan did in terms of concealing, were you

20   aware of that?

21                THE DEFENDANT:  I gave her the gold coins, but I

22   didn't know specifically what was done with them.

23                THE COURT:  Okay.  All right.  Let's move to 22.

24                MR. BROWN:  In engaging in the above-referenced

25   conduct, Lichtenstein, at times with Morgan's assistance,

1    employed numerous money laundering techniques, including, but

2    not limited to, using accounts set up with fictitious

3    identities; two, moving the stolen funds in a series of small

4    amounts, totaling thousands us of transactions, as opposed to

5    moving the funds all at once or in larger amounts; three,

6    utilizing computer programs to automate transactions, a

7    laundering technique that allows for many transactions to take

8    place in a short period of time.

9         Four, layering the stolen funds by depositing them into

10   accounts at a variety of VCEs and darknet markets and then

11   withdrawing the funds, which obfuscates the trail of the

12   transaction history by breaking up the fund flow; five,

13   converting the BTC to other forms of virtual currency,

14   including anonymity-enhanced virtual currency, in a practice

15   known as chain hopping; and six, using U.S.-based business

16   accounts with fictitious identities to legitimatize activity.

17   Morgan further assisted Lichtenstein with setting up accounts

18   with fictitious identities and using U.S.-based business

19   accounts to legitimize the laundering transactions.

20        THE COURT:  So in that paragraph, would you agree

21   with what relates to what you did?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  Okay.  And is it correct that Morgan did

24   assist you from time to time?

25        THE DEFENDANT:  Yes, Your Honor.  It was at my

1    direction.

2              THE COURT:  Okay.  And the last sentence as to

3    whether she assisted you with setting up accounts with

4    fictitious identities and U.S.-based business accounts, is that

5    accurate as well to you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And that is all at your direction; is

8    that correct?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  Let's move on.

11             MR. BROWN:  Additionally, over the course of their

12   conspiracy, Lichtenstein, at times with Morgan's assistance,

13   converted stolen funds through the use of debit cards linked to

14   foreign bank cards.  The foreign bank cards were registered to

15   Russian and Ukrainian money mules, who were chip brokers and

16   who typically created the accounts in person at the foreign

17   banks.  The accounts were then offered for sale by brokers on

18   darknet markets and cybercriminal forums.

19             Lichtenstein acquired numerous accounts through such

20   platforms.  The purchased account platforms included a debit

21   card, as well as identity document scans and the SIM cards

22   associated with the phone used to establish the account.

23   Lichtenstein had the packages delivered to him during trips

24   with Morgan to Kazakhstan and Ukraine.  The packages were

25   typically shipped via a shipping service or handed off by a

1    courier in a prearranged public meeting place, such as a train

2    station.

3         Lichtenstein then sent BTC to Russian- and

4    Eastern-European-based instant exchange platforms, which

5    converted the BTC to fiat currency and deposited the

6    corresponding fiat funds into the Russian and Ukrainian bank

7    accounts.  Lichtenstein and Morgan would travel to ATMs in the

8    United States and use the purchased debit cards to withdraw the

9    funds.  Lichtenstein and Morgan would bring multiple cards per

10   trip, and used only one card per ATM to avoid suspicion.

11        THE COURT:  As it relates to you, is that accurate?

12        THE DEFENDANT:  Yes, Your Honor.  That's correct.

13        THE COURT:  And in terms of Morgan, is it correct

14   that she traveled with you to Kazakhstan and Ukraine and also

15   traveled around the United States describing -- taking money

16   through the ATM; is that accurate?

17        THE DEFENDANT:  Yes, Your Honor.  We didn't travel

18   anywhere in the United States.  It was just in New York.

19        THE COURT:  Okay.  So the ATMs that you accessed

20   would have been in New York?

21        THE DEFENDANT:  Yes.  That's correct.

22        THE COURT:  All right.  Let's move to 24.

23        MR. BROWN:  In or around November 2021, Lichtenstein

24   and Morgan learned that records related to an account held by

25   Lichtenstein and used in furtherance of the conspiracy had been

1    disclosed to U.S. law enforcement.  The provider controlling

2    the account failed to process a valid and timely extension of a

3    nondisclosure order issued by the U.S. District Court for the

4    District of Columbia and notified Lichtenstein in violation of

5    the court order.

6           Upon receipt of the notice, Lichtenstein and Morgan took

7    steps to further conceal their activity.  For example,

8    Lichtenstein deleted data from devices in the United States

9    and abroad, and Lichtenstein and Morgan threw a computing

10   device down a garbage chute, when said computing device

11   contained relevant, inculpatory evidence related to this

12   criminal scheme.

13          THE COURT:  All right.  So in terms of 24, would you

14   agree with what's stated relating to you?

15          THE DEFENDANT:  Yes, Your Honor.  I didn't throw

16   anything down a garbage chute.

17          THE COURT:  Were you -- did you know that it had been

18   done?

19          THE DEFENDANT:  I knew that Ms. Morgan would dispose

20   of the device, yes.

21          THE COURT:  So you didn't know the manner in which

22   she would dispose of it?  Is that what you're saying?

23          THE DEFENDANT:  That's correct.

24          THE COURT:  All right.  Is it correct what you did

25   was contrary to the court order?

```
1              THE DEFENDANT:  Your Honor, I didn't receive any
2      court order.
3              MR. BROWN:  Your Honor, if I may.
4              THE COURT:  Go ahead.
5              MR. BROWN:  The court order was a nondisclosure
6      order accompanying legal process issued to the service
7      provider.
8              THE COURT:  Okay.
9              MR. BROWN:  So the service provider was the one that
10     was under the obligation and, for whatever reason, failed to
11     abide by that order and notified the defendants about the
12     existence of legal process.
13             THE COURT:  Okay.  So it's the service provider that
14     had the order telling them they weren't to disclose and they
15     went ahead and disclosed it to the defendant.  Okay.
16             MR. BROWN:  Yes, Your Honor.
17             THE COURT:  All right.
18             MR. ENZER:  Right.  And, Your Honor, for the
19     avoidance of any confusion, Mr. Lichtenstein did not violate a
20     court order.
21             THE COURT:  Okay.  I understand.  That's why I was
22     asking the question.
23         So it's the service provider that violated the court
24     order, not Mr. Lichtenstein?
25             MR. BROWN:  Correct.
```

```
1              THE COURT:  Okay.  All right.  Paragraph 25.
2              MR. BROWN:  False statements and virtual currency
3      exchanges and other U.S. financial institutions.
4              During the period from in or around August of 2016
5      through in or around February 2022, Lichtenstein and Morgan
6      used false and fictitious identifying information to establish
7      accounts, made false and fraudulent representations, and lied
8      to and deceived VCEs and other U.S. financial institutions that
9      they used to launder the illegal proceeds of the 2016 hack of
10     victim VCE, including the following.
11             THE COURT:  Okay.  Let's stop there for a second.  So
12     for 25, would you agree with that?
13             THE DEFENDANT:  Everything in there?  Yes.
14             THE COURT:  Yes.  In terms of using the false and
15     fictitious identifying information, were you aware that Morgan
16     was doing that as well?
17             THE DEFENDANT:  I was doing that, Your Honor.
18             THE COURT:  Okay.  You were doing it.  But was -- was
19     she doing it as well?  It says Lichtenstein and Morgan used
20     them.  Is that accurate?
21             THE DEFENDANT:  In terms -- I think that's referring
22     to false statements that she may have made.
23             THE COURT:  Right.  That's what I'm talking about.
24             THE DEFENDANT:  Yes.
25             THE COURT:  Then we'll move on to the -- the
```

1    subsections, which -- you can go ahead.

2              MR. BROWN:  Yes, Your Honor.

3              Between -- a., between on or about August 22, 2016, and

4    on or about April 20th, 2017, Lichtenstein established multiple

5    accounts at VCE 1 using email addresses from the same

6    India-based email provider and in the names of third parties

7    unrelated to Lichtenstein.

8              Shall I continue?

9              THE COURT:  So I guess there are more details.  So

10   let me ask at this point:  Would you agree with that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Okay.  Let's move to the next one.

13             MR. BROWN:  B., in or around February and March 2017,

14   Lichtenstein declined to respond to inquiries from VCE 1's

15   employees requesting that the registered account holders for

16   seven of the accounts provide additional identifying

17   information to verify their account ownership.  As a result,

18   VCE 1 froze the accounts.

19             THE COURT:  Would you agree with that?

20             THE DEFENDANT:  Yes, Your Honor.

21             MR. BROWN:  Okay.  C., on or about February 28th,

22   2017, in response to inquiries from employees from VCE 7 as

23   part of VCE 7's AML/KYC policies, Lichtenstein falsely and

24   fraudulently represented that he would be using his VCE 7

25   account to trade only his own virtual currency that he had

1    acquired as a result of his early investment in BTC.

2              THE COURT:  Okay.  In terms of "only," is there a

3    significance with that?

4              MR. BROWN:  Your Honor, I think the significance is

5    simply giving a misleading or false representation of the

6    source of the bitcoin.  In other words, the bitcoin that he was

7    transacting in at this virtual currency exchange was proceeds

8    of the hack.  It wasn't his investment -- his early investment

9    in BTC.

10             THE COURT:  All right.  I understand.  Do you agree

11   with that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  Let's move to the next one.

14             MR. BROWN:  D., in or about February 2018,

15   Lichtenstein established an account at USFI 5 for Lichtenstein

16   and Morgan's company, Endpass and, in doing so, represented to

17   USFI 5 that the primary payments into the account would be from

18   software-as-a-service customer payments.  In actuality,

19   Lichtenstein and Morgan used the account to launder the

20   proceeds of the hack of victim VCE.

21             THE COURT:  So in terms of d., would you agree in

22   terms as it relates to you?

23             THE DEFENDANT:  I would agree that that account was

24   funded by the proceeds of the hack, yes.

25             THE COURT:  Okay.  And in terms of establishing

1    the account in the company that both of you, I take it, owned?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So it's correct as to Morgan then as

4    well?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Okay.  Proceed.

7              MR. BROWN:  E., on or about January 8, 2019, in

8    response to a KYC verification email from VCE 10, Lichtenstein

9    wrote to representatives from VCE 10, falsely and fraudulently

10   stating that he has, quote, been investing in and mining [BTC]

11   since 2013, so the source of funds would be those early crypto

12   assets.

13             THE COURT:  Would you agree with that?

14             THE DEFENDANT:  Yes, as far as misrepresenting the

15   source of funds.  Yes.

16             THE COURT:  Okay.

17             MR. BROWN:  F., on or about June 27, 2019, in

18   response to an inquiry from a representative from VCE 7 about

19   how her business, SalesFolk, interacted with virtual currency

20   and how her new institutional account would be used, Morgan

21   falsely and fraudulently responded, quote, SalesFolk has some

22   B2B customers that pay with cryptocurrency, when, in fact, that

23   was not the case.

24        Morgan further responded, quote, additionally, I also

25   have some personal cryptocurrency of my own that I would like

1     to sell to finance the development of some new software that we

2     are beginning to build.  Because the company is an LLC taxed as

3     an S corp, it has pass-through taxation and I am the sole

4     owner.  I was going to use some of my personal crypto to fund

5     new software projects.

6            THE COURT:  So let me go back to 10 for a second.

7     Would you agree that they have in quotes a statement you made

8     about investing in the mining, et cetera?  Would you agree with

9     that quote?

10            THE DEFENDANT:  I don't remember exactly the

11     statement I made, but I don't dispute that.  That sounds

12     right.

13            THE COURT:  All right.  Do you know what -- this

14     relates predominantly to Morgan.  And were you aware of this?

15            THE DEFENDANT:  I wasn't aware of the specific things

16     she said, no.

17            THE COURT:  Are you aware of her actions, in a

18     general sense?

19            THE DEFENDANT:  In a general sense, in that she was

20     receiving the proceeds of the hack into that account, yes,

21     Your Honor.

22            THE COURT:  All right.  G.

23            MR. BROWN:  On or about July 2nd, 2019, Morgan

24     further represented to VCE 7 about the source of her

25     cryptocurrency deposits.  Quote, my boyfriend, now husband,

1    gifted me cryptocurrency over several years, 2014, 2015, which

2    have appreciated.  I've been keeping them in cold storage,

3    end quote.  Those funds were, in fact, proceeds of the hack of

4    victim VCE.

5             THE COURT:  So you know what Morgan was doing at this

6    point?

7             THE DEFENDANT:  I knew that I was sending her some of

8    the proceeds of the hack, yes.

9             THE COURT:  Okay.  All right.

10            MR. BROWN:  At all times relevant to this indictment,

11   VCE 1, VCE 7, VCE 10, and USFI 5 were financial institutions

12   doing business in the United States, were subject to the

13   Bank Secrecy Act, and were registered with FinCEN.

14            THE COURT:  Do you have any reason to dispute any of

15   that?

16            THE DEFENDANT:  I don't know about that.  I don't

17   dispute it.

18            THE COURT:  All right.  Counsel, I assume that that's

19   accurate, from your perspective?

20            MR. ENZER:  Yep.  No dispute.

21            THE COURT:  All right.  27.

22            MR. BROWN:  Each of the accounts referenced above was

23   used by Lichtenstein and Morgan to launder the illegal proceeds

24   of the 2016 hack of victim VCE, and the government's tracing

25   has shown that the majority of funds deposited into each

1    account was derived directly or indirectly from the same stolen

2    funds.  One purpose of Lichtenstein and Morgan's deceptions was

3    to frustrate the AML, KYC, and due diligence efforts of the

4    above-referenced VCEs and other financial institutions, and

5    thereby to prevent the transmission of SARs mandated under the

6    Bank Secrecy Act to FinCEN and the Department of the Treasury

7    in the District of Columbia.

8             THE COURT:  All right.  Generally, would you agree

9    with that?

10            THE DEFENDANT:  Generally, yes.

11            THE COURT:  Okay.  So in terms of -- starting at the

12   top, the accounts that were -- you just referenced, they were

13   used by you and Morgan, to the extent that you know, to

14   launder -- in other words, to keep from being put on notice

15   into the source of the funds -- the proceeds from the hack so

16   that they -- so that they would not be able to trace the funds

17   that had been hacked.  Would you agree with that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Okay.  And one purpose of the deception

20   was to frustrate efforts and financial institutions to prevent

21   them from, basically, providing notice to those that regulate

22   these kind of financial transactions?  Would you agree with

23   that?  It's very summary terms, but.

24            THE DEFENDANT:  I mean, generally, I agree the

25   purpose was to conceal the source of the funds.

```
1                    THE COURT:  Okay.  Go ahead.

2                    MR. BROWN:  Conclusion.

3              Lichtenstein admits that some of the proceeds he

4    personally obtained as a result of the offenses described above

5    have been dissipated by him and cannot be located upon the

6    exercise of due diligence; have been transferred or sold to, or

7    deposited with, a third party; and/or have been placed beyond

8    the jurisdiction of the Court.

9                    THE COURT:  Okay.  So do you agree that that's what

10   you've admitted?

11                   THE DEFENDANT:  Your Honor, what does dissipated

12   mean?

13                   THE COURT:  In other words, you've used them up.

14   It's a negative term, but it -- basically, you spent them.

15   They no longer exist.

16                   THE DEFENDANT:  So some fraction of the proceeds I

17   sold and spent, yes.  That's correct.

18                   THE COURT:  Okay.  Would you have defined it

19   differently?

20                   MR. BROWN:  No, Your Honor.  That -- that works.

21                   THE COURT:  All right.

22                   MR. BROWN:  Lichtenstein acknowledges that the

23   specific properties listed in the consent order of forfeiture

24   are proceeds of and/or property involved in this money

25   laundering conspiracy.
```

```
1              THE COURT:  Okay.  So is there a consent order of
2     forfeiture?
3              MR. BROWN:  Yes, Your Honor.  That was --
4              THE COURT:  Do I have it?  I don't remember getting
5     it.
6              MR. BROWN:  It was provided among the package of
7     documents.  We have extra copies, if the Court is --
8              THE COURT:  I'm assuming that he has signed it, and I
9     need to countersign it.
10             MR. BROWN:  Yes, Your Honor.  I think --
11             THE COURT:  I can do that.  Is this one that's been
12    signed?
13             MR. BROWN:  Your Honor, defense counsel says that
14    they provided a signed copy to the Court.
15             THE COURT:  Oh.  Maybe it's up here with -- I have a
16    bunch of things that were put on the -- here.  Okay.  I see it.
17    Okay.  We're all set.
18             MR. BROWN:  And there's a -- just for the Court's
19    attention, there's a real voluminous attachment listing all the
20    specific properties.
21             THE COURT:  Yes, I did see that, in terms of -- quite
22    extensive.
23             Okay.  I think in terms of -- then -- well, it would be
24    helpful at this point, in very summary terms, in terms of
25    taking the evidence and putting it together with the elements
```

1    of the offense.

2            MR. BROWN:  Yes, Your Honor.

3        The first element of conspiracy to commit money

4    laundering is an agreement between two or more people.  And the

5    agreement is evidenced, in particular, in paragraphs 20, as

6    well as 22, as well as Mr. Lichtenstein's statements today

7    that he directed Ms. Morgan to engage in some of these

8    activities.

9            THE COURT:  So it's Lichtenstein and Morgan,

10   basically?

11           MR. BROWN:  Yes, Your Honor.  It is a -- charged as a

12   two-person conspiracy.  And as -- as explained in paragraph 20,

13   Lichtenstein initially enlisted Ms. Morgan's help.  And she,

14   you know, had some -- some knowledge that the funds were of an

15   illegal source.  But maybe didn't understand completely where

16   those funds came from.  But over time, eventually that became

17   an explicit understanding.  And they continued to engage in the

18   laundering activity.  So there's an agreement, a meeting of the

19   minds, between those two people.

20       In terms of the object of the conspiracy, it's to commit

21   a money laundering offense.  The offense charged here is what

22   we call concealment money laundering, which is kind of classic

23   money laundering.  It involves, number one, a financial

24   transaction.  A financial transaction is defined very broadly,

25   and it includes movement of funds by any and all means.

1      THE COURT:  So is that the hack, in essence, or

2  something more?

3      MR. BROWN:  No, Your Honor.  The hack -- and we'll

4  get to that.  The hack is what generated the unlawful proceeds

5  that were the -- the funds.

6      THE COURT:  So this is having already done the hack;

7  gotten the illegal proceeds; what they did with them?

8      MR. BROWN:  Yes, Your Honor.  So these are subsequent

9  transactions involving the proceeds of that hack.  And those

10  transactions -- many of them are specifically described, such

11  as in paragraph 21, and its subparagraphs, talking about

12  engaging in transactions at various VCEs, converting the stolen

13  bitcoin into other forms of property, like Monero, Tether,

14  U.S. Dollar Coin.  Just layering between different financial

15  institutions and different accounts.  Those all count as

16  transactions.

17      The defendants knew that the transactions involved the

18  proceeds of specified illegal activity.  The specified illegal

19  activity here is twofold.  It's wire fraud, and computer fraud

20  and abuse in violation of 18 U.S.C. § 1030.  And the wire fraud

21  and the 1030 offense, those are both the hack of the victim

22  virtual currency exchange.

23      And so Lichtenstein, obviously, had clear knowledge

24  because he was the one who committed the hack.  And Ms. Morgan

25  had knowledge that these transactions -- at first she at least

1      had knowledge that the transactions were the proceeds of some

2      unlawful activity, which is all the statute requires, and that,

3      eventually, she did gain a complete understanding that these

4      were specifically the proceeds of the 2016 hack of the victim

5      VCE.

6              The transactions did, in fact, involve the proceeds of

7      that hack.  That's another element of the concealment, money

8      laundering, and that is addressed in paragraph 27 of the

9      statement of offense.

10             And then the transaction -- the intent requirement

11     for those transactions, the transaction was designed in whole

12     or in part to conceal a statutory attribute of those funds:

13     the origin, source, location, and so forth.  And I think

14     that's illustrated throughout, but especially in paragraphs 20,

15     21, 22, 23.  That these transactions were designed to

16     obfuscate the source of the funds; the fact that these funds

17     came from the 2016 hack and were designed to complicate the

18     audit trail of anyone trying to trace -- the funds that

19     Mr. Lichtenstein and Ms. Morgan were spending, to trace that

20     back and discover those, were, in fact, derived from that --

21     the 2016 hack.

22             THE COURT:  All right.  So I'll find in terms of the

23     elements, without getting specific, certainly I think all of

24     the paragraphs that have been set out -- we have the hack,

25     which is the illegal proceeds.  We then have the financial

1      transactions that -- and subsequent actions to conceal the --

2      the source of the transactions and, basically, putting the

3      money through various layering between different institutions

4      and accounts, knowing that these other financial transactions,

5      which have been described in detail, involved proceeds that

6      were illegal in order to ensure that the -- the fraud -- the

7      original fraud would not be found.

8                  MR. BROWN:  Yes, Your Honor.

9                  THE COURT:  In very summary terms.

10                 MR. BROWN:  Yes.  Yes, Your Honor.

11                 THE COURT:  All right.  Then I'll find that the

12     proffer based on the government's elements of the offense and

13     the facts meet the standard for beyond a reasonable doubt as

14     the admissions by Mr. Lichtenstein of those same facts.

15          All right.  So moving back to -- is there any particular

16     defense, Counsel, that he needs to waive?

17          If you could take the mask off, it makes it easier to

18     hear you.

19                 MR. ENZER:  We are not disputing venue.

20                 THE COURT:  Okay.  All right.  I just wanted to make

21     sure there wasn't something that specifically needed to be --

22     but the venue is one of the things that you are not disputing.

23          All right.  So let me get back, Mr. Lichtenstein, to

24     asking you questions.

25          So you have this written letter, which is one of

1      20 pages, if you can get it in front of you.  It'll make it

2      easier.

3                    THE DEFENDANT:  Yep.  Got it.

4                    THE COURT:  All right.  Did you read it over

5      carefully?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  Okay.  So what I'm going to do at this

8      point is I'm going to go through the statutory penalties.  It's

9      in this letter.  But I'm going to describe it, perhaps, a

10     little differently.  So you don't need to look at the letter

11     for this.  You know, listen to what I'm saying.

12            So by statute, most crimes have a maximum penalty that

13     the Court can impose, and you can't sentence somebody to above

14     that.  So in this particular case, the maximum penalty in terms

15     of incarceration would be 20 years.  The maximum fine would be

16     $500,000 or two times the pecuniary gain or loss.  In other

17     words, financial gain or loss.

18            If you were sentenced to a period of jail, the Court

19     could put you on a period of time in the community where you

20     would be supervised, and we call that supervised release.  You

21     would have certain conditions; one, that you not get into any

22     kind of illegal activity in the future.  And the other may be

23     particular other conditions that -- if you were required to pay

24     the forfeiture or the restitution, make sure you're paying --

25     paying and doing various other conditions.

1    The maximum that would be -- would be three years that

2    the Court could impose.  If at some later point, you violated

3    by either committing a new crime or not following through with

4    the conditions that the Court has set, then the Court could

5    revoke the supervised release.  And a new sentence would be

6    imposed.  It's a combination of the statute and the advisory

7    sentencing guidelines.

8    The important part, from your perspective, would be

9    whatever time period you had served on the original charge, you

10   would not get credit for it, to this new sentence, based on the

11   revocation of the supervised release.

12   Now, in this particular case, you are being held.  So

13   the period of time you're held would be given credit to any

14   sentence on the charge you have in front of you now.  But in

15   terms of any revocation, you would not get credit.

16   The other thing is that there is a mandatory

17   restitution.  You also agree to forfeiture.  There's some

18   conditions, which I'll get into, in terms of perhaps not having

19   to pay double but have considered one payment as covering both

20   responsibilities.  And there would be a special assessment of a

21   hundred dollars, which the Court can't waive, that you have to

22   pay.

23   So is that your understanding and agreement of the

24   statutory penalties?

25              THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  In terms of the actual sentencing,

2     the process, in very general terms, there's a statute, that's

3     3553(a), which sets out factors that the Court has to consider.

4     They're very broad factors.  They're the seriousness of the

5     offense; your background information; and your rehabilitation

6     needs; just punishment; deterrence to you; deterrence to

7     others -- those kinds of considerations -- in coming up with a

8     fair and reasonable sentence.

9          The probation department will prepare a presentence

10    report.  The contents will be -- they'll set out the -- the

11    conduct which, generally, they use the statement of offense as

12    the background.  They'll get background information relating to

13    you, which will be personal information; criminal history, if

14    there is any; education; your job history; any medical issues;

15    substance abuse; physical issues; and, of course, financial --

16    your financial situation.

17         You will get that and the government will get that

18    before the Court gets it.  You have an opportunity to object to

19    either the way they've calculated the guidelines, which I'll

20    get to in a minute, or any of the factual information that's in

21    it.  Once -- they may change the report.  If they don't change

22    it, it will come to me with the objections, what the concerns

23    are, and I will resolve those before we go forward to

24    sentencing.

25         So in terms of the advisory sentencing guidelines,

1      Congress has set up a commission to come up with ways where

2      there is more uniformity in terms of judges' sentences around

3      the same kind of offenses.  And so they've come up with a

4      system.  It's, basically, numbers.  And you start off with,

5      depending on the crime, a particular number.  And then there

6      are particular enhancements that could be added that go to the

7      nature of the crime, the conduct, which I'll get into.

8           You also can have things that will diminish it; in other

9      words, that you can deduct from it, and that's usually

10     acceptance of responsibility.

11          So the calculation that the -- government counsel and

12     your counsel have agreed to, which the Court has not, nor has

13     probation seen this -- and they actually do the official one in

14     the presentence report, which is the one we will deal with --

15     there may be objections or maybe there's not.  And it may agree

16     with this or it may not.

17          But as it's been set out, as I understand it, it would

18     be -- let me be very specific here.  So the base offense, which

19     is the original offense, has 6 points.  Because it involves

20     more than 65 million, there's an additional 24 points.  There's

21     a substantial financial hardship, at least as to one victim;

22     there's an additional 2 points.  Sophisticated means were used

23     in terms of the money laundering, an additional 2 points.

24          You were convicted under a particular statute which

25     garners another 2 points.  It's also a different enhancement,

53

1    which is sophisticated laundering, which is an additional

2    2 points.  And then because the conspiracy was not totally

3    completed -- it wasn't totally successful, since you got

4    caught -- so there's a minus 3 points there.  So that all

5    totals up to 35 points.

6         If you accept responsibility, as you have today, and

7    continue to do so, then there's an additional 2 points that

8    will be deducted.  And the government, if they -- if you

9    continue to do that, since you have by pleading guilty and

10   providing them notice at this point, have saved them the time

11   of preparing for trial and going forward, then there would be

12   an additional point, which would put it at a total offense

13   level of 32.

14        My understanding is that you do not have any criminal

15   convictions.  Criminal history is the other piece of it.  They

16   look at convictions, type of charges involved, the length of

17   time, and the -- how long ago it was, and the sentence in terms

18   of whether they would be considered.

19        Since you don't have any, as we understand it --

20   probation will check that out, but you would be in Criminal

21   History Category I.

22        I'm assuming that they showed you a chart -- did you get

23   to look at that? -- which had the numbers down the left and the

24   criminal history across the top?

25             THE DEFENDANT:  Yes, Your Honor, I've seen that.

1          THE COURT:  So, basically, you go down and you look

2     at 32, you cut over to the Criminal History I, and where it

3     meets it's -- is where you would find -- at least in terms of

4     the incarceration, which at this point would be 121 months to

5     151 months.

6          The applicable estimated fine range would be 35,000 to

7     350,000.

8          Now, the -- within the sentencing guidelines, there is

9     what we call departures.  So once you calculate all of this --

10    they're very narrow.  There are a few areas where the Court can

11    either sentence you above, still under the system of the

12    sentencing guidelines, or below.  You're most interested in a

13    departure downward.  And the departure downward that would be

14    most likely to apply would be what we call a 5K1.1, if you're

15    providing the government with substantial assistance in terms

16    of their case.  And I will go through, you know, what that

17    entails, from your perspective.

18         If they decide that, you know, you are cooperating, then

19    the government will file something.  They have a separate

20    committee, a departure committee.  They'll indicate what your

21    cooperation has been, what -- you know, what you've provided is

22    substantial assistance.  And if the departure committee agrees

23    that you should get the benefit of that, then the government

24    will file a motion indicating that the 5K1.1 should apply.

25         The Court then -- if I grant the motion, I can then

1    sentence you, again, within the system of the advisory

2    sentencing guidelines to a sentence that's below what the

3    guideline range is that I set up.

4         They -- the government controls completely whether that

5    motion gets filed and that's requested.  Neither counsel nor

6    the Court can insist they do it.  You can provide information,

7    but they may decide it's not useful for them or whatever.  They

8    may not file it.  But if they do file it, then you can at least

9    request that the Court grant you this departure.

10        Now, because the sentencing guidelines are not

11   mandatory -- they're advisory -- there is one other aspect; and

12   that is, the Court could vary the sentence.  The Court of

13   Appeals has set out very strict limits in terms of the Court

14   doing this.  The idea is that the guidelines cover what the

15   Court should consider, and I would be going outside of the

16   guidelines themselves.  But it is something the Court can do.

17        You have to calculate what the guideline would be and

18   then come up with very specific things that would take it

19   outside of the guidelines or add additional information that

20   has either not been considered or -- not has been fully

21   considered as part of the departures.

22        So that's sort of the system.  Do you understand what it

23   is?  Do you have any questions about it?

24             THE DEFENDANT:  Yes, Your Honor, I understand.

25             THE COURT:  Okay.  Then I assume that you and your

1    counsel had an opportunity to discuss this?  Maybe differently

2    than I presented it, but discussed it; is that correct?

3              THE DEFENDANT:  Yes, we've been over all of that.

4              THE COURT:  All right.  And do you understand that I

5    won't be able to decide the advisory guideline range until I

6    get the report from probation and the presentence report?

7         That's viewed as the official one.  It's the one that we

8    work from.  It may look exactly the same as this -- that you

9    have in the plea letter -- or they may have differing views.

10   But, you know, certainly you and the government will have an

11   opportunity to -- will have an opportunity to -- to challenge

12   it, if that's the case.

13        So I have the cell phone up here only because -- from

14   time to time, the security thing blocks it, and you have to do

15   it again on your phone to be able to get the transcript.  So

16   that's why I've got it up here.

17        Do you also understand that after I've decided on the

18   guideline that I have the authority to impose a sentence that's

19   more severe or less severe?  And that's those departures.  So

20   we've discussed them below.  If you obstruct justice, do

21   something else, there may be a reason to, you know, depart

22   upward.

23        Okay.  Do you understand that?

24              THE DEFENDANT:  Yes, I understand that.

25              THE COURT:  All right.  And the government, again,

1    has agreed to consider filing this motion for a downward

2    departure for your cooperation and substantial assistance, but

3    it is only their decision.  And neither your lawyer nor I can

4    force them to file that motion.  And without it, I cannot

5    depart based on those grounds.

6         Do you understand?

7         THE DEFENDANT:  Yes I understand.

8         THE COURT:  Do you also understand that parole -- I'm

9    not sure you know what parole is.  Probably from the movies.

10   But parole is -- you get a jail sentence and then -- it used to

11   be that you could serve part of that sentence not in supervised

12   release, but part of the jail sentence in the community if

13   the parole board had paroled you.  That's completely gone.

14   So at this point, whatever sentence -- if you receive a jail

15   sentence -- you would serve the full term.  There is no

16   deduction.

17        Now, the Bureau of Prisons has their own system in terms

18   of good-time credits.  If you don't have violations, et cetera,

19   while you're serving a sentence in the Bureau of Prisons, they

20   can reduce it by good time of 54 days a year.  But they control

21   that.  Whatever sentence I give you is the sentence that you

22   would be facing without deductions.

23        Now, also, because you're pleading to a felony offense,

24   if I accept your plea and you're found guilty, that may deprive

25   you of valuable civil rights.  And those rights include the

1    right to vote, the right to hold public office, the right to

2    serve on a jury.

3            It depends on where you live, frankly.  In some places

4    with a felony, that's it.  You don't -- you never get these

5    civil rights back.  But other places it's over a period of

6    time.  And for some it doesn't make any difference.  So it's

7    going -- it would depend on where you live, but you should just

8    be aware that they may be affected.

9            The last is your right to possess any kind of firearm as

10   long as you're considered a convicted felon.  And that's having

11   some cases at this point.  But at least at this point, it's

12   still by federal statute.  Even if there's a state statute that

13   would let you possess a firearm and ammunition, by federal law,

14   as a convicted felon, you cannot.  And that is a specific

15   offense.

16           So do you understand all of that?  Any questions?

17                THE DEFENDANT:  I understand, yes.

18                THE COURT:  Okay.  So let me go through the letter.

19   I'm going to indicate what page I'm on and, sort of, what

20   paragraph.  I'm not -- because we discussed some of this, so we

21   don't need to go over it.

22           So page 1 talks about what you're pleading guilty to,

23   the maximum sentences.  And the -- page 2 talks about wiring

24   and the fact that both you and Ms. Morgan actually have to

25   plead and have the Court accept both of your pleas.

1    They've also indicated that based on the statement of

2    offense, that they would not charge you with any other criminal

3    charges based on your conduct, other than the one that you're

4    pleading guilty to.

5    And the -- page 3 goes through the sentencing

6    guidelines, talks about 3553(a), which I talked about.  At the

7    bottom of 3, it talks about the government could deny the

8    adjustment of acceptance of responsibility if -- if there's

9    obstruction of justice or something else, or if you move to

10   withdraw your guilty plea.  Or if you have engaged in any

11   conduct that was unknown at the time of the agreement, that

12   would be considered obstruction of justice, or some other

13   things.  Then they can -- that can affect whether or not you

14   get acceptance of responsibility and may also affect any, you

15   know, enhancements that they might want to -- to request.

16   Page 4 talks about that you have no criminal history and

17   what the actual estimate is.  And you are -- other than the one

18   we talked about, the 5K1.1, no other -- neither party is going

19   to be asking for a downward or upward departure.

20   The estimate is not binding either on probation or the

21   Court.  And that if it's different from the estimate in this

22   letter, that will not be a basis for you to be able to

23   withdraw or rescind this agreement, by either the government or

24   by you.

25   And this agreement applies to conduct that occurred

1    before the execution of the agreement.  Again, if you engage in

2    any conduct afterwards, that may affect any additional charges

3    or the advisory sentencing guidelines.

4         Do you understand all of that?  Do you have any

5    questions?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Yes, you understand?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  I guess I asked you two questions.  You

10   don't have any questions?

11             THE DEFENDANT:  No, no questions.

12             THE COURT:  Okay.  Page 5.  This agreement has terms

13   where different parties agree to do -- not -- to either make or

14   recommend certain things or not recommend things.

15        In terms of any post-sentencing litigation, whether it's

16   before the Bureau of Prisons or otherwise, the -- neither you

17   nor the government will be bound by any restrictions that are

18   in the letter that relate to the actual plea agreement, so.

19        And they're also indicating to you under Rule 35, which

20   allows the government after you have been sentenced, they can

21   file a motion to reduce your sentence based on cooperation that

22   you may have provided after the sentencing.

23        Do you understand and agree to that?

24             THE DEFENDANT:  Yes, I understand.

25             THE COURT:  All right.  Then moving on to page --

1    bottom of 5 and 6, which talks about the -- the -- the

2    substantial assistance and what their obligations are relating

3    to that.

4         You will not have a right to withdraw the plea if I

5    impose a sentence that's outside the guideline or I don't

6    follow the sentencing recommendations.  And you and the

7    government will be bound regardless of the sentence I impose,

8    assuming that it's a lawful one and not above the statutory

9    maximum.

10        Do you understand and agree?

11             THE DEFENDANT:  Yes, I understand.

12             THE COURT:  All right.  And it indicates that you're

13   agreeing to remain detained, not on bond, until sentencing; is

14   that correct?

15             THE DEFENDANT:  Yes, I'd have to.

16             THE COURT:  All right.  Paragraph 10 on page 6 talks

17   about your cooperation.  It indicates that you are expected to

18   cooperate fully, truthfully, completely with the

19   U.S. Attorney's Office and other law enforcement authorities

20   that they will identify.

21        And the cooperation may include but -- can also be other

22   things, but certainly would include answering questions,

23   providing sworn written statements, taking

24   government-administered polygraph exams, maybe doing some

25   undercover law enforcement.  But any refusal by you to

1      cooperate fully, truthfully, completely as they've said --

2      directed -- and they're the ones who will be directing you with

3      this cooperation.

4           In all matters in which they decide that your assistance

5      would be relevant, if you don't follow through, that will be

6      considered a breach of the agreement.  And that will relieve

7      the government of its obligations under this agreement,

8      including any sort of 5K1.1.  However, that breach will not

9      allow you to withdraw the guilty plea or relieve you of your

10     obligations.

11          So do you understand and agree to that -- those terms?

12          THE DEFENDANT:  Yes, I do, Your Honor.

13          THE COURT:  And you've agreed as part of this to turn

14     over any proceeds, any contraband, that you may still have; to

15     submit to a full and complete accounting of all your financial

16     assets, where they are.  And during this period of cooperation,

17     you will be interviewed also --

18          Let me stop.  In terms of financial things, are you

19     agreeing to that?

20          THE DEFENDANT:  Yes, Your Honor, I have agreed to

21     that.

22          THE COURT:  All right.  And in terms of -- as part of

23     your cooperation, you will be meeting with government counsel,

24     as well as various law enforcement agencies.  Ordinarily, you

25     can require your attorney to be present.  You've agreed that

1    you are willing to meet with them without your attorney

2    present.  However, if you change your mind at any time, either

3    you or counsel need to put it in writing so there's no dispute

4    you've asked for it.  And in which case your counsel will be

5    present at any future or individual meetings that you may have.

6    And there's no negative impact in making that request.

7            Is that your understanding and agreement?

8            THE DEFENDANT:  Yes, it is.

9            THE COURT:  Okay.  And you're agreeing also to

10   testify fully, completely, truthfully before any grand jury

11   that's looking at whether charges should be brought and also

12   in terms of any trials that they may deem your testimony

13   relevant.

14           Do you understand and agree?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And (f) is that nothing in the agreement

17   allows you to commit any criminal violations.  If you do get

18   involved in that, that will affect, obviously, your -- your

19   plea agreement.  The government will no longer be required to

20   follow through with its obligations.  You will not be able to

21   withdraw your plea, and you'll still be required to follow

22   through with your obligations.

23           Do you understand and agree?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Okay.  You've also agreed to waive, or

1    give up, the right to challenge venue, which is -- in terms of

2    venue here in the District of Columbia, as to where the case

3    was brought, as I understand.

4         I assume you've spoken to counsel as to what that means?

5              THE DEFENDANT:  Yes.  That's correct.

6              THE COURT:  And you've agreed to that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  The statute of limitations,

9    you've also waived raising that as a defense.  Most crimes have

10   a period of time within which the government must charge you

11   from the time you commit the offense until the -- this period

12   of time that Congress has set out as a time limit, within which

13   they need to charge you.

14        Assuming as -- correctly, I think, that you've been

15   charged within the statute of limitations in this particular

16   case.  But if at a later point -- and this only comes up if the

17   plea is vacated -- in other words, made null and void.

18        That if that's the case -- and if during that period of

19   time that the plea was still in place, the statute of

20   limitations ran, if they decide to recharge you or proceed

21   again and at that point the statute of limitations has run,

22   you're agreeing that you will not raise that as a defense.

23        Is that your understanding and agreement?

24             THE DEFENDANT:  Yes, it is.

25             THE COURT:  All right.  The trial rights we've gone

1    over.  The only additional one is you're agreeing to forego the

2    right to any further discovery or disclosures of information

3    that you haven't already been provided.

4         Is that correct?

5         THE DEFENDANT:  Let me just ask for a second my

6    lawyer.

7         THE COURT:  Sure.  That's on page 8, and it's C.

8    It's the second sentence.

9         THE DEFENDANT:  Okay.  Yes, I understand.

10        THE COURT:  Okay.  So if -- the next paragraph under

11   that talks about Rule 11(f), Criminal Procedure 410, rules of

12   evidence.  And, generally, those rules admit -- limit your

13   admissions.

14        And this only comes up if your plea is withdrawn for

15   some reason, in which case the statements you've made today and

16   other statements that you may have made can be used against you

17   if you went forward to trial and to impeach you on your

18   credibility.  If you get up on the stand and said something

19   different than what you've said today, they could use these

20   statements that you've made today to impeach you, to -- in

21   terms of your credibility.

22        In essence, you're agreeing that those admissions can

23   be used against you without it being just limited to

24   impeachment.

25        Is that your understanding and agreement?

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  All right.  We've gone over appeal

3     rights.

4          Moving to page 9, collateral attack.  That's another way

5     of -- of doing -- instead of a direct appeal, there are other

6     means that you can bring it up at a later point.

7          Moving aside what I talked about in terms of a change

8     about the statute's constitutionality or the conduct that's at

9     issue, this is other ways in which you can challenge the -- or

10    change the manner in which the sentence was determined.  And

11    it's usually -- 2255 is a writ of habeas corpus.  The civil is

12    challenging final judgments.  You're giving up those rights to

13    do that, except if your motion is based on newly discovered

14    evidence or you're claiming you didn't receive effective

15    assistance of counsel.

16         The -- you are retaining the right under 3582(c) if the

17    commission decides at a later point to change the guidelines

18    more favorably to you.  You're retaining your right to try and

19    file a motion to get the benefit of that.  And part of it

20    depends on whether it's something that's considered retroactive

21    in its application.

22         But do you understand and agree to that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  You're also giving up any witness fees

25    should you -- if you're a witness in a grand jury or other

1    proceedings; is that correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  In terms of restitution, there's

4    mandatory restitution.  So what you're agreeing to is that you

5    will make payments of restitution.  It doesn't set out how

6    much.

7         So you can challenge the amount of restitution at

8    a later point.  You cannot challenge that you owe restitution.

9         And the payments -- they indicate what the payments --

10   where you make the payments to, the U.S. Attorney's Office

11   can -- you need to provide information relating to -- them so

12   that they have information relating to your finances in terms

13   of your making the restitution.  They can get credit ratings.

14        And you're also agreeing that there are certain rules

15   that may be followed both for forfeiture, as well as

16   restitution.  And you're giving up any rights to have that.

17   You're agreeing as part of this that they don't need to go

18   through any of those procedures; that you're agreeing that they

19   can ask for restitution; just challenge the amount.

20        Is that your understanding and agreement?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  Okay.  Now, forfeiture is something

23   different.  And this relates to the specific properties that

24   are listed in an attachment, which is fairly extensive.  And

25   those would be listed towards the forfeiture money judgment.

1    And the forfeiture relates to -- restitution relates to

2    restoring the loss to the victims.  Forfeiture relates to, I

3    guess, your ill-gotten gains, to some degree, in terms of

4    proceeds that you may have retained based on your criminal

5    conduct.  So it has to be traced back to that.  And you've

6    agreed to a specific amount, which I indicated.

7         Paragraph (b) on page 11 -- without my going through all

8    of it, have you discussed that carefully in terms of the fact

9    that although that's going to be forfeited, it doesn't have to

10   be done immediately; presumably in order to preserve the value

11   of this particular asset, is the way I interpreted it.

12        Is that -- have you agreed to that?  And do you

13   understand it?  Let me start with:  Do you agree to it?

14        THE DEFENDANT:  Yes.  My understanding is that the

15   government needs my help in forfeiting that.  And so that's why

16   that's there.

17        THE COURT:  And they'll presumably do it at a

18   point when the most profit can be gleaned from it; is that

19   correct?

20        THE DEFENDANT:  I'm not sure.

21        THE COURT:  I think that's the government's

22   intention.  Am I correct or not?

23        MR. BROWN:  Yes, Your Honor.  We'll do it in a

24   commercially reasonable manner.  And the government and the

25   defense have the same incentive to maximize the value of that

1    asset.

2        It's just this provision -- I think, the -- it

3    requires some time simply to unwind this financial arrangement

4    and the defendant's cooperation in that.  And so that's

5    something that we weren't able to get done before the plea,

6    but we will be able to get it done with the defendant's

7    assistance.

8        THE COURT:  Okay.

9        MR. ENZER:  And, Your Honor, just from the defense's

10    perspective, so the Court is aware, Mr. Lichtenstein has

11    voluntarily provided to the government the keys needed to seize

12    the -- the cryptocurrency proceeds of the crime.  And our

13    understanding is the government has seized them.  So they have

14    custody of them.

15        THE COURT:  Okay.  So we're going to have this

16    preliminary consent order of forfeiture.  And the -- you're

17    agreeing in (d), at the bottom of 11, that they can forfeit the

18    assets and agreed interest in any property involved in the

19    offense in Count 1 and any substitute assets that there might

20    be.

21        Moving to page 12, basically (e) and (f) talks about

22    your allowing the government to use their full discretion as to

23    how they go about doing the forfeiture.  So you're not going to

24    be requiring them to go through some of the requirements under

25    the rule.  They can make choices about how they wish to -- to

1    do that.

2         Is that -- is that your understanding and agreement?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Okay.  I is presumably important to you

5    under 12, which is they're going to make a nonbinding referral

6    to the money laundering and asset recovery section of Justice

7    that monies obtained through the forfeiture be distributed to

8    the victims according to the restitution and so that you would

9    not be double paying, to some degree.  If -- if it's denied,

10   then you're left with both a restitution and a foreign -- and a

11   forfeiture judgment.

12        Do you understand and agree?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Because they're separate obligations.

15        All right.  In terms of page 13, if you don't follow

16   through with each of the requirements under this plea agreement

17   or you engage in any criminal activity before sentencing, there

18   are consequences.  The government's free from its obligations.

19   You won't have the right to withdraw the guilty plea.  You'll

20   be subject to any prosecutions should you commit other crimes.

21   They will not be filing anything for a departure downward.

22        3553(e) is mandatory minimums, and that does not apply.

23        The government is free to use against you all statements

24   that you have made both today and at any other settings.

25        And in terms of proving the breach, it'll be only by a

1  standard or burden of the preponderance of the evidence, which

2  is, obviously, a lower standard and burden than beyond a

3  reasonable doubt in a criminal case.  And if it's related to a

4  new criminal offense, then it's only probable cause, which is

5  even lower.

6       Do you understand and agree?

7            THE DEFENDANT:  Yes.

8            THE COURT:  All right.  In terms of the government's

9  obligations, at the bottom of 13, it talks about the departure

10  committee, in terms of what they would be doing; which, again,

11  whatever substantial assistance you provide, they give it to

12  the departure committee to make a decision.  If they agree you

13  should get a departure, they'll file a motion.  The Court has

14  to grant and then consider it, but then they're the ones in

15  making that determination.

16       Do you understand and agree?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Okay.  And I would ignore some of these

19  18 U.S.C. 3553(e).  You don't have any mandatory minimums.

20       We're getting near the end.

21       The witness protection, if you request it and if it's

22  appropriate -- and it's their discretion as to whether they

23  would request it -- to sponsor you before the witness security

24  program of the Department of Justice, it's the -- that program

25  that makes the decision, not the U.S. Attorney's Office.

1          They can just simply recommend it.  And it will be up to

2     them as to whether you would be put in the program.  And then

3     if you are put in the program, you have to follow whatever

4     their regulations are.

5          Do you understand and agree?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Anything else that -- any

8     other agreement or whatever -- I ask this because I want to

9     make sure -- you know, you can't come back in, you know, a

10    couple months and say, well, I thought this or that was part of

11    the agreement.  I want to make sure this is the complete

12    agreement, what we've talked about orally or what's in writing.

13         Is there anything that we -- you need to bring up?

14         THE DEFENDANT:  No, Your Honor.  I think we covered

15    all of it.

16         THE COURT:  Okay.  And it also indicates what office

17    is -- it's binding on.

18         Now, before I go through the voluntariness, I also want

19    to make sure that this is -- this -- and you want to go forward

20    to the last part of this proceeding in terms of your plea.  I

21    want to make sure this is really what you want to do.  Again,

22    you can't come back in two months and say, well, I changed my

23    mind.

24         So are you sure that this is actually what you want to

25    do?

1          THE DEFENDANT:  Yes.  I want to plead guilty.

2          THE COURT:  All right.  Has anyone, including

3     counsel, the -- law enforcement, the prosecutor, or anybody

4     else that you've come in contact with since your arrest,

5     promised or suggested to you that just by pleading guilty that

6     you are guaranteed a specific sentence, lighter sentence?

7          THE DEFENDANT:  No.

8          THE COURT:  Has anyone forced, threatened, or coerced

9     you in any way into entering the plea of guilty?

10         THE DEFENDANT:  No.

11         THE COURT:  Do you understand the agreement reached

12    is -- results from negotiations between your lawyer, the

13    government's lawyer, and not the Court?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Has anyone made any promises to you in

16    connection with your guilty plea other than those in the plea

17    letter or what we've talked about here today?

18         THE DEFENDANT:  No.

19         THE COURT:  Anyone made any promises to you as to the

20    sentence I'll impose if I accept the guilty plea?

21         THE DEFENDANT:  No.

22         THE COURT:  And do you understand at this time I

23    don't know what sentence I will impose?  I haven't heard from

24    probation, the lawyers, and yourself, if you wish to address

25    the Court.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you entering this plea of guilty

3     voluntarily and of your own free will?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Are you entering this plea of guilty

6     because you are guilty?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  Is there anything you don't understand,

9     anything you want to ask me or your counsel before you make a

10    final decision?

11         THE DEFENDANT:  No.

12         THE COURT:  All right.  How do you, Ilya -- yep --

13    Ilya Lichtenstein, plead to money laundering conspiracy?

14    Guilty or not guilty?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  All right.  I'm satisfied that the

17    defendant's fully competent, capable of making a decision

18    today, understands the nature and consequences of what he's

19    doing, acting voluntarily and of his own free will.  There's an

20    adequate factual basis for the plea.

21         Therefore, the Court accepts the plea and finds

22    Ilya Lichtenstein guilty of Count 1, money laundering

23    conspiracy.

24         All right.  At this point, I assume there's going to be

25    a period within which -- I'll sign the papers -- a period

1    within which his cooperation is to take place, or what's to

2    happen?

3               MR. BROWN:  Yes, Your Honor.  There will be a period

4    of cooperation.  We don't have a -- a firm estimate of that.

5    It could be approximately a year; may be longer; may be

6    shorter.

7          But at this point, we would -- we'd ask the Court to

8    defer setting a specific sentencing date.  And we're happy

9    to submit status reports on a schedule as determined by the

10   Court.

11              THE COURT:  Okay.  So the one thing that I don't see

12   here is a waiver of the grand jury.

13              MR. BROWN:  A waiver of indictment?

14              THE COURT:  A waiver of indictment, yes.  I see the

15   waiver for the trial, but I don't see the -- did you-all do

16   one?

17         While they're looking for that --

18              MR. BROWN:  Your Honor, the separate waiver of

19   indictment by grand jury, is that what the Court is referring

20   to?

21              THE COURT:  Yes.  Yes.

22              MR. BROWN:  Your Honor, that -- that is an oversight

23   on the government's part.

24              THE COURT:  Okay.  Do you have the -- while he's

25   here --

```
1              Dorothy, do you have a form?

2              THE COURTROOM DEPUTY:  Yes.

3              THE COURT:  We can -- we can give you a form.

4              MR. BROWN:  I apologize for that.

5              THE COURT:  While everybody is here, it would be

6     quicker and just get it taken care of.

7          If I could just ask, Mr. Lichtenstein, your preliminary

8     order of forfeiture, which I'll look through quickly and sign,

9     have you had an opportunity to read it carefully?

10             THE DEFENDANT:  Yes, I have.

11             THE COURT:  Okay.  And have you discussed it with

12    your counsel?

13             THE DEFENDANT:  Yes, I have.

14             THE COURT:  And, Counsel, there's no issues that the

15    Court needs to be concerned about?

16             MR. ENZER:  No, Your Honor.

17             THE COURT:  Okay.  I'll hand these up later.  Why

18    don't we pick a date.

19         Are you printing it out, Dorothy?

20             THE COURTROOM DEPUTY:  Yes.

21             THE COURT:  She's printing out the waiver.  So we'll

22    hand that to you.

23         But in terms of looking at a report date, generally it's

24    my practice to do -- I don't have a problem doing the report,

25    the first one.  At some point, if it's taking time, I may bring
```

1   him back so we put something on the record and he knows that's

2   something's happening and we haven't forgotten him.

3          Reports come in and, you know, you wonder probably

4   what's going on.  But I don't have a problem with the first

5   one, just doing a report.

6          That works for defense counsel and the client?

7          MR. ENZER:  No objection from the defense.

8          THE COURT:  Okay.  So when do you wish to have this,

9   more or less?  Give me a date, in terms of far out, to have an

10  idea of what -- you know, what his cooperation is going to

11  consist of.

12         MR. BROWN:  Would a 90-day --

13         THE COURT:  That's fine.

14         MR. BROWN:  -- deadline work?

15         THE COURT:  You would know how much time to see --

16  how -- which way it's going.  So are we looking at October?

17  November?

18         MR. BROWN:  I think November would be -- would be a

19  good time.

20         THE COURT:  Give me a date in November.

21         MR. BROWN:  Any time in November.

22         THE COURT:  Okay.  How about November 3rd?

23         MR. BROWN:  That works for the government.

24         THE COURT:  That's a Friday.  Okay.

25         MR. BROWN:  And -- sorry to interrupt you.

```
1                   THE COURT:  I'm sorry?

2                   MR. BROWN:  For the waiver of indictment by

3       grand jury, could we also ask a copy be printed up for

4       Ms. Morgan's plea hearing as well?

5                   THE COURT:  Oh, yes.  We can do that before the next

6       one.

7              In terms of the report, generally the reports don't have

8       a great deal of -- they're usually filed under seal, and they

9       don't have a lot of information in them.  So what I would

10      suggest is that there be -- for the first one, I don't have a

11      problem.

12             After that, if -- assuming it goes beyond that, I

13      generally have asked for an ex parte report, which the

14      information is still provided to defense counsel, but what it

15      means is that it's not accessed to -- anybody.  And it

16      indicates whatever plans they have in terms of future -- where

17      they may not want to put it on the record.  That creates

18      problems sometimes with the cooperation, and certainly nobody

19      wants to say it in open court.  So we can move to that, if --

20      if this goes on for some period and that is an issue.

21             But the first one, you have to give me enough -- I

22      monitor to make sure that we just don't have this trailing

23      along and nothing happens.  So there should be something

24      going on with his cooperation, if we're waiting for the

25      sentencing.
```

1    MR. BROWN:  Yes, Your Honor.  And just to confirm,

2    that the first report on November 3rd can be under seal?

3    THE COURT:  Yeah, you can just do a straight report.

4    It's just to let me know, sort of, what direction you're going

5    in.

6    MR. BROWN:  And that can be under seal?

7    THE COURT:  Yes.  Yes.  No, I wouldn't put that -- it

8    shouldn't be filed and accessible to others.

9    Okay.  Where are we with that?  We're running a little

10   late for the next one.

11   I take it you had no trouble getting in.

12   MR. BROWN:  No, Your Honor.  There were -- the lines

13   were not as -- sorry.

14   THE COURT:  No, that's fine.  Yeah.  No.  There were

15   50 earlier, but I didn't -- I wasn't sure how long -- what

16   problems there might or might not be.  So I'm glad there

17   weren't any.

18   MR. ENZER:  Your Honor, for defense, we have one

19   request.

20   THE COURT:  Sure.

21   MR. ENZER:  At the end of the proceeding, with the

22   Court's permission, we would be -- and if the marshal is okay

23   with it, we would be grateful if the marshal would bring

24   Mr. Lichtenstein just to the edge of the well, to the

25   separation between the well and the gallery, so he can see his

1  wife and co-defendant, Ms. Morgan, in the courtroom.  They

2  haven't seen each in person in over a year.

3          THE COURT:  I leave these things to the Marshals

4  Service as to whether they want that or whether they want

5  everybody out of the courtroom with only that person there or

6  they don't do it at all.  It's up to you.

7          THE MARSHAL:  We do not allow contact with people.

8          THE COURT:  Okay.  I've signed all the paperwork.  So

9  let me let you go.

10         The parties are excused.  We'll get the report, and

11 we'll see -- we'll go from there.

12         Take care.  Be well.

13         THE COURTROOM DEPUTY:  The defendant has not been

14 arraigned.

15         THE COURT:  So it's only Count 1.  Here, Dorothy.  I

16 have it here.

17         Sorry.  For some reason I thought since he had gone

18 through the release conditions, et cetera, that somebody had

19 arraigned him.

20         THE COURTROOM DEPUTY:  May the record reflect that

21 the defendant has received a copy of the information.

22         In Criminal Case 23-239 in which you are charged in

23 Count 1 with money laundering, how does the defendant wish to

24 plead?

25         THE DEFENDANT:  Guilty.

1          THE COURTROOM DEPUTY:  Thank you.

2          THE COURT:  All right.  I think that does it.

3     Is that going to be true of Morgan as well?

4          THE COURTROOM DEPUTY:  Yes.

5          THE COURT:  All right.  Now the parties are excused.

6          (Proceedings were concluded at 11:13 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

 2

 3          I, Nancy J. Meyer, Registered Diplomate Reporter,

 4     Certified Realtime Reporter, do hereby certify that the above

 5     and foregoing constitutes a true and accurate transcript of my

 6     stenograph notes and is a full, true, and complete transcript

 7     of the proceedings to the best of my ability.

 8

 9                         Dated this 9th day of August, 2023.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25
```

## $

**$200,000** [1] - 27:2
**$500,000** [1] - 49:16
**$71** [1] - 24:15
**$72,618,825.60** [1] - 8:10

## 1

**1** [10] - 8:4, 20:15, 37:5, 37:18, 41:11, 58:22, 69:19, 74:22, 80:15, 80:23
**1's** [1] - 37:14
**10** [7] - 19:19, 30:11, 39:8, 39:9, 40:6, 41:11, 61:16
**1010.100(ff)** [1] - 20:4
**1030** [2] - 46:20, 46:21
**11** [3] - 19:20, 68:7, 69:17
**11(f** [1] - 65:11
**119,754** [1] - 24:11
**11:13** [1] - 81:6
**12** [3] - 11:19, 69:21, 70:5
**121** [1] - 54:4
**13** [2] - 70:15, 71:9
**14** [1] - 16:20
**151** [1] - 54:5
**16** [1] - 11:20
**18** [5] - 8:5, 11:8, 28:7, 46:20, 71:19
**19** [1] - 28:8
**1956(h)** [1] - 8:5
**1987** [1] - 9:4
**1CGA4s** [4] - 24:12, 27:17, 27:19, 27:25

## 2

**2** [7] - 20:16, 52:22, 52:23, 52:25, 53:2, 53:7, 58:23
**2,000** [1] - 24:10
**20** [6] - 28:10, 45:5, 45:12, 47:14, 49:1, 49:15
**2013** [1] - 39:11
**2014** [1] - 41:1
**2015** [2] - 27:3, 41:1
**2016** [12] - 22:9, 24:9, 25:3, 26:23, 28:20, 36:4, 36:9, 37:3, 41:24, 47:4, 47:17, 47:21
**2017** [4] - 27:18, 37:4, 37:13, 37:22
**2018** [1] - 38:14

**2019** [3] - 39:7, 39:17, 40:23
**2020** [1] - 28:18
**2021** [1] - 33:23
**2022** [1] - 36:5
**20th** [2] - 9:4, 37:4
**21** [2] - 46:11, 47:15
**22** [4] - 30:23, 37:3, 45:6, 47:15
**2255** [1] - 66:11
**23** [2] - 11:20, 47:15
**23-239** [2] - 3:2, 80:22
**24** [3] - 33:22, 34:13, 52:20
**25** [2] - 36:1, 36:12
**27** [3] - 39:17, 41:21, 47:8
**28th** [1] - 37:21
**2nd** [1] - 40:23

## 3

**3** [4] - 20:16, 53:4, 59:5, 59:7
**31** [2] - 20:3, 20:18
**32** [2] - 53:13, 54:2
**35** [3] - 9:2, 53:5, 60:19
**35,000** [1] - 54:6
**350,000** [1] - 54:7
**3553(a** [2] - 51:3, 59:6
**3553(e** [1] - 70:22
**3553(e)** [2] - 4:13, 71:19
**3582(c** [1] - 66:16
**3rd** [2] - 77:22, 79:2

## 4

**4** [2] - 23:5, 59:16
**410** [1] - 65:11
**48** [1] - 9:18

## 5

**5** [9] - 17:21, 18:10, 18:12, 30:10, 38:15, 38:17, 41:11, 60:12, 61:1
**50** [1] - 79:15
**5331** [1] - 20:18
**54** [1] - 57:20
**5K1.1** [4] - 54:14, 54:24, 59:18, 62:8

## 6

**6** [4] - 30:10, 52:19, 61:1, 61:16
**65** [1] - 52:20

## 7

**7** [7] - 17:21, 30:10, 37:22, 37:24, 39:18, 40:24, 41:11
**7's** [1] - 37:23
**71** [2] - 24:22, 25:10

## 8

**8** [5] - 14:8, 19:19, 30:11, 39:7, 65:7

## 9

**9** [4] - 15:18, 19:19, 30:11, 66:4
**90-day** [1] - 77:12

## A

**A's** [1] - 26:24
**a.m** [1] - 81:6
**abide** [1] - 35:11
**able** [9] - 5:1, 13:22, 42:16, 56:5, 56:15, 59:22, 63:20, 69:5, 69:6
**above-referenced** [2] - 30:24, 42:4
**abroad** [1] - 34:9
**abuse** [2] - 46:20, 51:15
**accept** [5] - 17:4, 53:6, 57:24, 58:25, 73:20
**acceptance** [3] - 52:10, 59:8, 59:14
**accepts** [1] - 74:21
**access** [10] - 22:19, 23:21, 23:23, 24:5, 24:9, 25:17, 25:19, 26:5, 26:11, 27:1
**accessed** [2] - 33:19, 78:15
**accessible** [2] - 18:23, 79:8
**accompanying** [1] - 35:6
**according** [1] - 70:8
**account** [17] - 19:6, 19:8, 32:20, 32:22, 33:24, 34:2, 37:15, 37:17, 37:25, 38:15, 38:17, 38:19, 38:23, 39:1, 39:20, 40:20, 42:1
**accounting** [1] - 62:15
**accounts** [31] - 26:8, 26:9, 26:11, 26:14, 27:20, 28:2, 29:8, 29:12, 30:3, 30:5,

30:8, 30:10, 31:2, 31:10, 31:16, 31:17, 31:19, 32:3, 32:4, 32:16, 32:17, 32:19, 33:7, 36:7, 37:5, 37:16, 37:18, 41:22, 42:12, 46:15, 48:4
**accuracy** [1] - 25:7
**accurate** [6] - 29:3, 32:5, 33:11, 33:16, 36:20, 41:19
**acknowledges** [1] - 43:22
**acquired** [2] - 32:19, 38:1
**acronym** [1] - 24:2
**acronyms** [1] - 17:18
**Act** [5] - 19:21, 19:22, 20:25, 41:13, 42:6
**act** [1] - 23:14
**acting** [1] - 74:19
**actions** [2] - 40:17, 48:1
**activities** [2] - 23:9, 45:8
**activity** [15] - 20:17, 21:11, 21:12, 21:17, 25:16, 26:20, 28:17, 31:16, 34:7, 45:18, 46:18, 46:19, 47:2, 49:22, 70:17
**Activity** [1] - 21:18
**acts** [1] - 21:19
**actual** [2] - 51:1, 59:17, 60:18
**actuality** [1] - 38:18
**add** [1] - 55:19
**added** [1] - 52:6
**addition** [1] - 27:2
**additional** [13] - 8:19, 16:14, 23:23, 37:16, 52:20, 52:22, 52:23, 53:1, 53:7, 53:12, 55:19, 60:2, 65:1
**additionally** [2] - 32:11, 39:24
**address** [1] - 73:24
**addressed** [1] - 47:8
**addresses** [4] - 14:6, 19:8, 28:4, 37:5
**adequate** [1] - 74:20
**adjustment** [1] - 59:8
**administer** [1] - 5:3
**administered** [2] - 5:7, 61:24
**administration** [1] - 20:7
**admissions** [3] - 48:14, 65:13, 65:22
**admit** [1] - 65:12

**admits** [1] - 43:3
**admitted** [2] - 14:20, 43:10
**admitting** [1] - 6:14
**advanced** [1] - 22:17
**advisory** [8] - 7:16, 16:6, 50:6, 51:25, 55:1, 55:11, 56:5, 60:3
**affect** [5] - 9:22, 59:13, 59:14, 60:2, 63:18
**affected** [1] - 58:8
**afford** [3] - 12:24, 14:2, 17:1
**afterwards** [1] - 60:2
**agencies** [1] - 62:24
**ago** [1] - 53:17
**agree** [47] - 6:21, 14:17, 15:19, 18:4, 19:16, 19:17, 22:25, 23:25, 24:16, 25:25, 26:16, 27:6, 28:7, 28:21, 30:16, 31:20, 34:14, 36:12, 37:10, 37:19, 38:10, 38:21, 38:23, 39:13, 40:7, 40:8, 42:8, 42:17, 42:22, 42:24, 43:9, 50:17, 52:15, 60:13, 60:23, 61:10, 62:11, 63:14, 63:23, 66:22, 68:13, 70:12, 71:6, 71:12, 71:16, 72:5
**agreed** [12] - 5:17, 7:3, 52:12, 57:1, 62:13, 62:20, 62:25, 63:25, 64:6, 68:6, 68:12, 69:18
**agreeing** [16] - 6:1, 6:24, 6:25, 8:11, 14:15, 61:13, 62:19, 63:9, 64:22, 65:1, 65:22, 67:4, 67:14, 67:17, 67:18, 69:17
**agreement** [31] - 4:8, 4:13, 5:20, 6:8, 7:11, 8:12, 16:17, 45:4, 45:5, 45:18, 50:23, 59:11, 59:23, 59:25, 60:1, 60:12, 60:18, 62:6, 62:7, 63:7, 63:16, 63:19, 64:23, 65:25, 67:20, 70:2, 70:16, 72:8, 72:11, 72:12, 73:11
**agreements** [1] - 8:16
**agrees** [2] - 20:23, 54:22
**ahead** [8] - 18:8, 21:7,

84

23:8, 24:4, 35:4,
35:15, 37:1, 43:1
**Alden** [1] - 3:9
**allocution** [1] - 8:14
**allow** [3] - 19:12, 62:9,
80:7
**allowed** [1] - 26:25
**allowing** [1] - 69:22
**allows** [3] - 31:7,
60:20, 63:17
**AlphaBay** [1] - 28:3
**alternative** [1] - 27:4
**AML** [3] - 20:3, 30:7,
42:3
**AML/KYC** [1] - 37:23
**ammunition** [1] -
58:13
**amount** [5] - 8:9, 27:4,
67:7, 67:19, 68:6
**amounts** [3] - 30:4,
31:4, 31:5
**analysis** [1] - 20:12
**anonymity** [3] - 29:15,
29:20, 31:14
**anonymity-
enhanced** [1] - 31:14
**anonymity-
enhancing** [1] -
29:15
**anonymous** [1] - 19:8
**answer** [1] - 7:22
**answering** [2] - 5:12,
61:22
**answers** [1] - 5:24
**anti** [1] - 20:3
**anti-money** [1] - 20:3
**anxiety** [1] - 10:13
**API** [2] - 26:25, 27:1
**apologize** [2] - 18:18,
76:4
**apparent** [1] - 21:13
**appeal** [20] - 13:23,
14:10, 14:18, 15:2,
15:7, 15:8, 15:14,
15:15, 15:20, 16:8,
16:13, 16:14, 16:16,
16:19, 16:21, 16:24,
17:10, 66:2, 66:5
**Appeals** [2] - 13:24,
55:13
**appeals** [2] - 14:7,
17:6
**appearance** [1] -
23:19
**applicable** [1] - 54:6
**application** [1] - 66:21
**applied** [1] - 12:15
**applies** [1] - 59:25
**apply** [3] - 54:14,
54:24, 70:22

**appointed** [3] - 12:25,
14:3, 17:1
**appreciated** [1] - 41:2
**appropriate** [1] -
71:22
**April** [1] - 37:4
**area** [1] - 7:9
**areas** [2] - 7:6, 54:10
**arraigned** [2] - 80:14,
80:19
**arrangement** [1] -
69:3
**arrest** [1] - 73:4
**aside** [1] - 66:7
**aspect** [1] - 55:11
**asserted** [2] - 13:18,
13:25
**assessment** [1] -
50:20
**asset** [3] - 68:11, 69:1,
70:6
**assets** [5] - 21:11,
39:12, 62:16, 69:18,
69:19
**assist** [1] - 31:24
**assistance** [11] -
16:15, 30:25, 32:12,
54:15, 54:22, 57:2,
61:2, 62:4, 66:15,
69:7, 71:11
**assisted** [2] - 31:17,
32:3
**assists** [1] - 22:23
**associated** [4] - 19:4,
28:2, 29:25, 32:22
**assume** [6] - 9:24,
23:3, 41:18, 55:25,
64:4, 74:24
**assuming** [6] - 21:2,
44:8, 53:22, 61:8,
64:14, 78:12
**ATM** [2] - 33:10, 33:16
**ATMs** [3] - 29:13,
33:7, 33:19
**attachment** [2] -
44:19, 67:24
**attack** [1] - 66:4
**attempt** [1] - 26:8
**attention** [2] - 10:13,
44:19
**attorney** [5] - 11:7,
12:24, 21:2, 62:25,
63:1
**Attorney's** [3] - 61:19,
67:10, 71:25
**attorneys** [1] - 11:3
**attribute** [1] - 47:12
**audit** [1] - 47:18
**August** [5] - 9:4, 24:9,
25:3, 36:4, 37:3

**AUSA** [1] - 3:6
**authorities** [2] - 20:12,
61:19
**authority** [2] - 15:23,
56:18
**authorize** [2] - 24:6,
24:10
**automate** [1] - 31:6
**available** [1] - 21:15
**avoid** [2] - 29:18,
33:10
**avoidance** [1] - 35:19
**avoiding** [1] - 29:24
**award** [1] - 15:22
**aware** [8] - 18:5,
30:20, 36:15, 40:14,
40:15, 40:17, 58:8,
69:10

## B

**B2B** [1] - 39:22
**bachelor's** [1] - 9:7
**backed** [1] - 18:20
**background** [6] - 6:8,
9:1, 17:17, 17:24,
18:10, 51:5, 51:12
**bank** [2] - 29:12,
32:14, 33:6
**Bank** [5] - 19:21,
19:22, 20:25, 41:13,
42:6
**banks** [2] - 19:24,
32:17
**base** [1] - 52:18
**based** [12] - 12:18,
25:1, 33:4, 37:6,
48:12, 50:10, 57:5,
59:1, 59:3, 60:21,
66:13, 68:4
**basic** [3] - 6:7, 6:9,
8:11
**basics** [1] - 8:23
**basis** [5] - 14:18,
15:14, 16:14, 59:22,
74:20
**became** [1] - 45:16
**began** [1] - 27:18
**beginning** [4] - 18:10,
22:8, 27:17, 40:2
**behalf** [3] - 3:21,
13:13, 21:20
**belonging** [2] - 22:15,
24:8
**below** [7] - 29:9,
54:12, 55:2, 56:20
**benefit** [2] - 54:23,
66:19
**benefits** [1] - 29:20
**between** [10] - 23:14,

23:17, 37:3, 45:4,
45:19, 46:14, 48:3,
73:12, 79:25
**beyond** [5] - 12:17,
43:7, 48:13, 71:2,
78:12
**binding** [2] - 59:20,
72:17
**birth** [1] - 9:3
**bitcoin** [6] - 24:19,
25:2, 38:6, 46:13
**Bitcoin** [2] - 18:21,
29:21
**Bitfinex** [1] - 23:6
**blockchain** [3] -
18:23, 27:11, 29:16
**blocks** [1] - 56:14
**board** [1] - 57:13
**bond** [1] - 61:13
**born** [2] - 9:10, 9:11
**bottom** [6] - 14:8,
14:13, 59:7, 61:1,
69:17, 71:9
**bound** [2] - 60:17,
61:7
**boyfriend** [1] - 40:25
**breach** [3] - 62:6,
62:8, 70:25
**breaking** [1] - 31:12
**bring** [7] - 7:10, 18:6,
33:9, 66:6, 72:13,
76:25, 79:23
**broad** [1] - 51:4
**broadly** [1] - 45:24
**brokers** [2] - 32:15,
32:17
**brought** [3] - 7:12,
63:11, 64:3
**BROWN** [70] - 3:6,
4:15, 4:21, 8:7, 18:9,
18:18, 19:21, 21:8,
22:6, 23:4, 23:9,
24:5, 25:1, 25:5,
25:15, 26:3, 26:18,
27:8, 27:15, 28:11,
29:6, 30:24, 32:11,
33:23, 35:3, 35:5,
35:9, 35:16, 35:25,
36:2, 37:2, 37:13,
37:21, 38:4, 38:14,
39:7, 39:17, 40:23,
41:10, 41:22, 43:2,
43:20, 43:22, 44:3,
44:6, 44:10, 44:13,
44:18, 45:2, 45:11,
46:3, 46:8, 48:8,
48:10, 68:23, 75:3,
75:13, 75:18, 75:22,
76:4, 77:12, 77:14,
77:18, 77:21, 77:23,

77:25, 78:2, 79:1,
79:6, 79:12
**Brown** [1] - 3:7
**BSA** [4] - 19:22, 19:25,
20:7, 20:14
**BTC** [13] - 18:21,
18:22, 24:11, 27:18,
29:14, 29:25, 31:13,
33:3, 33:5, 38:1,
38:9, 39:10
**build** [1] - 40:2
**bunch** [1] - 44:16
**burden** [2] - 71:1, 71:2
**Bureau** [3] - 57:17,
57:19, 60:16
**buried** [1] - 30:14
**business** [6] - 21:13,
31:15, 31:18, 32:4,
39:19, 41:12
**businesses** [2] -
19:25, 30:10
**button** [2] - 4:10, 6:5

## C

**C.F.R** [1] - 20:4
**Cahill** [2] - 3:16, 3:21
**calculate** [2] - 54:9,
55:17
**calculated** [1] - 51:19
**calculation** [1] - 52:11
**cannot** [4] - 43:5,
57:4, 58:14, 67:8
**capable** [1] - 74:17
**card** [2] - 32:21, 33:10
**cards** [6] - 32:13,
32:14, 32:21, 33:8,
33:9
**care** [2] - 76:6, 80:12
**carefully** [3] - 49:5,
68:8, 76:9
**Case** [2] - 3:2, 80:22
**case** [22] - 11:3, 11:6,
11:15, 11:21, 12:9,
12:16, 14:1, 14:18,
15:20, 17:9, 17:15,
39:23, 49:14, 50:12,
54:16, 56:12, 63:4,
64:2, 64:16, 64:18,
65:15, 71:3
**cases** [1] - 58:11
**Category** [1] - 53:21
**caught** [1] - 53:4
**caused** [1] - 25:21
**cell** [1] - 56:13
**certain** [5] - 11:17,
25:18, 49:21, 60:14,
67:14
**certainly** [5] - 7:15,
47:23, 56:10, 61:22,

78:18
**cetera** [4] - 4:23, 40:8, 57:18, 80:18
**chain** [1] - 31:15
**challenge** [6] - 56:11, 64:1, 66:9, 67:7, 67:8, 67:19
**challenging** [1] - 66:12
**change** [7] - 15:15, 51:21, 63:2, 66:7, 66:10, 66:17
**changed** [1] - 72:22
**charge** [6] - 10:22, 50:9, 50:14, 59:2, 64:10, 64:13
**charged** [5] - 4:16, 45:11, 45:21, 64:15, 80:22
**charges** [4] - 53:16, 59:3, 60:2, 63:11
**chart** [1] - 53:22
**check** [1] - 53:20
**checked** [1] - 25:4
**chip** [1] - 32:15
**ChipMixer** [1] - 29:21
**choices** [1] - 69:25
**Christopher** [1] - 3:7
**chute** [2] - 34:10, 34:16
**circulated** [1] - 18:20
**citizen** [1] - 9:14
**citizens** [1] - 12:9
**civil** [3] - 57:25, 58:5, 66:11
**claimed** [1] - 14:21
**claiming** [1] - 66:14
**claims** [1] - 14:19
**clarification** [1] - 5:22
**classic** [1] - 45:22
**clear** [2] - 9:23, 46:23
**clerk** [1] - 5:2
**client** [2] - 23:17, 77:6
**clients'** [1] - 20:16
**co** [1] - 80:1
**co-defendant** [1] - 80:1
**coerced** [1] - 73:8
**Coin** [2] - 29:23, 46:14
**CoinJoins** [1] - 28:5
**CoinJoins/mixers** [1] - 29:21
**coins** [3] - 30:13, 30:15, 30:21
**cold** [1] - 41:2
**collateral** [4] - 15:8, 15:15, 16:21, 66:4
**colleague** [1] - 3:19
**collect** [1] - 20:15

**collection** [2] - 20:12, 21:20
**Columbia** [6] - 11:18, 12:10, 18:24, 34:4, 42:7, 64:2
**combat** [1] - 20:9
**combination** [1] - 50:6
**coming** [1] - 51:7
**commerce** [1] - 25:23
**commercially** [1] - 68:24
**commingled** [1] - 26:14
**commission** [2] - 52:1, 66:17
**commit** [5] - 45:3, 45:20, 63:17, 64:11, 70:20
**committed** [3] - 11:23, 11:24, 46:24
**committee** [5] - 54:20, 54:22, 71:10, 71:12
**committing** [1] - 50:3
**commonly** [2] - 21:17, 22:18
**communication** [1] - 25:22
**community** [2] - 49:19, 57:12
**company** [3] - 38:16, 39:1, 40:2
**competency** [1] - 10:17
**competent** [2] - 10:20, 74:17
**complete** [3] - 47:3, 62:15, 72:11
**completed** [1] - 53:3
**completely** [7] - 11:2, 45:15, 55:4, 57:13, 61:18, 62:1, 63:10
**complex** [1] - 27:19
**complicate** [1] - 47:17
**complicated** [1] - 14:9
**compromise** [1] - 23:23
**compromised** [3] - 22:14, 23:11, 23:21
**computer** [8] - 22:12, 22:15, 22:19, 22:23, 25:17, 25:23, 31:6, 46:19
**computers** [1] - 23:11
**computing** [2] - 34:9, 34:10
**conceal** [7] - 25:16, 27:22, 28:15, 34:7, 42:25, 47:12, 48:1
**concealed** [1] - 30:13
**concealing** [1] - 30:19

**concealment** [2] - 45:22, 47:7
**conceived** [1] - 23:9
**concerned** [1] - 76:15
**concerns** [1] - 51:22
**concluded** [1] - 81:6
**conclusion** [1] - 43:2
**condition** [1] - 15:22
**conditions** [5] - 15:24, 49:21, 49:23, 49:25, 50:4, 50:18, 80:18
**conduct** [17] - 6:25, 14:21, 14:24, 15:5, 16:23, 17:16, 20:2, 22:5, 30:25, 51:11, 52:7, 59:3, 59:11, 59:25, 60:2, 66:8, 68:5
**conducted** [1] - 22:12
**confirm** [1] - 79:1
**confront** [1] - 13:3
**confusion** [2] - 7:7, 35:19
**Congress** [2] - 52:1, 64:12
**connected** [1] - 18:3
**connection** [1] - 73:16
**Connor** [1] - 3:20
**consent** [3] - 43:23, 44:1, 69:16
**consequences** [4] - 9:13, 9:17, 70:18, 74:18
**consider** [4] - 51:3, 55:15, 57:1, 71:14
**considerations** [1] - 51:7
**considered** [9] - 14:25, 50:19, 53:18, 55:20, 55:21, 58:10, 59:12, 62:6, 66:20
**consist** [1] - 77:11
**conspiracy** [12] - 8:5, 27:8, 27:9, 32:12, 33:25, 43:25, 45:3, 45:12, 45:20, 53:2, 74:13, 74:23
**constitutional** [4] - 6:9, 11:11, 13:18, 14:24
**constitutionality** [1] - 66:8
**consult** [2] - 4:10, 6:4
**contact** [2] - 73:4, 80:7
**contained** [1] - 34:11
**contents** [1] - 51:10
**continue** [3] - 37:8, 53:7, 53:9
**continued** [1] - 45:17

**contraband** [1] - 62:14
**contrary** [1] - 34:25
**control** [3] - 19:13, 24:13, 57:20
**controlling** [1] - 34:1
**controls** [2] - 30:7, 55:4
**conversely** [1] - 19:12
**converted** [2] - 32:13, 33:5
**converting** [6] - 29:11, 29:14, 29:22, 30:12, 31:13, 46:12
**convicted** [4] - 13:23, 52:24, 58:10, 58:14
**conviction** [3] - 13:24, 14:18, 16:13
**convictions** [2] - 53:15, 53:16
**cooperate** [2] - 61:18, 62:1
**cooperating** [1] - 54:18
**cooperation** [14] - 54:21, 57:2, 60:21, 61:17, 61:21, 62:3, 62:16, 62:23, 69:4, 75:1, 75:4, 77:10, 78:18, 78:24
**copies** [1] - 44:7
**copy** [5] - 10:21, 18:16, 44:14, 78:3, 80:21
**corp** [1] - 40:3
**corpus** [1] - 66:11
**correct** [27] - 3:24, 4:15, 8:6, 9:25, 21:3, 24:1, 24:20, 26:17, 28:23, 29:4, 31:23, 32:8, 33:12, 33:13, 33:21, 34:23, 34:24, 35:25, 39:3, 43:17, 56:2, 61:14, 64:5, 65:4, 67:1, 68:19, 68:22
**correctly** [1] - 64:14
**corresponding** [1] - 33:6
**cost** [2] - 16:24, 16:25
**Counsel** [4] - 9:13, 25:14, 48:16, 76:14
**counsel** [25] - 3:4, 5:20, 7:11, 10:17, 12:11, 16:15, 17:1, 21:23, 25:6, 41:18, 44:13, 52:11, 52:12, 55:5, 56:1, 62:23, 63:3, 63:4, 64:4, 66:15, 73:3, 74:9,

76:12, 77:6, 78:14
**count** [2] - 8:4, 46:15
**Count** [5] - 8:4, 69:19, 74:22, 80:15, 80:23
**countersign** [1] - 44:9
**country** [1] - 23:20
**couple** [1] - 72:10
**courier** [1] - 33:1
**course** [4] - 25:19, 26:3, 32:11, 51:15
**Court** [41] - 5:15, 8:13, 8:15, 12:11, 13:24, 15:23, 16:4, 16:6, 34:3, 43:8, 44:7, 44:14, 49:13, 49:18, 50:2, 50:4, 50:21, 51:3, 51:18, 52:12, 54:10, 54:25, 55:6, 55:9, 55:12, 55:13, 55:15, 55:16, 58:25, 59:21, 69:10, 71:13, 73:13, 73:25, 74:21, 75:7, 75:10, 75:19, 76:15
**COURT** [225] - 3:8, 3:11, 3:14, 3:18, 3:22, 4:1, 4:17, 4:22, 4:25, 5:9, 5:14, 8:2, 8:8, 8:25, 9:3, 9:5, 9:8, 9:10, 9:12, 9:16, 9:21, 10:1, 10:9, 10:14, 10:17, 10:21, 10:25, 11:2, 11:5, 11:10, 12:3, 12:5, 12:8, 12:22, 13:2, 13:6, 13:11, 13:22, 14:6, 14:13, 15:13, 15:18, 16:11, 16:19, 17:9, 17:13, 18:8, 18:14, 19:15, 19:18, 20:19, 20:22, 21:2, 21:5, 21:7, 21:22, 22:3, 22:25, 23:2, 23:8, 23:25, 24:2, 24:16, 24:21, 24:24, 25:4, 25:6, 25:11, 25:25, 26:2, 26:16, 27:6, 27:13, 28:7, 28:10, 28:21, 28:24, 29:2, 29:5, 30:16, 30:18, 30:23, 31:20, 31:23, 32:2, 32:7, 32:10, 33:11, 33:13, 33:19, 33:22, 34:13, 34:17, 34:21, 34:24, 35:4, 35:8, 35:13, 35:17, 35:21, 36:1, 36:11, 36:14, 36:18, 36:23, 36:25, 37:9, 37:12, 37:19, 38:2,

38:10, 38:13, 38:21, 38:25, 39:3, 39:6, 39:13, 39:16, 40:6, 40:13, 40:17, 40:22, 41:5, 41:9, 41:14, 41:18, 41:21, 42:8, 42:11, 42:19, 43:1, 43:9, 43:13, 43:18, 43:21, 44:1, 44:4, 44:8, 44:11, 44:15, 44:21, 45:9, 46:1, 46:6, 47:22, 48:9, 48:11, 48:20, 49:4, 49:7, 51:1, 54:1, 55:25, 56:4, 56:25, 57:8, 58:18, 60:7, 60:9, 60:12, 60:25, 61:12, 61:16, 62:13, 62:22, 63:9, 63:16, 63:25, 64:6, 64:8, 64:25, 65:7, 65:10, 66:2, 66:24, 67:3, 67:22, 68:17, 68:21, 69:8, 69:15, 70:4, 70:14, 71:8, 71:18, 72:7, 72:16, 73:2, 73:8, 73:11, 73:15, 73:19, 73:22, 74:2, 74:5, 74:8, 74:12, 74:16, 75:11, 75:14, 75:21, 75:24, 76:3, 76:5, 76:11, 76:14, 76:17, 76:21, 77:8, 77:13, 77:15, 77:20, 77:22, 77:24, 78:1, 78:5, 79:3, 79:7, 79:14, 79:20, 80:3, 80:8, 80:15, 81:2, 81:5

**court** [15] - 12:10, 13:24, 15:3, 16:22, 18:15, 18:16, 24:3, 34:5, 34:25, 35:2, 35:5, 35:20, 35:23, 78:19

**Court's** [2] - 44:18, 79:22

**courtroom** [3] - 12:19, 80:1, 80:5

**COURTROOM** [8] - 3:2, 5:5, 76:2, 76:20, 80:13, 80:20, 81:1, 81:4

**cover** [1] - 55:14

**covered** [1] - 72:14

**covering** [1] - 50:19

**created** [2] - 27:21, 32:16

**creates** [1] - 78:17

**credential** [1] - 26:7

**credentials** [6] - 24:6, 25:17, 26:5, 26:6, 26:7, 26:24

**credibility** [2] - 65:18, 65:21

**credit** [5] - 8:12, 50:10, 50:13, 50:15, 67:13

**credits** [1] - 57:18

**crime** [5] - 11:23, 50:3, 52:5, 52:7, 69:12

**Crimes** [1] - 20:5

**crimes** [4] - 20:10, 49:12, 64:9, 70:20

**Criminal** [3] - 3:2, 53:20, 54:2, 65:11, 80:22

**criminal** [13] - 21:16, 34:12, 51:13, 53:14, 53:15, 53:24, 59:2, 59:16, 63:17, 68:4, 70:17, 71:3, 71:4

**cross** [1] - 13:4

**cross-examine** [1] - 13:4

**crypto** [2] - 39:11, 40:4

**cryptocurrency** [5] - 39:22, 39:25, 40:25, 41:1, 69:12

**currencies** [2] - 24:7, 29:25

**currency** [27] - 18:11, 18:12, 18:19, 18:21, 19:4, 19:7, 19:9, 19:24, 23:6, 23:22, 24:14, 26:9, 26:12, 26:21, 27:5, 29:11, 29:14, 29:15, 31:13, 31:14, 33:5, 36:2, 37:25, 38:7, 39:19, 46:22

**custody** [2] - 24:13, 69:14

**customer** [9] - 19:11, 26:5, 26:6, 26:7, 26:11, 26:13, 28:6, 29:10, 38:18

**customer's** [1] - 19:11

**customers** [4] - 20:2, 20:16, 24:8, 39:22

**cut** [1] - 54:2

**cyberattack** [1] - 22:23

**cybercriminal** [1] - 32:18

**cybercriminals** [1] - 22:21

**cybersecurity** [1] -

22:21

# D

**D.C** [1] - 21:21

**daily** [1] - 30:1

**darknet** [6] - 26:22, 26:23, 28:2, 29:20, 31:10, 32:18

**data** [2] - 22:22, 34:8

**date** [7] - 9:3, 25:2, 75:8, 76:18, 76:23, 77:9, 77:20

**days** [2] - 16:20, 57:20

**deadline** [1] - 77:14

**deal** [2] - 52:14, 78:8

**debit** [3] - 32:13, 32:20, 33:8

**deceived** [1] - 36:8

**decentralized** [1] - 18:21

**deception** [1] - 42:19

**deceptions** [1] - 42:2

**decide** [5] - 54:18, 55:7, 56:5, 62:4, 64:20

**decided** [1] - 56:17

**decides** [1] - 66:17

**decision** [7] - 11:6, 12:18, 57:3, 71:12, 71:25, 74:10, 74:17

**declined** [1] - 37:14

**dedicated** [1] - 23:12

**deduct** [1] - 52:9

**deducted** [1] - 53:8

**deduction** [1] - 57:16

**deductions** [1] - 57:22

**deem** [1] - 63:12

**deemed** [1] - 14:23

**defeat** [2] - 23:23, 30:6

**defendant** [9] - 3:16, 3:21, 4:4, 5:3, 35:15, 80:1, 80:13, 80:21, 80:23

**DEFENDANT** [136] - 3:24, 4:24, 5:8, 5:13, 8:1, 8:24, 9:2, 9:4, 9:7, 9:9, 9:11, 9:20, 9:25, 10:5, 10:12, 10:16, 10:24, 11:1, 11:4, 11:8, 12:2, 12:4, 12:7, 12:21, 13:1, 13:5, 13:10, 13:21, 14:5, 14:12, 15:12, 15:17, 16:10, 16:18, 17:8, 17:12, 18:7, 19:17, 20:24, 21:24, 23:1, 24:1, 24:17, 24:23, 26:1,

26:17, 27:7, 28:9, 28:22, 29:1, 29:4, 30:17, 30:21, 31:22, 31:25, 32:6, 32:9, 33:12, 33:17, 33:21, 34:15, 34:19, 34:23, 35:1, 36:13, 36:17, 36:21, 36:24, 37:11, 37:20, 38:12, 38:23, 39:2, 39:5, 39:14, 40:10, 40:15, 40:19, 41:7, 41:16, 42:10, 42:18, 42:24, 43:11, 43:16, 49:3, 49:6, 50:25, 53:25, 55:24, 56:3, 56:24, 57:7, 58:17, 60:6, 60:8, 60:11, 60:24, 61:11, 61:15, 62:12, 62:20, 63:8, 63:15, 63:24, 64:5, 64:7, 64:24, 65:5, 65:9, 66:1, 66:23, 67:2, 67:21, 68:14, 68:20, 70:3, 70:13, 71:7, 71:17, 72:6, 72:14, 73:1, 73:7, 73:10, 73:14, 73:18, 73:21, 74:1, 74:4, 74:7, 74:11, 74:15, 76:10, 76:13, 80:25

**defendant's** [3] - 69:4, 69:6, 74:17

**defendants** [2] - 35:11, 46:17

**defense** [10] - 13:9, 44:13, 48:16, 64:9, 64:22, 68:25, 77:6, 77:7, 78:14, 79:18

**defense's** [1] - 69:9

**defer** [1] - 75:8

**deficit** [1] - 10:13

**defined** [3] - 20:14, 43:18, 45:24

**definitely** [1] - 11:9

**defraud** [3] - 22:7, 22:10, 27:9

**degree** [3] - 9:7, 68:3, 70:9

**deleted** [1] - 34:8

**deleting** [1] - 25:17

**deliberate** [1] - 12:15

**delivered** [1] - 32:23

**denied** [1] - 70:9

**deny** [1] - 59:7

**depart** [2] - 56:21, 57:5

**departed** [1] - 16:7

**Department** [4] - 20:6, 21:20, 42:6, 71:24

**department** [1] - 51:9

**departure** [11] - 54:13, 54:20, 54:22, 55:9, 57:2, 59:19, 70:21, 71:9, 71:12, 71:13

**departures** [3] - 54:9, 55:21, 56:19

**deposited** [3] - 33:5, 41:25, 43:7

**depositing** [1] - 31:9

**deposits** [1] - 40:25

**deprive** [1] - 57:24

**DEPUTY** [8] - 3:2, 5:5, 76:2, 76:20, 80:13, 80:20, 81:1, 81:4

**derived** [4] - 21:10, 21:12, 42:1, 47:20

**describe** [1] - 49:9

**described** [4] - 17:22, 43:4, 46:10, 48:5

**describing** [1] - 33:15

**designed** [6] - 27:11, 27:21, 30:6, 47:11, 47:15, 47:17

**Desktop** [1] - 23:12

**detail** [1] - 48:5

**detailed** [1] - 27:11

**details** [1] - 37:9

**detained** [1] - 61:13

**determination** [1] - 71:15

**determine** [5] - 11:22, 12:12, 12:16, 16:7, 25:18

**determined** [4] - 15:25, 16:3, 66:10, 75:9

**deterrence** [1] - 51:6

**developed** [1] - 26:21

**development** [1] - 40:1

**device** [3] - 34:10, 34:20

**devices** [1] - 34:8

**devised** [1] - 22:9

**difference** [1] - 58:6

**different** [8] - 46:14, 46:15, 48:3, 52:25, 59:21, 60:13, 65:19, 67:23

**differently** [6] - 5:19, 6:2, 6:18, 43:19, 49:10, 56:1

**differing** [1] - 56:9

**difficult** [2] - 6:13, 27:22

**digital** [2] - 18:12, 18:19

**diligence** [4] - 20:2, 29:10, 42:3, 43:6

**diminish** [1] - 52:8
**direct** [3] - 15:14, 16:19, 66:5
**directed** [2] - 45:7, 62:2
**directing** [1] - 62:2
**direction** [3] - 32:1, 32:7, 79:4
**directly** [1] - 42:1
**disclose** [1] - 35:14
**disclosed** [3] - 30:14, 34:1, 35:15
**disclosures** [1] - 65:2
**discover** [1] - 47:20
**discovered** [1] - 66:13
**discovery** [1] - 65:2
**discretion** [2] - 69:22, 71:22
**discuss** [6] - 6:2, 6:7, 6:9, 9:16, 11:5, 56:1
**discussed** [9] - 5:19, 10:8, 17:6, 17:11, 56:2, 56:20, 58:20, 68:8, 76:11
**discussion** [1] - 4:5
**discussions** [1] - 8:16
**disguise** [1] - 21:11
**disorder** [1] - 10:13
**dispose** [2] - 34:19, 34:22
**dispute** [14] - 17:22, 19:16, 20:20, 20:25, 21:6, 21:23, 21:25, 22:1, 25:8, 40:11, 41:14, 41:17, 41:20, 63:3
**disputes** [1] - 20:22
**disputing** [2] - 48:19, 48:22
**dissemination** [1] - 20:13
**dissipated** [2] - 43:5, 43:11
**distributed** [1] - 70:7
**District** [7] - 11:18, 12:10, 18:24, 34:3, 34:4, 42:7, 64:2
**disturbance** [1] - 10:11
**division** [1] - 20:6
**document** [1] - 32:21
**documents** [1] - 44:7
**dollar** [1] - 29:24
**Dollar** [1] - 46:14
**dollars** [1] - 50:21
**dollars'** [1] - 26:13
**done** [6] - 30:22, 34:18, 46:6, 68:10, 69:5, 69:6
**dormant** [1] - 27:17

**Dorothy** [3] - 76:1, 76:19, 80:15
**double** [2] - 50:19, 70:9
**doubt** [3] - 12:17, 48:13, 71:3
**down** [11] - 4:10, 5:10, 6:5, 10:6, 15:3, 16:22, 18:17, 34:10, 34:16, 53:23, 54:1
**downward** [5] - 54:13, 57:1, 59:19, 70:21
**draw** [1] - 26:25
**dropping** [1] - 25:13
**due** [4] - 20:2, 29:10, 42:3, 43:6
**during** [5] - 26:3, 32:23, 36:4, 62:16, 64:18

# E

**early** [5] - 22:8, 28:18, 38:1, 38:8, 39:11
**easier** [3] - 4:25, 48:17, 49:2
**Eastern** [1] - 33:4
**Eastern-European-based** [1] - 33:4
**edge** [1] - 79:24
**education** [2] - 9:6, 51:14
**effect** [1] - 9:24
**effective** [1] - 66:14
**efforts** [4] - 26:10, 28:15, 42:3, 42:20
**either** [12] - 6:6, 7:14, 15:4, 21:22, 50:3, 51:19, 54:11, 55:20, 59:20, 59:23, 60:13, 63:2
**element** [2] - 45:3, 47:7
**elements** [4] - 6:15, 44:25, 47:23, 48:12
**elsewhere** [1] - 18:25
**email** [3] - 37:5, 37:6, 39:8
**emotional** [1] - 10:10
**employed** [1] - 31:1
**employees** [2] - 37:15, 37:22
**end** [8] - 5:15, 6:14, 7:11, 7:17, 11:12, 41:3, 71:20, 79:21
**Endpass** [1] - 38:16
**Enforcement** [1] - 20:5
**enforcement** [8] - 20:7, 27:23, 30:15,

34:1, 61:19, 61:25, 62:24, 73:3
**engage** [5] - 26:6, 45:7, 45:17, 60:1, 70:17
**engaged** [2] - 26:19, 59:10
**engaging** [2] - 30:24, 46:12
**enhanced** [2] - 29:9, 31:14
**enhancement** [1] - 52:25
**enhancements** [2] - 52:6, 59:15
**enhancing** [1] - 29:15
**enlisted** [2] - 28:11, 45:13
**ensure** [1] - 48:6
**entails** [1] - 54:17
**entered** [1] - 16:21
**entering** [3] - 73:9, 74:2, 74:5
**ENZER** [17] - 3:15, 3:19, 9:14, 10:19, 20:21, 21:4, 21:6, 22:1, 25:8, 35:18, 41:20, 48:19, 69:9, 76:16, 77:7, 79:18, 79:21
**Enzer** [1] - 3:15
**equivalent** [1] - 19:8
**errors** [1] - 13:25
**especially** [1] - 47:14
**essence** [2] - 46:1, 65:22
**establish** [2] - 32:22, 36:6
**established** [2] - 37:4, 38:15
**establishing** [1] - 38:25
**estimate** [4] - 59:17, 59:20, 59:21, 75:4
**estimated** [2] - 26:12, 54:6
**et** [4] - 4:23, 20:18, 40:8, 57:18, 80:18
**European** [1] - 33:4
**eventually** [3] - 18:16, 45:16, 47:3
**evidence** [11] - 12:14, 12:18, 13:12, 13:14, 13:16, 17:14, 34:11, 44:25, 65:12, 66:14, 71:1
**evidenced** [1] - 45:5
**ex** [1] - 78:13
**exact** [2] - 24:18, 24:20

**exactly** [2] - 40:10, 56:8
**examine** [1] - 13:4
**examining** [1] - 21:15
**example** [1] - 34:7
**exams** [1] - 61:24
**except** [1] - 66:13
**exceptions** [1] - 16:1
**exchange** [8] - 23:7, 26:12, 29:19, 30:6, 33:4, 38:7, 46:22
**exchange's** [1] - 27:1
**exchange-to-exchange** [1] - 29:19
**exchanges** [8] - 19:24, 23:17, 26:9, 28:5, 29:16, 30:2, 30:3, 36:3
**excused** [2] - 80:10, 81:5
**execution** [1] - 60:1
**exercise** [2] - 19:13, 43:6
**exist** [1] - 43:15
**existence** [1] - 35:12
**expected** [1] - 61:17
**explain** [5] - 5:14, 5:19, 6:2, 7:16, 14:17
**explained** [2] - 17:5, 45:12
**explaining** [1] - 4:19
**explanation** [1] - 21:14
**explicit** [1] - 45:17
**explicitly** [1] - 28:19
**exploits** [1] - 22:18
**extension** [1] - 34:2
**extensive** [3] - 4:7, 44:22, 67:24
**extensively** [1] - 10:6
**extent** [2] - 20:1, 42:13
**extra** [1] - 44:7

# F

**facilitate** [1] - 21:16
**facing** [1] - 57:22
**fact** [9] - 7:10, 13:18, 39:22, 41:3, 47:6, 47:16, 47:20, 58:24, 68:8
**factors** [2] - 51:3, 51:4
**facts** [5] - 4:5, 6:15, 21:15, 48:13, 48:14
**factual** [2] - 51:20, 74:20
**failed** [2] - 34:2, 35:10
**fair** [2] - 12:12, 51:8

**fairly** [5] - 4:7, 7:4, 14:9, 18:15, 67:24
**fall** [1] - 14:21
**false** [8] - 7:24, 22:10, 36:2, 36:6, 36:7, 36:14, 36:22, 38:5
**falsely** [2] - 37:23, 39:9, 39:21
**far** [3] - 9:5, 39:14, 77:9
**favorably** [1] - 66:18
**February** [4] - 36:5, 37:13, 37:21, 38:14
**federal** [2] - 58:12, 58:13
**fees** [1] - 66:24
**felon** [2] - 58:10, 58:14
**felony** [3] - 11:15, 57:23, 58:4
**few** [1] - 54:10
**fiat** [3] - 29:11, 33:5, 33:6
**fictitious** [6] - 31:2, 31:16, 31:18, 32:4, 36:6, 36:15
**file** [10] - 16:20, 20:17, 54:19, 54:24, 55:8, 57:4, 60:21, 66:19, 71:13
**filed** [4] - 16:25, 55:5, 78:8, 79:8
**files** [1] - 25:18
**filing** [2] - 57:1, 70:21
**final** [2] - 66:12, 74:10
**finance** [1] - 40:1
**finances** [1] - 67:12
**financial** [27] - 19:23, 20:9, 20:12, 20:13, 20:14, 21:14, 21:16, 26:20, 29:10, 36:3, 36:8, 41:11, 42:4, 42:20, 42:22, 45:23, 45:24, 46:14, 47:25, 48:4, 49:17, 51:15, 51:16, 52:21, 62:15, 62:18, 69:3
**Financial** [1] - 20:5
**FinCEN** [8] - 19:21, 20:5, 20:17, 21:19, 21:21, 21:25, 41:13, 42:6
**FinCEN's** [1] - 20:8
**fine** [6] - 15:21, 17:17, 49:15, 54:6, 77:13, 79:14
**firearm** [2] - 58:9, 58:13
**firm** [1] - 75:4
**first** [9] - 11:14, 27:16,

88

45:3, 46:25, 76:25, 77:4, 78:10, 78:21, 79:2
**five** [1] - 31:12
**flow** [1] - 31:12
**fluctuates** [1] - 30:1
**Fog** [1] - 29:21
**follow** [6] - 61:6, 62:5, 63:20, 63:21, 70:15, 72:3
**followed** [1] - 67:15
**following** [5] - 25:15, 28:11, 29:6, 36:10, 50:3
**force** [1] - 57:4
**forced** [2] - 13:15, 73:8
**forego** [1] - 65:1
**foreign** [5] - 25:23, 32:14, 32:16, 70:10
**forfeit** [1] - 69:17
**forfeited** [1] - 68:9
**forfeiting** [1] - 68:15
**forfeiture** [17] - 8:9, 15:22, 43:23, 44:2, 49:24, 50:17, 67:15, 67:22, 67:25, 68:1, 68:2, 69:16, 69:23, 70:7, 70:11, 76:8
**forgotten** [1] - 77:2
**form** [6] - 6:15, 18:12, 18:19, 27:4, 76:1, 76:3
**forms** [2] - 31:13, 46:13
**formulated** [1] - 27:11
**forth** [1] - 47:13
**forums** [1] - 32:18
**forward** [4] - 51:23, 53:11, 65:17, 72:19
**four** [1] - 31:9
**fraction** [1] - 43:16
**frankly** [1] - 58:3
**fraud** [6] - 26:20, 46:19, 46:20, 48:6, 48:7
**fraudulent** [3] - 22:10, 28:17, 36:7
**fraudulently** [5] - 24:10, 26:10, 37:24, 39:9, 39:21
**free** [4] - 70:18, 70:23, 74:3, 74:19
**frequently** [1] - 22:20
**Friday** [1] - 77:24
**front** [5] - 4:23, 4:24, 14:11, 49:1, 50:14
**froze** [1] - 37:18
**frustrate** [2] - 42:3, 42:20

**full** [4] - 30:15, 57:15, 62:15, 69:22
**fully** [5] - 55:20, 61:18, 62:1, 63:10, 74:17
**fund** [2] - 31:12, 40:4
**funded** [1] - 38:24
**funds** [44] - 19:11, 19:12, 19:13, 21:10, 21:11, 24:8, 26:13, 26:14, 26:25, 27:16, 27:23, 27:24, 28:12, 28:15, 28:16, 29:11, 29:13, 29:22, 30:4, 30:12, 31:3, 31:5, 31:9, 31:11, 32:13, 33:6, 33:9, 39:11, 39:15, 41:3, 41:25, 42:2, 42:15, 42:16, 42:25, 45:14, 45:16, 45:25, 46:5, 47:12, 47:16, 47:18
**furtherance** [3] - 21:19, 29:7, 33:25
**future** [3] - 49:22, 63:5, 78:16

## G

**gain** [4] - 22:18, 47:3, 49:16, 49:17
**gained** [2] - 24:5, 25:19, 26:4
**gains** [1] - 68:3
**gallery** [1] - 79:25
**garbage** [2] - 34:10, 34:16
**garners** [1] - 52:25
**gateway** [1] - 23:14
**general** [3] - 40:18, 40:19, 51:2
**generally** [8] - 42:8, 42:10, 42:24, 51:11, 65:12, 76:23, 78:7, 78:13
**generated** [1] - 46:4
**gifted** [1] - 41:1
**given** [1] - 50:13
**glad** [1] - 79:16
**gleaned** [1] - 68:18
**gold** [3] - 30:13, 30:15, 30:21
**good-time** [1] - 57:18
**Gordon** [2] - 3:16, 3:21
**government** [35] - 3:5, 3:7, 6:11, 6:20, 8:15, 11:20, 12:16, 17:14, 18:21, 51:17, 52:11, 53:8, 54:15, 54:19, 54:23, 55:4, 56:10,

56:25, 59:7, 59:23, 60:17, 60:20, 61:7, 61:24, 62:7, 62:23, 63:19, 64:10, 68:15, 68:24, 69:11, 69:13, 69:22, 70:23, 77:23
**government's** [7] - 41:24, 48:12, 68:21, 70:18, 71:8, 73:13, 75:23
**government-administered** [1] - 61:24
**grand** [10] - 11:16, 11:17, 11:19, 11:25, 63:10, 66:25, 75:12, 75:19, 78:3
**grant** [3] - 54:25, 55:9, 71:14
**grateful** [1] - 79:23
**great** [1] - 78:8
**grounds** [1] - 57:5
**guaranteed** [1] - 73:6
**guess** [4] - 27:13, 37:9, 60:9, 68:3
**guideline** [6] - 16:3, 55:3, 55:17, 56:5, 56:18, 61:5
**guidelines** [15] - 7:16, 16:6, 50:7, 51:19, 51:25, 54:8, 54:12, 55:2, 55:10, 55:14, 55:16, 55:19, 59:6, 60:3, 66:17
**guilt** [3] - 12:18, 13:16, 13:18
**guilty** [29] - 6:17, 11:6, 12:9, 14:20, 15:4, 15:9, 17:3, 17:4, 17:9, 53:9, 57:24, 58:22, 59:4, 59:10, 62:9, 70:19, 73:1, 73:5, 73:9, 73:16, 73:20, 74:2, 74:5, 74:6, 74:14, 74:15, 74:22, 80:25

## H

**habeas** [1] - 66:11
**hack** [31] - 24:13, 25:2, 25:15, 25:20, 26:4, 26:18, 28:11, 28:18, 28:20, 29:2, 36:9, 38:8, 38:20, 38:24, 40:20, 41:3, 41:8, 41:24, 42:15, 46:1, 46:3, 46:4, 46:6, 46:9, 46:21, 46:24, 47:4, 47:7, 47:17, 47:21, 47:24

**hacked** [1] - 42:17
**hacking** [2] - 22:17, 26:19
**hand** [3] - 5:6, 76:17, 76:22
**handed** [1] - 32:25
**happy** [1] - 75:8
**hard** [1] - 4:2
**hardship** [1] - 52:21
**head** [1] - 21:4
**headquartered** [1] - 21:21
**hear** [4] - 4:11, 5:25, 6:5, 48:18
**heard** [1] - 73:23
**hearing** [1] - 78:4
**heartburn** [1] - 9:20
**held** [4] - 24:7, 33:24, 50:12, 50:13
**Helix** [1] - 29:21
**help** [4] - 14:2, 28:12, 45:13, 68:15
**helpful** [1] - 44:24
**hide** [1] - 21:11
**high** [1] - 30:2
**higher** [4] - 13:24, 15:3, 16:22
**highest** [1] - 9:6
**history** [6] - 31:12, 51:13, 51:14, 53:15, 53:24, 59:16
**History** [2] - 53:21, 54:2
**hold** [2] - 13:19, 58:1
**holders** [1] - 37:15
**holding** [1] - 29:25
**Honor** [80] - 3:6, 3:9, 3:12, 3:15, 3:20, 4:15, 4:21, 8:1, 8:7, 9:14, 10:19, 10:24, 12:2, 12:21, 16:10, 18:9, 18:18, 19:17, 20:21, 21:6, 22:2, 22:6, 23:4, 24:1, 24:17, 25:1, 25:5, 25:8, 26:17, 27:15, 28:9, 30:17, 31:22, 31:25, 33:12, 33:17, 34:15, 35:1, 35:3, 35:16, 35:18, 36:17, 37:2, 37:11, 37:20, 38:4, 38:12, 40:21, 42:18, 43:11, 43:20, 44:3, 44:10, 44:13, 45:2, 45:11, 46:3, 46:8, 48:8, 48:10, 49:6, 50:25, 53:25, 55:24, 60:6, 62:12, 62:20, 66:23, 67:21, 68:23, 69:9, 70:3,

72:14, 75:3, 75:18, 75:22, 76:16, 79:1, 79:12, 79:18
**hopping** [1] - 31:15
**hosted** [2] - 19:9, 19:10
**hours** [1] - 9:18
**hundred** [2] - 26:13, 50:21
**husband** [1] - 40:25
**Hydra** [1] - 28:3

## I

**idea** [3] - 7:19, 55:14, 77:10
**identified** [2] - 22:14, 23:5
**identify** [3] - 3:4, 19:2, 61:20
**identifying** [4] - 20:15, 36:6, 36:15, 37:16
**identities** [5] - 20:16, 31:3, 31:16, 31:18, 32:4
**identity** [1] - 32:21
**ignore** [1] - 71:18
**ill** [1] - 68:3
**ill-gotten** [1] - 68:3
**illegal** [11] - 21:10, 21:12, 36:9, 41:23, 45:15, 46:7, 46:18, 47:25, 48:6, 49:22
**illicit** [4] - 20:9, 26:22, 27:12, 30:6
**illicitly** [1] - 27:3
**illness** [1] - 10:10
**illustrated** [1] - 47:14
**Ilya** [4] - 3:3, 74:12, 74:13, 74:22
**immediately** [1] - 68:10
**immigration** [2] - 9:13, 9:17
**impact** [1] - 63:6
**impartial** [1] - 12:12
**impeach** [2] - 65:17, 65:20
**impeachment** [1] - 65:24
**implementation** [1] - 20:7
**implementing** [1] - 19:22
**important** [2] - 50:8, 70:4
**impose** [7] - 49:13, 50:2, 56:18, 61:5, 61:7, 73:20, 73:23
**imposed** [1] - 50:6

**imprisonment** [1] - 15:21
**incarceration** [3] - 8:13, 49:15, 54:4
**incentive** [1] - 68:25
**include** [4] - 19:7, 57:25, 61:21, 61:22
**included** [1] - 32:20
**includes** [1] - 45:25
**including** [18] - 14:18, 15:21, 18:24, 19:23, 20:10, 23:10, 23:15, 24:7, 25:16, 26:20, 26:22, 28:3, 30:10, 31:1, 31:14, 36:10, 62:8, 73:2
**incriminate** [1] - 13:15
**inculpatory** [1] - 34:11
**independent** [1] - 19:13
**India** [1] - 37:6
**India-based** [1] - 37:6
**indicate** [4] - 28:25, 54:20, 58:19, 67:9
**indicated** [2] - 59:1, 68:6
**indicates** [4] - 61:12, 61:17, 72:16, 78:16
**indicating** [2] - 54:24, 60:19
**indicted** [2] - 11:15, 11:22
**indictment** [7] - 11:17, 12:1, 41:10, 75:13, 75:14, 75:19, 78:2
**indirectly** [1] - 42:1
**individual** [2] - 19:5, 63:5
**individuals** [2] - 11:17, 19:2
**ineffective** [1] - 16:15
**infer** [1] - 13:17
**information** [24] - 6:8, 8:3, 9:1, 10:22, 11:15, 17:24, 20:15, 28:6, 36:6, 36:15, 37:17, 51:5, 51:12, 51:13, 51:20, 55:6, 55:19, 65:2, 67:11, 67:12, 78:9, 78:14, 80:21
**infrastructure** [1] - 22:13
**innocence** [1] - 12:18
**input** [1] - 28:4
**inquiries** [2] - 37:14, 37:22
**inquiry** [1] - 39:18
**insist** [1] - 55:6
**insofar** [2] - 14:16,

15:1
**instant** [1] - 33:4
**instead** [1] - 66:5
**institution** [2] - 21:14, 21:16
**institutional** [1] - 39:20
**institutions** [10] - 19:23, 20:14, 29:10, 36:3, 36:8, 41:11, 42:4, 42:20, 46:15, 48:3
**instructed** [1] - 12:15
**instructions** [1] - 12:15
**intelligence** [1] - 20:13
**intended** [1] - 21:11
**intent** [1] - 47:10
**intention** [1] - 68:22
**interacted** [1] - 39:19
**interest** [2] - 26:21, 69:18
**interested** [1] - 54:12
**interface** [1] - 26:25
**intermediate** [2] - 23:13, 29:18
**internet** [6] - 18:20, 18:23, 23:10, 23:14, 23:16, 25:23
**interpreted** [1] - 68:11
**interrupt** [1] - 77:25
**interstate** [1] - 25:22
**interviewed** [1] - 62:17
**investigators** [1] - 25:18
**investing** [2] - 39:10, 40:8
**investment** [3] - 38:1, 38:8
**involve** [3] - 21:10, 21:15, 47:6
**involved** [8] - 8:8, 19:3, 43:24, 46:17, 48:5, 53:16, 63:18, 69:18
**involves** [2] - 45:23, 52:19
**involving** [2] - 24:7, 46:9
**issue** [3] - 14:6, 66:9, 78:20
**issued** [2] - 34:3, 35:6
**issues** [5] - 10:17, 16:16, 51:14, 51:15, 76:14
**it'll** [2] - 49:1, 70:25
**itself** [1] - 4:13

**J**

**jail** [4] - 49:18, 57:10, 57:12, 57:14
**January** [2] - 27:17, 39:7
**Jessica** [1] - 3:12
**job** [1] - 51:14
**judges** [1] - 13:25
**judges'** [1] - 52:2
**judgment** [3] - 16:20, 67:25, 70:11
**judgments** [1] - 66:12
**July** [1] - 40:23
**June** [1] - 39:17
**jurisdiction** [1] - 43:8
**jurors** [2] - 11:19, 11:20
**jury** [15] - 11:16, 11:17, 11:25, 12:9, 12:14, 12:15, 12:20, 13:17, 58:2, 63:10, 66:25, 75:12, 75:19, 78:3
**justice** [3] - 56:20, 59:9, 59:12
**Justice** [2] - 70:6, 71:24
**juvenile** [1] - 26:20

**K**

**Kazakhstan** [2] - 32:24, 33:14
**keep** [2] - 25:14, 42:14
**keeping** [1] - 41:2
**keys** [3] - 24:6, 24:9, 69:11
**kind** [6] - 9:18, 42:22, 45:22, 49:22, 52:3, 58:9
**kinds** [1] - 51:7
**knowing** [3] - 22:9, 28:16, 48:4
**knowingly** [1] - 5:16
**knowledge** [5] - 28:23, 45:14, 46:23, 46:25, 47:1
**known** [3] - 21:17, 22:18, 31:15
**knows** [2] - 21:14, 77:1
**KYC** [5] - 28:6, 29:17, 30:5, 39:8, 42:3
**KYC-verified** [1] - 30:5

**L**

**large** [3] - 23:6, 27:25, 30:4
**larger** [1] - 31:5

**last** [4] - 9:18, 32:2, 58:9, 72:20
**late** [3] - 22:8, 23:19, 79:10
**latter** [1] - 28:24
**launder** [5] - 30:3, 36:9, 38:19, 41:23, 42:14
**laundered** [1] - 29:13
**laundering** [22] - 8:4, 20:3, 20:10, 27:8, 28:12, 29:7, 31:1, 31:7, 31:19, 43:25, 45:4, 45:18, 45:21, 45:22, 45:23, 47:8, 52:23, 53:1, 70:6, 74:13, 74:22, 80:23
**law** [1] - 14:16, 15:2, 15:15, 27:23, 30:15, 34:1, 58:13, 61:19, 61:25, 62:24, 73:3
**lawful** [4] - 15:5, 15:6, 21:13, 61:8
**lawyer** [8] - 6:4, 10:4, 13:3, 14:2, 57:3, 65:6, 73:12, 73:13
**lawyers** [2] - 10:7, 73:24
**layering** [3] - 31:9, 46:14, 48:3
**lead** [1] - 25:18
**learned** [1] - 33:24
**least** [6] - 11:20, 46:25, 52:21, 54:3, 55:8, 58:11
**leave** [2] - 4:3, 80:3
**ledger** [2] - 18:22, 19:1
**left** [4] - 3:17, 27:16, 53:23, 70:10
**legal** [2] - 35:6, 35:12
**legitimatize** [1] - 31:16
**legitimize** [1] - 31:19
**length** [1] - 53:16
**less** [2] - 26:19, 56:19, 77:9
**letter** [13] - 5:21, 7:3, 8:16, 10:3, 14:6, 48:25, 49:9, 49:10, 56:9, 58:18, 59:22, 60:18, 73:17
**letters** [1] - 19:1
**level** [2] - 9:6, 53:13
**Lichtenstein** [80] - 3:3, 3:17, 3:23, 3:24, 4:22, 18:3, 19:15, 20:19, 22:9, 22:11, 22:14, 22:17, 22:19, 23:9, 23:19, 23:21,

23:22, 24:5, 24:9, 25:15, 25:20, 26:4, 26:6, 26:10, 26:14, 26:19, 26:21, 26:24, 27:1, 27:3, 27:10, 27:16, 27:18, 27:24, 28:11, 28:14, 28:19, 30:25, 31:17, 32:12, 32:19, 32:23, 33:3, 33:7, 33:9, 33:23, 33:25, 34:4, 34:6, 34:8, 34:9, 35:19, 35:24, 36:5, 36:19, 37:4, 37:7, 37:14, 37:23, 38:15, 38:19, 39:8, 41:23, 42:2, 43:3, 43:22, 45:9, 45:13, 46:23, 47:19, 48:14, 48:23, 69:10, 74:13, 74:22, 76:7, 79:24
**Lichtenstein's** [4] - 24:13, 28:13, 30:9, 45:6
**lied** [1] - 36:7
**lighter** [1] - 73:6
**likely** [1] - 54:14
**limit** [2] - 64:12, 65:12
**limitations** [4] - 64:8, 64:15, 64:20, 64:21
**limited** [5] - 14:19, 15:21, 17:6, 31:2, 65:23
**limits** [2] - 30:2, 55:13
**lines** [1] - 79:12
**linked** [2] - 28:1, 32:13
**listed** [4] - 19:1, 43:23, 67:24, 67:25
**listen** [3] - 12:14, 13:25, 49:11
**listing** [1] - 44:19
**litigation** [1] - 60:15
**live** [2] - 58:3, 58:7
**LLC** [1] - 40:2
**located** [5] - 22:13, 25:20, 25:24, 26:24, 43:5
**location** [2] - 30:14, 47:13
**locked** [2] - 8:12, 10:15
**log** [2] - 25:18, 26:8
**login** [1] - 26:5
**look** [7] - 10:23, 49:10, 53:16, 53:23, 54:1, 56:8, 76:8
**looked** [1] - 21:3
**looking** [4] - 63:11, 75:17, 76:23, 77:16
**loss** [3] - 49:16, 49:17,

68:2
lower [2] - 71:2, 71:5

## M

majority [1] - 41:25
mandated [1] - 42:5
mandatory [7] - 4:14,
4:16, 50:16, 55:11,
67:4, 70:22, 71:19
manner [4] - 15:24,
34:21, 66:10, 68:24
March [1] - 37:13
market [1] - 25:2
marketplace [1] -
23:13
marketplaces [2] -
23:16, 28:3
markets [5] - 26:22,
26:23, 29:20, 31:10,
32:18
marshal [2] - 79:22,
79:23
MARSHAL [1] - 80:7
Marshals [1] - 80:3
mask [3] - 4:2, 5:11,
48:17
materially [1] - 22:10
matters [1] - 62:4
maximize [1] - 68:25
maximum [8] - 16:2,
16:5, 49:12, 49:14,
49:15, 50:1, 58:23,
61:9
mean [7] - 6:10, 7:10,
15:5, 20:24, 28:22,
42:24, 43:12
means [12] - 8:19,
14:15, 15:19, 22:10,
23:10, 25:22, 29:24,
45:25, 52:22, 64:4,
66:6, 78:15
meantime [1] - 18:17
measures [1] - 23:24
medical [1] - 51:14
medication [3] - 9:19,
9:20, 9:24
meet [2] - 48:13, 63:1
meeting [4] - 6:3,
33:1, 45:18, 62:23
meetings [1] - 63:5
meets [1] - 54:3
mental [1] - 10:10
microphone [1] - 4:6
might [5] - 25:18,
59:15, 69:19, 79:16
million [5] - 24:15,
24:22, 24:24, 25:10,
52:20
mind [3] - 9:23, 63:2,

72:23
minds [2] - 6:3, 45:19
minimum [2] - 4:14,
4:16
minimums [2] - 70:22,
71:19
mining [2] - 39:10,
40:8
minus [1] - 53:4
minute [2] - 14:17,
51:20
misleading [1] - 38:5
misrepresenting [1] -
39:14
mission [2] - 20:8,
21:19
misunderstanding [1]
- 7:13
mixers [1] - 28:5
moment [1] - 20:21
Monero [2] - 29:14,
46:13
money [22] - 8:4,
19:25, 20:3, 20:9,
27:8, 29:7, 31:1,
32:15, 33:15, 43:24,
45:3, 45:21, 45:22,
45:23, 47:7, 48:3,
52:23, 67:25, 70:6,
74:13, 74:22, 80:23
monies [1] - 70:7
monitor [1] - 78:22
months [5] - 11:8,
54:4, 54:5, 72:10,
72:22
Morgan [36] - 8:6,
8:20, 28:12, 28:19,
29:2, 30:13, 30:19,
31:17, 31:23, 32:24,
33:7, 33:9, 33:13,
33:24, 34:6, 34:9,
34:19, 36:5, 36:15,
36:19, 38:19, 39:3,
39:20, 39:24, 40:14,
40:23, 41:5, 41:23,
42:13, 45:7, 45:9,
46:24, 47:19, 58:24,
80:1, 81:3
Morgan's [9] - 28:12,
28:22, 30:9, 30:25,
32:12, 38:16, 42:2,
45:13, 78:4
morning [11] - 3:6,
3:8, 3:9, 3:11, 3:12,
3:14, 3:15, 3:18,
3:20, 3:22, 3:25
Moscow [1] - 9:11
most [5] - 49:12,
54:12, 54:14, 64:9,
68:18

motion [9] - 54:24,
54:25, 55:5, 57:1,
57:4, 60:21, 66:13,
66:19, 71:13
move [11] - 19:18,
27:13, 27:18, 30:23,
32:10, 33:22, 36:25,
37:12, 38:13, 59:9,
78:19
moved [1] - 27:24
movement [1] - 45:25
movies [1] - 57:9
moving [11] - 15:18,
26:2, 28:10, 29:5,
31:3, 31:5, 48:15,
60:25, 66:4, 66:7,
69:21
mules [1] - 32:15
multiple [6] - 27:20,
28:2, 28:3, 30:3,
33:9, 37:4
must [1] - 64:10

## N

name [2] - 23:3, 23:6
named [1] - 29:14
names [3] - 30:9, 37:6
narrow [1] - 54:10
national [1] - 20:11
nature [2] - 52:7,
74:18
near [1] - 71:20
necessarily [2] - 16:4,
20:23
need [18] - 4:10, 4:19,
4:20, 5:3, 6:2, 6:3,
6:25, 9:12, 9:16,
25:14, 44:9, 49:10,
58:21, 63:3, 64:13,
67:11, 67:17, 72:13
needed [2] - 48:21,
69:11
needs [5] - 5:15,
48:16, 51:6, 68:15,
76:15
negative [2] - 43:14,
63:6
negotiations [1] -
73:12
network [3] - 23:11,
23:17, 23:24
Network [1] - 20:5
never [1] - 58:4
New [2] - 33:18, 33:20
new [7] - 39:20, 40:1,
40:5, 50:3, 50:5,
50:10, 71:4
newly [1] - 66:13
next [8] - 19:19, 27:13,

27:24, 37:12, 38:13,
65:10, 78:5, 79:10
night [1] - 23:19
nobody [1] - 78:18
nonbinding [1] - 70:5
nondisclosure [2] -
34:3, 35:5
nontransparent [1] -
29:16
nothing [2] - 63:16,
78:23
notice [4] - 34:6,
42:14, 42:21, 53:10
noticed [1] - 4:12
notified [2] - 34:4,
35:11
notwithstanding [1] -
16:11
November [7] - 33:23,
77:17, 77:18, 77:20,
77:21, 77:22, 79:2
null [1] - 64:17
number [4] - 22:17,
27:21, 45:23, 52:5
numbers [4] - 19:2,
19:8, 52:4, 53:23
numerous [6] - 23:24,
28:2, 29:8, 30:3,
31:1, 32:19

## O

O'SHEA [1] - 3:20
O'Shea [1] - 3:20
oath [3] - 5:3, 7:21,
7:22
Oath [1] - 5:7
obfuscate [1] - 47:16
obfuscates [1] - 31:11
object [2] - 45:20,
51:18
objection [1] - 77:7
objections [2] - 51:22,
52:15
obligation [2] - 21:8,
35:10
obligations [8] - 61:2,
62:7, 62:10, 63:20,
63:22, 70:14, 70:18,
71:9
obscure [1] - 28:15
obstruct [1] - 56:20
obstruction [2] - 59:9,
59:12
obtained [2] - 26:11,
27:3, 43:4, 70:7
obviously [5] - 8:12,
16:21, 46:23, 63:18,
71:2
occasionally [1] - 7:6

occurred [1] - 59:25
October [1] - 77:16
offense [24] - 4:8,
6:11, 6:16, 6:19,
10:2, 17:16, 23:5,
45:1, 45:21, 46:21,
47:9, 48:12, 51:5,
51:11, 52:18, 52:19,
53:12, 57:23, 58:15,
59:2, 64:11, 69:19,
71:4
offenses [4] - 4:16,
6:16, 43:4, 52:3
offered [1] - 32:17
offering [1] - 30:6
office [2] - 58:1, 72:16
Office [3] - 61:19,
67:10, 71:25
official [1] - 52:13,
56:7
old [2] - 9:1, 9:2
once [3] - 31:5, 51:21,
54:9
one [49] - 4:9, 4:12,
5:3, 5:12, 6:21, 6:22,
8:4, 8:19, 12:24,
14:2, 14:3, 17:2,
20:21, 23:2, 24:24,
27:13, 33:10, 35:9,
37:12, 38:13, 42:2,
42:19, 44:11, 45:23,
46:24, 48:22, 48:25,
49:21, 50:19, 52:13,
52:14, 52:21, 55:11,
56:7, 59:3, 59:17,
61:8, 65:1, 75:11,
75:16, 76:25, 77:5,
78:6, 78:10, 78:21,
79:10, 79:18
ones [3] - 11:21, 62:2,
71:14
online [2] - 22:12,
23:15
open [1] - 78:19
opened [1] - 30:8
operate [1] - 20:1
operating [1] - 23:20
opportunity [6] -
10:23, 51:18, 56:1,
56:11, 76:9
opposed [2] - 4:6,
31:4
orally [1] - 72:12
order [17] - 30:3, 34:3,
34:5, 34:25, 35:2,
35:5, 35:6, 35:11,
35:14, 35:20, 35:24,
43:23, 44:1, 48:6,
68:10, 69:16, 76:8
ordinarily [1] - 62:24

**origin** [2] - 28:13, 47:13
**original** [3] - 48:7, 50:9, 52:19
**otherwise** [4] - 4:2, 19:2, 28:1, 60:16
**outside** [6] - 22:15, 24:12, 25:24, 55:15, 55:19, 61:5
**oversight** [1] - 75:22
**owe** [1] - 67:8
**own** [8] - 13:7, 13:13, 13:16, 37:25, 39:25, 57:17, 74:3, 74:19
**owned** [1] - 39:1
**owner** [1] - 40:4
**ownership** [1] - 37:17

**P**

**package** [1] - 44:6
**packages** [2] - 32:23, 32:24
**packets** [1] - 23:17
**page** [14] - 14:8, 58:19, 58:22, 58:23, 59:5, 59:16, 60:12, 60:25, 61:16, 65:7, 66:4, 68:7, 69:21, 70:15
**pages** [1] - 49:1
**papers** [1] - 74:25
**paperwork** [2] - 4:23, 80:8
**paragraph** [14] - 6:19, 18:10, 18:12, 22:4, 23:5, 31:20, 36:1, 45:12, 46:11, 47:8, 58:20, 61:16, 65:10, 68:7
**paragraphs** [10] - 17:21, 18:2, 19:19, 21:23, 22:1, 28:7, 45:5, 47:14, 47:24
**parole** [4] - 57:8, 57:9, 57:10, 57:13
**paroled** [1] - 57:13
**part** [16] - 7:11, 8:11, 20:1, 37:23, 47:12, 50:8, 55:21, 57:11, 57:12, 62:13, 62:22, 66:19, 67:17, 72:10, 72:20, 75:23
**parte** [1] - 78:13
**participated** [1] - 28:14
**particular** [10] - 45:5, 48:15, 49:14, 49:23, 50:12, 52:5, 52:6, 52:24, 64:15, 68:11

**particularly** [2] - 5:21, 7:7
**parties** [6] - 8:17, 19:9, 37:6, 60:13, 80:10, 81:5
**parts** [1] - 28:24
**party** [3] - 19:10, 43:7, 59:18
**pass** [1] - 40:3
**pass-through** [1] - 40:3
**path** [1] - 27:22
**pay** [5] - 16:24, 39:22, 49:23, 50:19, 50:22
**PayCoin** [1] - 27:4
**paying** [3] - 49:24, 49:25, 70:9
**payment** [1] - 50:19
**payments** [6] - 38:17, 38:18, 67:5, 67:9, 67:10
**PECK** [1] - 3:12
**Peck** [1] - 3:12
**pecuniary** [1] - 49:16
**pegged** [1] - 29:23
**PELKER** [1] - 3:9
**Pelker** [1] - 3:9
**penalties** [3] - 7:15, 49:8, 50:24
**penalty** [2] - 49:12, 49:14
**pending** [1] - 10:22
**penetration** [1] - 22:20
**people** [3] - 45:4, 45:19, 80:7
**per** [2] - 33:9, 33:10
**perceived** [1] - 27:12
**perhaps** [2] - 49:9, 50:18
**period** [15] - 31:8, 36:4, 49:18, 49:19, 50:9, 50:13, 58:5, 62:16, 64:10, 64:11, 64:18, 74:25, 75:3, 78:20
**perjury** [1] - 7:23
**permission** [1] - 79:22
**permitted** [2] - 14:16, 15:2
**person** [5] - 11:24, 32:16, 45:12, 80:2, 80:5
**personal** [3] - 39:25, 40:4, 51:13
**personally** [1] - 43:4
**perspective** [4] - 41:19, 50:8, 54:17, 69:10
**phase** [1] - 26:4

**phone** [4] - 10:8, 32:22, 56:13, 56:15
**physical** [1] - 51:15
**physically** [1] - 22:13
**pick** [1] - 76:18
**piece** [1] - 53:15
**place** [5] - 20:3, 31:8, 33:1, 64:19, 75:1
**placed** [2] - 7:21, 43:7
**places** [2] - 58:3, 58:5
**plan** [1] - 27:11
**plans** [1] - 78:16
**platforms** [5] - 20:18, 27:20, 32:20, 33:4
**plea** [37] - 4:8, 4:12, 5:16, 5:21, 6:8, 7:18, 8:11, 8:16, 8:20, 8:21, 10:3, 14:6, 17:4, 56:9, 57:24, 59:10, 60:18, 61:4, 62:9, 63:19, 63:21, 64:17, 64:19, 65:14, 69:5, 70:16, 70:19, 72:20, 73:9, 73:16, 73:20, 74:2, 74:5, 74:20, 74:21, 78:4
**plead** [9] - 8:20, 8:21, 12:8, 17:3, 17:9, 58:25, 73:1, 74:13, 80:24
**pleading** [13] - 6:17, 8:3, 8:6, 11:6, 11:14, 14:20, 15:4, 15:9, 53:9, 57:23, 58:22, 59:4, 73:5
**pleadings** [1] - 4:23
**pleas** [1] - 58:25
**point** [30] - 5:11, 9:23, 15:1, 15:3, 15:8, 15:14, 16:22, 17:13, 21:19, 22:4, 37:10, 41:6, 44:24, 49:8, 50:2, 53:10, 53:12, 54:4, 57:14, 58:11, 64:16, 64:21, 66:6, 66:17, 67:8, 68:18, 74:24, 75:7, 76:25
**points** [9] - 52:19, 52:20, 52:22, 52:23, 52:25, 53:2, 53:4, 53:5, 53:7
**policies** [1] - 37:23
**polygraph** [1] - 61:24
**pool** [1] - 11:18
**portion** [3] - 27:18, 29:22, 30:12
**position** [1] - 16:8
**possess** [2] - 58:9, 58:13
**post** [1] - 60:15

**post-sentencing** [1] - 60:15
**posted** [1] - 18:22
**practice** [2] - 31:14, 76:24
**practitioners** [1] - 22:21
**prearranged** [1] - 33:1
**predominantly** [1] - 40:14
**preexisting** [1] - 30:5
**preliminary** [2] - 69:16, 76:7
**prepare** [2] - 14:2, 51:9
**preparing** [1] - 53:11
**preponderance** [1] - 71:1
**present** [8] - 13:7, 13:12, 13:14, 13:16, 14:23, 62:25, 63:2, 63:5
**presented** [5] - 11:16, 12:14, 12:19, 17:15, 56:2
**presentence** [3] - 51:9, 52:14, 56:6
**presents** [1] - 11:21
**preserve** [1] - 68:10
**presumably** [3] - 68:10, 68:17, 70:4
**pretenses** [1] - 22:11
**pretty** [1] - 10:6
**prevailing** [1] - 25:2
**prevent** [2] - 42:5, 42:20
**price** [4] - 24:18, 25:2, 29:24, 30:1
**primary** [1] - 38:17
**printed** [1] - 78:3
**printing** [2] - 76:19, 76:21
**Prisons** [3] - 57:17, 57:19, 60:16
**probable** [2] - 11:23, 71:4
**probation** [6] - 51:9, 52:13, 53:20, 56:6, 59:20, 73:24
**problem** [9] - 4:4, 4:8, 5:23, 6:6, 7:2, 7:14, 76:24, 77:4, 78:11
**problems** [2] - 78:18, 79:16
**Procedure** [1] - 65:11
**procedures** [1] - 67:18
**proceed** [5] - 5:2, 22:3, 25:13, 39:6, 64:20
**proceeding** [2] -

72:20, 79:21
**Proceedings** [1] - 81:6
**proceedings** [1] - 67:1
**proceeds** [25] - 28:14, 36:9, 38:7, 38:20, 38:24, 40:20, 41:3, 41:8, 41:23, 42:15, 43:3, 43:16, 43:24, 46:4, 46:7, 46:9, 46:18, 47:1, 47:4, 47:6, 47:25, 48:5, 62:14, 68:4, 69:12
**process** [8] - 7:19, 10:1, 10:4, 11:17, 34:2, 35:6, 35:12, 51:2
**proffer** [1] - 48:12
**profiles** [1] - 30:6
**profit** [1] - 68:18
**program** [4] - 71:24, 72:2, 72:3
**programming** [1] - 26:25
**programs** [2] - 20:3, 31:6
**projects** [1] - 40:5
**promised** [1] - 73:5
**promises** [3] - 22:11, 73:15, 73:19
**promote** [1] - 20:11
**properties** [3] - 43:23, 44:20, 67:23
**property** [3] - 43:24, 46:13, 69:18
**prosecuted** [1] - 7:23
**prosecutions** [1] - 70:20
**prosecutor** [1] - 73:3
**protection** [1] - 71:21
**Protocol** [1] - 23:12
**protocol** [1] - 23:16
**proved** [1] - 12:16
**provide** [5] - 23:21, 37:16, 55:6, 67:11, 71:11
**provided** [7] - 44:6, 44:14, 54:21, 60:22, 65:3, 69:11, 78:14
**provider** [6] - 34:1, 35:7, 35:9, 35:13, 35:23, 37:6
**provides** [1] - 22:22
**providing** [4] - 42:21, 53:10, 54:15, 61:23
**proving** [1] - 70:25
**provision** [1] - 69:2
**proxies** [1] - 23:15
**proxy** [2] - 23:13, 23:18

**psychology** [1] - 9:9
**public** [4] - 18:22, 18:25, 33:1, 58:1
**punishment** [1] - 51:6
**purchased** [4] - 23:12, 30:5, 32:20, 33:8
**purpose** [4] - 21:13, 42:2, 42:19, 42:25
**push** [2] - 4:10, 6:5
**putting** [2] - 44:25, 48:2

**Q**

**qualify** [1] - 19:25
**quantity** [1] - 24:19
**questions** [13] - 5:12, 5:15, 7:17, 7:22, 12:11, 48:24, 55:23, 58:16, 60:5, 60:9, 60:10, 60:11, 61:22
**quicker** [1] - 76:6
**quickly** [1] - 76:8
**quite** [1] - 44:21
**quote** [7] - 20:8, 39:10, 39:21, 39:24, 40:9, 40:25, 41:3
**quotes** [1] - 40:7

**R**

**raise** [3] - 5:5, 16:15, 64:22
**raising** [1] - 64:9
**ran** [1] - 64:20
**range** [5] - 16:3, 16:7, 54:6, 55:3, 56:5
**ratings** [1] - 67:13
**RDP** [1] - 23:12
**reached** [2] - 8:17, 73:11
**read** [8] - 6:12, 6:20, 10:3, 10:5, 10:25, 11:1, 49:4, 76:9
**ready** [1] - 19:11
**real** [1] - 44:19
**realize** [1] - 17:19
**really** [2] - 20:25, 72:21
**reason** [6] - 20:19, 35:10, 41:14, 56:21, 65:15, 80:17
**reasonable** [6] - 12:17, 21:14, 48:13, 51:8, 68:24, 71:3
**receipt** [1] - 34:6
**receive** [3] - 35:1, 57:14, 66:14
**received** [2] - 10:9, 80:21

**receiving** [1] - 40:20
**recharge** [1] - 64:20
**recommend** [3] - 60:14, 72:1
**recommendations** [2] - 8:14, 61:6
**reconnaissance** [2] - 22:12, 26:3
**record** [5] - 3:5, 4:3, 77:1, 78:17, 80:20
**records** [1] - 33:24
**recovered** [1] - 30:15
**recovery** [1] - 70:6
**reduce** [3] - 27:12, 57:20, 60:21
**refer** [2] - 4:17, 5:1
**referenced** [4] - 30:24, 41:22, 42:4, 42:12
**referral** [1] - 70:5
**referred** [1] - 19:10
**referring** [2] - 36:21, 75:19
**reflect** [1] - 80:20
**refusal** [1] - 61:25
**regarding** [2] - 18:10, 20:17
**regardless** [1] - 61:7
**registered** [3] - 32:14, 37:15, 41:13
**regulate** [1] - 42:21
**regulations** [2] - 19:23, 72:4
**rehabilitation** [1] - 51:5
**Reindel** [2] - 3:16, 3:21
**relate** [1] - 60:18
**related** [5] - 17:16, 20:10, 33:24, 34:11, 71:3
**relates** [10] - 17:24, 22:5, 31:21, 33:11, 38:22, 40:14, 67:23, 68:1, 68:2
**relating** [7] - 6:9, 8:16, 34:14, 51:12, 61:2, 67:11, 67:12
**release** [7] - 15:23, 15:24, 49:20, 50:5, 50:11, 57:12, 80:18
**relevant** [4] - 34:11, 41:10, 62:5, 63:13
**relieve** [2] - 62:6, 62:9
**remain** [2] - 8:12, 61:13
**remember** [2] - 40:10, 44:4
**Remote** [1] - 23:12
**rented** [1] - 23:15
**report** [14] - 21:8,

51:10, 51:21, 52:14, 56:6, 76:23, 76:24, 77:5, 78:7, 78:13, 79:2, 79:3, 80:10
**reporter** [3] - 18:15, 18:16, 24:3
**reports** [5] - 20:17, 21:17, 75:9, 77:3, 78:7
**Reports** [1] - 21:18
**representation** [1] - 38:5
**representations** [2] - 22:11, 36:7
**representative** [1] - 39:18
**representatives** [1] - 39:9
**represented** [4] - 12:23, 37:24, 38:16, 40:24
**request** [6] - 55:9, 59:15, 63:6, 71:21, 71:23, 79:19
**requested** [2] - 13:17, 55:5
**requesting** [1] - 37:15
**require** [6] - 13:8, 19:23, 28:5, 29:9, 29:16, 62:25
**required** [6] - 7:5, 16:20, 20:15, 49:23, 63:19, 63:21
**requirement** [1] - 47:10
**requirements** [2] - 69:24, 70:16
**requires** [2] - 47:2, 69:3
**requiring** [1] - 69:24
**rescind** [1] - 59:23
**research** [1] - 22:12
**reserved** [1] - 8:15
**residential** [1] - 23:15
**resolve** [1] - 51:23
**respond** [2] - 22:24, 37:14
**responded** [2] - 39:21, 39:24
**response** [3] - 37:22, 39:8, 39:18
**responsibilities** [1] - 50:20
**responsibility** [4] - 52:10, 53:6, 59:8, 59:14
**responsible** [2] - 20:6, 28:20
**restitution** [15] - 8:9, 15:22, 49:24, 50:17,

67:3, 67:4, 67:5, 67:7, 67:8, 67:13, 67:16, 67:19, 68:1, 70:8, 70:10
**restoring** [1] - 68:2
**restrictions** [1] - 60:17
**result** [5] - 26:10, 28:16, 37:17, 38:1, 43:4
**results** [1] - 73:12
**retain** [1] - 16:13
**retained** [1] - 68:4
**retaining** [2] - 66:16, 66:18
**retains** [1] - 19:10
**retroactive** [1] - 66:20
**return** [1] - 11:16
**returning** [1] - 25:16
**revocation** [2] - 50:11, 50:15
**revoke** [1] - 50:5
**rights** [14] - 6:9, 7:8, 11:11, 14:10, 17:5, 17:10, 57:25, 58:5, 64:25, 66:3, 66:12, 67:16
**roughly** [2] - 19:8, 25:9
**routing** [1] - 23:10
**Rule** [2] - 60:19, 65:11
**rule** [1] - 69:25
**rules** [4] - 7:6, 65:11, 65:12, 67:14
**ruling** [1] - 16:23
**run** [1] - 64:21
**running** [1] - 79:9
**Russia** [1] - 9:11
**Russian** [4] - 29:12, 32:15, 33:3, 33:6

**S**

**safeguard** [1] - 20:9
**sale** [2] - 30:2, 32:17
**SalesFolk** [2] - 39:19, 39:21
**Samson** [1] - 3:15
**SARs** [3] - 21:18, 21:20, 42:5
**sat** [1] - 10:6
**satisfied** [2] - 11:2, 74:16
**saved** [1] - 53:10
**scans** [1] - 32:21
**schedule** [1] - 75:9
**Scheme** [1] - 22:7
**scheme** [3] - 22:9, 29:7, 34:12
**school** [1] - 9:6
**scope** [2] - 14:22,

14:25
**seal** [3] - 78:8, 79:2, 79:6
**seated** [2] - 3:17, 5:9
**second** [5] - 26:11, 36:11, 40:6, 65:5, 65:8
**Secrecy** [5] - 19:21, 19:22, 20:25, 41:13, 42:6
**section** [1] - 70:6
**secure** [1] - 23:16
**security** [5] - 20:11, 22:22, 23:24, 56:14, 71:23
**see** [34] - 14:12, 17:23, 20:3, 20:18, 22:23, 44:16, 44:21, 75:11, 75:14, 75:15, 77:15, 79:25, 80:11
**segregated** [1] - 28:4
**seize** [1] - 69:11
**seized** [1] - 69:13
**selected** [2] - 11:18, 12:13
**sell** [1] - 40:1
**sending** [1] - 41:7
**sense** [3] - 17:19, 40:18, 40:19
**sent** [1] - 33:3
**sentence** [34] - 15:20, 15:24, 16:1, 16:3, 16:13, 32:2, 49:13, 50:5, 50:10, 50:14, 51:8, 53:17, 54:11, 55:1, 55:2, 55:12, 56:18, 57:10, 57:11, 57:12, 57:14, 57:15, 57:19, 57:21, 60:21, 61:5, 61:7, 65:8, 66:10, 73:6, 73:20, 73:23
**sentenced** [2] - 49:18, 60:20
**sentences** [3] - 8:13, 52:2, 58:23
**sentencing** [20] - 7:16, 8:15, 16:6, 50:7, 51:1, 51:24, 51:25, 54:8, 54:12, 55:2, 55:10, 59:5, 60:3, 60:15, 60:22, 61:6, 61:13, 70:17, 75:8, 78:25
**separate** [4] - 26:23, 54:19, 70:14, 75:18
**separation** [1] - 79:25
**seq** [1] - 20:18
**series** [4] - 5:15, 19:1, 27:19, 31:3

**seriousness** [1] - 51:4
**serve** [4] - 21:12, 57:11, 57:15, 58:2
**served** [1] - 50:9
**server** [2] - 23:17, 23:18
**servers** [7] - 22:15, 22:19, 23:13, 23:20, 23:23, 25:24
**service** [6] - 32:25, 35:6, 35:9, 35:13, 35:23, 38:18
**Service** [1] - 80:4
**services** [2] - 11:3, 19:25
**serving** [1] - 57:19
**set** [13] - 15:23, 17:23, 31:2, 44:17, 47:24, 50:4, 51:10, 52:1, 52:17, 55:3, 55:13, 64:12, 67:5
**sets** [2] - 10:22, 51:3
**setting** [5] - 29:8, 30:2, 31:17, 32:3, 75:8
**settings** [1] - 70:24
**seven** [1] - 37:16
**seventy** [1] - 24:24
**seventy-one** [1] - 24:24
**several** [2] - 26:12, 41:1
**severe** [2] - 56:19
**shall** [1] - 37:8
**shipped** [1] - 32:25
**shipping** [1] - 32:25
**short** [2] - 27:14, 31:8
**shorter** [1] - 75:6
**showed** [1] - 53:22
**shown** [1] - 41:25
**shuffling** [1] - 27:20
**side** [2] - 4:9, 17:19
**sign** [3] - 12:5, 74:25, 76:8
**signals** [1] - 25:22
**signed** [5] - 7:1, 44:8, 44:12, 44:14, 80:8
**significance** [2] - 38:3, 38:4
**significant** [1] - 26:19
**signs** [1] - 25:21
**SIM** [1] - 32:21
**similar** [2] - 11:18, 19:5
**simply** [5] - 17:21, 21:22, 38:5, 69:3, 72:1
**simulating** [1] - 22:23
**sit** [1] - 5:10
**sitting** [1] - 27:16

**situation** [1] - 51:16
**six** [1] - 31:15
**slow** [1] - 18:17
**slower** [1] - 18:14
**small** [3] - 27:4, 27:19, 31:3
**socket** [1] - 23:16
**SOCKS** [4] - 23:15, 23:16, 24:2, 24:3
**software** [5] - 22:20, 22:22, 38:18, 40:1, 40:5
**software-as-a-service** [1] - 38:18
**sold** [2] - 43:6, 43:17
**sole** [1] - 40:3
**someone** [1] - 25:19
**something's** [1] - 77:2
**sometime** [1] - 28:17
**sometimes** [1] - 78:18
**sophisticated** [2] - 52:22, 53:1
**sorry** [4] - 77:25, 78:1, 79:13, 80:17
**sort** [4] - 55:22, 58:19, 62:8, 79:4
**sound** [1] - 5:21
**sounds** [1] - 40:11
**source** [12] - 24:25, 28:15, 38:6, 39:11, 39:15, 40:24, 42:15, 42:25, 45:15, 47:13, 47:16, 48:2
**speaking** [1] - 4:2
**special** [1] - 50:20
**specific** [13] - 22:5, 28:13, 40:15, 43:23, 44:20, 47:23, 52:18, 55:18, 58:14, 67:23, 68:6, 73:6, 75:8
**specifically** [5] - 17:24, 30:22, 46:10, 47:4, 48:21
**specified** [2] - 46:18
**spending** [1] - 47:19
**spent** [2] - 43:14, 43:17
**spoken** [1] - 64:4
**sponsor** [1] - 71:23
**spraying** [1] - 26:7
**spring** [1] - 22:8
**stablecoins** [1] - 29:23
**staging** [2] - 27:25
**stand** [3] - 5:4, 5:5, 65:18
**standard** [3] - 48:13, 71:1, 71:2
**start** [3] - 17:17, 52:4, 68:13

**starting** [2] - 3:5, 42:11
**state** [2] - 17:14, 58:12
**statement** [13] - 4:5, 4:7, 6:11, 6:19, 7:24, 10:2, 17:16, 23:5, 40:7, 40:11, 47:9, 51:11, 59:1
**statements** [8] - 36:2, 36:22, 45:6, 61:23, 65:15, 65:16, 65:20, 70:23
**states** [1] - 20:8
**States** [13] - 3:3, 3:10, 3:13, 20:2, 22:14, 22:16, 25:20, 25:24, 33:8, 33:15, 33:18, 34:8, 41:12
**stating** [1] - 39:10
**station** [1] - 33:2
**status** [1] - 75:9
**statute** [18] - 14:19, 14:22, 14:23, 14:25, 15:4, 15:9, 16:23, 47:2, 49:12, 50:6, 51:2, 52:24, 58:12, 64:8, 64:15, 64:19, 64:21
**statute's** [1] - 66:8
**statutory** [7] - 7:15, 16:2, 16:5, 47:12, 49:8, 50:24, 61:8
**stay** [2] - 4:6, 29:8
**steal** [1] - 27:2
**steps** [3] - 25:16, 29:6, 34:7
**still** [7] - 7:1, 54:11, 58:12, 62:14, 63:21, 64:19, 78:14
**stole** [1] - 26:12
**stolen** [5] - 24:14, 26:8, 27:16, 27:22, 27:24, 28:12, 29:11, 29:22, 30:4, 30:12, 31:3, 31:9, 32:13, 42:1, 46:12
**stop** [2] - 36:11, 62:18
**storage** [2] - 19:4, 41:2
**store** [1] - 19:6
**straight** [1] - 79:3
**strategic** [1] - 20:11
**strict** [1] - 55:13
**studied** [1] - 27:10
**subject** [2] - 41:12, 70:20
**submit** [2] - 62:15, 75:9
**subparagraphs** [1] - 46:11

**subpoena** [1] - 13:8
**subsections** [1] - 37:1
**subsequent** [2] - 46:8, 48:1
**subsequently** [1] - 23:23
**substance** [1] - 51:15
**substantial** [7] - 20:1, 52:21, 54:15, 54:22, 57:2, 61:2, 71:11
**substitute** [1] - 69:19
**successful** [1] - 53:3
**suggest** [1] - 78:10
**suggested** [1] - 73:5
**summarize** [1] - 6:12
**summarizing** [1] - 6:12
**summary** [4] - 6:15, 42:23, 44:24, 48:9
**summoned** [1] - 12:10
**supervised** [6] - 15:23, 49:20, 50:5, 50:11, 57:11
**suspicion** [1] - 33:10
**suspicious** [2] - 20:17, 21:8
**Suspicious** [1] - 21:17
**sustained** [1] - 8:22
**sworn** [1] - 61:23
**system** [8] - 20:9, 22:23, 22:24, 52:4, 54:11, 55:1, 55:22, 57:17
**systems** [1] - 25:17

**T**

**taint** [1] - 27:12
**talks** [11] - 4:13, 58:22, 58:23, 59:6, 59:7, 59:16, 61:1, 61:16, 65:11, 69:21, 71:9
**targeting** [1] - 26:9
**taxation** [1] - 40:3
**taxed** [1] - 40:2
**TC** [1] - 27:22
**technique** [1] - 31:7
**techniques** [2] - 22:18, 31:1
**term** [4] - 15:21, 15:22, 43:14, 57:15
**terms** [65] - 4:25, 6:7, 6:13, 8:14, 10:2, 10:18, 14:9, 14:10, 16:11, 16:19, 30:18, 30:19, 33:13, 34:13, 36:14, 36:21, 38:2, 38:21, 38:22, 38:25, 42:11, 42:23, 44:21,

44:23, 44:24, 45:20, 47:22, 48:9, 49:14, 50:15, 50:18, 51:1, 51:2, 51:25, 52:2, 52:23, 53:17, 54:3, 54:15, 55:13, 57:17, 60:12, 60:15, 62:11, 62:18, 62:22, 63:12, 64:1, 65:21, 66:7, 67:3, 67:12, 68:3, 68:8, 70:15, 70:25, 71:8, 71:10, 72:20, 76:23, 77:9, 78:7, 78:16
**terrorism** [1] - 20:10
**testify** [4] - 13:9, 13:12, 13:14, 63:10
**testimony** [1] - 63:12
**testing** [1] - 22:20
**Tether** [2] - 29:22, 46:13
**theft** [1] - 26:23
**themselves** [1] - 55:16
**therapy** [2] - 10:14, 10:16
**thereby** [2] - 18:23, 42:5
**therefore** [1] - 74:21
**they've** [4] - 51:19, 52:3, 59:1, 62:1
**third** [4] - 19:9, 19:10, 37:6, 43:7
**thousand** [1] - 26:13
**thousands** [1] - 31:4
**threatened** [1] - 73:8
**three** [3] - 13:25, 31:5, 50:1
**thresholds** [1] - 29:9
**threw** [1] - 34:9
**throughout** [1] - 47:14
**throw** [1] - 34:15
**tie** [1] - 6:15
**timely** [1] - 34:2
**today** [9] - 10:20, 45:6, 53:6, 65:15, 65:19, 65:20, 70:24, 73:17, 74:18
**together** [2] - 27:14, 44:25
**took** [2] - 25:15, 34:6
**tools** [1] - 22:17
**top** [2] - 42:12, 53:24
**Tor** [1] - 23:11
**total** [2] - 19:13, 53:12
**totaling** [1] - 31:4
**totally** [2] - 53:2, 53:3
**totals** [1] - 53:5
**towards** [1] - 67:25
**trace** [4] - 27:23, 42:16, 47:18, 47:19

traced [2] - 27:10, 68:5
tracing [1] - 41:24
trade [1] - 37:25
traffic [1] - 23:11
trail [2] - 31:11, 47:18
trailing [1] - 78:22
train [1] - 33:1
transact [2] - 19:6, 19:11
transacting [1] - 38:7
transaction [8] - 19:1, 19:3, 29:9, 31:12, 45:24, 47:10, 47:11
transactions [31] - 18:22, 18:25, 21:9, 21:10, 21:12, 21:15, 24:6, 24:10, 26:22, 27:10, 27:19, 27:21, 29:19, 31:4, 31:6, 31:7, 31:19, 42:22, 46:9, 46:10, 46:12, 46:16, 46:17, 46:25, 47:1, 47:6, 47:11, 47:15, 48:1, 48:2, 48:4
transcript [1] - 56:15
transferred [3] - 24:11, 27:3, 43:6
transmission [1] - 42:5
transmitted [3] - 18:24, 25:21
travel [2] - 33:7, 33:17
traveled [2] - 33:14, 33:15
Treasury [3] - 20:6, 21:20, 42:6
treated [1] - 10:12
treatment [1] - 10:10
trial [15] - 11:19, 12:9, 12:20, 12:23, 13:2, 13:12, 13:23, 17:6, 17:10, 17:15, 53:11, 64:25, 65:17, 75:15
trials [1] - 63:12
triggered [1] - 21:9
trip [1] - 33:10
trips [1] - 32:23
trouble [1] - 79:11
true [2] - 30:9, 81:3
truthfully [4] - 7:23, 61:18, 62:1, 63:10
try [1] - 66:18
trying [1] - 47:18
turn [2] - 14:7, 62:13
twelve [1] - 12:12
two [10] - 14:20, 18:2, 27:14, 31:3, 45:4, 45:12, 45:19, 49:16,

60:9, 72:22
two-person [1] - 45:12
twofold [1] - 46:19
type [2] - 10:10, 53:16
typically [4] - 18:20, 19:4, 32:16, 32:25

## U

U.S [10] - 9:14, 29:24, 34:1, 34:3, 36:3, 36:8, 46:14, 61:19, 67:10, 71:25
U.S.-based [5] - 19:24, 29:13, 31:15, 31:18, 32:4
U.S.C [4] - 8:5, 20:18, 46:20, 71:19
Ukraine [2] - 32:24, 33:14
Ukrainian [3] - 29:12, 32:15, 33:6
ultimately [1] - 24:5
unable [1] - 16:24
unauthorized [3] - 22:19, 25:19, 26:5
unaware [1] - 28:13
unconstitutional [2] - 14:20, 15:5
under [20] - 7:21, 15:4, 15:9, 19:25, 24:12, 30:8, 35:10, 42:5, 52:24, 54:11, 60:19, 62:7, 65:10, 66:16, 69:24, 70:5, 70:16, 78:8, 79:2, 79:6
undercover [1] - 61:25
undermine [1] - 29:19
understood [1] - 5:22
unhosted [2] - 19:14, 29:18
uniformity [1] - 52:2
United [13] - 3:3, 3:10, 3:13, 20:2, 22:14, 22:16, 25:20, 25:24, 33:8, 33:15, 33:18, 34:8, 41:12
unknown [1] - 59:11
unlawful [8] - 14:21, 14:25, 15:6, 16:2, 16:4, 28:17, 46:4, 47:2
unrelated [1] - 37:7
unspecified [1] - 28:17
unwind [1] - 69:3
up [47] - 4:7, 6:10, 6:25, 7:8, 7:10, 7:12, 8:12, 10:15, 11:13, 12:3, 14:9, 14:15,

15:20, 17:4, 17:10, 18:6, 25:14, 29:8, 30:2, 31:2, 31:12, 31:17, 32:3, 43:13, 44:15, 51:7, 52:1, 52:3, 53:5, 55:3, 55:18, 56:13, 56:16, 64:1, 64:16, 65:14, 65:18, 66:6, 66:12, 66:24, 67:16, 72:1, 72:13, 76:17, 78:3, 80:6
upward [3] - 16:7, 56:22, 59:19
USD [1] - 29:23
USDC [1] - 29:23
USDT [1] - 29:23
useful [1] - 55:7
user [1] - 26:9
users [3] - 19:12, 23:14, 28:6
USFI [4] - 29:8, 38:15, 38:17, 41:11
USFIs [2] - 19:24, 30:8
utilized [1] - 22:17
utilizing [1] - 31:6

## V

vacated [1] - 64:17
valid [1] - 34:2
valuable [1] - 57:25
valuation [1] - 24:20
valuations [1] - 24:21
value [6] - 18:13, 18:19, 24:18, 25:9, 68:10, 68:25
valued [1] - 24:14
variety [2] - 23:10, 31:10
various [5] - 26:22, 46:12, 48:3, 49:25, 62:24
vary [1] - 55:12
VCE [41] - 22:7, 22:10, 22:13, 22:15, 23:3, 24:7, 24:8, 26:4, 26:8, 26:12, 26:13, 26:15, 26:18, 26:24, 27:2, 28:20, 30:10, 30:11, 36:10, 37:5, 37:14, 37:18, 37:22, 37:23, 37:24, 38:20, 39:8, 39:9, 39:18, 40:24, 41:4, 41:11, 41:24, 47:5
VCE's [6] - 23:24, 24:9, 24:11, 25:17, 25:23, 26:5
VCEs [7] - 19:24, 29:8,

30:8, 31:10, 36:8, 42:4, 46:12
vendors [1] - 30:6
venue [4] - 48:19, 48:22, 64:1, 64:2
verification [1] - 39:8
verified [1] - 30:5
verify [2] - 20:16, 37:17
versa [1] - 8:21
via [5] - 18:23, 23:12, 23:15, 29:16, 32:25
vice [1] - 8:21
victim [25] - 22:7, 22:10, 22:13, 22:15, 23:3, 23:24, 24:7, 24:8, 24:9, 24:11, 25:16, 25:23, 26:4, 26:5, 26:8, 26:15, 26:18, 26:24, 36:10, 38:20, 41:4, 41:24, 46:21, 47:4, 52:21
victim's [1] - 23:6
victims [2] - 68:2, 70:8
viewed [1] - 56:7
views [1] - 56:9
violate [1] - 35:19
violated [2] - 35:23, 50:2
violation [3] - 8:5, 34:4, 46:20
violations [2] - 57:18, 63:17
virtual [28] - 18:10, 18:12, 18:19, 18:21, 19:4, 19:5, 19:6, 19:7, 19:9, 19:24, 23:6, 23:22, 24:7, 24:14, 26:9, 26:11, 26:21, 27:4, 29:14, 29:15, 29:25, 31:13, 31:14, 36:2, 37:25, 38:7, 39:19, 46:22
visible [1] - 18:25
voice [1] - 25:13
void [1] - 64:17
volatile [1] - 24:19
volatility [1] - 29:24
voluminous [2] - 27:21, 44:19
voluntarily [4] - 5:18, 69:11, 74:3, 74:19
voluntariness [2] - 7:18, 72:18
vote [1] - 58:1
vulnerabilities [1] - 22:22

## W

waiting [1] - 78:24
waive [6] - 14:15, 14:17, 15:19, 48:16, 50:21, 63:25
waived [1] - 64:9
waiver [10] - 12:5, 14:16, 15:1, 75:12, 75:13, 75:14, 75:15, 75:18, 76:21, 78:2
waivers [1] - 16:12
waiving [3] - 6:10, 7:8, 16:12
Wallet [4] - 24:12, 27:17, 27:19, 27:25
wallet [5] - 19:5, 19:7, 24:12, 27:25, 28:1
wallets [9] - 19:6, 19:9, 19:10, 19:12, 19:14, 23:22, 24:12, 28:1, 29:18
wants [2] - 4:10, 78:19
Washington [1] - 21:21
ways [2] - 52:1, 66:9
website [1] - 20:8
whole [1] - 47:11
wholly [1] - 20:1
wife [1] - 80:1
willing [3] - 11:12, 12:3, 63:1
willingly [1] - 22:9
winter [1] - 22:8
wire [3] - 25:22, 46:19, 46:20
wired [1] - 8:19
wiring [1] - 58:23
wish [4] - 69:25, 73:24, 77:8, 80:23
withdraw [7] - 33:8, 59:10, 59:23, 61:4, 62:9, 63:21, 70:19
withdrawal [1] - 28:4
withdrawing [2] - 29:12, 31:11
withdrawn [1] - 65:14
witness [4] - 66:24, 66:25, 71:21, 71:23
witnesses [2] - 13:4, 13:7
wonder [1] - 77:3
words [9] - 5:16, 11:22, 13:8, 38:6, 42:14, 43:13, 49:17, 52:9, 64:17
works [3] - 43:20, 77:6, 77:23
worldwide [1] - 18:24
worry [1] - 4:20

**worth** [1] - 26:13
**writ** [1] - 66:11
**writing** [2] - 63:3, 72:12
**writings** [1] - 25:21
**written** [3] - 5:21, 48:25, 61:23
**wrote** [1] - 39:9

## X

**XMR** [2] - 29:15, 29:20

## Y

**year** [3] - 57:20, 75:5, 80:2
**years** [4] - 9:2, 41:1, 49:15, 50:1
**York** [2] - 33:18, 33:20
**you-all** [1] - 75:15
**yourself** [4] - 3:4, 10:3, 13:15, 73:24

## §

**§** [4] - 8:5, 20:4, 20:18, 46:20