**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

United States of America,        ) Criminal Action
                                 ) No. 1:23-cr-00239-CKK-2
              Plaintiff,         )
                                 ) **Plea**
vs.                              )
                                 )
Heather Rhiannon Morgan,         ) Washington, D.C.
                                 ) **August 3, 2023**
              Defendant.         ) Time:  11:00 a.m.
_____

**Transcript of Plea**
**Held Before**
**The Honorable Colleen Kollar-Kotelly**
**United States Senior District Judge**

A P P E A R A N C E S

For the Government:      **Christopher B. Brown**
                        UNITED STATES ATTORNEY'S OFFICE
                        FOR THE DISTRICT OF COLUMBIA
                        601 D Street, Northwest
                        Washington, D.C. 20579

                        **Jessica Peck**
                        UNITED STATES DEPARTMENT OF JUSTICE
                        1301 New York Avenue, Northwest
                        Washington, D.C. 20005

                        **C. Alden Pelker**
                        UNITED STATES DEPARTMENT OF JUSTICE
                        950 Pennsylvania Avenue, Northwest
                        Washington, D.C. 20530

For the Defendant:      **Eugene V. Gorokhov**
                        BURNHAM & GOROKHOV, PLLC
                        1750 K Street, Northwest
                        Washington, D.C. 20006

1    _____

2    Stenographic Official Court Reporter:
                              Nancy J. Meyer
3                             Registered Diplomate Reporter
                              Certified Realtime Reporter
4                             333 Constitution Avenue, Northwest
                              Washington, D.C. 20001
5                             202-354-3118

6    Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2          THE COURTROOM DEPUTY:  Criminal Case 23-239-2, the

 3    United States v. Heather Morgan.

 4          Counsel, would you please identify yourself for the

 5    record, starting with the government.

 6          MR. BROWN:  Good morning, Your Honor.  AUSA

 7    Christopher Brown for the government.

 8          THE COURT:  Good morning.  Or I guess at this point

 9    it's good afternoon.  No, it isn't.  Excuse me.  It's still

10    11:30.  I thought it was 12:00.

11          Go ahead.

12          MS. PECK:  Good morning, Your Honor.  Trial attorney

13    Jessica Peck for the United States.

14          THE COURT:  All right.

15          MS. PELKER:  Good morning, Your Honor.  Alden Pelker

16    for the United States.

17          THE COURT:  All right.  Good morning.

18          MR. GOROKHOV:  Good morning, Your Honor.  Eugene

19    Gorokhov for Ms. Morgan, who is present.

20          THE COURT:  All right.  Good morning.

21          And good morning, Ms. Morgan.

22          THE DEFENDANT:  Good morning.

23          THE COURT:  So if you're not speaking, you can have

24    the mask on.  If you are speaking, then you should take it off

25    so we can actually get a record and hear what people are
```

1    saying.

2         So I just wanted to clarify.  There's no mandatory

3    minimum -- although there is a discussion about 3553(e) -- and

4    she's pleading to Counts 2 and 3?

5              MR. BROWN:  Correct, on both counts, Your Honor.  No

6    mandatory minimum.  And Counts 2 and 3.

7              THE COURT:  All right.  And she's compliant with her

8    pretrial conditions.

9         Does she have the documents in front of her, because we

10   are going to be referring to them?

11             MR. GOROKHOV:  Yes, Your Honor.

12             THE COURT:  To make it easier.  I don't have a

13   problem if she wishes to be seated, other than when we swear

14   her in.  It's just easier to do it from there, and she can also

15   consult you.

16        All right.  So let's swear her in.

17             THE COURTROOM DEPUTY:  She hasn't been arraigned,

18   also.

19             THE COURT:  I'm sorry?

20             THE COURTROOM DEPUTY:  The defendant has not been

21   arraigned.

22             THE COURT:  Okay.  Then let's -- well, we need to do

23   the arraignment first.

24             THE COURTROOM DEPUTY:  In Criminal Case 23-239-2, in

25   which you are charged in Count 2, with money laundering

1      conspiracy; and Count 3, conspiracy to defraud the government

2      in a criminal forfeiture allegation, how does the defendant

3      wish to plead?

4              THE DEFENDANT:  I wish to plead -- I intend to enter

5      a plea of guilty in response to these Court's questions.

6              THE COURT:  All right.

7              THE COURTROOM DEPUTY:  Can you stand and raise your

8      right hand, please.

9              THE DEFENDANT:  Yes, ma'am.

10             (Oath administered.)

11             THE DEFENDANT:  I do.

12             THE COURTROOM DEPUTY:  Please be seated.

13             THE COURT:  All right.  All right.  Ms. Morgan, in

14     terms of how we're going to be proceeding today, I'll be asking

15     you some questions.  I need to make a decision at the end that

16     you're entering this plea knowingly -- in other words, you

17     understand what you've agreed to -- and this is what you've

18     decided to do, as well as voluntarily.

19             And as I go through these, if I've explained something

20     differently than you understand or your lawyer has explained,

21     please bring it up.  We'll make sure that -- I want to make

22     sure we have a meeting of the minds of exactly what you're

23     agreeing to.

24             If you wish to consult with your lawyer at any time,

25     that's not a problem.  You need to push the button so we can't

1    hear what you're saying to him, but I don't have any problem

2    with that either.

3            I want to make sure that this is what you want to do.

4    You can't come back in a few months and say, Judge, I've

5    changed my mind.  So we'll go through this slowly and carefully

6    so we make sure you know what you're agreeing to.

7            Everything -- we need to put everything that you think

8    is part of the agreement on the record.  So it's either going

9    to be in writing or what we say in oral court.  Again, you

10   can't come back later and indicate you thought this or that was

11   part of the agreement.

12           Do you understand?

13               THE DEFENDANT:  Yes, Judge, I do.

14               THE COURT:  All right.  So I'm just going to just

15   give you an idea of what we'll go over.  I'll set out the very

16   basics of the plea that you are agreeing to, the -- and some

17   short background questions relating to you.

18           I'll discuss your constitutional rights that you're

19   giving up by pleading guilty.  I will also go over the

20   statement of offense.  This is a conspiracy.  And

21   Mr. Lichtenstein, I've -- Lichtenstein -- I've accepted his

22   plea.  And quite a bit of the information relates to him, and

23   then you come in at a later date.  And you can have a

24   conspiracy where that occurs where somebody comes at a later

25   date.

1          We'll go through the paragraphs.  And what I'm going

2     to do is as we go through the paragraphs, ask whether you

3     agree as opposed to having them read all of it and then

4     separately asking questions.  It'll be just expedited a little

5     quicker.

6          I also need to make sure the government indicates what

7     evidence they have as it relates to you that meets the elements

8     of the offense of the two things that you're pleading guilty

9     to.

10          There is a plea letter, which I will go over.  I'm not

11     going to discuss everything in it.  I just will bring up those

12     sections that I'm required by the rules to do and/or areas that

13     I think can cause some confusion or where you're giving up

14     particular rights.

15          We'll discuss the statutory penalties, the advisory

16     sentencing guidelines, and then we'll discuss the voluntariness

17     of your plea.

18          All right.  So let me just indicate, we've -- I've just

19     had you sworn in.  So you're now under oath.  I want to make

20     sure that you understand that now, under oath, if you don't

21     answer my questions truthfully, you could be prosecuted for

22     perjury or for making a false statement.

23          Do you understand that?

24               THE DEFENDANT:  Yes, I do, Your Honor.

25               THE COURT:  All right.  So the basic agreement is

1    that you are pleading guilty to an information, and they're

2    Counts 2 and 3 in the information, and that's what you're

3    pleading guilty to.  Money laundering conspiracy and conspiracy

4    to defraud the United States.

5         There's a mandatory restitution, and there's a

6    forfeiture that you've agreed to, which Mr. Lichtenstein has

7    also agreed to.  So it's not additional monies, presumably

8    jointly, is the total amount, which is $72,618,825.60.

9         The government has agreed that you can remain in the

10   community.  You're compliant with pretrial.  And as long as you

11   continue to be compliant with pretrial, you can remain in the

12   community.

13        The -- they're reserving allocution.  Allocution is

14   recommendations to the Court about sentencing.  The plea letter

15   addresses that in some way.  So I'll discuss what both

16   agreements are relating to that.

17        So this is wired, which means that both of you have to

18   plead in order for me to accept, ultimately, both of them.

19   I've just done the plea for Mr. Lichtenstein, and I've accepted

20   it.

21        So let me ask you if that's your understanding of just

22   the basics of the agreement.

23             THE DEFENDANT:  Yes, I understand, Your Honor.

24             THE COURT:  All right.  And let me ask some

25   background questions.  How old are you?

```
 1                THE DEFENDANT:  Thirty-three, Your Honor.

 2                THE COURT:  And what's your date of birth?

 3                THE DEFENDANT:  May 28, 1990.

 4                THE COURT:  Okay.  And how far have you gone in

 5     school?

 6                THE DEFENDANT:  I have a bachelor's in economics and

 7     international relations, and I did some grad school for a

 8     master's in economics.

 9                THE COURT:  All right.  And where were you born?

10                THE DEFENDANT:  Ontario, Oregon.

11                THE COURT:  Ontario?

12                THE DEFENDANT:  Oregon, not Canada.

13                THE COURT:  Okay.  I just want to make sure I heard

14     it.

15           All right.  And in the last 48 hours, have you taken any

16     alcohol, drugs, or medication?

17                THE DEFENDANT:  Just allergy medication and

18     medication for endometriosis.

19                THE COURT:  Okay.  I ask that question because

20     sometimes medication can make you woozy or not fully sharp and

21     alert.  So have you taken it today, or have you spaced it out

22     such that it has --

23                THE DEFENDANT:  I had allergy medicine this morning,

24     but it does not mentally impair me, nor does my endometriosis

25     medication.
```

1          THE COURT:  Okay.  So at this point, although you've

2    taken the medication, there's no effect on your thinking and

3    your acuity mentally?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  All right.  And, Counsel, I'm assuming

6    that you -- there's no issue of competency here?

7          MR. GOROKHOV:  None at all, Your Honor.

8          THE COURT:  All right.  In terms of how you went

9    about reviewing this, did you read it yourself?  Have your

10   lawyer read it?  What was the process for going through it?

11         THE DEFENDANT:  I both went over things with my

12   lawyers many, many, many times, and I read it at least

13   20 times.

14         THE COURT:  All right.  Have you ever received any

15   type of treatment for any mental illness or emotional

16   disturbance?

17         THE DEFENDANT:  I go to therapy for stress, anxiety,

18   and some past trauma.  I'm currently still attending therapy.

19         THE COURT:  Okay.  I take -- is the stress related

20   to unrelated things associated with this case or a combination

21   of this case and some other matters?

22         THE DEFENDANT:  I -- I think, obviously, there's some

23   stress from the case.  But stress, you know, beyond that,

24   definitely beyond.

25         THE COURT:  Okay.  I don't need to know what you're

1    going to therapy for.

2              THE DEFENDANT:  Sorry.

3              THE COURT:  Again, it really gets to the issue of

4    whether there's any concern there in terms of your entering

5    a plea.  And I take it, Counsel, there's no issues; is that

6    correct?

7              MR. GOROKHOV:  No, Your Honor.

8              THE COURT:  All right.  Did you receive a copy of the

9    information which sets out the two charges against you?

10             THE DEFENDANT:  Yes, Your Honor, both digitally and

11   printed it.  And I have it in front of me right now.

12             THE COURT:  All right.  And have you had a chance to

13   review it?

14             THE DEFENDANT:  Very thoroughly, Your Honor.

15             THE COURT:  Okay.  Are you completely satisfied with

16   the services of your attorney in this case?

17             THE DEFENDANT:  Yes, absolutely.

18             THE COURT:  And have you had enough time to talk with

19   your attorney, discuss the case, the plea offer, and whether or

20   not you should accept it?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right.  I'm going to go through your

23   basic constitutional rights, make sure you understand, because

24   these are the rights that you would be giving up.

25             So the first one is you're pleading to what we call a

1    felony information, which means that it has not been -- an

2    indictment has not been returned by the grand jury.  And you

3    have a right to a grand jury indictment.

4         The grand jury is summoned as -- with trial jurors.

5    They -- we have 12 grand jurors out of at least 16, but not

6    more than 23.  The government presents the case, and the

7    grand jury decides whether there's probable cause that there's

8    a crime that's been committed and that you are the person that

9    committed it.

10        So do you understand your right to a grand jury

11   indictment?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  And are you willing to waive it or give

14   up that right?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And I don't know whether we were able to

17   give you this form, but, if not, we do need to have you sign

18   the form.

19        You also have a right to plead not guilty and have a

20   jury trial in this case.  Citizens from the District of

21   Columbia would be summoned to the courtroom.  They would be

22   asked questions by the Court and counsel to determine a fair

23   and impartial jury.  They would sit in the jury box.  They

24   would listen to the evidence presented, and the jury

25   instructions would be provided to them, which they would apply

1   to the evidence.  And those 12 jurors would determine your

2   guilt or innocence based on the evidence presented in the

3   courtroom.

4         Do you understand your right to a jury trial?

5         THE DEFENDANT:  Yes, I do, Your Honor.

6         THE COURT:  Do you understand that if you went

7   forward to trial, you would have a right to be represented by a

8   lawyer at the trial?  If you could not afford one, one could be

9   appointed for you.

10        THE DEFENDANT:  Yes.

11        THE COURT:  Do you understand that at a trial, you

12  would have the right through your lawyer to confront and

13  cross-examine any witnesses against you?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Do you understand that you would have the

16  right to present your own witnesses and you would have a right

17  to subpoena them?  In other words, to require them to come and

18  testify in your defense in court.

19        THE DEFENDANT:  Yes.

20        THE COURT:  Do you understand that if there were a

21  trial, you would have the right to testify and present evidence

22  on your behalf, if you wanted to, but that you would not have

23  to testify or present any evidence if you did not want to?

24  That's because you cannot be forced to incriminate yourself;

25  that is, to present evidence of your own guilt.  And if

1    requested, the Court would advise the jury that they could not

2    infer any guilt based on the fact that you asserted your

3    constitutional right and they should not hold that against you.

4    Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand unless and until I

7    accept your guilty plea, you are presumed by the law to be

8    innocent because it's the government's burden to prove your

9    guilt beyond a reasonable doubt?  And until it does, you cannot

10   be convicted at trial.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand if you went forward to

14   trial and were convicted, you would have a right to appeal your

15   conviction to the Court of Appeals, which is a higher court,

16   three judges?  And they would hear, if any, errors that had

17   been made in your case.  And you could also have a lawyer help

18   you prepare your appeal.  If you could not afford one, one

19   could be appointed for you.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  So if you could open your plea letter to

23   page 9, D. at the bottom.  It's easier to go through it in the

24   agreement itself.

25             THE DEFENDANT:  Yes.

1       THE COURT:  So you do have a right to appeal, but

2   you're waiving or giving up certain rights.  And I want to make

3   sure you understand.

4       You're agreeing to waive -- which means give up --

5   insofar as such waiver is permitted by law -- and I'll explain

6   that -- the right to appeal the conviction in this case on any

7   basis, including but not limited to claims that the statute to

8   which you're pleading guilty is unconstitutional, and the

9   admitted conduct doesn't fall within the scope of the statute.

10      So if it was unconstitutional and your conduct was not

11  covered by the statute, you could not be convicted.  At this

12  point, the statute is deemed constitutional, and your conduct

13  does fall within the scope of the statute.

14      But if at some later point, in another case, it goes to

15  the Court of Appeals or a higher court and that higher court

16  determines in a case similar to yours that the statute to which

17  you're -- under which you're pleading is unconstitutional

18  and/or that your conduct is not unlawful under the statute,

19  then you would be able to take a collateral appeal and benefit

20  from that later decision relating to your conviction.

21      Do you understand and agree to that?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Do you also understand and agree to waive

24  the right to appeal the sentencing in the case, which would

25  include and not be limited to any terms of imprisonment, fine,

1    forfeiture, award of restitution, term or condition of

2    supervised release, authority of the Court to set conditions

3    of release, and the manner in which the sentence was

4    determined?

5        There's some exceptions.  Except to the extent the

6    Court -- if I sentence you above the statutory maximum -- that

7    would be an unlawful sentence -- or above the guideline range

8    determined by the Court, which would be the advisory

9    guidelines.  That wouldn't necessarily be unlawful, unless it

10    was over the statutory maximum, but it would be a basis for you

11    to appeal.

12        Also, notwithstanding the agreements about waiving the

13    right to appeal the conviction and the sentence, you retain the

14    right to appeal on the basis of ineffective assistance of

15    counsel; but not on appeal the other issues related to the

16    conviction and the sentence.

17        Do you understand that?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Okay.  With few exceptions, a direct

20    appeal would have to be filed within 14 days of judgment, be

21    entered in the case.  If it's a collateral appeal, it,

22    obviously, would be a later point.

23        And if you're unable to pay the cost of an appeal, you

24    could ask to have it waived.  You could also ask to have

25    counsel appointed to represent you, if you could not afford to

1    pay one.

2          Do you understand all of that?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Do you understand if you plead guilty in

5    this case and I accept your guilty plea, you'll be giving up

6    the rights that I just explained to you; there won't be a

7    trial; and the appeal would be on very narrow grounds?

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you want to plead guilty in this case,

11   give up your rights to a trial, and the right to appeal, as

12   I've explained it?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  All right.  At this point, the government

15   is going to state the evidence as if they were to present it if

16   the case had gone to trial, and I will ask you whether you

17   agree.  You should indicate whether you do agree or don't

18   agree.

19         If there are things that you don't know about or didn't

20   know about -- didn't know about really at the time -- not now

21   specifically -- you should indicate that.  Some of this is

22   legal in the sense of who were the institutions -- or which

23   institutions cover these kinds of things.  And I assume counsel

24   can answer whether they're accurate or not.

25         So I think what I'd like to do is have you read the

1    background through 7, and then the -- actually, I think from

2    the beginning to 11.  I think it sets out the background

3    information, and I would ask, then, if defense counsel has --

4    you know, has any question about it or any concern that it's

5    inaccurate.  Then we'll move to the defraud.

6        I guess the question I have is, she comes in later and

7    we have later paragraphs.  We can put the rest on, since this

8    was part of the conspiracy.  And I would ask her if she came to

9    know it at some point.  But I don't know that she -- we need to

10   have all of it, unless counsel thinks it's important to do

11   that.

12       MR. BROWN:  Your Honor, we agree.  The specific

13   details of the 2016 hack pertain to Mr. Lichtenstein.

14   Ms. Morgan did not participate in that hack.  And so any

15   knowledge that she would have is secondhand.  So I agree that

16   we can probably skip forward to the money laundering

17   conspiracy.

18       THE COURT:  All right.  So why don't we start with

19   the -- the paragraph 5 and go through paragraph 11.  And the

20   question would be -- it's all background about the institutions

21   and how things work and how they're monitored.

22       And, presumably, defense counsel has looked at it and

23   has advised your client as to whether it's accurate or not.

24   And that would be the question I'd ask.

25       MR. BROWN:  Background regarding virtual currency

1    exchange.

2         Virtual currency is a digital form of value that is

3    circulated over the internet and is typically not backed by a

4    government.  Bitcoin, BTC, is a decentralized virtual currency.

5    All BTC transactions are posted to a public ledger, the BTC

6    blockchain, accessible via the internet and thereby transmitted

7    worldwide, including in the District of Columbia and elsewhere.

8    Although transactions are visible on the public ledger, each

9    transaction is only listed by a series of letters and numbers

10   that do not otherwise identify the individuals involved in the

11   transaction.

12        The storage of virtual currency is typically associated

13   with an individual wallet, which is similar to a virtual

14   account.  Wallets are used to store and transact in virtual

15   currency.  A wallet can hold many virtual currency addresses,

16   which are roughly equivalent to anonymous account numbers.

17        Virtual currency wallets hosted by third-party

18   providers -- virtual currency wallets hosted by third parties

19   are referred to as hosted wallets because the third party

20   retains a customer's funds until the customer is ready to

21   transact with those funds.  Conversely, wallets that allow

22   users to exercise total, independent control over their funds

23   are called unhosted wallets.

24        The Bank Secrecy Act and FinCEN.

25        The Bank Secrecy Act, BSA, and its implementing

1    regulations require financial institutions, including

2    U.S.-based banks, USFIs, and virtual currency exchanges, VCEs,

3    that qualify as money services businesses under the BSA, to the

4    extent they operate wholly or in substantial part within the

5    United States, to conduct due diligence of their customers and

6    to have anti-money laundering programs in place.  See 31

7    C.F.R. § 1010.100 (ff).

8         The Financial Crimes Enforcement Network, FinCEN, a

9    division of the U.S. Department of Treasury, is responsible for

10   the implementation, administration, and enforcement of the BSA.

11   FinCEN's website states that its mission is to safeguard the

12   financial system from illicit use, combat money laundering, and

13   its related crimes, including terrorism; and promote national

14   security through the strategic use of financial authorities and

15   the collection, analysis, and dissemination of financial

16   intelligence.

17        Financial institutions, as defined by the BSA are, thus,

18   required (1) to collect identifying information about their

19   customers; (2) to verify their clients' identities; and (3) to

20   file reports with FinCEN regarding suspicious activity on their

21   platforms.  See 31 U.S.C. § 5311, *et seq.*

22        The obligation to report suspicious transactions may be

23   triggered by, among other things, transactions believed to

24   involve funds derived from illegal activity or intended to hide

25   or disguise funds or assets derived from illegal activity;

1   transactions that serve no business or apparent lawful purpose,

2   and for which the financial institution knows of no reasonable

3   explanation after examining the available facts; or

4   transactions that involve the use of the financial institution

5   to facilitate criminal activity.  Such reports are commonly

6   known as suspicious activity reports, SARs.

7          In furtherance of this mission, FinCEN acts as a point

8   of collection for SARs on behalf of the Treasury Department.

9   FinCEN is headquartered in Washington, D.C.

10         THE COURT:  So in terms of the paragraphs 5 through

11  11, is there any -- from counsel's perspective, would you agree

12  with the accuracy of it, and have you discussed with your

13  client these various agencies and their roles?

14         MR. GOROKHOV:  Yes, Your Honor, there's no dispute,

15  and Ms. Morgan is aware.

16         THE COURT:  Okay.  Is that correct, Ms. Morgan?

17         THE DEFENDANT:  Yes, I am aware.

18         THE COURT:  All right.  In terms -- I think we begin

19  on paragraph 15 where she would be coming in, but I think it

20  would be helpful if you could do just a summary of what

21  Mr. Lichtenstein did, which she didn't know initially but came

22  to know.

23         MR. BROWN:  Yes, Your Honor.  To paraphrase, in late

24  winter -- beginning in late winter and early spring of 2016,

25  Mr. Lichtenstein, essentially, compromised computers of the

1    victim virtual currency exchange, victim VCE.  He used false

2    and fraudulent pretenses in order to fraudulently intrude upon

3    those computer systems.

4        He used that access to obtain customer credentials

5    and -- and credentials used to authorize transactions involving

6    virtual currencies that were held by the victim VCE.  And he

7    used those credentials -- the virtual currency exchange keys,

8    he used those credentials to initiate unauthorized transactions

9    by which he obtained 119,754 bitcoin from the victim and

10   transferred it to an outside wallet under his control, known as

11   Wallet 1CGA4s in the statement of offense.  And at the time of

12   that hack, that approximately 119,000 bitcoin was valued at

13   approximately $71 million.

14            THE COURT:  All right.  Let me just ask Ms. Morgan,

15   the -- in terms of -- my understanding is that you were

16   not involved in the hack and that you initially were not aware

17   of the hack and where the proceeds had come from; is that

18   correct?

19            THE DEFENDANT:  That is correct.  My husband did not

20   tell me about the hack until sometime early in 2020.  However,

21   I don't know if this is the time to discuss or later in the

22   document.  I believed that some of the funds he gave me might

23   have been proceeds from something illicit.  I didn't know what

24   they were, but he had substance abuse issues, and I thought

25   perhaps drugs, perhaps tax avoidance.

1      THE COURT:  Okay.  One question I have is at the

2  point that you became aware of the hack, did you become aware

3  of it and how much detail?  He's given, sort of, a quick

4  explanation.

5      THE DEFENDANT:  He -- I'm sorry.

6      THE COURT:  A quick explanation.  Were you aware that

7  the hack was illegal?

8      THE DEFENDANT:  I was aware the hack was illegal.  I

9  didn't have as many details, but I was aware it was illegal.

10      THE COURT:  And did you have some sense he went about

11  it, without getting into all the detail?

12      THE DEFENDANT:  He said he had Bitfinex, but he

13  didn't get into the methodology with me ever.

14      THE COURT:  All right.  Let's start on paragraph 15,

15  then.  Start reading.  If you move to paragraph 15 on page 4.

16      MR. BROWN:  Yes.  Following the hack, Lichtenstein

17  took steps to conceal his activity, including by returning to

18  victim VCE's computer systems and deleting access credentials

19  and certain log files that might lead investigators to

20  determine that someone had gained unauthorized access.  In the

21  course of the hack, Lichtenstein, while located in the

22  United States, transmitted and caused to be transmitted

23  writings, signs, and signals by means of wire communication in

24  interstate and foreign commerce over the internet to victim

25  VCE's computer servers located outside the United States.

1    Although Morgan did not participate in the hack itself, she

2    later assisted Lichtenstein in laundering the resulting

3    proceeds and concealing his responsibility for the hack, as

4    described in more detail below.

5                 THE COURT:  Okay.  Would you agree with -- what --

6    the part that relates to you?

7                 THE DEFENDANT:  I agree.  I did help him launder

8    funds at his direction to conceal his involvement in the hack.

9                 THE COURT:  All right.  Moving along.

10               MR. BROWN:  During the --

11               THE COURT:  Slow down a little bit for the court

12   reporter.

13               MR. BROWN:  Yes, Your Honor.

14         During the course of the reconnaissance phase of the

15   hack of victim VCE, Lichtenstein gained unauthorized access to

16   victim VCE's customer login credentials.  Lichtenstein used

17   these customer credentials to engage in credential spraying --

18   that is, using the customer credentials stolen from victim VCE

19   to attempt to log into other accounts -- targeting user

20   accounts at other virtual currency exchanges.

21         As a result of these efforts, Lichtenstein fraudulently

22   obtained access to customer accounts at a second virtual

23   currency exchange, VCE A, and stole an estimated several

24   hundred thousand dollars' worth of funds from VCE A customer

25   accounts.  Lichtenstein commingled these funds with the funds

1    stolen from victim VCE.

2              THE COURT:  So would you have been aware of that?

3              THE DEFENDANT:  I was not aware of any of his other

4    hacks until after arrest.

5              THE COURT:  Okay.  Then I think in terms of --

6    paragraphs 17 and 18, which discusses what Lichtenstein did in

7    terms of the wallet and the various other stolen materials.

8    But I think we can start with paragraph 19 where I think her

9    role picks up.  So if you'd move to 19.

10             MR. BROWN:  Following the hack, Lichtenstein enlisted

11   Morgan's help in laundering the stolen funds.  Morgan was

12   initially unaware of the specific origin of Lichtenstein's

13   proceeds, although she participated with Lichtenstein in

14   efforts to conceal and obscure the source of the funds while

15   knowing and understanding that the funds were the result of

16   some unspecified unlawful and fraudulent activity.

17             Sometime after the hack, but by no later than in or

18   around early 2020, Lichtenstein explicitly told Morgan that

19   Lichtenstein was responsible for the 2016 hack of victim VCE.

20   Morgan joined the conspiracy with the intent of assisting

21   Lichtenstein in laundering the stolen funds and later

22   understood that in doing so she was conspiring to conceal his

23   involvement in the previous hack of victim VCE.

24             THE COURT:  All right.  So is all of that accurate?

25             THE DEFENDANT:  Yes, it's correct.

1          MR. BROWN:  The following steps were taken in

2     furtherance of the money laundering scheme:

3          A., setting up numerous accounts at USFIs and VCEs to

4     stay below transaction thresholds that would require enhanced

5     customer due diligence by financial institutions.  Morgan,

6     acting at Lichtenstein's direction, allowed her existing

7     accounts to be used for the purpose of laundering the

8     proceeds of the hack, and assisted Lichtenstein in creating new

9     accounts for the purpose of laundering the proceeds of the

10    hack.

11         THE COURT:  Okay.  Would you agree with that?

12         THE DEFENDANT:  Yes.  It correctly describes my role.

13         THE COURT:  All right.

14         MR. BROWN:  B., converting stolen funds into fiat

15    currency through Russian and Ukrainian bank accounts and then

16    withdrawing the laundered funds at U.S.-based ATMs.  At

17    Lichtenstein's direction, Morgan then withdrew the laundered

18    proceeds at U.S.-based ATMs.

19         THE COURT:  Is that accurate?  Would you agree with

20    that?

21         THE DEFENDANT:  Yes, it correctly describes my role.

22         THE COURT:  Go ahead.

23         MR. BROWN:  C., converting stolen BTC into a viral

24    currency name Monero, XMR, which is an anonymity-enhancing

25    virtual currency with a nontransparent blockchain via exchanges

1    that did not require KYC.  During the course of the conspiracy,

2    Lichtenstein notified Morgan regarding the existence of the

3    Monero wallet, and provided Morgan with the seed phrase to

4    memorize in case the funds needed to be accessed by her.

5              THE COURT:  So do you admit that's correct?

6              THE DEFENDANT:  It is correct.  He notified me about

7    the existence of the wallet.

8              THE COURT:  Okay.

9              MR. BROWN:  D., using intermediate, unhosted wallets

10   to avoid exchange-to-exchange transactions that would undermine

11   the anonymity benefits of using XMR, darknet markets, and

12   CoinJoins/mixers, such as Bitcoin Fog, Helix, and ChipMixer.

13             THE COURT:  Were you aware of any of that?

14             THE DEFENDANT:  I was not aware of it, but I agree

15   the government could prove it about my husband.

16             MR. BROWN:  E. --

17             THE COURT:  Okay.  Move on.

18             MR. BROWN:  E., converting a portion of the stolen

19   funds to Tether, USDT; and USD Coin, USDC; which are both

20   stablecoins pegged to the U.S. dollar, as a means of avoiding

21   the price volatility associated with holding other virtual

22   currencies, such as BTC, the price of which fluctuates daily.

23             THE COURT:  All right.  Do you have any knowledge of

24   that, or would you dispute that in any way?

25             THE DEFENDANT:  I was aware of his use of

1    stablecoins, yes.

2              THE COURT:  Okay.  Go ahead.

3              MR. BROWN:  F., using exchanges with high sale limits

4    and setting up multiple accounts at numerous exchanges in order

5    to launder large amounts of stolen funds.

6              THE COURT:  All right.  Do the two together.

7              MR. BROWN:  G., using pre-existing, KYC-verified

8    accounts purchased from illicit vendors offering profiles

9    designed to defeat exchange AML controls.

10             THE COURT:  Okay.  Would you -- do you dispute any of

11   that, and did you have knowledge of it?

12             THE DEFENDANT:  I don't dispute any of it.  I have

13   knowledge of some of it, but I don't know -- have knowledge of

14   all of the things he did.

15             THE COURT:  All right.  That are set out in f. and g.

16   is what I'm asking.

17             THE DEFENDANT:  Oh.  I know that he did some high

18   sale limits on exchanges, and I know that he used some

19   KYC-verified accounts, but I'm not sure if I know of all of the

20   times he did this.

21             THE COURT:  All right.  Moving to h.

22             MR. BROWN:  H., using accounts at USFIs and VCEs

23   opened under Morgan's and Lichtenstein's true names and/or the

24   names of their businesses, including accounts at VCE 5, VCE 6,

25   VCE 7, VCE 8, VCE 9, and VCE 10.

```
 1              THE COURT:  Is that accurate?  Would you agree to
 2     that?
 3              THE DEFENDANT:  Yes.  I allowed my husband to use my
 4     accounts.
 5              THE COURT:  All right.
 6              MR. BROWN:  And i., converting a portion of the
 7     stolen funds into gold coins, which were further concealed by
 8     Morgan when she buried them at a location that has since been
 9     disclosed to law enforcement, which has recovered the precious
10     metal assets in full.
11              THE COURT:  Is that accurate?  Do you agree with
12     that?
13              THE DEFENDANT:  Yes, I agree.
14              THE COURT:  And in terms of allowing Mr. Lichtenstein
15     to use your accounts, I take it you were aware how he was --
16     why he was using them, the purpose of it?
17              THE DEFENDANT:  Initially, Judge, I was not fully
18     aware.  But I was after he told me in 2020.
19              THE COURT:  Okay.  So you knew he was trying to
20     conceal the funds?
21              THE DEFENDANT:  After 2020, yes.
22              THE COURT:  All right.
23              THE DEFENDANT:  And I continued to allow -- to let
24     him to.
25              THE COURT:  All right.  Moving to 21.
```

1          MR. BROWN:  In engaging in the above-referenced

2     conduct, Lichtenstein, at times with Morgan's assistance,

3     employed numerous money laundering techniques, including, but

4     not limited to:  (1) using accounts set up with fictitious

5     identities, some of which were set up by Morgan at the

6     direction of Lichtenstein; (2) moving the stolen funds in a

7     series of small amounts, totaling thousands of transactions, as

8     opposed to moving the funds all at once or in larger amounts;

9     (3) utilizing computer programs to automate transactions, a

10     laundering technique that allows for many transactions to take

11     place in a short period of time; (4) layering the stolen funds

12     by depositing them into accounts at a variety of VCEs and

13     darknet markets and then withdrawing the funds, which

14     obfuscates the trail of the transaction history by breaking up

15     the fund flow; (5) converting the BTC to other forms of virtual

16     currency, including an anonymity-enhanced virtual currency, in

17     a practice known as chain hopping; and (6) using U.S.-based

18     business accounts to legitimize activity.  Morgan further

19     assisted Lichtenstein with setting up accounts with fictitious

20     identities and using U.S.-based business accounts to legitimize

21     the laundering transactions.

22          THE COURT:  So it indicates in this paragraph that

23     you provided at times -- so not consistently -- assistance, and

24     they've listed several -- six, actually, money laundering

25     techniques.  Can you indicate which ones you assisted him in or

1    which ones you did not.

2              THE DEFENDANT:  Yes, allow me to explain.  I assisted

3    in number 1 and number 6.

4              So number 1 was -- I -- a few times I helped him set up

5    fictitious accounts or fictitious activities from the dark web.

6              Number 6, I also helped him -- that's -- yeah, I allowed

7    him to use my business accounts.

8              And knowledge-wise, beyond those, I knew he was using

9    some kind of software he created to money-launder after 2020.

10   But the other things I didn't have knowledge into.

11             THE COURT:  Okay.  So in terms of 2, 3, 4, and 5, you

12   didn't -- you didn't assist him in?

13             THE DEFENDANT:  No, I did not assist him in 3, but I

14   had knowledge of 3.

15             THE COURT:  Okay.  Any knowledge of any of the

16   others?

17             THE DEFENDANT:  Correct.

18             THE COURT:  Okay.  And did you assist him setting up

19   accounts with fictitious identities using U.S.-based business

20   accounts?

21             THE DEFENDANT:  They weren't fictitious in the U.S.

22   They were fictitious international exchange accounts.  But the

23   accounts in the U.S. were my legitimate accounts I allowed him

24   to use.

25             THE COURT:  All right.  Does that make a difference

1    to the government?

2              MR. BROWN:  Yes, Your Honor.  Yes.  Essentially,

3    Ms. Morgan -- my understanding, at least on that last point, is

4    Ms. Morgan had some business accounts.

5              THE COURT:  You need to speak up a little bit.

6              MR. BROWN:  She had business accounts, some of which

7    were preexisting.  But in allowing those accounts to be used to

8    receive and transact in funds derived from the hacked proceeds,

9    that was part of the laundering activity; it was a way to make

10   those proceeds look legitimate as in -- make those proceeds

11   look like their business income.

12             THE COURT:  Okay.  Would you disagree with any of

13   that?

14             THE DEFENDANT:  No.  I agree.  That's correct.

15             THE COURT:  Okay.  Let's move on to 22.

16             MR. BROWN:  Additionally, over the course of their

17   conspiracy, Lichtenstein, at times with Morgan's assistance,

18   converted stolen funds through the use of debit cards linked to

19   foreign bank accounts.  The foreign bank accounts were

20   registered to Russian and Ukrainian money mules, who worked for

21   brokers and who typically created the accounts in-person at the

22   foreign banks.  The accounts were then offered for sale by

23   brokers on darknet markets and cybercriminal forums.

24             Lichtenstein acquired numerous accounts through such

25   platforms.  The purchased account packages included a debit

1    card, as well as identity document scans and the SIM cards

2    associated with the phone used to establish the account.

3    Lichtenstein had the packages delivered to him during trips

4    with Morgan to Kazakhstan and Ukraine.  The packages were

5    typically shipped via a shipping service or handed off by a

6    courier in a prearranged public meeting place, such as a train

7    station.

8           Lichtenstein then sent BTC to Russian- and

9    Eastern-European-based instant exchange platforms, which

10   converted the BTC to fiat currency and deposited the

11   corresponding fiat funds into the Russian and Ukrainian bank

12   accounts.  Morgan and Lichtenstein would travel to ATMs in the

13   United States and use the purchased debit cards to withdraw

14   funds.  Morgan and Lichtenstein would bring multiple cards per

15   trip and used only one card per ATM to avoid suspicion.

16          THE COURT:  All right.  So 22 indicates that you

17   assisted at times converting the stolen funds through the use

18   of debit cards.  So in terms of the description of what he did

19   with the foreign banks, et cetera, were you aware of that?

20          THE DEFENDANT:  So my husband set up all the process.

21   He received the packages when I wasn't there.  He didn't fully

22   explain to me what was going on until after 2020.  But it is

23   true that, yes, I used the debit cards.  But he set them up and

24   put money on them.

25          THE COURT:  Okay.  But I take it you came to know

```
 1     it --
 2                 THE DEFENDANT:  I came to know, yes.  Eventually, he
 3     explained it all to me at a high level.
 4                 THE COURT:  So then we have -- you've taken these
 5     trips to Kazakhstan and Ukraine.  And did you move around, or
 6     did you have knowledge about these packages being delivered or
 7     how they were shipped?
 8                 THE DEFENDANT:  I did not have knowledge of the real
 9     purpose of our trips.  I thought it was tourism and potential
10     business.  However, at some point I do recall him burning
11     documents in a trash can in Kazakhstan.  And when I asked him
12     about it, he was evasive.
13                 THE COURT:  Okay.  I take it, though, that you did,
14     using these cards, travel to ATMs in the U.S. and use it to
15     withdraw funds; is that correct?
16                 THE DEFENDANT:  Correct.  In New York.
17                 THE COURT:  All right.  And that you would bring
18     multiple cards per trip but only use one per ATM to avoid
19     suspicion; is that correct?
20                 THE DEFENDANT:  Correct.  This is what my husband
21     instructed me to do.
22                 THE COURT:  But that's what you did; right?
23                 THE DEFENDANT:  Yes.  Yes.
24                 THE COURT:  All right.  Moving on.
25                 MR. BROWN:  In or around November 2021, Morgan and
```

1    Lichtenstein learned that records related to an account held in

2    Lichtenstein's name and used in furtherance of the conspiracy

3    had been disclosed to U.S. law enforcement.  The provider

4    controlling the account failed to process a valid and timely

5    extension of a nondisclosure order issued by the U.S. District

6    Court for the District of Columbia and, ultimately, notified

7    Lichtenstein in violation of the court order.

8         Upon receipt of the notice, Morgan and Lichtenstein took

9    steps to further conceal their activity.  For example,

10   Lichtenstein deleted data from devices in the United States

11   and abroad.  And Morgan and Lichtenstein threw a computing

12   device down a garbage chute, when said computing device

13   contained relevant, inculpatory evidence related to this

14   criminal scheme.

15        THE COURT:  All right.  So my understanding is the

16   service provider is the person who is the entity that actually

17   revealed the information in the court order, which should not

18   have been revealed.  And then upon receiving notice that that

19   had occurred, is it correct, Ms. Morgan, you took steps to

20   conceal your illegal activities, which as I understand it, you

21   threw a computer down a garbage chute?

22        THE DEFENDANT:  Yes, that is correct.  And with

23   regards to myself, this statement is correct.

24        THE COURT:  Okay.  And the computer that -- that

25   was -- did you put it down the garbage chute?

1          THE DEFENDANT:  I believe so.  I know my husband told

2     me to dispose of it, but I -- I think so.  It's been a while.

3          THE COURT:  All right.

4          THE DEFENDANT:  I do not dispute it.

5          THE COURT:  I'm sorry?

6          THE DEFENDANT:  I do not dispute it.

7          THE COURT:  Okay.  All right.  Moving to 24.

8          MR. BROWN:  On or about January 5, 2022, federal law

9     enforcement agents executed a court-authorized warrant to

10    search Morgan and Lichtenstein's home in New York, New York.

11    While agents were executing the warrant, Morgan retrieved her

12    cat, which was hiding under a bed.  While kneeling next to the

13    bed, Morgan grabbed her phone and began pushing the side button

14    multiple times and swiped at the screen in an apparent attempt

15    to shut the phone off.

16          THE COURT:  Would you agree with that as being

17    accurate?

18          THE DEFENDANT:  I agree it was accurate.  My alarm

19    went off, and I didn't want them to look at my phone.  So I

20    turned off my phone.

21          THE COURT:  Why didn't you want them to look at it?

22          THE DEFENDANT:  Because I have personal photos.

23          THE COURT:  Apart from that, did it have anything to

24    do with the illegal scheme?

25          THE DEFENDANT:  No.  There was nothing illegal on my

 1   phone.

 2           THE COURT:  Government?

 3           MR. BROWN:  Your Honor, it appeared to our agents

 4   that this was an attempt at preventing biometric access to the

 5   phone; in other words, preventing access through a fingerprint

 6   or a face unlock.

 7           The government had probable cause to believe that the

 8   phone contained relevant inculpatory evidence.  As set forth in

 9   the statement of offense, we're -- we're not claiming

10   specifically that that phone contained inculpatory evidence.

11           THE COURT:  I'm assuming you got a search warrant

12   that included how you could or could not access the phone?

13           MR. BROWN:  Yes, Your Honor.  We had a search warrant

14   that included, specifically, electronic devices in -- in the

15   apartment, on the defendant's person, and authorization to

16   access those -- those electronic devices.

17           THE COURT:  So, Ms. Morgan, if you turned the phone

18   off, then they wouldn't have had access unless they had some

19   biometric or some other way of opening it.

20           THE DEFENDANT:  Yes.  The data was all in the cloud,

21   and there was nothing illegal on my phone.

22           MR. BROWN:  So --

23           THE COURT:  Obviously, we're looking to see whether

24   there was.  Turning it off meant that they were not in a

25   position to actually access it.

1          MR. BROWN:  Yes, Your Honor.  And there's a -- if

2     it's turned off, then to reaccess the phone, generally you have

3     to input a password as --

4          THE COURT:  The biometric way of doing it.

5          MR. BROWN:  Yes, Your Honor.

6          THE COURT:  Let's move on to 25.

7          MR. BROWN:  False statements and deceptions targeting

8     VCEs and other USFIs.

9          During the period from in or around August 2016 through

10     in or around February 2022, Morgan and Lichtenstein used false

11     and fictitious identifying information to establish accounts,

12     made false and fraudulent representations, and lied to and

13     deceived VCEs and other USFIs that they used to launder the

14     illegal proceeds of the 2016 hack of victim VCE, including the

15     following.

16          THE COURT:  So in terms of you, it would have been

17     after 2020 that you would have been involved in it; am I

18     correct?

19          THE DEFENDANT:  That is correct, Judge.

20          THE COURT:  Okay.  At that point would you agree with

21     what they said your role would have been, along with

22     Mr. Lichtenstein?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  Let's move to 14.

25          MR. BROWN:  Your Honor, I think prior to 2020,

1    Ms. Morgan was still -- she still had knowledge that these

2    transactions involved the proceeds of some form of unlawful

3    activity, even if she didn't have specific knowledge that this

4    was the 2016 Bitfinex hack.  And as she mentioned earlier, you

5    know, she suspected possible drug proceeds or tax evasion

6    proceeds.  But she did have some knowledge that there was some

7    form of illegal activity that generated these proceeds.

8           THE COURT:  Would you agree with that?  In other

9    words, even if you didn't know it was that famous hack, that,

10   as a practical matter, you were aware they were unlawful

11   proceeds in some way?

12          THE DEFENDANT:  Yes, I was suspicious they were

13   unlawful in some way.

14          THE COURT:  All right.  Then let's move to --

15          MR. BROWN:  All right.  A.?

16          THE COURT:  Yeah.

17          MR. BROWN:  Between on or about August 22, 2016, and

18   on or about August 20, 2017, Lichtenstein established multiple

19   accounts at VCE 1 using email addresses from the same

20   India-based email provider and in the names of third parties

21   unrelated to Lichtenstein.

22          B., in or around February and March 2017, Lichtenstein

23   declined to respond to inquiries from VCE 1's employees

24   requesting that the registered account holders for seven of the

25   accounts provide additional identifying information to verify

1    their account ownership.  As a result, VCE 1 froze the

2    accounts.

3         C., on or about February 28, 2017, in response to

4    inquiries from employees from VCE 7 as part of VCE 7's AML/KYC

5    policies, Lichtenstein falsely and fraudulently represented

6    that he would be using his VCE 7 account to trade only his own

7    virtual currency that he had acquired as a result of his

8    earlier investment in BTC.

9         In or about February 2018, Lichtenstein established an

10   account at USFI 5 for Morgan and Lichtenstein's company,

11   Endpass, and in doing so represented to USFI 5 that the

12   primary payments into the account would be from

13   software-as-a-service customer payments.  In actuality, Morgan

14   and Lichtenstein used the account to launder the proceeds of

15   the hack of victim VCE.

16              THE COURT:  Okay.  Why don't we stop there.  So in

17   terms of a., b., and c., did you at some point come to know

18   this information?

19              THE DEFENDANT:  I had no knowledge of a., b., or c.,

20   but I do not dispute them.

21              THE COURT:  All right.  When did your relationship

22   with Mr. Lichtenstein start?

23              THE DEFENDANT:  I met him, I believe, in 2013, but we

24   weren't necessarily dating immediately.  Sometime after that we

25   did live together.  I think -- I think it must have been 2014

1    or '15 we started living together.

2              THE COURT:  In terms of paragraph d. that talks about

3    something in 2018, in terms of Mr. Lichtenstein establishing an

4    account for you and his company, Endpass, and that this was

5    used to launder the proceeds -- although you may not have known

6    about the hack in 2018 -- but that it was used to -- for -- to

7    launder proceeds from some unlawful activity, would you agree

8    with that?

9              THE DEFENDANT:  May I be allowed to clarify here?

10             THE COURT:  Sure.

11             THE DEFENDANT:  So in -- Mr. Lichtenstein started

12   this company by himself in 2018.  I was not yet part of it.

13   Sometime in 2019 or 2020, I officially became CEO, although he

14   was very heavily involved.  I was not aware of the illegal

15   proceeds at the time.

16             THE COURT:  At what time, '18 or --

17             THE DEFENDANT:  Well, I wasn't involved in the

18   company in '18 at all.  I wasn't involved until, I think, late

19   2019, maybe early 2020.  And then in 2020, after he told me

20   about the hack, then I eventually became aware that these were

21   the proceeds of laundered funds, but I was not initially aware

22   of that.

23             THE COURT:  Okay.

24             THE DEFENDANT:  But I allowed it to continue once I

25   was, and I don't dispute that.

1          THE COURT:  So after you became aware of the hack, he

2     continued to use these accounts that related to the company

3     that you were involved with him?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Moving on to e.

6          MR. BROWN:  E., on or about January 8, 2019, in

7     response to a KYC verification email from VCE 10, Lichtenstein

8     wrote to representatives from VCE 10, falsely and fraudulently

9     stating that he has, quote, been investing in and mining [BTC]

10    since 2013, so the source of funds would be those early crypto

11    assets.

12         THE COURT:  Do you know anything about that?

13         THE DEFENDANT:  I'm not aware, but I do not dispute.

14         THE COURT:  Okay.  Moving to f.

15         MR. BROWN:  F., on or about June 27, 2019, in

16    response to an inquiry from a representative from VCE 7 about

17    how her business, SalesFolk, interacted with virtual currency

18    and how her new institutional account would be used, Morgan

19    falsely and fraudulently responded:  SalesFolk has some B2B

20    customers that pay with cryptocurrency, when, in fact, that was

21    not the case.

22         Morgan further responded, quote, Additionally, I also

23    have some personal cryptocurrency of my own that I would like

24    to sell to finance the development of some new software that we

25    are beginning to build.  Because the company is an LLC taxed as

1    an S corp it has pass-through taxation and I am the sole owner.

2    I was going to use some of my personal crypto to fund out new

3    software projects.

4            THE COURT:  So do you agree that's accurate?

5            THE DEFENDANT:  The first part of the statement was

6    false.  The second part of the statement I believed was true at

7    the time.

8        So to clarify, that's confusing.  The part where it

9    says, "SalesFolk has some B2B that pay with cryptocurrency,"

10   that was false.  But everything that followed I believed was

11   true at the time when I made the statement.

12           THE COURT:  So the statement about additionally you

13   said is true?

14           THE DEFENDANT:  Yes, that was all true in my mind at

15   the time.

16           THE COURT:  All right.  Moving along.

17           MR. BROWN:  G., on or about July 2, 2019, Morgan

18   further represented to VCE 7 about the source of her

19   cryptocurrency deposits, quote, My boyfriend, now husband,

20   gifted me cryptocurrency over several years, 2014, 2015, which

21   have appreciated.  I've been keeping them in cold storage.

22   Those funds were, in fact, proceeds of the hack of victim VCE.

23           THE COURT:  All right.  Would you agree with that,

24   and were you aware of that -- that the -- either that those

25   funds were the hack or that they were illegal proceeds?

1          THE DEFENDANT:  I agree that I made the statement,

2     which I believed to be true at the time.  However, I know

3     that -- that they were now -- I know they were the funds of

4     illegal proceeds.  So I agree.

5          THE COURT:  Now isn't the issue.  The issue is at the

6     time, whether you were aware --

7          THE DEFENDANT:  I was not aware that -- I guess --

8     hold on a second.

9          MR. GOROKHOV:  Your Honor, if I may confer with my

10    client for a second.  Thank you.

11         THE COURT:  Sure.

12         THE DEFENDANT:  May I continue, Your Honor?

13         THE COURT:  Yes.  Go ahead.

14         THE DEFENDANT:  At the time I made the statements, I

15    had no idea that they were illegal because he had been repaying

16    me in crypto -- in -- or rent in crypto, but once I knew about

17    the hack, I made no effort to rectify or inform the authorities

18    of my use of illegal proceeds.

19         THE COURT:  All right.

20         MR. BROWN:  Your Honor, if I could clarify here.  The

21    falsity of this statement really has to do with the time line;

22    that the cryptocurrency that Ms. Morgan was receiving was not

23    gifted to her in 2014 or 2015.  That preceded the hack itself

24    in 2016.  It was really cryptocurrency that she was receiving

25    more recently from Mr. Lichtenstein, that she mentioned, to

1 repay certain expenses.

2    THE COURT:  And that would have been later in time

3 than the 2019 or around this time?

4    MR. BROWN:  It would have been certainly later than

5 2014 or 2015.  It is not true that she received that

6 cryptocurrency from Mr. Lichtenstein starting in 2014 and kept

7 it in cold storage until that -- the currency came into that

8 account.

9    THE COURT:  So you're agreeing with what she has

10 said; is that she wouldn't have known it in 2019.  But when she

11 came to know it, she didn't do anything?

12    MR. BROWN:  With respect to her knowledge, I think --

13 and I want to make sure that there's a clear record on this.  I

14 think she had knowledge that the funds were the proceeds of

15 some illegal activity, even if she didn't know what it was.

16   You might characterize that as willful blindness or

17 something else.  But it satisfies the statutory requirement of

18 knowledge that the funds were the proceeds of some unlawful

19 activity, even if she didn't know what it was specifically.

20    THE COURT:  So -- hold on.  It's your position, then,

21 in July of 2019, that when she's making these representations,

22 that she would have known -- that's not what she said.  But

23 that she would have known that the -- that there were some

24 illegal proceeds that were at issue?

25    MR. BROWN:  Yes.  And maybe we need to hear her

1      clarify this point.  But, you know, she's -- she stated earlier

2      that she was aware that -- of indications that these proceeds

3      were the proceeds of some unlawful activity.  That's with

4      respect to her knowledge.

5           And with respect to the falsity here, part of why the

6      time line is important is to sort of explain large values of

7      cryptocurrency.  If you acquired bitcoin in 2014 as opposed to

8      much more recently, you probably acquired it at, you know,

9      relative pennies on the dollar.  And it's appreciated

10     considerably since then.  It's easier to sort of explain why

11     you have a large value of bitcoin if you acquired it earlier in

12     time.

13          THE COURT:  You need to keep your voice up or into

14     the microphone.

15          MR. BROWN:  Yes, Your Honor.

16          But -- so it's the time line that is specifically false

17     here, but it's relevant because it's covering up the fact that

18     there's a much larger value of bitcoin that's harder to explain

19     if you acquired it more recently.

20          THE COURT:  Okay.  So -- but that gets to the issue

21     of whether Ms. Morgan, it didn't sound like, was agreeing in

22     2019 that she would have been aware that at that point --

23     although she didn't hear about the hack until 2020 -- that

24     there were illegal proceeds that were involved.  Because that's

25     not what she said.

1          THE DEFENDANT:  May I clarify, Judge?

2          THE COURT:  Yes.

3          THE DEFENDANT:  I was not explicitly aware, but I

4    was suspicious that there may be illegal proceeds involved by

5    2019.

6          MR. GOROKHOV:  Your Honor, I think one of the main

7    points of confusion here is that Ms. Morgan received

8    cryptocurrency from her husband for a long time, since

9    virtually the beginning of their relationship.

10          The issue here is that -- and I think Mr. Brown stated

11    this accurately.  That by 2019, when the statement was made,

12    she was highly suspicious that her husband was getting money

13    from illegal activity.  She didn't know what that was.  So

14    we're in agreement on all of that.

15          THE COURT:  So what I'm trying to do is to make sure

16    that -- I had interpreted her comments earlier that she did not

17    know in 2019 that they were illegal, even though we have --

18    2020 is the knowledge of the hack.

19          But you're indicating, Ms. Morgan, that you were

20    suspicious that the -- these were based on illegal proceeds; is

21    that correct?

22          THE DEFENDANT:  Yes, that is correct.

23          THE COURT:  Let me -- I need to do this for a second.

24    Set all the security stuff up.

25          Okay.  All right.  I think I understand that.

1      Okay.  Let's move on then to -- I guess 26 through 27.

2          MR. BROWN:  At all times relevant to this indictment,

3   VCE 1, VCE 7, VCE 10, and USFI 5 were financial institutions

4   doing business in the United States, were subject to the Bank

5   Secrecy Act, and were registered with FinCEN.

6          THE COURT:  Okay.  So I take it there's no dispute

7   about that; is that correct, Counsel?

8          MR. GOROKHOV:  No, Your Honor.  No dispute.

9          THE COURT:  Okay.  All right.  Then 27.

10          MR. BROWN:  Each of the accounts referenced above was

11   used by Lichtenstein and Morgan to launder the illegal proceeds

12   of the 2016 hack of victim VCE, and the government's tracing

13   has shown that the majority of funds deposited into each

14   account was derived directly or indirectly from the same stolen

15   funds.  One purpose of Lichtenstein and Morgan's deceptions was

16   to frustrate the AML, KYC, and due diligence efforts by the

17   above-referenced VCEs and other financial institutions and,

18   thereby, to prevent the transmission of SARs mandated under the

19   Bank Secrecy Act to FinCEN and the U.S. Department of the

20   Treasury in the District of Columbia.

21          THE COURT:  Okay.  Would you agree with that?

22          THE DEFENDANT:  I agree with regards to my role that

23   we were trying to prevent detection.

24          THE COURT:  Okay.  Then the conclusion.

25          MR. BROWN:  Morgan admits that some of the proceeds

1       she personally obtained as a result of the offenses described

2       above have been dissipated by her and cannot be located upon

3       the exercise of due diligence; have been transferred or sold

4       to, or deposited with, a third party; and/or have been placed

5       beyond the jurisdiction of the Court.

6                   THE COURT:  Would you agree with that?

7                   THE DEFENDANT:  Yes, I agree.

8                   THE COURT:  Go ahead.

9                   MR. BROWN:  Morgan acknowledges that the specific

10      properties listed in the consent order of forfeiture are

11      proceeds of and/or property involved in this money laundering

12      conspiracy.

13                  THE COURT:  All right.

14                  MR. BROWN:  Morgan waives any challenge to venue in

15      the District of Columbia.

16                  THE COURT:  That's correct?  That you waive venue in

17      terms of having the case brought here in D.C.?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  All right.  Then if government counsel

20      could, in summary terms, indicate based on what she has agreed

21      to where it fits into the elements of the offense of Counts 2

22      and 3, which are ones that she has -- that she's been charged

23      with.

24              And I want, Ms. Morgan, for you to listen to his summary

25      of the evidence as it relates to the offense -- the elements

1    because the -- you have to have evidence on these elements.

2    Because I'll ask you at the end if you agree with the way he's

3    described it.

4              THE DEFENDANT:  Yes, Your Honor.

5              MR. BROWN:  The first element for a conspiracy to

6    launder monetary instruments is an agreement between two or

7    more people.  That agreement is evidenced in the statement of

8    facts and in Ms. Morgan's statements showing that she and

9    Mr. Lichtenstein had a relationship.

10         Following Mr. Lichtenstein's hack of the victim virtual

11   currency exchange, he began to enlist her in assisting him in

12   conducting money laundering transactions.  Ms. Morgan's

13   understanding evolved over time.  And at first she didn't have

14   a full understanding of where the funds came from, but she was

15   aware or had some suspicion or awareness or understanding that

16   the funds were the proceeds of some form of illegal activity by

17   no later than early 2020.

18         There was an explicit discussion and disclosure by

19   Mr. Lichtenstein to Ms. Morgan that he, in fact, did hack the

20   victim virtual currency exchange and that the funds were the

21   proceeds of that hack.

22         So the agreement began as more of an implicit agreement

23   and evolved into a more explicit understanding.

24              THE COURT:  Would you agree with that, the way he's

25   described it?

1          THE DEFENDANT:  Yes, I agree.

2          THE COURT:  Okay.  Go ahead.

3          MR. BROWN:  And with respect to the laundering

4     conduct, the -- there are financial transactions that involve

5     bitcoin.  Those are movement of funds by any means, and those

6     are -- there are specific laundering transactions described --

7     for example, on paragraph 20 of Ms. Morgan's statement of

8     offense, describing steps taken to convert the stolen bitcoin

9     into other assets and to move bitcoin.  And also paragraph 22

10    describing steps to move the bitcoin -- the stolen bitcoin,

11    convert it into other forms of assets, like the Monero.

12          Ms. Morgan participated in memorizing a seed phrase,

13    which is a -- it's something you memorize that gives you the

14    ability to recreate that -- that cryptocurrency wallet.  So

15    it's a way to recover those funds.  Ms. Morgan memorized that

16    seed phrase for the Monero.

17          Ms. Morgan participated in taking gold coins at

18    Mr. Lichtenstein's direction that were represented -- that were

19    purchased with funds from the hack.  And Ms. Morgan buried

20    those gold coins in an effort to, you know, prevent those funds

21    from being identified and recovered.

22          THE COURT:  Okay.  Hold on.  Do you agree with that

23    so far?

24          THE DEFENDANT:  I agree.

25          THE COURT:  Go ahead.

1          MR. BROWN:  And in terms of Ms. Morgan's knowledge,

2     as we've already addressed, the statute for a predicate money

3     laundering offense simply requires knowledge that the funds or

4     proceeds of some --

5          THE COURT:  You need to keep your voice up or into

6     the microphone.

7          MR. BROWN:  I'm sorry, Your Honor.

8          THE COURT:  I'm getting the beginning of a cold, and

9     part of it is my hearing.  But go ahead.

10          MR. BROWN:  In terms of her knowledge, as we've

11     already discussed, she had knowledge that the funds were the

12     proceeds of some form of illegal activity.  And over the course

13     of the conspiracy, that general level of understanding evolved

14     into a more specific understanding that these funds were, in

15     fact, the proceeds of the 2016 hack of the victim virtual

16     currency exchange.

17          The transaction did, in fact, involve the proceeds of

18     that 2016 hack, and the transactions were signed, in whole or

19     in part, to conceal specified statutory attributes of the

20     stolen funds.  So by moving them through various accounts,

21     converting them into different kinds of assets, like gold coins

22     or Monero, other forms of cryptocurrency, or purchasing these

23     prepaid debit cards and then withdrawing the money in cash, the

24     defendants were converting the stolen proceeds from one asset

25     into another.

1    And one purpose of that was to make it harder to

2    identify the origin of those funds, to obfuscate the audit

3    trail of that transaction, and, generally, to make it harder to

4    detect that these funds were illegal proceeds.

5         THE COURT:  Would you agree with that, as he

6    explained it?

7         THE DEFENDANT:  Yes, I agree.

8         MR. BROWN:  And one additional element for the charge

9    against Ms. Morgan, as a 371 money laundering conspiracy,

10   there's an additional overt act element to that charge.  And

11   the overt acts include acts of concealment.  And so, for

12   instance, Ms. Morgan, representing that her -- her company --

13   the account for her company SalesForce --

14        THE DEFENDANT:  Sales- --

15        MR. BROWN:  SalesFolk.  Excuse me.  That it was going

16   to receive primarily deposits from B2B customers who --

17   business-to-business customers who paid in cryptocurrency.

18   That was a false statement.  And that was designed -- at least

19   one -- one purpose of that was to further the money laundering

20   conspiracy.

21        THE COURT:  Would you agree with that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Okay.

24        MR. BROWN:  And with respect to the second count --

25   or Count 3 in the information, the conspiracy to defraud the

1    United States, Element 1 is that there's an agreement, which

2    we've discussed already.

3         Element 2 is to obstruct a lawful function of the

4    government, and that is addressed in paragraph 27 of her

5    statement of offense; that at least one purpose of these

6    deceptions was to prevent the bank's due diligence, which, in

7    turn, did, in fact, frustrate their compliance with the

8    Bank Secrecy Act and filing of SARs.

9         Deceitful or dishonest means, those are the false

10   statements that Ms. Morgan and Mr. Lichtenstein made to the

11   various banks, financial institutions, and cryptocurrency

12   exchanges.  And the overt acts are the same as discussed above.

13        THE COURT:  Do you agree with that?

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  All right.  I'll find based on the

16   government's proffer and the admissions that Ms. Morgan has

17   made that there's evidence beyond a reasonable doubt on the

18   elements of the two offenses that she's pleaded guilty to.

19        Are there any specific defenses that she needs -- that I

20   need to discuss with her where she would have waived, you know,

21   a defense specifically, other than venue?

22        MR. GOROKHOV:  No, Your Honor.  Venue is the main

23   one.  Thank you.

24        THE COURT:  Okay.  All right.  In terms of -- if you

25   can put the plea letter in front of you, because that's what

1    we're going to go over.

2              MR. GOROKHOV:  Yes, Your Honor.

3              THE COURT:  And did you read it over carefully?

4              THE DEFENDANT:  Yes, very carefully.

5              THE COURT:  All right.  What I'm going to do is I'm

6    going to go through the statutory penalties, the advisory

7    sentencing guidelines, and certain portions of it in the

8    letter.

9         I'll start with the statutory penalties.  By statute,

10   each crime has a maximum sentence, and it's unlawful to

11   sentence you above that.  So for Count 2 and Count 3, the

12   maximum jail sentence is 5 years.  The fines for each of those

13   counts is $250,000, the maximum, or two times the pecuniary

14   gain or loss.

15        In terms of supervised release, it would be no more than

16   3 years of supervised release on both of those counts.

17   Supervised release, if you're given a period of jail time,

18   you're in the community.  There's certain conditions you're

19   expected to follow.  If you commit another crime or you don't

20   follow through with the conditions that have been set, then

21   there can be a violation and your supervised release can be

22   revoked.

23        There can then be a -- a new sentence, which is a

24   combination of the statute and the advisory sentencing

25   guidelines.  The important part is if you've been given,

1    obviously, a period of jail time beforehand, you will not get

2    credit for -- for the time you spent on that and your new

3    sentence.

4           Do you understand all of that?

5                THE DEFENDANT:  Yes, Your Honor.

6                THE COURT:  Okay.  And there is a requirement for a

7    mandatory restitution and forfeiture, and you need to pay a

8    hundred [sic] dollars as a special assessment.

9           Do you understand all of that?

10               THE DEFENDANT:  Yes.

11               THE COURT:  All right.  Moving to the advisory

12   sentencing guidelines, there's a statute, 3553(a), which sets

13   out the factors.  These are things -- they're very broad

14   concepts.  They're the seriousness of the offense, background

15   information relating to you, and any rehabilitation needs.

16   There's the just punishment, deterrence to you, deterrence to

17   others, those kinds of things, that the Court would consider.

18          Probation will prepare a presentence report.  The report

19   will have the criminal conduct; will give background; personal

20   information about you; financial; criminal history, if there's

21   any; education; job; you know, any health issues; substance

22   abuse; all of those kinds of things.

23          You'll receive a copy of the presentence report, you and

24   the government.  And before I get it, you can review it.  You

25   can object if they're factually incorrect or -- they will

1    provide the advisory sentencing guideline range.  And this is

2    more the official one.  You and the government have done, you

3    know, a review of what you think it is, but the official one

4    will be, actually, probation.

5         So the advisory sentencing guidelines, Congress has set

6    up this commission.  And the purpose of this is to set up more

7    uniform sentencing by judges by having them consider the same

8    factors.  And so what they've done is come up with a system for

9    assessing points depending on the base offense, the charge, and

10   then if there's particular enhancements related to that

11   conduct.  And there's also a criminal history point.

12        So -- let me find it to be accurate.  Okay.  So Count 1,

13   the base offense is 6.  Because there's more than $65 million

14   involved it's an additional 24 points.  It's a substantial

15   financial hardship to one victim, which is an additional

16   2 points.  A sophisticated means is used, an additional

17   2 points.

18        There was an incomplete conspiracy, in large part,

19   because you eventually got caught; and the deduction of

20   2 points for being a minor participant in terms of not being

21   the lead person, which is Mr. Lichtenstein.

22        In terms of Count 2, basically, they group the two

23   together, and so it would be the higher offense.  So it's 29.

24        Assuming you continue to accept responsibility, there's

25   a deduction of 2 points.  And then the government can file a

1    motion indicating an additional point if you continue to accept

2    responsibility and the fact that by pleading at this point,

3    it's avoided trials that they needed to do.

4         So it basically comes down to a total offense level of

5    26.

6         And as I said, the two counts are grouped together.  So

7    it's going to be one -- you know, one offense level for both of

8    them, which could be -- you could be sentenced -- and I'd have

9    to look at the advisory sentencing guidelines.

10        Some of them require that you sentence them

11   concurrently, at the same time, so your sentence is the same,

12   or you could do -- the Court would have an option of making the

13   sentences one right after the other, consecutive.

14        It's a very technical issue in the advisory sentencing

15   guidelines, and I, frankly, don't know with this grouping.

16   Probation will let us know whether the Court would have even

17   the option of doing a consecutive one, unless government

18   counsel knows.

19        MR. BROWN:  Your Honor, I wanted to draw the Court's

20   attention at the bottom of page 3 of the plea letter.

21        Under grouping, the second paragraph addresses this

22   issue of whether the two sentences can run -- can even run

23   concurrently as opposed to consecutively.  And it would be

24   based on Section 5G1.2(d).  And this is an issue that we have

25   discussed with -- with defense counsel.  So there's a

1   possibility that if the guidelines range is above the statutory

2   maximum for one of the counts, the Court can impose consecutive

3   sentences only to reach --

4        THE COURT:  Right.  But it would be consecutive.  In

5   other words, the sentences would be right after the other, for

6   your information.

7        So were you aware of that?

8        MR. GOROKHOV:  Your Honor, just to be clear, I think

9   what Ms. Morgan's understanding has been and our agreement with

10  the government is it would be consecutive, to the -- in the

11  event that Ms. Morgan would get a sentence that would exceed

12  one of the five-year statutory maximums, that the little

13  portion of it --

14       THE COURT:  Would not be, obviously, imposed because

15  you can't go beyond the statutory.  But my question is whether

16  you do sentencing concurrent or consecutive.  If I read this

17  correctly, the Court -- is it required to be consecutive, or it

18  can't be consecutive?

19       MR. BROWN:  That would depend -- for calculating the

20  total punishment under the guidelines --

21       THE COURT:  Right.

22       MR. BROWN:  -- I believe 5G1.2(d) is -- is phrased in

23  the mandatory, as in the Court should.

24       THE COURT:  Okay.

25       MR. BROWN:  But that -- as in the recommended

1    sentence under the guidelines as calculated would be

2    consecutive to the extent that as defense counsel puts it --

3              THE COURT:  Right.  It can't be beyond the statutory,

4    but the point is it's still on the two counts, could be -- is

5    required to be consecutive?

6              MR. BROWN:  Yes, Your Honor.  And -- and -- and I

7    just mention -- and I know the Court will get into this.  This

8    is all a pre-possible 5K calculation of the guidelines.

9              THE COURT:  Right.  Right.  No, I understand that.

10         Okay.  And is that -- is that your understanding from

11   your discussions, Ms. Morgan, in terms of just a -- straight

12   calculations before we get into, you know, what the departures

13   are.

14             MR. GOROKHOV:  Again, Your Honor, our understanding

15   on this is that it's consecutive -- so the low end of the range

16   here is 63 months.  So just using that as an example, our

17   understanding is if the Court were to impose 63 months, because

18   we have --

19             THE COURT:  You can't because it's 60.

20             MR. GOROKHOV:  Right.  But because there's two

21   five-year statutory maximums --

22             THE COURT:  Right.

23             MR. GOROKHOV:  -- you can -- you can impose that

24   portion.  You can add the three extra months as a consecutive

25   sentence to reach a guidelines -- within guideline sentence.

1    That's, I think, the most simple example of that, Your Honor.

2         THE COURT:  The last part has gotten me confused.

3    If -- in terms of coming up with the guidelines here, which --

4    and let me just -- it's 63 to 78.  Obviously, you can't do

5    63 because it's higher than the statutory maximum.  So I'm

6    still asking the question of whether there -- you, obviously,

7    cannot sentence her to more than 60 months.

8         But it's 63 on each count; am I correct?

9         MR. BROWN:  Your Honor, the way that I read -- and I

10   think we --

11        THE COURT:  I want to make sure I have on the record

12   what you-all agreed to.

13        MR. BROWN:  Yeah.  We -- and I think government and

14   defense understand this the same way.  So under 5G1.2, if you

15   have -- so 5G1.2 discusses sentencing on multiple counts of

16   conviction.

17        THE COURT:  Right.

18        MR. BROWN:  And the general rule is counts are

19   sentenced concurrently.

20        THE COURT:  Right.

21        MR. BROWN:  But what 5G1.2 says is if you have an

22   example -- like let's say two five-year counts, as we have

23   here, and a lower end of the sentencing guidelines of

24   63 months, the Court would be directed to sentence those

25   two counts consecutively, so one after the other.  And you

1     would essentially have a 60-month sentence for Count 2 in this

2     case, and a 3-month sentence consecutive for Count 3.

3             THE COURT:  Okay.

4             MR. BROWN:  That --

5             THE COURT:  That's -- that's your -- that's your

6     understanding?  That's their --

7             MR. GOROKHOV:  Yes, Your Honor.  And I'll let

8     Ms. Morgan answer as well.

9             THE COURT:  So is that, Ms. Morgan, your

10    understanding?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Okay.  We'll -- probation will weigh in

13    on this.  If they come up with something different, you'll,

14    obviously, be in a position to say something.

15            MR. GOROKHOV:  Yes, Your Honor.  Thank you.

16            THE COURT:  All right.  In criminal history, that

17    would be convictions.  You don't have any.  Ordinarily it would

18    be convictions.  We'd look at the nature of the charges, how

19    long ago it was, and what the sentence was.  But since there

20    aren't any, it appears it would be -- you'd be in Criminal

21    History Category I, which places you in the 63 to 78 months;

22    25,000- to 250,000-dollar range for fines.

23          So in -- still in the advisory sentencing guidelines

24    scheme, there are what we call departures.  Despite the fact

25    that the commission has tried to take into account all factors

1    that the Court would consider, there are some limited areas

2    where the Court can depart down or depart up.  You would be

3    interested in the departure down.

4          And that is under 5K1.1, which relates to cooperation or

5    providing substantial assistance to the government.  If that

6    applies, then the Court could sentence you to something below

7    what the guideline range is that we've just been discussing.

8          Now, the departures are -- the U.S. Attorney's Office

9    would present it to a different committee, departure committee,

10   what it is that you have done that's in cooperation or

11   substantial assistance.  They would make an independent

12   decision as to whether to authorize the filing of this motion.

13         If they filed it, then the Court could grant it.  And

14   then the Court has the discretion to sentence you to

15   below-the-sentencing-guideline range.  And I would be able to

16   do that.

17         Now, the government controls that completely.  Neither

18   your counsel nor I can authorize the 5K1.1 or, you know,

19   require them to do it.  But that's something that they

20   completely control.  And that's all within the advisory

21   sentencing guideline system.

22         Now, separately from that, the -- the -- the guidelines

23   are advisory.  They're not mandatory.  And so there is -- the

24   Court does have discretion to do what we call a variance.

25   They're very narrowly drawn.  The Court of Appeals is very

1    strict about the findings you need to make in order to find

2    that.  Because you basically need to do the calculation.  You

3    need to decide that a departure isn't going to work or it

4    doesn't work well enough to reflect the just and reasonable

5    sentence.  And so you're going to vary it for reasons that are

6    either not taken into account or they're not -- they're not

7    given sufficient credit for your particular situation,

8    something of that nature, in which case the Court could do a

9    variance.  I would have to explain all of this on the record.

10   But that sort of sets out how this would actually work.

11         So is that your understanding?

12              THE DEFENDANT:  Yes, it's clear.

13              THE COURT:  All right.  So in terms of -- did you

14   have a full discussion about the advisory sentencing guidelines

15   with your counsel?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Okay.  And I realize that they're

18   somewhat complicated.  But do you understand it as it relates

19   to you and that's in this plea agreement?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  All right.  And do you understand that I

22   won't be able to decide the advisory guideline sentence until

23   after I get the presentence report, after you and your counsel

24   and the government have reviewed it and determined whether you

25   agree with the way they've actually done the calculation?  They

1   do the official one.  We work from that.

2          What is in the plea agreement is what both counsel feel

3   is the likelihood of what it's -- what that would contain, the

4   presentence report.  But it may or may not be different.  So

5   you should just be aware of that.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And, again, if -- if I've decided on the

9   guideline, then I have the authority in some circumstances to

10  do a sentence that's more severe or less severe, and that's

11  those departures; the 5K1.1 that you [sic] talked about.

12         And, again, they are the ones who -- the government has

13  to file for this downward departure with the Court, and then

14  the Court would have to grant it in order to have the

15  discretion to do that.

16         So do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.  And parole -- I'm still

19  required to say this.  Parole has been abolished.  It's

20  something that used to be where you'd have a board that

21  could decide that you could serve part of your sentence -- it's

22  not supervised release.  It's something separate -- part of

23  your jail sentence in the community.  We don't have that

24  anymore.

25         So whatever sentence you get for jail time, if you've

1    got -- receive such a sentence, that is what you would serve.

2    Now, the Bureau of Prisons has its own system, which the Court

3    has nothing to do with that, which, for good-time credit, if

4    you don't have violations or infractions, they can reduce your

5    sentence by 54 days a year.

6          So do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And because these are felonies and

9    you have been found guilty on it, this may deprive you of

10   valuable civil rights.  They include the right to vote, to hold

11   public office, serve on a jury.  It depends on where you live,

12   and that has been fluctuating more recently.  So some states,

13   you don't get these rights back.  Others have a time frame

14   within which you get them back.  Others, it doesn't have any

15   effect at all.  So it depends on where you live.  You should

16   just be aware they can be affected.

17         There's also an issue of the right to possess any kind

18   of firearm and ammunition.  The federal statute still

19   criminalizes convicted felons, which you would be considered,

20   from possessing a firearm and ammunition, even if in the state

21   you could get -- actually get a license.

22         So do you understand all of that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.  So let me go back to the letter,

25   and what I'm going to do is go through the pages and paragraphs

1    because we've gone over quite a bit of it.

2         So page 1, I've done what the charges are, the

3    penalties.

4         Page 2, I've done the same thing; indicated that I've

5    accepted Mr. Lichtenstein's plea.  If I accept yours,

6    ultimately, then the wiring has worked and both of you retain

7    your pleas.

8         It's also indicated they will not bring any other

9    charges based on what has been agreed to in the statement of

10   offense beyond what they've already done.

11        Then there's the calculation of the -- of the guidelines

12   and -- in terms of how that's supposed to work.  And acceptance

13   of responsibility, I went over.  Criminal history, the

14   guideline range on page 4, we've gone over.

15        I'll just indicate on page 5 that the -- the estimated

16   guideline range isn't binding on either me or the -- the

17   probation office that will be doing the -- the calculation.  If

18   it's different, you will not be able to withdraw or rescind

19   this agreement.

20        Do you understand and agree?

21             THE DEFENDANT:  I do.

22             THE COURT:  And in terms of -- if you commit any

23   criminal conduct after this agreement that would form the basis

24   of an increase in terms of the base offense, an enhancement,

25   again, you would not be able to withdraw your plea should it

1       apply.

2               Do you understand and agree?

3                   THE DEFENDANT:  I understand.

4                   THE COURT:  All right.  In terms of 6, there's

5       certain decisions in here about what people will recommend and

6       not recommend.  And it makes it clear in that paragraph -- the

7       last paragraph on -- of paragraph 7, that post-sentencing, you

8       would not be bound by those.

9               So, for instance, any proceedings before the Bureau of

10      Prisons, you would not be bound by any restrictions that would

11      be in this letter.

12              Also, they're not going to file a downward departure

13      based on Rule 35, which would allow -- the government controls

14      it -- after sentencing they decided you had provided additional

15      cooperation or substantial assistance, they could request that

16      the sentence be reduced.  They're telling you upfront, they

17      don't plan on doing that.

18              Do you understand and agree?

19                  THE DEFENDANT:  I understand.

20                  THE COURT:  Okay.  And any efforts on your part to

21      withdraw based on the guilty plea, based on the length of

22      sentence, or based on the Court's decisions about the

23      sentencing will be considered a breach of the agreement.  In

24      other words, you've broken your end of the bargain.

25              Conditions of release, we've already indicated.

1        On page 7 we talk about the cooperation that you've

2   agreed to, and paragraph (a) sets out the type of it.  They're

3   expecting you to cooperate fully, truthfully, completely with

4   the U.S. Attorney's Office, other federal and state law

5   enforcement authorities on matters that they view as relevant.

6   So they make the decision about what's relevant.

7        And your cooperation can include answering questions,

8   giving sworn written statements, taking a polygraph exam,

9   participate in undercover activities.  And you're expected to

10  cooperate fully on all of these matters that they deem your

11  assistance is relevant.

12       If you decide not to do that, then that will be viewed

13  as a breach of the agreement, and that will certainly affect

14  any filing on their part of a 5K1.1.

15       (B) talks about if you have proceeds, et cetera, that

16  you're promptly to turn them over.  You'll have to provide a

17  full accounting of your financial assets.  And if there's going

18  to be meetings, which there likely will be with law enforcement

19  or the prosecutors' office, ordinarily you would have your

20  counsel present.

21       You've agreed that he doesn't have to be present at all

22  meetings.  If you do want him present at all or particular

23  meetings, you can ask for it.  You can ask for it.  You need to

24  do it in writing so there's no dispute you've requested it, and

25  it will have no negative effect, you know, on their decisions

1    about your cooperation.

2         (E) is that you'll testify fully, completely,

3    truthfully, if you're called to a grand jury or any kind of

4    trial.

5         And, again, commission of any kind of criminal offense

6    during this period of time would be viewed as a breach of the

7    agreement, and you could still not withdraw your -- your plea.

8         Do you understand all of that?  Are you agreeing to it?

9              THE DEFENDANT:  I understand.

10             THE COURT:  And you're agreeing to it?

11             THE DEFENDANT:  And I agree, yes.

12             THE COURT:  Moving to page 8, these are waivers, in

13   addition.  One is venue.  You've agreed to not challenge the

14   fact that the case was brought in the District of Columbia.

15        Is that correct?

16             THE DEFENDANT:  Yes.

17             THE COURT:  All right.  Statute of limitations, most

18   crimes have a period of time, a date by which -- from the

19   commission of the crime until when they can prosecute you.  So

20   it's not open-ended for most crimes.

21        In this case, they have brought it in -- within the time

22   frame that's allowed by the -- by statute.  If at some later

23   point the plea is vacated -- and that comes up only when it's

24   vacated -- made null and void -- and by the time that's done,

25   the statute of limitations will have run, they can institute

1    the charges again.  And you cannot raise a defense that, well,

2    at this point -- even though originally it was brought within

3    the statute of limitations, because it isn't now, that that's a

4    defense you can bring.  You're giving up that right.

5         Do you understand that?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Okay.  In terms of trial rights, I've

8    gone through everything.  The second sentence I'll -- bring up.

9    You're agreeing to forego the right to any further discovery or

10   disclosure of information that has not already been provided to

11   you prior to this guilty plea.

12        Is that correct?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Is that what you've agreed to?

15        THE DEFENDANT:  Yes.

16        THE COURT:  All right.  Page 9, second paragraph

17   indicates there's these rules that affect the use of statements

18   you've made that are admissions of your conduct.  And,

19   ordinarily, they're used to impeach.  So if you got up on the

20   stand and you said something different than what you said, say,

21   today, they could use those statements to impeach and undermine

22   your credibility.

23        This only comes up if your plea is withdrawn.  Instead

24   of having it only for impeachment, they can use those

25   statements as direct evidence.

1          Do you understand and agree?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  We've done appeal rights.

4          Ten has the collateral attack, which is another way of

5    appealing or attacking your conviction or sentence.  And you're

6    giving up your rights to file these under various forms that

7    are set out here, but there are exceptions.

8          And the exception is if you base your motion on newly

9    discovered evidence or you're making a claim that you received

10   ineffective assistance of counsel, then you would be able to

11   file a collateral attack.

12         Also, you're reserving the right to file a motion if the

13   Sentencing Commission reduces the -- the guideline range as it

14   relates to your crimes.  It depends on whether it's retroactive

15   or not.  But you're allowed to file a motion to get a benefit

16   from that.

17         Do you understand and agree?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  You're agreeing not to collect any

20   witness fees.

21         Restitution -- which is mandatory -- you're agreeing to

22   pay restitution without knowing the amount.  They will come up

23   with an amount.  You can challenge the amount or how they

24   calculated it.  But you are agreeing that restitution is

25   appropriate.  It indicates where it's paid, and the -- you're

1   required to file and provide information on your finances, both

2   to the U.S. Attorney's Office and to probation, who will be

3   monitoring this.

4        And the -- the requirements and terms of any notices or

5   other kinds of things that you would ordinarily require, you're

6   giving up those rights.  So there is -- you're agreeing to

7   restitution, just not the amount at this point.

8        Is that your understanding and agreement?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Okay.  In terms of forfeiture, we've

11   indicated the amount, the money forfeiture of $72,618,825.60.

12   That would be combined with Mr. Lichtenstein.  It's the total

13   amount.  It's not each of you having to pay into it.

14        There will be a consent forfeiture money judgment, which

15   I believe there's a consent, preliminary one, which you, I

16   think, have signed.  There will be a final one at a later

17   point.

18        And, again, this -- there is a -- under (b) there is a

19   particular transaction that -- in terms of asset recovery

20   that -- I'm not going to go through in detail, but you can

21   look.  It's at the bottom of 11 into 12 where they're not

22   immediately going to go forward to have -- to liquidate this

23   asset.  There needs to be some assistance from you and

24   Mr. Lichtenstein, but also to make sure that, you know, that

25   the -- in liquidating it, that the -- the appropriate amount is

1      actually collected for it.

2           So have you looked at that?  And do you understand and

3      agree to it?

4           THE DEFENDANT:  Yes.  I understand my husband will

5      help them do that.

6           THE COURT:  Right.  Okay.  All right.  So you're

7      agreeing in paragraph (d) that asset -- you agree to forfeit

8      the property which constitutes or is derived from proceeds that

9      go back to your -- Count 2 of your charges or any substitute

10     assets.

11          And you -- you're agreeing that -- that -- that the --

12     that in terms of how they go about doing -- getting the

13     forfeiture, that they will not have to go through all of the

14     rules in terms of notice and everything else.

15          You've agreed to give that up, is that --

16          THE DEFENDANT:  Yes, I agree.

17          THE COURT:  You agree to that.

18          So, also, at the bottom -- and if -- they've indicated

19     that they have total discretion in terms of how they go about

20     it:  criminal, civil, et cetera.

21          On page 13, (i) talks about that they'll make a

22     nonbinding referral to the money laundering asset recovery by

23     the DOJ so that the money would go to both forfeiture and

24     restitution.  Now, if they deny that request, then you're left

25     with having to pay both of them separately.  But if they grant

1    it, then the payment to the victim will also be part of what's

2    been forfeited.

3            Do you understand and agree?

4            THE DEFENDANT:  Yes.

5            THE COURT:  All right.  15 talks about the breach of

6    the agreement if you don't follow through with your conditions

7    and your requirements and obligations or you engage in any new

8    criminal conduct; you will have breached the agreement.

9            The government's free from its obligations.  You will

10   not have the right to withdraw your guilty plea.  You'll be

11   subject to any criminal prosecutions should you have committed

12   a crime.  The 5K1.1 is not going to get filed, and the

13   government will be free to use against you all of the

14   statements and admissions that you have made.

15           Do you understand and agree?

16           THE DEFENDANT:  Yes.

17           THE COURT:  In terms of proving the breach, the

18   standard are for -- and burden for breaching your -- your

19   obligations is preponderance of the evidence, which is the

20   civil standard.  So it, obviously, would be below the beyond a

21   reasonable doubt.  And then if it's new charges, it'll be

22   probable cause, which is even a lower standard or burden.

23           Do you understand and agree?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  Government's obligations --

1    and that gets into the 5K1.1, which I talked about, the bottom

2    of 14.

3         15 talks about witness protection.  If you request it,

4    they can recommend it.  It's in the -- the discretion of the

5    witness security program as to whether they would accept you.

6    If they did accept you, then you would have to follow through

7    with whatever their requirements are.

8         Do you understand and agree?

9         THE DEFENDANT:  Yes.

10         THE COURT:  All right.  Is this the complete

11    agreement?  Anything else that you think is part of the

12    agreement, this is the time to speak up.  It either has to be

13    in writing or we've discussed it in open court.  Anything else?

14         THE DEFENDANT:  I think that's everything.  Thank

15    you, Your Honor.

16         THE COURT:  All right.  And it also indicates, you

17    know, what it binds -- what office it binds, which is set out.

18         All right.  The next sets of questions really go to the

19    voluntariness of your plea.  Has anyone, including your

20    attorney -- anybody else, the -- law enforcement, prosecutor --

21    anybody else you've come in contact with since your arrest

22    promised or suggested to you that just by pleading guilty

23    that it guarantees a specific sentence, necessarily a lighter

24    one?

25         THE DEFENDANT:  No.

1          THE COURT:  Anyone forced, threatened, or coerced you

2     in any way into entering the plea of guilty?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand the agreement reached

5     in this case resulted from negotiations between your attorney

6     and the government's attorney?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And not the Court?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Has anyone made any promises to you in

11     connection with your guilty plea other than those in the plea

12     letter or we've been discussing?

13          THE DEFENDANT:  No.

14          THE COURT:  Anyone made any promises to what sentence

15     I'll impose if I accept your guilty plea?

16          THE DEFENDANT:  No.

17          THE COURT:  Do you understand I don't know what

18     sentence I'll impose because I haven't heard from probation,

19     the lawyers, and you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  And you can remain in the

22     community with the present conditions, as long as you're in

23     compliance.

24          Do you understand that?

25          THE DEFENDANT:  Yes.  Absolutely.

1        THE COURT:  Are you entering your plea of guilty

2   voluntarily and of your own free will?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Are you entering your plea of guilty

5   because you are guilty?

6        THE DEFENDANT:  Yes, I am.

7        THE COURT:  Anything you don't understand?  Anything

8   you want to ask me or your counsel?

9        THE DEFENDANT:  No.

10       THE COURT:  Okay.  How do you, Heather Morgan, plead

11   to Count 2, money laundering conspiracy; and Count 3,

12   conspiracy to defraud the United States?  Guilty or not guilty?

13       THE DEFENDANT:  I plead guilty, Your Honor.

14       THE COURT:  I'm satisfied that the defendant's fully

15   competent, capable of making a decision today.  She understands

16   the nature and consequences of what she's doing.  She's acting

17   voluntarily, of her own free will.  There's an adequate factual

18   basis for the plea.

19       Therefore, the plea is accepted, and the Court finds

20   Heather Morgan guilty of Count 2, money laundering conspiracy;

21   and Count 3, conspiracy to defraud the United States.

22       All right.  Since both have been accepted, then both of

23   the pleas will -- are accepted by the Court, since they were

24   wired, and we don't have an issue.

25       So the next question is how far out do you wish to put

 1    this?

 2         And while you're thinking about that, let me sign the

 3    orders.  The Consent Preliminary Order of Forfeiture, did you

 4    read this over carefully and talk to your lawyer about it,

 5    Ms. --

 6              THE DEFENDANT:  I did, Your Honor.

 7              THE COURT:  Okay.  I don't know whether you want to

 8    do them around the same time or you want to do them separately.

 9              MR. BROWN:  Your Honor, the parties would like both

10    defendants to be sentenced at the same time.

11              THE COURT:  Okay.  So back to back.  But are you

12    putting this off for a period?

13              MR. BROWN:  Yes, Your Honor.  So the corollary of

14    that is we would like to defer setting a specific sentencing

15    date for Ms. Morgan.  And we can -- you know, when we file

16    status reports for Mr. Lichtenstein, we can also do the same

17    for Ms. Morgan.

18         I did want to just -- just alert the Court that given

19    that Ms. Morgan and Mr. Lichtenstein are sort of differently

20    situated in terms of their role in the offense and their

21    potential cooperation, they might not be -- their cooperation

22    won't be -- necessarily be the same.

23              THE COURT:  Right.

24              MR. BROWN:  But just -- for the Court's attention.

25    But we do think that it makes the most sense to have the Court

1    consider both -- both sentencings at the same time.  So we

2    will -- if it's amenable to the Court, we can set a

3    November 3rd date for that first status report and proceed from

4    there.

5              THE COURT:  Okay.  All right.  Let me -- I'm just

6    looking for -- oh, here's the signatures.  Okay.

7         All right.  I've signed all the waivers, and we have all

8    the information.

9         Does that work for you, Counsel?  It's a report.  So she

10   doesn't have to appear at this point.  It's November 3rd.

11   Depending on how this -- and how long this goes on in terms of

12   the cooperation, it will -- the report will be put under seal

13   so it's not open to whatever she's been doing.  It depends on

14   how this progresses.

15        There are occasions when they don't want to let the

16   defendant know of future things they're doing or, you know,

17   what the co-defendant is doing.  So there may come a point when

18   their reports are filed ex parte.  They will certainly tell

19   you.  But the report itself will be separate.

20        It's my policy to have something happen while we're

21   waiting around for this cooperation and the sentencing.  So I

22   may -- reports, I want to see some progress or something that's

23   coming up that, you know, you're waiting for her to assist

24   with.  And at some point it may be necessary to bring her back

25   just to make sure everything is moving.  Okay?

```
 1              MR. GOROKHOV:  Yes, Your Honor.  We agree to the
 2     date.
 3              THE COURT:  All right.  So we'll do the sealed report
 4     on November -- November 3rd, as we have done for
 5     Mr. Lichtenstein.
 6          Okay.  Anything else from either counsel?
 7              MR. GOROKHOV:  Thank you, Your Honor.  One brief
 8     matter.  So on the conditions --
 9          THE COURT:  Can you speak into the microphone.
10              MR. GOROKHOV:  Yes, Your Honor.  I apologize.
11          On the conditions of release, the government has
12     tentatively agreed, subject to receiving some details, to not
13     object to Ms. Morgan traveling to visit California sometime in
14     the month of August or September.
15          And we have not yet -- we've been going back and forth.
16     So we haven't had an opportunity to loop in pretrial on this.
17     But our request -- I guess my question at this point, assuming
18     pretrial agrees and the government agrees, do we need to file
19     anything with the Court?
20              THE COURT:  Yes.  I have found -- you need to file a
21     short -- if everybody has agreed to it, you know, it can be
22     something short.  It indicates, you know, who's -- you need the
23     government's position, probation's position -- pretrial,
24     rather -- in some places it's probation that does it.  But
25     whoever does the monitoring of her -- and the specifics of it.
```

1          So I do an order that's specific about what she's doing.

2     That way we have something on the record of where she's allowed

3     to be.

4               MR. GOROKHOV:  Sure.  Understood, Your Honor.

5               THE COURT:  If they all agree, there's probably --

6     there's not going to be an issue.

7               MR. GOROKHOV:  Understood, Your Honor.

8          And I think just to give the Court a heads-up, I think

9     what probably we'll have is -- is some part of that that's

10    going to be agreed regarding the travel.  And, you know, we're

11    going to work with the government to try to see what else we

12    can agree on in terms of modifications.  But I anticipate

13    other -- other requests as well.

14              THE COURT:  Okay.

15              MR. GOROKHOV:  Thank you, Your Honor.

16              THE COURT:  Just give them in writing and let me know

17    whether they're consented to or not.  If not, I'll ask the

18    other side or -- you know, I automatically make sure that the

19    three actors in this all agree.  If they don't, I need to know

20    at least the reasons so I can make a decision.

21         Is her traveling work or pleasure or what?

22              MR. GOROKHOV:  No, Your Honor.  It's family

23    related --

24              THE COURT:  Okay.

25              MR. GOROKHOV:  -- in that instance.

1          THE COURT:  Okay.  So she can put -- I mean, if it's

2    something you don't want to have open, you can always file

3    something sealed or seal a portion of it or whatever.

4          MR. GOROKHOV:  Yes, Your Honor.  I think it will be

5    sealed because there's going to be other issues.

6          THE COURT:  You can also do one that's sealed and

7    just do a redacted one so that one is available.  Doesn't give

8    the reasons that she -- you know, family things she doesn't

9    want to put out there for public consumption.  But it also then

10   ties up with the order that the Court would be doing.

11         MR. GOROKHOV:  Understood, Your Honor.  Thank you.

12         THE COURT:  All right.  Then if there's nothing else,

13   parties are excused.

14          Everybody take care.  Be well.

15          (Proceedings were concluded at 1:28 p.m.)

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER</u>

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                    Dated this 9th day of August, 2023.

10

11               /s/ Nancy J. Meyer
                 Nancy J. Meyer
12               Official Court Reporter
                 Registered Diplomate Reporter
13               Certified Realtime Reporter
                 333 Constitution Avenue Northwest
14               Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25

## $

**$250,000** [1] - 55:13
**$65** [1] - 57:13
**$71** [1] - 22:13
**$72,618,825.60** [2] -
8:8, 73:11

## '

**'15** [1] - 41:1
**'18** [2] - 41:16, 41:18

## 1

**1** [10] - 20:18, 30:4,
31:3, 31:4, 39:19,
40:1, 48:3, 54:1,
57:12, 67:2
**1's** [1] - 39:23
**10** [4] - 28:25, 42:7,
42:8, 48:3
**1010.100** [1] - 20:7
**11** [4] - 18:2, 18:19,
21:11, 73:21
**119,000** [1] - 22:12
**119,754** [1] - 22:9
**11:30** [1] - 3:10
**12** [3] - 12:5, 13:1,
73:21
**12:00** [1] - 3:10
**13** [1] - 74:21
**14** [3] - 16:20, 38:24,
76:2
**15** [5] - 21:19, 23:14,
23:15, 75:5, 76:3
**16** [1] - 12:5
**17** [1] - 25:6
**18** [1] - 25:6
**19** [2] - 25:8, 25:9
**1990** [1] - 9:3
**1:28** [1] - 83:15
**1CGA4s** [1] - 22:11

## 2

**2** [21] - 4:4, 4:6, 4:25,
8:2, 20:19, 30:6,
31:11, 43:17, 49:21,
54:3, 55:11, 57:16,
57:17, 57:20, 57:22,
57:25, 62:1, 67:4,
74:9, 78:11, 78:20
**20** [3] - 10:13, 39:18,
51:7
**2013** [2] - 40:23, 42:10
**2014** [6] - 40:25,
43:20, 44:23, 45:5,
45:6, 46:7
**2015** [3] - 43:20,
44:23, 45:5

**2016** [11] - 18:13,
21:24, 25:19, 38:9,
38:14, 39:4, 39:17,
44:24, 48:12, 52:15,
52:18
**2017** [3] - 39:18,
39:22, 40:3
**2018** [4] - 40:9, 41:3,
41:6, 41:12
**2019** [12] - 41:13,
41:19, 42:6, 42:15,
43:17, 45:3, 45:10,
45:21, 46:22, 47:5,
47:11, 47:17
**2020** [14] - 22:20,
25:18, 29:18, 29:21,
31:9, 33:22, 38:17,
38:25, 41:13, 41:19,
46:23, 47:18, 50:17
**2021** [1] - 34:25
**2022** [2] - 36:8, 38:10
**21** [1] - 29:25
**22** [4] - 32:15, 33:16,
39:17, 51:9
**23** [1] - 12:6
**23-239-2** [2] - 3:2, 4:24
**24** [2] - 36:7, 57:14
**25** [1] - 38:6
**25,000** [1] - 62:22
**250,000-dollar** [1] -
62:22
**26** [2] - 48:1, 58:5
**27** [4] - 42:15, 48:1,
48:9, 54:4
**28** [2] - 9:3, 40:3
**29** [1] - 57:23

## 3

**3** [17] - 4:4, 4:6, 5:1,
8:2, 20:19, 30:9,
31:11, 31:13, 31:14,
49:22, 53:25, 55:11,
55:16, 58:20, 62:2,
78:11, 78:21
**3-month** [1] - 62:2
**31** [2] - 20:6, 20:21
**35** [1] - 68:13
**3553(a** [1] - 56:12
**3553(e** [1] - 4:3
**371** [1] - 53:9
**3rd** [3] - 80:3, 80:10,
81:4

## 4

**4** [4] - 23:15, 30:11,
31:11, 67:14
**48** [1] - 9:15

## 5

**5** [11] - 18:19, 21:10,
28:24, 30:15, 31:11,
36:8, 40:10, 40:11,
48:3, 55:12, 67:15
**5311** [1] - 20:21
**54** [1] - 66:5
**5G1.2** [3] - 61:14,
61:15, 61:21
**5G1.2(d** [1] - 59:22
**5G1.2(d)** [1] - 58:24
**5K** [1] - 60:8
**5K1.1** [6] - 63:4,
63:18, 65:11, 69:14,
75:12, 76:1

## 6

**6** [6] - 28:24, 30:17,
31:3, 31:6, 57:13,
68:4
**60** [2] - 60:19, 61:7
**60-month** [1] - 62:1
**63** [7] - 60:16, 60:17,
61:4, 61:5, 61:8,
61:24, 62:21

## 7

**7** [9] - 18:1, 28:25,
40:4, 40:6, 42:16,
43:18, 48:3, 68:7,
69:1
**7's** [1] - 40:4
**78** [2] - 61:4, 62:21

## 8

**8** [3] - 28:25, 42:6,
70:12

## 9

**9** [3] - 14:23, 28:25,
71:16

## A

**ability** [1] - 51:14
**able** [7] - 12:16, 15:19,
63:15, 64:22, 67:18,
67:25, 72:10
**abolished** [1] - 65:19
**above-referenced** [2]
- 30:1, 48:17
**abroad** [1] - 35:11
**absolutely** [2] - 11:17,
77:25
**abuse** [2] - 22:24,
56:22
**accept** [10] - 8:18,

11:20, 14:7, 17:5,
57:24, 58:1, 67:5,
76:5, 76:6, 77:15
**acceptance** [1] - 67:12
**accepted** [6] - 6:21,
8:19, 67:5, 78:19,
78:22, 78:23
**access** [11] - 22:4,
23:18, 23:20, 24:15,
24:22, 37:4, 37:5,
37:12, 37:16, 37:18,
37:25
**accessed** [1] - 27:4
**accessible** [1] - 19:6
**account** [19] - 19:14,
19:16, 32:25, 33:2,
35:1, 35:4, 39:24,
40:1, 40:6, 40:10,
40:12, 40:14, 41:4,
42:18, 45:8, 48:14,
53:13, 62:25, 64:6
**accounting** [1] - 69:17
**accounts** [43] - 24:19,
24:20, 24:22, 24:25,
26:3, 26:7, 26:9,
26:15, 28:4, 28:8,
28:19, 28:22, 28:24,
29:4, 29:15, 30:4,
30:12, 30:18, 30:19,
30:20, 31:5, 31:7,
31:19, 31:20, 31:22,
31:23, 32:4, 32:6,
32:7, 32:19, 32:21,
32:22, 32:24, 33:12,
38:11, 39:19, 39:25,
40:2, 42:2, 48:10,
52:20
**accuracy** [1] - 21:12
**accurate** [10] - 17:24,
18:23, 25:24, 26:19,
29:1, 29:11, 36:17,
36:18, 43:4, 57:12
**accurately** [1] - 47:11
**acknowledges** [1] -
49:9
**acquired** [6] - 32:24,
40:7, 46:7, 46:8,
46:11, 46:19
**act** [1] - 53:10
**Act** [5] - 19:24, 19:25,
48:5, 48:19, 54:8
**acting** [2] - 26:6,
78:16
**activities** [3] - 31:5,
35:20, 69:9
**activity** [19] - 20:20,
20:24, 20:25, 21:5,
21:6, 23:17, 25:16,
30:18, 32:9, 35:9,
39:3, 39:7, 41:7,

45:15, 45:19, 46:3,
47:13, 50:16, 52:12
**actors** [1] - 82:19
**acts** [4] - 21:7, 53:11,
54:12
**actuality** [1] - 40:13
**acuity** [1] - 10:3
**add** [1] - 60:24
**addition** [1] - 70:13
**additional** [9] - 8:7,
39:25, 53:8, 53:10,
57:14, 57:15, 57:16,
58:1, 68:14
**additionally** [2] -
32:16, 43:12
**Additionally** [1] -
42:22
**addressed** [2] - 52:2,
54:4
**addresses** [4] - 8:15,
19:15, 39:19, 58:21
**adequate** [1] - 78:17
**administered** [1] -
5:10
**administration** [1] -
20:10
**admissions** [3] -
54:16, 71:18, 75:14
**admit** [1] - 27:5
**admits** [1] - 48:25
**admitted** [1] - 15:9
**advise** [1] - 14:1
**advised** [1] - 18:23
**advisory** [14] - 7:15,
16:8, 55:6, 55:24,
56:11, 57:1, 57:5,
58:9, 58:14, 62:23,
63:20, 63:23, 64:14,
64:22
**affect** [2] - 69:13,
71:17
**affected** [1] - 66:16
**afford** [3] - 13:8,
14:18, 16:25
**afternoon** [1] - 3:9
**agencies** [1] - 21:13
**agents** [3] - 36:9,
36:11, 37:3
**ago** [1] - 62:19
**agree** [59] - 7:3, 15:21,
15:23, 17:17, 17:18,
18:12, 18:15, 21:11,
24:5, 24:7, 26:11,
26:19, 27:14, 29:1,
29:11, 29:13, 32:14,
36:16, 36:18, 38:20,
39:8, 41:7, 43:4,
43:23, 44:1, 44:4,
48:21, 48:22, 49:6,
49:7, 50:2, 50:24,

51:1, 51:22, 51:24,
53:5, 53:7, 53:21,
54:13, 64:25, 67:20,
68:2, 68:18, 70:11,
72:1, 72:17, 74:3,
74:7, 74:16, 74:17,
75:3, 75:15, 75:23,
76:8, 81:1, 82:5,
82:12, 82:19
**agreed** [15] - 5:17, 8:6,
8:7, 8:9, 49:20,
61:12, 67:9, 69:2,
69:21, 70:13, 71:14,
74:15, 81:12, 81:21,
82:10
**agreeing** [15] - 5:23,
6:6, 6:16, 15:4, 45:9,
46:21, 70:8, 70:10,
71:9, 72:19, 72:21,
72:24, 73:6, 74:7,
74:11
**agreement** [25] - 6:8,
6:11, 7:25, 8:22,
14:24, 47:14, 50:6,
50:7, 50:22, 54:1,
59:9, 64:19, 65:2,
67:19, 67:23, 68:23,
69:13, 70:7, 73:8,
75:6, 75:8, 76:11,
76:12, 77:4
**agreements** [2] - 8:16,
16:12
**agrees** [2] - 81:18
**ahead** [8] - 3:11,
26:22, 28:2, 44:13,
49:8, 51:2, 51:25,
52:9
**alarm** [1] - 36:18
**alcohol** [1] - 9:16
**Alden** [1] - 3:15
**alert** [2] - 9:21, 79:18
**allegation** [1] - 5:2
**allergy** [2] - 9:17, 9:23
**allocution** [1] - 8:13
**Allocution** [1] - 8:13
**allow** [4] - 19:21,
29:23, 31:2, 68:13
**allowed** [9] - 26:6,
29:3, 31:6, 31:23,
41:9, 41:24, 70:22,
72:15, 82:2
**allowing** [2] - 29:14,
32:7
**allows** [1] - 30:10
**amenable** [1] - 80:2
**AML** [2] - 28:9, 48:16
**AML/KYC** [1] - 40:4
**ammunition** [2] -
66:18, 66:20
**amount** [8] - 8:8,

72:22, 72:23, 73:7,
73:11, 73:13, 73:25
**amounts** [3] - 28:5,
30:7, 30:8
**analysis** [1] - 20:15
**anonymity** [2] - 26:24,
27:11, 30:16
**anonymity-
enhanced** [1] - 30:16
**anonymity-
enhancing** [1] -
26:24
**anonymous** [1] -
19:16
**answer** [3] - 7:21,
17:24, 62:8
**answering** [1] - 69:7
**anti** [1] - 20:6
**anti-money** [1] - 20:6
**anticipate** [1] - 82:12
**anxiety** [1] - 10:17
**apart** [1] - 36:23
**apartment** [1] - 37:15
**apologize** [1] - 81:10
**apparent** [2] - 21:1,
36:14
**appeal** [16] - 14:14,
14:18, 15:1, 15:6,
15:19, 15:24, 16:11,
16:13, 16:14, 16:15,
16:20, 16:21, 16:23,
17:7, 17:11, 72:3
**appealing** [1] - 72:5
**Appeals** [3] - 14:15,
15:15, 63:25
**appear** [1] - 80:10
**appeared** [1] - 37:3
**applies** [1] - 63:6
**apply** [2] - 12:25, 68:1
**appointed** [3] - 13:9,
14:19, 16:25
**appreciated** [2] -
43:21, 46:9
**appropriate** [2] -
72:25, 73:25
**areas** [2] - 7:12, 63:1
**arraigned** [2] - 4:17,
4:21
**arraignment** [1] - 4:23
**arrest** [2] - 25:4, 76:21
**asserted** [1] - 14:2
**assessing** [1] - 57:9
**assessment** [1] - 56:8
**asset** [5] - 52:24,
73:19, 73:23, 74:7,
74:22
**assets** [8] - 20:25,
29:10, 42:11, 51:9,
51:11, 52:21, 69:17,
74:10

**assist** [4] - 31:12,
31:13, 31:18, 80:23
**assistance** [10] -
16:14, 30:2, 30:23,
32:17, 63:5, 63:11,
68:15, 69:11, 72:10,
73:23
**assisted** [6] - 24:2,
26:8, 30:19, 30:25,
31:2, 33:17
**assisting** [2] - 25:20,
50:11
**associated** [4] -
10:20, 19:12, 27:21,
33:2
**assume** [1] - 17:23
**assuming** [4] - 10:5,
37:11, 57:24, 81:17
**ATM** [2] - 33:15, 34:18
**ATMs** [4] - 26:16,
26:18, 33:12, 34:14
**attack** [2] - 72:4, 72:11
**attacking** [1] - 72:5
**attempt** [3] - 24:19,
36:14, 37:4
**attending** [1] - 10:18
**attention** [2] - 58:20,
79:24
**attorney** [6] - 3:12,
11:16, 11:19, 76:20,
77:5, 77:6
**Attorney's** [3] - 63:8,
69:4, 73:2
**attributes** [1] - 52:19
**audit** [1] - 53:2
**August** [4] - 38:9,
39:17, 39:18, 81:14
**AUSA** [1] - 3:6
**authorities** [3] - 20:14,
44:17, 69:5
**authority** [2] - 16:2,
65:9
**authorization** [1] -
37:15
**authorize** [3] - 22:5,
63:12, 63:18
**authorized** [1] - 36:9
**automate** [1] - 30:9
**automatically** [1] -
82:18
**available** [2] - 21:3,
83:7
**avoid** [3] - 27:10,
33:15, 34:18
**avoidance** [1] - 22:25
**avoided** [1] - 58:3
**avoiding** [1] - 27:20
**award** [1] - 16:1
**aware** [32] - 21:15,
21:17, 22:16, 23:2,

23:6, 23:8, 23:9,
25:2, 25:3, 27:13,
27:14, 27:25, 29:15,
29:18, 33:19, 39:10,
41:14, 41:20, 41:21,
42:1, 42:13, 43:24,
44:6, 44:7, 46:2,
46:22, 47:3, 50:15,
59:7, 65:5, 66:16
**awareness** [1] - 50:15

# B

**B2B** [3] - 42:19, 43:9,
53:16
**bachelor's** [1] - 9:6
**backed** [1] - 19:3
**background** [8] -
6:17, 8:25, 18:1,
18:2, 18:20, 18:25,
56:14, 56:19
**bank** [4] - 26:15,
32:19, 33:11
**Bank** [5] - 19:24,
19:25, 48:4, 48:19,
54:8
**bank's** [1] - 54:6
**banks** [4] - 20:2,
32:22, 33:19, 54:11
**bargain** [1] - 68:24
**base** [4] - 57:9, 57:13,
67:24, 72:8
**based** [5] - 13:2,
14:2, 33:9, 39:20,
47:20, 49:20, 54:15,
58:24, 67:9, 68:13,
68:21, 68:22
**basic** [2] - 7:25, 11:23
**basics** [2] - 6:16, 8:22
**basis** [5] - 15:7, 16:10,
16:14, 67:23, 78:18
**became** [4] - 23:2,
41:13, 41:20, 42:1
**become** [1] - 23:2
**bed** [2] - 36:12, 36:13
**beforehand** [1] - 56:1
**began** [3] - 36:13,
50:11, 50:22
**begin** [1] - 21:18
**beginning** [5] - 18:2,
21:24, 42:25, 47:9,
52:8
**behalf** [2] - 13:22,
21:8
**below** [5] - 24:4, 26:4,
63:6, 63:15, 75:20
**below-the-
sentencing-
guideline** [1] - 63:15
**benefit** [2] - 15:19,

72:15
**benefits** [1] - 27:11
**between** [3] - 39:17,
50:6, 77:5
**beyond** [10] - 10:23,
10:24, 14:9, 31:8,
49:5, 54:17, 59:15,
60:3, 67:10, 75:20
**binding** [1] - 67:16
**binds** [2] - 76:17
**biometric** [3] - 37:4,
37:19, 38:4
**birth** [1] - 9:2
**bit** [4] - 6:22, 24:11,
32:5, 67:1
**bitcoin** [10] - 22:9,
22:12, 46:7, 46:11,
46:18, 51:5, 51:8,
51:9, 51:10
**Bitcoin** [2] - 19:4,
27:12
**Bitfinex** [2] - 23:12,
39:4
**blindness** [1] - 45:16
**blockchain** [2] - 19:6,
26:25
**board** [1] - 65:20
**born** [1] - 9:9
**bottom** [5] - 14:23,
58:20, 73:21, 74:18,
76:1
**bound** [2] - 68:8,
68:10
**box** [1] - 12:23
**boyfriend** [1] - 43:19
**breach** [5] - 68:23,
69:13, 70:6, 75:5,
75:17
**breached** [1] - 75:8
**breaching** [1] - 75:18
**breaking** [1] - 30:14
**brief** [1] - 81:7
**bring** [8] - 5:21, 7:11,
33:14, 34:17, 67:8,
71:4, 71:8, 80:24
**broad** [1] - 56:13
**broken** [1] - 68:24
**brokers** [2] - 32:21,
32:23
**brought** [4] - 49:17,
70:14, 70:21, 71:2
**BROWN** [68] - 3:6,
4:5, 18:12, 18:25,
21:23, 23:16, 24:10,
24:13, 25:10, 26:1,
26:14, 26:23, 27:9,
27:16, 27:18, 28:3,
28:7, 28:22, 29:6,
30:1, 32:2, 32:6,
32:16, 34:25, 36:8,

37:3, 37:13, 37:22,
38:1, 38:5, 38:7,
38:25, 39:15, 39:17,
42:6, 42:15, 43:17,
44:20, 45:4, 45:12,
45:25, 46:15, 48:2,
48:10, 48:25, 49:9,
49:14, 50:5, 51:3,
52:1, 52:7, 52:10,
53:8, 53:15, 53:24,
58:19, 59:19, 59:22,
59:25, 60:6, 61:9,
61:13, 61:18, 61:21,
62:4, 79:9, 79:13,
79:24
**brown** [1] - 47:10
**Brown** [1] - 3:7
**BSA** [4] - 19:25, 20:3,
20:10, 20:17
**BTC** [10] - 19:4, 19:5,
26:23, 27:22, 30:15,
33:8, 33:10, 40:8,
42:9
**build** [1] - 42:25
**burden** [3] - 14:8,
75:18, 75:22
**Bureau** [2] - 66:2, 68:9
**buried** [2] - 29:8,
51:19
**burning** [1] - 34:10
**business** [13] - 21:1,
30:18, 30:20, 31:7,
31:19, 32:4, 32:6,
32:11, 34:10, 42:17,
48:4, 53:17
**business-to-**
**business** [1] - 53:17
**businesses** [2] - 20:3,
28:24
**button** [2] - 5:25,
36:13

# C

**C.F.R** [1] - 20:7
**calculated** [2] - 60:1,
72:24
**calculating** [1] - 59:19
**calculation** [5] - 60:8,
64:2, 64:25, 67:11,
67:17
**calculations** [1] -
60:12
**California** [1] - 81:13
**Canada** [1] - 9:12
**cannot** [5] - 13:24,
14:9, 49:2, 61:7,
71:1
**capable** [1] - 78:15
**card** [2] - 33:1, 33:15

**cards** [9] - 32:18,
33:1, 33:13, 33:14,
33:18, 33:23, 34:14,
34:18, 52:23
**care** [1] - 83:14
**carefully** [4] - 6:5,
55:3, 55:4, 79:4
**Case** [2] - 3:2, 4:24
**case** [24] - 10:20,
10:21, 10:23, 11:16,
11:19, 12:6, 12:20,
14:17, 15:6, 15:14,
15:16, 15:24, 16:21,
17:5, 17:10, 17:16,
27:4, 42:21, 49:17,
62:2, 64:8, 70:14,
70:21, 77:5
**cash** [1] - 52:23
**cat** [1] - 36:12
**Category** [1] - 62:21
**caught** [1] - 57:19
**caused** [1] - 23:22
**CEO** [1] - 41:13
**certain** [6] - 15:2,
23:19, 45:1, 55:7,
55:18, 68:5
**certainly** [3] - 45:4,
69:13, 80:18
**cetera** [3] - 33:19,
69:15, 74:20
**chain** [1] - 30:17
**challenge** [3] - 49:14,
70:13, 72:23
**chance** [1] - 11:12
**changed** [1] - 6:5
**characterize** [1] -
45:16
**charge** [3] - 53:8,
53:10, 57:9
**charged** [2] - 4:25,
49:22
**charges** [7] - 11:9,
62:18, 67:2, 67:9,
71:1, 74:9, 75:21
**ChipMixer** [1] - 27:12
**Christopher** [1] - 3:7
**chute** [3] - 35:12,
35:21, 35:25
**circulated** [1] - 19:3
**circumstances** [1] -
65:9
**citizens** [1] - 12:20
**civil** [3] - 66:10, 74:20,
75:20
**claim** [1] - 72:9
**claiming** [1] - 37:9
**claims** [1] - 15:7
**clarify** [6] - 4:2, 41:9,
43:8, 44:20, 46:1,
47:1

**clear** [4] - 45:13, 59:8,
64:12, 68:6
**client** [3] - 18:23,
21:13, 44:10
**clients'** [1] - 20:19
**cloud** [1] - 37:20
**co** [1] - 80:17
**co-defendant** [1] -
80:17
**coerced** [1] - 77:1
**Coin** [1] - 27:19
**CoinJoins/mixers** [1]
- 27:12
**coins** [4] - 29:7, 51:17,
51:20, 52:21
**cold** [3] - 43:21, 45:7,
52:8
**collateral** [4] - 15:19,
16:21, 72:4, 72:11
**collect** [2] - 20:18,
72:19
**collected** [1] - 74:1
**collection** [2] - 20:15,
21:8
**Columbia** [6] - 12:21,
19:7, 35:6, 48:20,
49:15, 70:14
**combat** [1] - 20:12
**combination** [2] -
10:20, 55:24
**combined** [1] - 73:12
**coming** [3] - 21:19,
61:3, 80:23
**comments** [1] - 47:16
**commerce** [1] - 23:24
**commingled** [1] -
24:25
**Commission** [1] -
72:13
**commission** [4] -
57:6, 62:25, 70:5,
70:19
**commit** [2] - 55:19,
67:22
**committed** [3] - 12:8,
12:9, 75:11
**committee** [2] - 63:9
**commonly** [1] - 21:5
**communication** [1] -
23:23
**community** [5] - 8:10,
8:12, 55:18, 65:23,
77:22
**company** [8] - 40:10,
41:4, 41:12, 41:18,
42:2, 42:25, 53:12,
53:13
**competency** [1] - 10:6
**competent** [1] - 78:15
**complete** [1] - 76:10

**completely** [5] -
11:15, 63:17, 63:20,
69:3, 70:2
**compliance** [2] - 54:7,
77:23
**compliant** [3] - 4:7,
8:10, 8:11
**complicated** [1] -
64:18
**compromised** [1] -
21:25
**computer** [6] - 22:3,
23:18, 23:25, 30:9,
35:21, 35:24
**computers** [1] - 21:25
**computing** [2] - 35:11,
35:12
**conceal** [8] - 23:17,
24:8, 25:14, 25:22,
29:20, 35:9, 35:20,
52:19
**concealed** [1] - 29:7
**concealing** [1] - 24:3
**concealment** [1] -
53:11
**concepts** [1] - 56:14
**concern** [2] - 11:4,
18:4
**concluded** [1] - 83:15
**conclusion** [1] - 48:24
**concurrent** [1] - 59:16
**concurrently** [2] -
58:11, 58:23, 61:19
**condition** [1] - 16:1
**conditions** [9] - 4:8,
16:2, 55:18, 55:20,
68:25, 75:6, 77:22,
81:8, 81:11
**conduct** [12] - 15:9,
15:10, 15:12, 15:18,
20:5, 30:2, 51:4,
56:19, 57:11, 67:23,
71:18, 75:8
**conducting** [1] - 50:12
**confer** [1] - 44:9
**confront** [1] - 13:12
**confused** [1] - 61:2
**confusing** [1] - 43:8
**confusion** [2] - 7:13,
47:7
**Congress** [1] - 57:5
**connection** [1] - 77:11
**consecutive** [13] -
58:13, 58:17, 59:2,
59:4, 59:10, 59:16,
59:17, 59:18, 60:2,
60:5, 60:15, 60:24,
62:2
**consecutively** [2] -
58:23, 61:25

**consent** [3] - 49:10,
73:14, 73:15
**Consent** [1] - 79:3
**consented** [1] - 82:17
**consequences** [1] -
78:16
**consider** [4] - 56:17,
57:7, 63:1, 80:1
**considerably** [1] -
46:10
**considered** [2] -
66:19, 68:23
**consistently** [1] -
30:23
**conspiracy** [23] - 5:1,
6:20, 6:24, 8:3, 18:8,
18:17, 25:20, 27:1,
32:17, 35:2, 49:12,
50:5, 52:13, 53:9,
53:20, 53:25, 57:18,
78:11, 78:12, 78:20,
78:21
**conspiring** [1] - 25:22
**constitutes** [1] - 74:8
**constitutional** [4] -
6:18, 11:23, 14:3,
15:12
**consult** [2] - 4:15,
5:24
**consumption** [1] -
83:9
**contact** [1] - 76:21
**contain** [1] - 65:3
**contained** [3] - 35:13,
37:8, 37:10
**continue** [5] - 8:11,
41:24, 44:12, 57:24,
58:1
**continued** [2] - 29:23,
42:2
**control** [3] - 19:22,
22:10, 63:20
**controlling** [1] - 35:4
**controls** [3] - 28:9,
63:17, 68:13
**conversely** [1] - 19:21
**convert** [2] - 51:8,
51:11
**converted** [2] - 32:18,
33:10
**converting** [8] - 26:14,
26:23, 27:18, 29:6,
30:15, 33:17, 52:21,
52:24
**convicted** [4] - 14:10,
14:14, 15:11, 66:19
**conviction** [7] - 14:15,
15:6, 15:20, 16:13,
16:16, 61:16, 72:5
**convictions** [2] -

62:17, 62:18
**cooperate** [2] - 69:3,
69:10
**cooperation** [10] -
63:4, 63:10, 68:15,
69:1, 69:7, 70:1,
79:21, 80:12, 80:21
**copy** [2] - 11:8, 56:23
**corollary** [1] - 79:13
**corp** [1] - 43:1
**correct** [26] - 4:5,
11:6, 21:16, 22:18,
22:19, 25:25, 27:5,
27:6, 31:17, 32:14,
34:15, 34:16, 34:19,
34:20, 35:19, 35:22,
35:23, 38:18, 38:19,
47:21, 47:22, 48:7,
49:16, 61:8, 70:15,
71:12
**correctly** [3] - 26:12,
26:21, 59:17
**corresponding** [1] -
33:11
**cost** [1] - 16:23
**Counsel** [4] - 10:5,
11:5, 48:7, 80:9
**counsel** [20] - 3:4,
12:22, 16:15, 16:25,
17:23, 18:3, 18:10,
18:22, 49:19, 58:18,
58:25, 60:2, 63:18,
64:15, 64:23, 65:2,
69:20, 72:10, 78:8,
81:6
**counsel's** [1] - 21:11
**Count** [14] - 4:25, 5:1,
53:25, 55:11, 57:12,
57:22, 62:1, 62:2,
74:9, 78:11, 78:20,
78:21
**count** [2] - 53:24, 61:8
**Counts** [4] - 4:4, 4:6,
8:2, 49:21
**counts** [10] - 4:5,
55:13, 55:16, 58:6,
59:2, 60:4, 61:15,
61:18, 61:22, 61:25
**courier** [1] - 33:6
**course** [5] - 23:21,
24:14, 27:1, 32:16,
52:12
**court** [10] - 6:9, 13:18,
14:15, 15:15, 24:11,
35:7, 35:17, 36:9,
76:13
**Court** [39] - 8:14,
12:22, 14:1, 14:15,
15:15, 16:2, 16:6,
16:8, 35:6, 49:5,

56:17, 58:12, 58:16,
59:2, 59:17, 59:23,
60:7, 60:17, 61:24,
63:1, 63:2, 63:6,
63:13, 63:14, 63:24,
63:25, 64:8, 65:13,
65:14, 66:2, 77:8,
78:19, 78:23, 79:18,
79:25, 80:2, 81:19,
82:8, 83:10
**COURT** [238] - 3:8,
3:14, 3:17, 3:20,
3:23, 4:7, 4:12, 4:19,
4:22, 5:6, 5:13, 6:14,
7:25, 8:24, 9:2, 9:4,
9:9, 9:11, 9:13, 9:19,
10:1, 10:5, 10:8,
10:14, 10:19, 10:25,
11:3, 11:8, 11:12,
11:15, 11:18, 11:22,
12:13, 12:16, 13:6,
13:11, 13:15, 13:20,
14:6, 14:13, 14:22,
15:1, 15:23, 16:19,
17:4, 17:10, 17:14,
18:18, 21:10, 21:16,
21:18, 22:14, 23:1,
23:6, 23:10, 23:14,
24:5, 24:9, 24:11,
25:2, 25:5, 25:24,
26:11, 26:13, 26:19,
26:22, 27:5, 27:8,
27:13, 27:17, 27:23,
28:2, 28:6, 28:10,
28:15, 28:21, 29:1,
29:5, 29:11, 29:14,
29:19, 29:22, 29:25,
30:22, 31:11, 31:15,
31:18, 31:25, 32:5,
32:12, 32:15, 33:16,
33:25, 34:4, 34:13,
34:17, 34:22, 34:24,
35:15, 35:24, 36:3,
36:5, 36:7, 36:16,
36:21, 36:23, 37:2,
37:11, 37:17, 37:23,
38:4, 38:6, 38:16,
38:20, 38:24, 39:8,
39:14, 39:16, 40:16,
40:21, 41:2, 41:10,
41:16, 41:23, 42:1,
42:5, 42:12, 42:14,
43:4, 43:12, 43:16,
43:23, 44:5, 44:11,
44:13, 44:19, 45:2,
45:9, 45:20, 46:13,
46:20, 47:2, 47:15,
47:23, 48:6, 48:9,
48:21, 48:24, 49:6,
49:8, 49:13, 49:16,
49:19, 50:24, 51:2,

51:22, 51:25, 52:5,
52:8, 53:5, 53:21,
53:23, 54:13, 54:15,
54:24, 55:3, 55:5,
56:6, 56:11, 59:4,
59:14, 59:21, 59:24,
60:3, 60:9, 60:19,
60:22, 61:2, 61:11,
61:17, 61:20, 62:3,
62:5, 62:9, 62:12,
62:16, 64:13, 64:17,
64:21, 65:8, 65:18,
66:8, 66:24, 67:22,
68:4, 68:20, 70:10,
70:12, 70:17, 71:7,
71:14, 71:16, 72:3,
72:19, 73:10, 74:6,
74:17, 75:5, 75:17,
75:25, 76:10, 76:16,
77:1, 77:4, 77:8,
77:10, 77:14, 77:17,
77:21, 78:1, 78:4,
78:7, 78:10, 78:14,
79:7, 79:11, 79:23,
80:5, 81:3, 81:9,
81:20, 82:5, 82:14,
82:16, 82:24, 83:1,
83:6, 83:12
**Court's** [4] - 5:5,
58:19, 68:22, 79:24
**court-authorized** [1] -
36:9
**courtroom** [2] - 12:21,
13:3
**COURTROOM** [6] -
3:2, 4:17, 4:20, 4:24,
5:7, 5:12
**cover** [1] - 17:23
**covered** [1] - 15:11
**covering** [1] - 46:17
**created** [2] - 31:9,
32:21
**creating** [1] - 26:8
**credential** [1] - 24:17
**credentials** [8] - 22:4,
22:5, 22:7, 22:8,
23:18, 24:16, 24:17,
24:18
**credibility** [1] - 71:22
**credit** [3] - 56:2, 64:7,
66:3
**crime** [5] - 12:8,
55:10, 55:19, 70:19,
75:12
**Crimes** [1] - 20:8
**crimes** [4] - 20:13,
70:18, 70:20, 72:14
**Criminal** [3] - 3:2,
4:24, 62:20
**criminal** [13] - 5:2,

21:5, 35:14, 56:19,
56:20, 57:11, 62:16,
67:13, 67:23, 70:5,
74:20, 75:8, 75:11
**criminalizes** [1] -
66:19
**cross** [1] - 13:13
**cross-examine** [1] -
13:13
**crypto** [4] - 42:10,
43:2, 44:16
**cryptocurrency** [14] -
42:20, 42:23, 43:9,
43:19, 43:20, 44:22,
44:24, 45:6, 46:7,
47:8, 51:14, 52:22,
53:17, 54:11
**currencies** [2] - 22:6,
27:22
**currency** [25] - 18:25,
19:2, 19:4, 19:12,
19:15, 19:17, 19:18,
20:2, 22:1, 22:7,
24:20, 24:23, 26:15,
26:24, 26:25, 30:16,
33:10, 40:7, 42:17,
45:7, 50:11, 50:20,
52:16
**customer** [9] - 19:20,
22:4, 24:16, 24:17,
24:18, 24:22, 24:24,
26:5, 40:13
**customer's** [1] - 19:20
**customers** [5] - 20:5,
20:19, 42:20, 53:16,
53:17
**cybercriminal** [1] -
32:23

## D

**D.C** [2] - 21:9, 49:17
**daily** [1] - 27:22
**dark** [1] - 31:5
**darknet** [3] - 27:11,
30:13, 32:23
**data** [2] - 35:10, 37:20
**date** [7] - 6:23, 6:25,
9:2, 70:18, 79:15,
80:3, 81:2
**dating** [1] - 40:24
**days** [2] - 16:20, 66:5
**debit** [6] - 32:18,
32:25, 33:13, 33:18,
33:23, 52:23
**deceitful** [1] - 54:9
**deceived** [1] - 38:13
**decentralized** [1] -
19:4
**deceptions** [3] - 38:7,

48:15, 54:6
**decide** [4] - 64:3,
64:22, 65:21, 69:12
**decided** [3] - 5:18,
65:8, 68:14
**decides** [1] - 12:7
**decision** [6] - 5:15,
15:20, 63:12, 69:6,
78:15, 82:20
**decisions** [3] - 68:5,
68:22, 69:25
**declined** [1] - 39:23
**deduction** [2] - 57:19,
57:25
**deem** [1] - 69:10
**deemed** [1] - 15:12
**defeat** [1] - 28:9
**defendant** [4] - 4:20,
5:2, 80:16, 80:17
**DEFENDANT** [150] -
3:22, 5:4, 5:9, 5:11,
6:13, 7:24, 8:23, 9:1,
9:3, 9:6, 9:10, 9:12,
9:17, 9:23, 10:4,
10:11, 10:17, 10:22,
11:2, 11:10, 11:14,
11:17, 11:21, 12:12,
12:15, 13:5, 13:10,
13:14, 13:19, 14:5,
14:12, 14:21, 14:25,
15:22, 16:18, 17:3,
17:9, 17:13, 21:17,
22:19, 23:5, 23:8,
23:12, 24:7, 25:3,
25:25, 26:12, 26:21,
27:6, 27:14, 27:25,
28:12, 28:17, 29:3,
29:13, 29:17, 29:21,
29:23, 31:2, 31:13,
31:17, 31:21, 32:14,
33:20, 34:2, 34:8,
34:16, 34:20, 34:23,
35:22, 36:1, 36:4,
36:6, 36:18, 36:22,
36:25, 37:20, 38:19,
38:23, 39:12, 40:19,
40:23, 41:9, 41:11,
41:17, 41:24, 42:4,
42:13, 43:5, 43:14,
44:1, 44:7, 44:12,
44:14, 47:1, 47:3,
47:22, 48:22, 49:7,
49:18, 50:4, 51:1,
51:24, 53:7, 53:14,
53:22, 54:14, 55:4,
56:5, 56:10, 62:11,
64:12, 64:16, 64:20,
65:7, 65:17, 66:7,
66:23, 67:21, 68:3,
68:19, 70:9, 70:11,

70:16, 71:6, 71:13, 71:15, 72:2, 72:18, 73:9, 74:4, 74:16, 75:4, 75:16, 75:24, 76:9, 76:14, 76:25, 77:3, 77:7, 77:9, 77:13, 77:16, 77:20, 77:25, 78:3, 78:6, 78:9, 78:13, 79:6

**defendant's** [2] - 37:15, 78:14

**defendants** [2] - 52:24, 79:10

**defense** [9] - 13:18, 18:3, 18:22, 54:21, 58:25, 60:2, 61:14, 71:1, 71:4

**defenses** [1] - 54:19

**defer** [1] - 79:14

**defined** [1] - 20:17

**definitely** [1] - 10:24

**defraud** [6] - 5:1, 8:4, 18:5, 53:25, 78:12, 78:21

**deleted** [1] - 35:10

**deleting** [1] - 23:18

**delivered** [2] - 33:3, 34:6

**deny** [1] - 74:24

**depart** [2] - 63:2

**Department** [3] - 20:9, 21:8, 48:19

**departure** [5] - 63:3, 63:9, 64:3, 65:13, 68:12

**departures** [4] - 60:12, 62:24, 63:8, 65:11

**deposited** [3] - 33:10, 48:13, 49:4

**depositing** [1] - 30:12

**deposits** [2] - 43:19, 53:16

**deprive** [1] - 66:9

**DEPUTY** [6] - 3:2, 4:17, 4:20, 4:24, 5:7, 5:12

**derived** [5] - 20:24, 20:25, 32:8, 48:14, 74:8

**described** [5] - 24:4, 49:1, 50:3, 50:25, 51:6

**describes** [2] - 26:12, 26:21

**describing** [2] - 51:8, 51:10

**description** [1] - 33:18

**designed** [2] - 28:9, 53:18

**despite** [1] - 62:24

**detail** [4] - 23:3, 23:11, 24:4, 73:20

**details** [3] - 18:13, 23:9, 81:12

**detect** [1] - 53:4

**detection** [1] - 48:23

**determine** [3] - 12:22, 13:1, 23:20

**determined** [3] - 16:4, 16:8, 64:24

**determines** [1] - 15:16

**deterrence** [2] - 56:16

**development** [1] - 42:24

**device** [2] - 35:12

**devices** [3] - 35:10, 37:14, 37:16

**difference** [1] - 31:25

**different** [6] - 52:21, 62:13, 63:9, 65:4, 67:18, 71:20

**differently** [1] - 5:20, 79:19

**digital** [1] - 19:2

**digitally** [1] - 11:10

**diligence** [1] - 20:5, 26:5, 48:16, 49:3, 54:6

**direct** [2] - 16:19, 71:25

**directed** [1] - 61:24

**direction** [5] - 24:8, 26:6, 26:17, 30:6, 51:18

**directly** [1] - 48:14

**disagree** [1] - 32:12

**disclosed** [2] - 29:9, 35:3

**disclosure** [2] - 50:18, 71:10

**discovered** [1] - 72:9

**discovery** [1] - 71:9

**discretion** [5] - 63:14, 63:24, 65:15, 74:19, 76:4

**discuss** [8] - 6:18, 7:11, 7:15, 7:16, 8:15, 11:19, 22:21, 54:20

**discussed** [6] - 21:12, 52:11, 54:2, 54:12, 58:25, 76:13

**discusses** [2] - 25:6, 61:15

**discussing** [2] - 63:7, 77:12

**discussion** [3] - 4:3, 50:18, 64:14

**discussions** [1] - 60:11

**disguise** [1] - 20:25

**dishonest** [1] - 54:9

**dispose** [1] - 36:2

**dispute** [12] - 21:14, 27:24, 28:10, 28:12, 36:4, 36:6, 40:20, 41:25, 42:13, 48:6, 48:8, 69:24

**dissemination** [1] - 20:15

**dissipated** [1] - 49:2

**District** [7] - 12:20, 19:7, 35:5, 35:6, 48:20, 49:15, 70:14

**disturbance** [1] - 10:16

**division** [1] - 20:9

**document** [2] - 22:22, 33:1

**documents** [2] - 4:9, 34:11

**DOJ** [1] - 74:23

**dollar** [2] - 27:20, 46:9

**dollars** [1] - 56:8

**dollars'** [1] - 24:24

**done** [8] - 8:19, 57:2, 57:8, 63:10, 64:25, 67:2, 67:4, 67:10, 70:24, 72:3, 81:4

**doubt** [3] - 14:9, 54:17, 75:21

**down** [7] - 24:11, 35:12, 35:21, 35:25, 58:4, 63:2, 63:3

**downward** [2] - 65:13, 68:12

**draw** [1] - 58:19

**drawn** [1] - 63:25

**drug** [1] - 39:5

**drugs** [2] - 9:16, 22:25

**due** [5] - 20:5, 26:5, 48:16, 49:3, 54:6

**during** [6] - 24:10, 24:14, 27:1, 33:3, 38:9, 70:6

### E

**early** [6] - 21:24, 22:20, 25:18, 41:19, 42:10, 50:17

**easier** [4] - 4:12, 4:14, 14:23, 46:10

**Eastern** [1] - 33:9

**Eastern-European-based** [1] - 33:9

**economics** [2] - 9:6, 9:8

**education** [1] - 56:21

**effect** [2] - 10:2,

66:15, 69:25

**effort** [2] - 44:17, 51:20

**efforts** [4] - 24:21, 25:14, 48:16, 68:20

**either** [7] - 6:2, 6:8, 43:24, 64:6, 67:16, 76:12, 81:6

**electronic** [2] - 37:14, 37:16

**element** [3] - 50:5, 53:8, 53:10

**Element** [1] - 54:1, 54:3

**elements** [5] - 7:7, 49:21, 49:25, 50:1, 54:18

**elsewhere** [1] - 19:7

**email** [3] - 39:19, 39:20, 42:7

**emotional** [1] - 10:15

**employed** [1] - 30:3

**employees** [2] - 39:23, 40:4

**end** [5] - 5:15, 50:2, 60:15, 61:23, 68:24

**ended** [1] - 70:20

**endometriosis** [2] - 9:18, 9:24

**Endpass** [2] - 40:11, 41:4

**Enforcement** [1] - 20:8

**enforcement** [7] - 20:10, 29:9, 35:3, 36:9, 69:5, 69:18, 76:20

**engage** [2] - 24:17, 75:7

**engaging** [1] - 30:1

**enhanced** [2] - 26:4, 30:16

**enhancement** [1] - 67:24

**enhancements** [1] - 57:10

**enhancing** [1] - 26:24

**enlist** [1] - 50:11

**enlisted** [1] - 25:10

**enter** [1] - 5:4

**entered** [1] - 16:21

**entering** [5] - 5:16, 11:4, 77:2, 78:1, 78:4

**entity** [1] - 35:16

**equivalent** [1] - 19:16

**errors** [1] - 14:16

**essentially** [3] - 21:25, 32:2, 62:1

**establish** [2] - 33:2,

38:11

**established** [2] - 39:18, 40:9

**establishing** [1] - 41:3

**estimated** [2] - 24:23, 67:15

**et** [4] - 20:21, 33:19, 69:15, 74:20

**Eugene** [1] - 3:18

**European** [1] - 39:5

**evasion** [1] - 39:5

**evasive** [1] - 34:12

**event** [1] - 59:11

**eventually** [3] - 34:2, 41:20, 57:19

**evidence** [17] - 7:7, 12:24, 13:1, 13:2, 13:21, 13:23, 13:25, 17:15, 35:13, 37:8, 37:10, 49:25, 50:1, 54:17, 71:25, 72:9, 75:19

**evidenced** [1] - 50:7

**evolved** [3] - 50:13, 50:23, 52:13

**ex** [1] - 80:18

**exactly** [1] - 5:22

**exam** [1] - 69:8

**examine** [1] - 13:13

**examining** [1] - 21:3

**example** [5] - 35:9, 51:7, 60:16, 61:1, 61:22

**exceed** [1] - 59:11

**except** [1] - 16:5

**exception** [1] - 72:8

**exceptions** [3] - 16:5, 16:19, 72:7

**exchange** [12] - 19:1, 22:1, 22:7, 24:23, 27:10, 28:9, 31:22, 33:9, 50:11, 50:20, 52:16

**exchange-to-exchange** [1] - 27:10

**exchanges** [7] - 20:2, 24:20, 26:25, 28:3, 28:4, 28:18, 54:12

**excuse** [3] - 3:9, 53:15

**excused** [1] - 83:13

**executed** [1] - 36:9

**executing** [1] - 36:11

**exercise** [2] - 19:22, 49:3

**existence** [2] - 27:2, 27:7

**existing** [2] - 26:6, 28:7

**expected** [2] - 55:19, 69:9

expecting [1] - 69:3
expedited [1] - 7:4
expenses [1] - 45:1
explain [7] - 15:5,
  31:2, 33:22, 46:6,
  46:10, 46:18, 64:9
explained [6] - 5:19,
  5:20, 17:6, 17:12,
  34:3, 53:6
explanation [3] - 21:3,
  23:4, 23:6
explicit [2] - 50:18,
  50:23
explicitly [2] - 25:18,
  47:3
extension [1] - 35:5
extent [3] - 16:5, 20:4,
  60:2
extra [1] - 60:24

**F**

face [1] - 37:6
facilitate [1] - 21:5
fact [11] - 14:2, 42:20,
  43:22, 46:17, 50:19,
  52:15, 52:17, 54:7,
  58:2, 62:24, 70:14
factors [3] - 56:13,
  57:8, 62:25
facts [2] - 21:3, 50:8
factual [1] - 78:17
factually [1] - 56:25
failed [1] - 35:4
fair [1] - 12:22
fall [2] - 15:9, 15:13
false [10] - 7:22, 22:1,
  38:7, 38:10, 38:12,
  43:6, 43:10, 46:16,
  53:18, 54:9
falsely [3] - 40:5, 42:8,
  42:19
falsity [2] - 44:21, 46:5
family [2] - 82:22, 83:8
famous [1] - 39:9
far [3] - 9:4, 51:23,
  78:25
February [4] - 38:10,
  39:22, 40:3, 40:9
federal [3] - 36:8,
  66:18, 69:4
fees [1] - 72:20
felonies [1] - 66:8
felons [1] - 66:19
felony [1] - 12:1
few [3] - 6:4, 16:19,
  31:4
ff) [1] - 20:7
fiat [3] - 26:14, 33:10,
  33:11

fictitious [8] - 30:4,
  30:19, 31:5, 31:19,
  31:21, 31:22, 38:11
file [13] - 20:20, 57:25,
  65:13, 68:12, 72:6,
  72:11, 72:12, 72:15,
  73:1, 79:15, 81:18,
  81:20, 83:2
filed [4] - 16:20, 63:13,
  75:12, 80:18
files [1] - 20:19
filing [3] - 54:8, 63:12,
  69:14
final [1] - 73:16
finance [1] - 42:24
finances [1] - 73:1
financial [15] - 20:1,
  20:12, 20:14, 20:15,
  20:17, 21:2, 21:4,
  26:5, 48:3, 48:17,
  51:4, 54:11, 56:20,
  57:15, 69:17
Financial [1] - 20:8
FinCEN [7] - 19:24,
  20:8, 20:20, 21:7,
  21:9, 48:5, 48:19
FinCEN's [1] - 20:11
findings [1] - 64:1
fine [1] - 15:25
fines [2] - 55:12, 62:22
fingerprint [1] - 37:5
firearm [2] - 66:18,
  66:20
first [6] - 4:23, 11:25,
  43:5, 50:5, 50:13,
  80:3
fits [1] - 49:21
five [3] - 59:12, 60:21,
  61:22
five-year [3] - 59:12,
  60:21, 61:22
flow [1] - 30:15
fluctuates [1] - 27:22
fluctuating [1] - 66:12
Fog [1] - 27:12
follow [1] - 55:19,
  55:20, 75:6, 76:6
followed [1] - 43:10
following [5] - 23:16,
  25:10, 26:1, 38:15,
  50:10
forced [2] - 13:24,
  77:1
forego [1] - 71:9
foreign [5] - 23:24,
  32:19, 33:22, 33:19
forfeit [1] - 74:7
forfeited [1] - 75:2
forfeiture [10] - 5:2,
  8:6, 16:1, 49:10,

56:7, 73:10, 73:11,
  73:14, 74:13, 74:23
Forfeiture [1] - 79:3
form [8] - 12:17,
  12:18, 19:2, 39:2,
  39:7, 50:16, 52:12,
  67:23
forms [4] - 30:15,
  51:11, 52:22, 72:6
forth [2] - 37:8, 81:15
forums [1] - 32:23
forward [4] - 13:7,
  14:13, 18:16, 73:22
frame [2] - 66:13,
  70:22
frankly [1] - 58:15
fraudulent [3] - 22:2,
  25:16, 38:12
fraudulently [5] -
  22:2, 24:21, 40:5,
  42:8, 42:19
free [4] - 75:9, 75:13,
  78:2, 78:17
front [3] - 4:9, 11:11,
  54:25
froze [1] - 40:1
frustrate [2] - 48:16,
  54:7
full [4] - 29:10, 50:14,
  64:14, 69:17
fully [7] - 9:20, 29:17,
  33:21, 69:3, 69:10,
  70:2, 78:14
function [1] - 54:3
fund [2] - 30:15, 43:2
funds [53] - 19:20,
  19:21, 19:22, 20:24,
  20:25, 22:22, 24:8,
  24:24, 24:25, 25:11,
  25:14, 25:15, 25:21,
  26:14, 26:16, 27:4,
  27:19, 28:5, 29:7,
  29:20, 30:6, 30:8,
  30:11, 30:13, 32:8,
  32:18, 33:11, 33:14,
  33:17, 34:15, 41:21,
  42:10, 43:22, 43:25,
  44:3, 45:14, 45:18,
  48:13, 48:15, 50:14,
  50:16, 50:20, 51:5,
  51:15, 51:19, 51:20,
  52:3, 52:11, 52:14,
  52:20, 53:2, 53:4
furtherance [3] - 21:7,
  26:2, 35:2
future [1] - 80:16

**G**

gain [1] - 55:14

gained [2] - 23:20,
  24:15
garbage [3] - 35:12,
  35:21, 35:25
general [2] - 52:13,
  61:18
generally [2] - 38:2,
  53:3
generated [1] - 39:7
gifted [2] - 43:20,
  44:23
given [5] - 23:3, 55:17,
  55:25, 64:7, 79:18
gold [4] - 29:7, 51:17,
  51:20, 52:21
good-time [1] - 66:3
GOROKHOV [26] -
  3:18, 4:11, 10:7,
  11:7, 21:14, 44:9,
  47:6, 48:8, 54:22,
  55:2, 59:8, 60:14,
  60:20, 60:23, 62:7,
  62:15, 81:1, 81:7,
  81:10, 82:4, 82:7,
  82:15, 82:22, 82:25,
  83:4, 83:11
Gorokhov [1] - 3:19
government [29] - 3:5,
  3:7, 5:1, 7:6, 8:9,
  12:6, 17:14, 19:4,
  27:15, 32:1, 37:2,
  37:7, 49:19, 54:4,
  56:24, 57:2, 57:25,
  58:17, 59:10, 61:13,
  63:5, 63:17, 64:24,
  65:12, 68:13, 75:13,
  81:11, 81:18, 82:11
government's [7] -
  14:8, 48:12, 54:16,
  75:9, 75:25, 77:6,
  81:23
grabbed [1] - 36:13
grad [1] - 9:7
grand [7] - 12:2, 12:3,
  12:4, 12:5, 12:7,
  12:10, 70:3
grant [3] - 63:13,
  65:14, 74:25
grounds [1] - 17:7
group [1] - 57:22
grouped [1] - 58:6
grouping [2] - 58:15,
  58:21
guarantees [1] - 76:23
guess [3] - 3:8, 18:6,
  44:7, 48:1, 81:17
guideline [11] - 16:7,
  57:1, 60:25, 63:7,
  63:15, 63:21, 64:22,
  65:9, 67:14, 67:16,

72:13
guidelines [19] - 7:16,
  16:9, 55:7, 55:25,
  56:12, 57:5, 58:9,
  58:15, 59:1, 59:20,
  60:1, 60:8, 60:25,
  61:3, 61:23, 62:23,
  63:22, 64:14, 67:11
guilt [4] - 13:2, 13:25,
  14:2, 14:9
guilty [27] - 5:5, 6:19,
  7:8, 8:1, 8:3, 12:19,
  14:7, 15:8, 17:4,
  17:5, 17:10, 54:18,
  66:9, 68:21, 71:11,
  75:10, 76:22, 77:2,
  77:11, 77:15, 78:1,
  78:4, 78:5, 78:12,
  78:13, 78:20

**H**

hack [41] - 18:13,
  18:14, 22:12, 22:16,
  22:17, 22:20, 23:2,
  23:7, 23:8, 23:16,
  23:21, 24:1, 24:3,
  24:8, 24:15, 25:10,
  25:17, 25:19, 25:23,
  26:8, 26:10, 38:14,
  39:4, 39:9, 40:15,
  41:6, 41:20, 42:1,
  43:22, 43:25, 44:17,
  44:23, 46:23, 47:18,
  48:12, 50:10, 50:19,
  50:21, 51:19, 52:15,
  52:18
hacked [1] - 32:8
hacks [1] - 25:4
hand [1] - 5:8
handed [1] - 33:5
harder [3] - 46:18,
  53:1, 53:3
hardship [1] - 57:15
headquartered [1] -
  21:9
heads [1] - 82:8
heads-up [1] - 82:8
health [1] - 56:21
hear [5] - 3:25, 6:1,
  14:16, 45:25, 46:23
heard [2] - 9:13, 77:18
hearing [1] - 52:9
Heather [3] - 3:3,
  78:10, 78:20
heavily [1] - 41:14
held [2] - 22:6, 35:1
Helix [1] - 27:12
help [4] - 14:17, 24:7,
  25:11, 74:5

helped [2] - 31:4, 31:6
helpful [1] - 21:20
hide [1] - 20:24
hiding [1] - 36:12
high [3] - 28:3, 28:17, 34:3
higher [5] - 14:15, 15:15, 57:23, 61:5
highly [1] - 47:12
himself [1] - 41:12
History [1] - 62:21
history [5] - 30:14, 56:20, 57:11, 62:16, 67:13
hold [6] - 14:3, 19:15, 44:8, 45:20, 51:22, 66:10
holders [1] - 39:24
holding [1] - 27:21
home [1] - 36:10
Honor [59] - 3:6, 3:12, 3:15, 3:18, 4:5, 4:11, 7:24, 8:23, 9:1, 10:4, 10:7, 11:7, 11:10, 11:14, 13:5, 18:12, 21:14, 21:23, 24:13, 32:2, 37:3, 37:13, 38:1, 38:5, 38:25, 44:9, 44:12, 44:20, 46:15, 47:6, 48:8, 50:4, 52:7, 54:14, 54:22, 55:2, 56:5, 58:19, 59:8, 60:6, 60:14, 61:1, 61:9, 62:7, 62:15, 76:15, 78:13, 79:6, 79:9, 79:13, 81:1, 81:7, 81:10, 82:4, 82:7, 82:15, 82:22, 83:4, 83:11
hopping [1] - 30:17
hosted [3] - 19:17, 19:18, 19:19
hours [1] - 9:15
hundred [2] - 24:24, 56:8
husband [10] - 22:19, 27:15, 29:3, 33:20, 34:20, 36:1, 43:19, 47:8, 47:12, 74:4

I

idea [2] - 6:15, 44:15
identified [1] - 51:21
identify [3] - 3:4, 19:10, 53:2
identifying [3] - 20:18, 38:11, 39:25
identities [4] - 20:19,

30:5, 30:20, 31:19
identity [1] - 33:1
illegal [27] - 20:24, 20:25, 23:7, 23:8, 23:9, 35:20, 36:24, 36:25, 37:21, 38:14, 39:7, 41:14, 43:25, 44:4, 44:15, 44:18, 45:15, 45:24, 46:24, 47:4, 47:13, 47:17, 47:20, 48:11, 50:16, 52:12, 53:4
illicit [3] - 20:12, 22:23, 28:8
illness [1] - 10:15
immediately [2] - 40:24, 73:22
impair [1] - 9:24
impartial [1] - 12:23
impeach [2] - 71:19, 71:21
impeachment [1] - 71:24
implementation [1] - 20:10
implementing [1] - 19:25
implicit [1] - 50:22
important [3] - 18:10, 46:6, 55:25
impose [5] - 59:2, 60:17, 60:23, 77:15, 77:18
imposed [1] - 59:14
imprisonment [1] - 15:25
in-person [1] - 32:21
inaccurate [1] - 18:5
include [4] - 15:25, 53:11, 66:10, 69:7
included [10] - 32:25, 37:12, 37:14
including [10] - 15:7, 19:7, 20:1, 20:13, 23:17, 28:24, 30:3, 30:16, 38:14, 76:19
income [1] - 32:11
incomplete [1] - 57:18
incorrect [1] - 56:25
increase [1] - 67:24
incriminate [1] - 13:24
inculpatory [3] - 35:13, 37:8, 37:10
independent [2] - 19:22, 63:11
India [1] - 39:20
India-based [1] - 39:20
indicate [7] - 6:10, 7:18, 17:17, 17:21,

30:25, 49:20, 67:15
indicated [5] - 67:4, 67:8, 68:25, 73:11, 74:18
indicates [7] - 7:6, 30:22, 33:16, 71:17, 72:25, 76:16, 81:22
indicating [2] - 47:19, 58:1
indications [1] - 46:2
indictment [4] - 12:2, 12:3, 12:11, 48:2
indirectly [1] - 48:14
individual [1] - 19:13
individuals [1] - 19:10
ineffective [2] - 16:14, 72:10
infer [1] - 14:2
inform [1] - 44:17
information [18] - 6:22, 8:1, 8:2, 11:9, 12:1, 18:3, 20:18, 35:17, 38:11, 39:25, 40:18, 53:25, 56:15, 56:20, 59:6, 71:10, 73:1, 80:8
infractions [1] - 66:4
initiate [1] - 22:8
innocence [1] - 13:2
innocent [1] - 14:8
input [1] - 38:3
inquiries [2] - 39:23, 40:4
inquiry [1] - 42:16
insofar [1] - 15:5
instance [3] - 53:12, 68:9, 82:25
instant [1] - 33:9
instead [1] - 71:23
institute [1] - 70:25
institution [2] - 21:2, 21:4
institutional [1] - 42:18
institutions [9] - 17:22, 17:23, 18:20, 20:1, 20:17, 26:5, 48:3, 48:17, 54:11
instructed [1] - 34:21
instructions [1] - 12:25
instruments [1] - 50:6
intelligence [1] - 20:16
intend [1] - 5:4
intended [1] - 20:24
intent [1] - 25:20
interacted [1] - 42:17
interested [1] - 63:3
intermediate [1] - 27:9

international [2] - 9:7, 31:22
internet [3] - 19:3, 19:6, 23:24
interpreted [1] - 47:16
interstate [1] - 23:24
intrude [1] - 22:2
investigators [1] - 23:19
investing [1] - 42:9
investment [1] - 40:8
involve [4] - 20:24, 21:4, 51:4, 52:17
involved [12] - 19:10, 22:16, 38:17, 39:2, 41:14, 41:17, 41:18, 42:3, 46:24, 47:4, 49:11, 57:14
involvement [2] - 24:8, 25:23
involving [1] - 22:5
issue [13] - 10:6, 11:3, 44:5, 45:24, 46:20, 47:10, 58:14, 58:22, 58:24, 66:17, 78:24, 82:6
issued [1] - 35:5
issues [5] - 11:5, 16:15, 22:24, 56:21, 83:5
it'll [2] - 7:4, 75:21
itself [4] - 14:24, 24:1, 44:23, 80:19

J

jail [5] - 55:12, 55:17, 56:1, 65:23, 65:25
January [2] - 36:8, 42:6
Jessica [1] - 3:13
job [1] - 56:21
joined [1] - 25:20
jointly [1] - 8:8
Judge [5] - 6:4, 6:13, 29:17, 38:19, 47:1
judges [2] - 14:16, 57:7
judgment [2] - 16:20, 73:14
July [2] - 43:17, 45:21
June [1] - 42:15
jurisdiction [1] - 49:5
jurors [3] - 12:4, 12:5, 13:1
jury [13] - 12:2, 12:3, 12:4, 12:7, 12:10, 12:20, 12:23, 12:24, 13:4, 14:1, 66:11, 70:3

K

Kazakhstan [3] - 33:4, 34:5, 34:11
keep [2] - 46:13, 52:5
keeping [1] - 43:21
kept [1] - 45:6
keys [1] - 22:7
kind [4] - 31:9, 66:17, 70:3, 70:5
kinds [5] - 17:23, 52:21, 56:17, 56:22, 73:5
kneeling [1] - 36:12
knowing [2] - 25:15, 72:22
knowingly [1] - 5:16
knowledge [24] - 18:15, 27:23, 28:11, 28:13, 31:8, 31:10, 31:14, 31:15, 34:6, 34:8, 39:1, 39:3, 39:6, 40:19, 45:12, 45:14, 45:18, 46:4, 47:18, 52:1, 52:3, 52:10, 52:11
knowledge-wise [1] - 31:8
known [7] - 21:6, 22:10, 30:17, 41:5, 45:10, 45:22, 45:23
knows [2] - 21:2, 58:18
KYC [5] - 27:1, 28:7, 28:19, 42:7, 48:16
KYC-verified [2] - 28:7, 28:19

L

large [4] - 28:5, 46:6, 46:11, 57:18
larger [2] - 30:8, 46:18
last [4] - 9:15, 32:3, 61:2, 68:7
late [3] - 21:23, 21:24, 41:18
launder [9] - 24:7, 28:5, 31:9, 38:13, 40:14, 41:5, 41:7, 48:11, 50:6
laundered [3] - 26:16, 26:17, 41:21
laundering [26] - 4:25, 8:3, 18:16, 20:6, 20:12, 24:2, 25:11, 25:21, 26:2, 26:7, 26:9, 30:3, 30:10, 30:21, 30:24, 32:9, 49:11, 50:12, 51:3,

51:6, 52:3, 53:9, 53:19, 74:22, 78:11, 78:20
**law** [8] - 14:7, 15:5, 29:9, 35:3, 36:8, 69:4, 69:18, 76:20
**lawful** [2] - 21:1, 54:3
**lawyer** [7] - 5:20, 5:24, 10:10, 13:8, 13:12, 14:17, 79:4
**lawyers** [2] - 10:12, 77:19
**layering** [1] - 30:11
**lead** [2] - 23:19, 57:21
**learned** [1] - 35:1
**least** [6] - 10:12, 12:5, 32:3, 53:18, 54:5, 82:20
**ledger** [2] - 19:5, 19:8
**left** [1] - 74:24
**legal** [1] - 17:22
**legitimate** [2] - 31:23, 32:10
**legitimize** [2] - 30:18, 30:20
**length** [1] - 68:21
**less** [1] - 65:10
**letter** [9] - 7:10, 8:14, 14:22, 54:25, 55:8, 58:20, 66:24, 68:11, 77:12
**letters** [1] - 19:9
**level** [4] - 34:3, 52:13, 58:4, 58:7
**license** [1] - 66:21
**Lichtenstein** [62] - 6:21, 8:6, 8:19, 18:13, 21:21, 21:25, 23:16, 23:21, 24:2, 24:15, 24:16, 24:21, 24:25, 25:6, 25:10, 25:13, 25:18, 25:19, 25:21, 26:8, 27:2, 29:14, 30:2, 30:6, 30:19, 32:17, 32:24, 33:3, 33:8, 33:12, 33:14, 35:1, 35:7, 35:8, 35:10, 35:11, 38:10, 38:22, 39:18, 39:21, 39:22, 40:5, 40:9, 40:14, 40:22, 41:3, 41:11, 42:7, 44:25, 45:6, 48:11, 48:15, 50:9, 50:19, 54:10, 57:21, 73:12, 73:24, 79:16, 79:19, 81:5
**Lichtenstein's** [10] - 25:12, 26:6, 26:17, 28:23, 35:2, 36:10,

40:10, 50:10, 51:18, 67:5
**lied** [1] - 38:12
**lighter** [1] - 76:23
**likelihood** [1] - 65:3
**likely** [1] - 69:18
**limitations** [3] - 70:17, 70:25, 71:3
**limited** [4] - 15:7, 15:25, 30:4, 63:1
**limits** [2] - 28:3, 28:18
**line** [3] - 44:21, 46:6, 46:16
**linked** [1] - 32:18
**liquidate** [1] - 73:22
**liquidating** [1] - 73:25
**listed** [3] - 19:9, 30:24, 49:10
**listen** [1] - 12:24, 49:24
**live** [1] - 40:25, 66:11, 66:15
**living** [1] - 41:1
**LLC** [1] - 42:25
**located** [3] - 23:21, 23:25, 49:2
**location** [1] - 29:8
**log** [2] - 23:19, 24:19
**login** [1] - 24:16
**look** [7] - 32:10, 32:11, 36:19, 36:21, 58:9, 62:18, 73:21
**looked** [2] - 18:22, 74:2
**looking** [2] - 37:23, 80:6
**loop** [1] - 81:16
**loss** [1] - 55:14
**low** [1] - 60:15
**lower** [2] - 61:23, 75:22

### M

**ma'am** [1] - 5:9
**main** [2] - 47:6, 54:22
**majority** [1] - 48:13
**mandated** [1] - 48:18
**mandatory** [7] - 4:2, 4:6, 8:5, 56:7, 59:23, 63:23, 72:21
**manner** [1] - 16:3
**March** [1] - 39:22
**markets** [3] - 27:11, 30:13, 32:23
**mask** [1] - 3:24
**master's** [1] - 9:8
**materials** [1] - 25:7
**matter** [2] - 39:10, 81:8

**matters** [3] - 10:21, 69:5, 69:10
**maximum** [7] - 16:6, 16:10, 55:10, 55:12, 55:13, 59:2, 61:5
**maximums** [2] - 59:12, 60:21
**mean** [1] - 83:1
**means** [8] - 8:17, 12:1, 15:4, 23:23, 27:20, 51:5, 54:9, 57:16
**meant** [1] - 37:24
**medication** [6] - 9:16, 9:17, 9:18, 9:20, 9:25, 10:2
**medicine** [1] - 9:23
**meeting** [2] - 5:22, 33:6
**meetings** [3] - 69:18, 69:22, 69:23
**meets** [1] - 7:7
**memorize** [2] - 27:4, 51:13
**memorized** [1] - 51:15
**memorizing** [1] - 51:12
**mental** [1] - 10:15
**mentally** [2] - 9:24, 10:3
**mention** [1] - 60:7
**mentioned** [2] - 39:4, 44:25
**met** [1] - 40:23
**metal** [1] - 29:10
**methodology** [1] - 23:13
**microphone** [3] - 46:14, 52:6, 81:9
**might** [4] - 22:22, 23:19, 45:16, 79:21
**million** [2] - 22:13, 57:13
**mind** [2] - 6:5, 43:14
**minds** [1] - 5:22
**minimum** [2] - 4:3, 4:6
**mining** [1] - 42:9
**minor** [1] - 57:20
**mission** [2] - 20:11, 21:7
**modifications** [1] - 82:12
**Monero** [5] - 26:24, 27:3, 51:11, 51:16, 52:22
**monetary** [1] - 50:6
**money** [25] - 4:25, 8:3, 18:16, 20:3, 20:6, 20:12, 26:2, 30:3, 30:24, 31:9, 32:20, 33:24, 47:12, 49:11,

50:12, 52:2, 52:23, 53:9, 53:19, 73:11, 73:14, 74:22, 74:23, 78:11, 78:20
**money-launder** [1] - 31:9
**monies** [1] - 8:7
**monitored** [1] - 18:21
**monitoring** [2] - 73:3, 81:25
**month** [1] - 81:14
**months** [7] - 6:4, 60:16, 60:17, 60:24, 61:7, 61:24, 62:21
**Morgan** [67] - 3:3, 3:19, 3:21, 5:13, 18:14, 21:15, 21:16, 22:14, 24:1, 25:11, 25:18, 25:20, 26:5, 26:17, 27:2, 27:3, 29:8, 30:5, 30:18, 32:3, 32:4, 33:4, 33:12, 33:14, 34:25, 35:8, 35:11, 35:19, 36:10, 36:11, 36:13, 37:17, 38:10, 39:1, 40:10, 40:13, 42:18, 42:22, 43:17, 44:22, 46:21, 47:7, 47:19, 48:11, 48:25, 49:9, 49:14, 49:24, 50:19, 51:12, 51:15, 51:17, 51:19, 53:9, 53:12, 54:10, 54:16, 59:11, 60:11, 62:8, 62:9, 78:10, 78:20, 79:15, 79:17, 79:19, 81:13
**Morgan's** [10] - 25:11, 28:23, 30:2, 32:17, 48:15, 50:8, 50:12, 51:7, 52:1, 59:9
**morning** [10] - 3:6, 3:8, 3:12, 3:15, 3:17, 3:18, 3:20, 3:21, 3:22, 9:23
**most** [4] - 61:1, 70:17, 70:20, 79:25
**motion** [5] - 58:1, 63:12, 72:8, 72:12, 72:15
**move** [12] - 18:5, 23:15, 25:9, 27:17, 32:15, 34:5, 38:6, 38:24, 39:14, 48:1, 51:9, 51:10
**movement** [1] - 51:5
**moving** [14] - 24:9, 28:21, 29:25, 30:6, 30:8, 34:24, 36:7, 42:5, 42:14, 43:16,

52:20, 56:11, 70:12, 80:25
**mules** [1] - 32:20
**multiple** [6] - 28:4, 33:14, 34:18, 36:14, 39:18, 61:15
**must** [1] - 40:25

### N

**name** [2] - 26:24, 35:2
**names** [3] - 28:23, 28:24, 39:20
**narrow** [1] - 17:7
**narrowly** [1] - 63:25
**national** [1] - 20:13
**nature** [3] - 62:18, 64:8, 78:16
**necessarily** [4] - 16:9, 40:24, 76:23, 79:22
**necessary** [1] - 80:24
**need** [23] - 4:22, 5:15, 5:25, 6:7, 7:6, 10:25, 12:17, 18:9, 32:5, 45:25, 46:13, 47:23, 52:5, 54:20, 56:7, 64:1, 64:2, 64:3, 69:23, 81:18, 81:20, 81:22, 82:19
**needed** [2] - 27:4, 58:3
**needs** [3] - 54:19, 56:15, 73:23
**negative** [1] - 69:25
**negotiations** [1] - 77:5
**Network** [1] - 20:8
**new** [8] - 26:8, 42:18, 42:24, 43:2, 55:23, 56:2, 75:7, 75:21
**New** [3] - 34:16, 36:10
**newly** [1] - 72:8
**next** [3] - 36:12, 76:18, 78:25
**nonbinding** [1] - 74:22
**nondisclosure** [1] - 35:5
**none** [1] - 10:7
**nontransparent** [1] - 26:25
**nothing** [4] - 36:25, 37:21, 66:3, 83:12
**notice** [3] - 35:8, 35:18, 74:14
**notices** [1] - 73:4
**notified** [3] - 27:2, 27:6, 35:6
**notwithstanding** [1] - 16:12
**November** [5] - 34:25,

80:3, 80:10, 81:4
**null** [1] - 70:24
**number** [4] - 31:3, 31:4, 31:6
**numbers** [2] - 19:9, 19:16
**numerous** [4] - 26:3, 28:4, 30:3, 32:24

## O

**Oath** [1] - 5:10
**oath** [2] - 7:19, 7:20
**obfuscate** [1] - 53:2
**obfuscates** [1] - 30:14
**object** [2] - 56:25, 81:13
**obligation** [1] - 20:22
**obligations** [4] - 75:7, 75:9, 75:19, 75:25
**obscure** [1] - 25:14
**obstruct** [1] - 54:3
**obtain** [1] - 22:4
**obtained** [3] - 22:9, 24:22, 49:1
**obviously** [9] - 10:22, 16:22, 37:23, 56:1, 59:14, 61:4, 61:6, 62:14, 75:20
**occasions** [1] - 80:15
**occurred** [1] - 35:19
**occurs** [1] - 6:24
**offense** [19] - 6:20, 7:8, 22:11, 37:9, 49:21, 49:25, 51:8, 52:3, 54:5, 56:14, 57:9, 57:13, 57:23, 58:4, 58:7, 67:10, 67:24, 70:5, 79:20
**offenses** [2] - 49:1, 54:18
**offer** [1] - 11:19
**offered** [1] - 32:22
**offering** [1] - 28:8
**office** [4] - 66:11, 67:17, 69:19, 76:17
**Office** [3] - 63:8, 69:4, 73:2
**official** [3] - 57:2, 57:3, 65:1
**officially** [1] - 41:13
**old** [1] - 8:25
**once** [3] - 30:8, 41:24, 44:16
**one** [37] - 11:25, 13:8, 14:18, 17:1, 23:1, 33:15, 34:18, 47:6, 48:15, 52:24, 53:1, 53:8, 53:19, 54:5, 54:23, 57:2, 57:3,

57:15, 58:7, 58:13, 58:17, 59:2, 59:12, 61:25, 65:1, 70:13, 73:15, 73:16, 76:24, 81:7, 83:6, 83:7
**ones** [4] - 30:25, 31:1, 49:22, 65:12
**Ontario** [2] - 9:10, 9:11
**open** [5] - 14:22, 70:20, 76:13, 80:13, 83:2
**open-ended** [1] - 70:20
**opened** [1] - 28:23
**opening** [1] - 37:19
**operate** [1] - 20:4
**opportunity** [1] - 81:16
**opposed** [4] - 7:3, 30:8, 46:7, 58:23
**option** [2] - 58:12, 58:17
**oral** [1] - 6:9
**Order** [1] - 79:3
**order** [11] - 8:18, 22:2, 28:4, 35:5, 35:7, 35:17, 49:10, 64:1, 65:14, 82:1, 83:10
**orders** [1] - 79:3
**ordinarily** [4] - 62:17, 69:19, 71:19, 73:5
**Oregon** [2] - 9:10, 9:12
**origin** [2] - 25:12, 53:2
**originally** [1] - 71:2
**otherwise** [1] - 19:10
**outside** [2] - 22:10, 23:25
**overt** [3] - 53:10, 53:11, 54:12
**own** [7] - 13:16, 13:25, 40:6, 42:23, 66:2, 78:2, 78:17
**owner** [1] - 43:1
**ownership** [1] - 40:1

## P

**p.m** [1] - 83:15
**packages** [5] - 32:25, 33:3, 33:4, 33:21, 34:6
**page** [1] - 14:23, 23:15, 58:20, 67:2, 67:4, 67:14, 67:15, 69:1, 70:12, 71:16, 74:21
**pages** [1] - 66:25
**paid** [2] - 53:17, 72:25

**paragraph** [18] - 18:19, 21:19, 23:14, 23:15, 25:8, 30:22, 41:2, 51:7, 51:9, 54:4, 58:21, 68:6, 68:7, 69:2, 71:16, 74:7
**paragraphs** [6] - 7:1, 7:2, 18:7, 21:10, 25:6, 66:25
**paraphrase** [1] - 21:23
**parole** [2] - 65:18, 65:19
**part** [24] - 6:8, 6:11, 18:8, 20:4, 24:6, 32:9, 40:4, 41:12, 43:5, 43:6, 43:8, 46:5, 52:9, 52:19, 55:25, 57:18, 61:2, 65:21, 65:22, 68:20, 69:14, 75:1, 76:11, 82:9
**parte** [1] - 80:18
**participant** [1] - 57:20
**participate** [3] - 18:14, 24:1, 69:9
**participated** [3] - 25:13, 51:12, 51:17
**particular** [5] - 7:14, 57:10, 64:7, 69:22, 73:19
**parties** [4] - 19:18, 39:20, 79:9, 83:13
**party** [3] - 19:17, 19:19, 49:4
**pass** [1] - 43:1
**pass-through** [1] - 43:1
**password** [1] - 38:3
**past** [1] - 10:18
**pay** [8] - 16:23, 17:1, 42:20, 43:9, 56:7, 72:22, 73:13, 74:25
**payment** [1] - 75:1
**payments** [2] - 40:12, 40:13
**PECK** [1] - 3:12
**Peck** [1] - 3:13
**pecuniary** [1] - 55:13
**pegged** [1] - 27:20
**PELKER** [1] - 3:15
**Pelker** [1] - 3:15
**penalties** [4] - 7:15, 55:6, 55:9, 67:3
**pennies** [1] - 46:9
**people** [3] - 3:25, 50:7, 68:5
**per** [4] - 33:14, 33:15, 34:18
**perhaps** [2] - 22:25

**period** [7] - 30:11, 38:9, 55:17, 56:1, 70:6, 70:18, 79:12
**perjury** [1] - 7:22
**permitted** [1] - 15:5
**person** [5] - 12:8, 32:21, 35:16, 37:15, 57:21
**personal** [4] - 36:22, 42:23, 43:2, 56:19
**personally** [1] - 49:1
**perspective** [1] - 21:11
**pertain** [1] - 18:13
**phase** [1] - 24:14
**phone** [13] - 33:2, 36:13, 36:15, 36:19, 36:20, 37:1, 37:5, 37:8, 37:10, 37:12, 37:17, 37:21, 38:2
**photos** [1] - 36:22
**phrase** [3] - 27:3, 51:12, 51:16
**phrased** [1] - 59:22
**picks** [1] - 25:9
**place** [3] - 20:6, 30:11, 33:6
**placed** [1] - 49:4
**places** [2] - 62:21, 81:24
**plan** [1] - 68:17
**platforms** [3] - 20:21, 32:25, 33:9
**plea** [34] - 5:5, 5:16, 6:16, 6:22, 7:10, 7:17, 8:14, 8:19, 11:5, 11:19, 14:7, 14:22, 17:5, 54:25, 58:20, 64:19, 65:2, 67:5, 67:25, 68:21, 70:7, 70:23, 71:11, 71:23, 75:10, 76:19, 77:2, 77:11, 77:15, 78:1, 78:4, 78:18, 78:19
**plead** [8] - 5:3, 5:4, 8:18, 12:19, 17:4, 17:10, 78:10, 78:13
**pleaded** [1] - 54:18
**pleading** [10] - 4:4, 6:19, 7:8, 8:1, 8:3, 11:25, 15:8, 15:17, 58:2, 76:22
**pleas** [2] - 67:7, 78:23
**pleasure** [1] - 82:21
**point** [27] - 3:8, 10:1, 15:12, 15:14, 16:22, 17:14, 18:9, 21:7, 23:2, 32:3, 34:10, 38:20, 40:17, 46:1,

46:22, 57:11, 58:1, 58:2, 60:4, 70:23, 71:2, 73:7, 73:17, 80:10, 80:17, 80:24, 81:17
**points** [7] - 47:7, 57:9, 57:14, 57:16, 57:17, 57:20, 57:25
**policies** [1] - 40:5
**policy** [1] - 80:20
**polygraph** [1] - 69:8
**portion** [5] - 27:18, 29:6, 59:13, 60:24, 83:3
**portions** [1] - 55:7
**position** [5] - 37:25, 45:20, 62:14, 81:23
**possess** [1] - 66:17
**possessing** [1] - 66:20
**possibility** [1] - 59:1
**possible** [2] - 39:5, 60:8
**post** [1] - 68:7
**post-sentencing** [1] - 68:7
**posted** [1] - 19:5
**potential** [2] - 34:9, 79:21
**practical** [1] - 39:10
**practice** [1] - 30:17
**pre** [2] - 28:7, 60:8
**pre-existing** [1] - 28:7
**pre-possible** [1] - 60:8
**prearranged** [1] - 33:6
**preceded** [1] - 44:23
**precious** [1] - 29:9
**predicate** [1] - 52:2
**preexisting** [1] - 32:7
**Preliminary** [1] - 79:3
**preliminary** [1] - 73:15
**prepaid** [1] - 52:23
**prepare** [2] - 14:18, 56:18
**preponderance** [1] - 75:19
**present** [11] - 3:19, 13:16, 13:21, 13:23, 13:25, 17:15, 63:9, 69:20, 69:21, 69:22, 77:22
**presented** [2] - 12:24, 13:2
**presentence** [4] - 56:18, 56:23, 64:23, 65:4
**presents** [1] - 12:6
**presumably** [2] - 8:7, 18:22
**presumed** [1] - 14:7

**pretenses** [1] - 22:2
**pretrial** [6] - 4:8, 8:10, 8:11, 81:16, 81:18, 81:23
**prevent** [4] - 48:18, 48:23, 51:20, 54:6
**preventing** [2] - 37:4, 37:5
**previous** [1] - 25:23
**price** [2] - 27:21, 27:22
**primarily** [1] - 53:16
**primary** [1] - 40:12
**printed** [1] - 11:11
**Prisons** [2] - 66:2, 68:10
**probable** [3] - 12:7, 37:7, 75:22
**probation** [8] - 56:18, 57:4, 58:16, 62:12, 67:17, 73:2, 77:18, 81:24
**probation's** [1] - 81:23
**problem** [3] - 4:13, 5:25, 6:1
**proceed** [1] - 80:3
**proceeding** [1] - 5:14
**proceedings** [1] - 68:9
**Proceedings** [1] - 83:15
**proceeds** [46] - 22:17, 22:23, 24:3, 25:13, 26:8, 26:9, 26:18, 32:8, 32:10, 38:14, 39:2, 39:5, 39:6, 39:7, 39:11, 40:14, 41:5, 41:7, 41:15, 41:21, 43:22, 43:25, 44:4, 44:18, 45:14, 45:18, 45:24, 46:2, 46:3, 46:24, 47:4, 47:20, 48:11, 48:25, 49:11, 50:16, 50:21, 52:4, 52:12, 52:15, 52:17, 52:24, 53:4, 69:15, 74:8
**process** [3] - 10:10, 33:20, 35:4
**proffer** [1] - 54:16
**profiles** [1] - 28:8
**program** [1] - 76:5
**programs** [2] - 20:6, 30:9
**progress** [1] - 80:22
**progresses** [1] - 80:14
**projects** [1] - 43:3
**promised** [1] - 76:22
**promises** [2] - 77:10, 77:14
**promote** [1] - 20:13

**promptly** [1] - 69:16
**properties** [1] - 49:10
**property** [2] - 49:11, 74:8
**prosecute** [1] - 70:19
**prosecuted** [1] - 7:21
**prosecutions** [1] - 75:11
**prosecutor** [1] - 76:20
**prosecutors'** [1] - 69:19
**protection** [1] - 76:3
**prove** [2] - 14:8, 27:15
**provide** [4] - 39:25, 57:1, 69:16, 73:1
**provided** [5] - 12:25, 27:3, 30:23, 68:14, 71:10
**provider** [3] - 35:3, 35:16, 39:20
**providers** [1] - 19:18
**providing** [1] - 63:5
**proving** [1] - 75:17
**public** [5] - 19:5, 19:8, 33:6, 66:11, 83:9
**punishment** [2] - 56:16, 59:20
**purchased** [4] - 28:8, 32:25, 33:13, 51:19
**purchasing** [1] - 52:22
**purpose** [10] - 21:1, 26:7, 26:9, 29:16, 34:9, 48:15, 53:1, 53:19, 54:5, 57:6
**push** [1] - 5:25
**pushing** [1] - 36:13
**puts** [1] - 60:2
**putting** [1] - 79:12

## Q

**qualify** [1] - 20:3
**questions** [9] - 5:5, 5:15, 6:17, 7:4, 7:21, 8:25, 12:22, 69:7, 76:18
**quick** [2] - 23:3, 23:6
**quicker** [1] - 7:5
**quite** [2] - 6:22, 67:1
**quote** [3] - 42:9, 42:22, 43:19

## R

**raise** [2] - 5:7, 71:1
**range** [10] - 16:7, 57:1, 59:1, 60:15, 62:22, 63:7, 63:15, 67:14, 67:16, 72:13
**rather** [1] - 81:24

**reaccess** [1] - 38:2
**reach** [2] - 59:3, 60:25
**reached** [1] - 77:4
**read** [9] - 7:3, 10:9, 10:10, 10:12, 17:25, 55:3, 59:16, 61:9, 79:4
**reading** [1] - 23:15
**ready** [1] - 19:20
**real** [1] - 34:8
**realize** [1] - 64:17
**really** [5] - 11:3, 17:20, 44:21, 44:24, 76:18
**reasonable** [5] - 14:9, 21:2, 54:17, 64:4, 75:21
**reasons** [3] - 64:5, 82:20, 83:8
**receipt** [1] - 35:8
**receive** [5] - 11:8, 32:8, 53:16, 56:23, 66:1
**received** [5] - 10:14, 33:21, 45:5, 47:7, 72:9
**receiving** [4] - 35:18, 44:22, 44:24, 81:12
**recently** [4] - 44:25, 46:8, 46:19, 66:12
**recommend** [3] - 68:5, 68:6, 76:4
**recommendations** [1] - 8:14
**recommended** [1] - 59:25
**reconnaissance** [1] - 24:14
**record** [7] - 3:5, 3:25, 6:8, 45:13, 61:11, 64:9, 82:2
**records** [1] - 35:1
**recover** [1] - 51:15
**recovered** [2] - 29:9, 51:21
**recovery** [2] - 73:19, 74:22
**recreate** [1] - 51:14
**rectify** [1] - 44:17
**redacted** [1] - 83:7
**reduce** [1] - 66:4
**reduced** [1] - 68:16
**reduces** [1] - 72:13
**referenced** [3] - 30:1, 48:10, 48:17
**referral** [1] - 74:22
**referred** [1] - 19:19
**referring** [1] - 4:10
**reflect** [1] - 64:4
**regarding** [4] - 18:25, 20:20, 27:2, 82:10

**regards** [2] - 35:23, 48:22
**registered** [3] - 32:20, 39:24, 48:5
**regulations** [1] - 20:1
**rehabilitation** [1] - 56:15
**related** [8] - 10:19, 16:15, 20:13, 35:1, 35:13, 42:2, 57:10, 82:23
**relates** [7] - 6:22, 7:7, 24:6, 49:25, 63:4, 64:18, 72:14
**relating** [4] - 6:17, 8:16, 15:20, 56:15
**relations** [1] - 9:7
**relationship** [3] - 40:21, 47:9, 50:9
**relative** [1] - 46:9
**release** [9] - 16:2, 16:3, 55:15, 55:16, 55:17, 55:21, 65:22, 68:25, 81:11
**relevant** [7] - 35:13, 37:8, 46:17, 48:2, 69:5, 69:6, 69:11
**remain** [3] - 8:9, 8:11, 77:21
**rent** [1] - 44:16
**repay** [1] - 45:1
**repaying** [1] - 44:15
**report** [11] - 20:22, 56:18, 56:23, 64:23, 65:4, 80:3, 80:9, 80:12, 80:19, 81:3
**reporter** [1] - 24:12
**reports** [6] - 20:20, 21:5, 21:6, 79:16, 80:18, 80:22
**represent** [1] - 16:25
**representations** [2] - 38:12, 45:21
**representative** [1] - 42:16
**representatives** [1] - 42:8
**represented** [5] - 13:7, 40:5, 40:11, 43:18, 51:18
**representing** [1] - 53:12
**request** [4] - 68:15, 74:24, 76:3, 81:17
**requested** [2] - 14:1, 69:24
**requesting** [1] - 39:24
**requests** [1] - 82:13
**require** [7] - 13:17, 20:1, 26:4, 27:1,

58:10, 63:19, 73:5
**required** [6] - 7:12, 20:18, 59:17, 60:5, 65:19, 73:1
**requirement** [2] - 45:17, 56:6
**requirements** [3] - 73:4, 75:7, 76:7
**requires** [1] - 52:3
**rescind** [1] - 67:18
**reserving** [2] - 8:13, 72:12
**respect** [5] - 45:12, 46:4, 46:5, 51:3, 53:24
**respond** [1] - 39:23
**responded** [2] - 42:19, 42:22
**response** [4] - 5:5, 40:3, 42:7, 42:16
**responsibility** [4] - 24:3, 57:24, 58:2, 67:13
**responsible** [2] - 20:9, 25:19
**rest** [1] - 18:7
**restitution** [8] - 8:5, 16:1, 56:7, 72:21, 72:22, 72:24, 73:7, 74:24
**restrictions** [1] - 68:10
**result** [5] - 24:21, 25:15, 40:1, 40:7, 49:1
**resulted** [1] - 77:5
**resulting** [1] - 24:2
**retain** [2] - 16:13, 67:6
**retains** [1] - 19:20
**retrieved** [1] - 36:11
**retroactive** [1] - 72:14
**returned** [1] - 12:2
**returning** [1] - 23:17
**revealed** [2] - 35:17, 35:18
**review** [3] - 11:13, 56:24, 57:3
**reviewed** [1] - 64:24
**reviewing** [1] - 10:9
**revoked** [1] - 55:22
**rights** [13] - 6:18, 7:14, 11:23, 11:24, 15:2, 17:6, 17:11, 66:10, 66:13, 71:7, 72:3, 72:6, 73:6
**role** [6] - 25:9, 26:12, 26:21, 38:21, 48:22, 79:20
**roles** [1] - 21:13
**roughly** [1] - 19:16
**Rule** [1] - 68:13

**rule** [1] - 61:18
**rules** [3] - 7:12, 71:17, 74:14
**run** [3] - 58:22, 70:25
**Russian** [4] - 26:15, 32:20, 33:8, 33:11

## S

**safeguard** [1] - 20:11
**sale** [3] - 28:3, 28:18, 32:22
**Sales** [1] - 53:14
**SalesFolk** [4] - 42:17, 42:19, 43:9, 53:15
**SalesForce** [1] - 53:13
**SARs** [4] - 21:6, 21:8, 48:18, 54:8
**satisfied** [2] - 11:15, 78:14
**satisfies** [1] - 45:17
**scans** [1] - 33:1
**scheme** [4] - 26:2, 35:14, 36:24, 62:24
**school** [2] - 9:5, 9:7
**scope** [2] - 15:9, 15:13
**screen** [1] - 36:14
**seal** [2] - 80:12, 83:3
**sealed** [4] - 81:3, 83:3, 83:5, 83:6
**search** [3] - 36:10, 37:11, 37:13
**seated** [2] - 4:13, 5:12
**second** [9] - 44:22, 43:6, 44:8, 44:10, 47:23, 53:24, 58:21, 71:8, 71:16
**secondhand** [1] - 18:15
**Secrecy** [5] - 19:24, 19:25, 48:5, 48:19, 54:8
**Section** [1] - 58:24
**sections** [1] - 7:12
**security** [3] - 20:14, 47:24, 76:5
**see** [5] - 20:6, 20:21, 37:23, 80:22, 82:11
**seed** [3] - 27:3, 51:12, 51:16
**sell** [1] - 42:24
**sense** [3] - 17:22, 23:10, 79:25
**sent** [1] - 33:8
**sentence** [38] - 16:3, 16:6, 16:7, 16:13, 16:16, 55:10, 55:11, 55:12, 55:23, 56:3, 58:10, 58:11, 59:11, 60:1, 60:25, 61:7,

61:24, 62:1, 62:2, 62:19, 63:6, 63:14, 64:5, 64:22, 65:10, 65:21, 65:23, 65:25, 66:1, 66:5, 68:16, 68:22, 71:8, 72:5, 76:23, 77:14, 77:18
**sentenced** [3] - 58:8, 61:19, 79:10
**sentences** [4] - 58:13, 58:22, 59:3, 59:5
**sentencing** [23] - 7:16, 8:14, 15:24, 55:7, 55:24, 56:12, 57:1, 57:5, 57:7, 58:9, 58:14, 59:16, 61:15, 61:23, 62:23, 63:15, 63:21, 64:14, 68:7, 68:14, 68:23, 79:14, 80:21
**Sentencing** [1] - 72:13
**sentencings** [1] - 80:1
**separate** [2] - 65:22, 80:19
**separately** [4] - 7:4, 63:22, 74:25, 79:8
**September** [1] - 81:14
**seq** [1] - 20:21
**series** [2] - 19:9, 30:7
**seriousness** [1] - 56:14
**serve** [4] - 21:1, 65:21, 66:1, 66:11
**servers** [1] - 23:25
**service** [3] - 33:5, 35:16, 40:13
**services** [2] - 11:16, 20:3
**set** [16] - 6:15, 16:2, 28:15, 30:4, 30:5, 31:4, 33:20, 33:23, 37:8, 47:24, 55:20, 57:5, 57:6, 72:7, 76:17, 80:2
**sets** [6] - 11:9, 18:2, 56:12, 64:10, 69:2, 76:18
**setting** [5] - 26:3, 28:4, 30:19, 31:18, 79:14
**seven** [1] - 39:24
**several** [3] - 24:23, 30:24, 43:20
**severe** [2] - 65:10
**sharp** [1] - 9:20
**shipped** [2] - 33:5, 34:7
**shipping** [1] - 33:5
**short** [4] - 6:17, 30:11, 81:21, 81:22

**showing** [1] - 50:8
**shown** [1] - 48:13
**shut** [1] - 36:15
**sic** [2] - 56:8, 65:11
**side** [2] - 36:13, 82:18
**sign** [2] - 12:17, 79:2
**signals** [1] - 23:23
**signatures** [1] - 80:6
**signed** [3] - 52:18, 73:16, 80:7
**signs** [1] - 23:23
**SIM** [1] - 33:1
**similar** [2] - 15:16, 19:13
**simple** [1] - 61:1
**simply** [1] - 52:3
**sit** [1] - 12:23
**situated** [1] - 79:20
**situation** [1] - 64:7
**six** [1] - 30:24
**skip** [1] - 18:16
**slow** [1] - 24:11
**slowly** [1] - 6:5
**small** [1] - 30:7
**software** [4] - 31:9, 40:13, 42:24, 43:3
**software-as-a-service** [1] - 40:13
**sold** [1] - 49:3
**sole** [1] - 43:1
**someone** [1] - 23:20
**sometime** [5] - 22:20, 25:17, 40:24, 41:13, 81:13
**sometimes** [1] - 9:20
**somewhat** [1] - 64:18
**sophisticated** [1] - 57:16
**sorry** [5] - 4:19, 11:2, 23:5, 36:5, 52:7
**sort** [5] - 23:3, 46:6, 46:10, 64:10, 79:19
**sound** [1] - 46:21
**source** [3] - 25:14, 42:10, 43:18
**spaced** [1] - 9:21
**speaking** [2] - 3:23, 3:24
**special** [1] - 56:8
**specific** [10] - 18:12, 25:12, 39:3, 49:9, 51:6, 52:14, 54:19, 76:23, 79:14, 82:1
**specifically** [6] - 17:21, 37:10, 37:14, 45:19, 46:16, 54:21
**specifics** [1] - 81:25
**specified** [1] - 52:19
**spent** [1] - 56:2

**spraying** [1] - 24:17
**spring** [1] - 21:24
**stablecoins** [2] - 27:20, 28:1
**stand** [2] - 5:7, 71:20
**standard** [3] - 75:18, 75:20, 75:22
**start** [6] - 18:18, 23:14, 23:15, 25:8, 40:22, 55:9
**started** [2] - 41:1, 41:11
**starting** [2] - 3:5, 45:6
**state** [3] - 17:15, 66:20, 69:4
**statement** [17] - 6:20, 7:22, 22:11, 35:23, 37:9, 43:5, 43:6, 43:11, 43:12, 44:1, 44:21, 47:11, 50:7, 51:7, 53:18, 54:5, 67:9
**statements** [9] - 38:7, 44:14, 50:8, 54:10, 69:8, 71:17, 71:21, 71:25, 75:14
**States** [13] - 3:3, 3:13, 3:16, 8:4, 20:5, 23:22, 23:25, 33:13, 35:10, 48:4, 54:1, 78:12, 78:21
**states** [2] - 20:11, 66:12
**stating** [1] - 42:9
**station** [1] - 33:7
**status** [2] - 79:16, 80:3
**statute** [16] - 15:7, 15:9, 15:11, 15:12, 15:13, 15:16, 15:18, 52:2, 55:9, 55:24, 56:12, 66:18, 70:17, 70:22, 70:25, 71:3
**statutory** [13] - 7:15, 16:6, 16:10, 45:17, 52:19, 55:6, 55:9, 59:1, 59:12, 59:15, 60:3, 60:21, 61:5
**stay** [1] - 26:4
**steps** [6] - 23:17, 26:1, 35:9, 35:19, 51:8, 51:10
**still** [7] - 3:9, 10:18, 39:1, 60:4, 61:6, 62:23, 65:18, 66:18, 70:7
**stole** [1] - 24:23
**stolen** [7] - 24:18, 25:1, 25:7, 25:11, 25:21, 26:14, 26:23,

27:18, 28:5, 29:7, 30:6, 30:11, 32:18, 33:17, 48:14, 51:8, 51:10, 52:20, 52:24
**stop** [1] - 40:16
**storage** [3] - 19:12, 43:21, 45:7
**store** [1] - 19:14
**straight** [1] - 60:11
**strategic** [1] - 20:14
**stress** [4] - 10:17, 10:19, 10:23
**strict** [1] - 24:1
**stuff** [1] - 47:24
**subject** [3] - 48:4, 75:11, 81:12
**subpoena** [1] - 13:17
**substance** [2] - 22:24, 56:21
**substantial** [5] - 20:4, 57:14, 63:5, 63:11, 68:15
**substitute** [1] - 74:9
**sufficient** [1] - 64:7
**suggested** [1] - 76:22
**summary** [3] - 21:20, 49:20, 49:24
**summoned** [2] - 12:4, 12:21
**supervised** [6] - 16:2, 55:15, 55:16, 55:17, 55:21, 65:22
**supposed** [1] - 67:12
**suspected** [1] - 39:5
**suspicion** [3] - 33:15, 34:19, 50:15
**suspicious** [7] - 20:20, 20:22, 21:6, 39:12, 47:4, 47:12, 47:20
**swear** [2] - 4:13, 4:16
**swiped** [1] - 36:14
**sworn** [2] - 7:19, 69:8
**system** [4] - 20:12, 57:8, 63:21, 66:2
**systems** [2] - 22:3, 23:18

## T

**talks** [5] - 41:2, 69:15, 74:21, 75:5, 76:3
**targeting** [2] - 24:19, 38:7
**tax** [2] - 22:25, 39:5
**taxation** [1] - 43:1
**taxed** [1] - 42:25
**technical** [1] - 58:14
**technique** [1] - 30:10
**techniques** [2] - 30:3,

30:25
**ten** [1] - 72:4
**tentatively** [1] - 81:12
**term** [1] - 16:1
**terms** [42] - 5:14, 10:8, 11:4, 15:25, 21:10, 21:18, 22:15, 25:5, 25:7, 29:14, 31:11, 33:18, 38:16, 40:17, 41:2, 41:3, 49:17, 49:20, 52:1, 52:10, 54:24, 55:15, 57:20, 57:22, 60:11, 61:3, 64:13, 67:12, 67:22, 67:24, 68:4, 71:7, 73:4, 73:10, 73:19, 74:12, 74:14, 74:19, 75:17, 79:20, 80:11, 82:12
**terrorism** [1] - 20:13
**testify** [4] - 13:18, 13:21, 13:23, 70:2
**Tether** [1] - 27:19
**therapy** [3] - 10:17, 10:18, 11:1
**thereby** [2] - 19:6, 48:18
**therefore** [1] - 78:19
**they've** [5] - 30:24, 57:8, 64:25, 67:10, 74:18
**thinking** [2] - 10:2, 79:2
**thinks** [1] - 18:10
**third** [5] - 19:17, 19:18, 19:19, 39:20, 49:4
**third-party** [1] - 19:17
**thirty** [1] - 9:1
**thirty-three** [1] - 9:1
**thoroughly** [1] - 11:14
**thousand** [1] - 24:24
**thousands** [1] - 30:7
**threatened** [1] - 77:1
**three** [4] - 9:1, 14:16, 60:24, 82:19
**thresholds** [1] - 26:4
**threw** [2] - 35:11, 35:21
**ties** [1] - 83:10
**timely** [1] - 35:4
**today** [4] - 5:14, 9:21, 71:21, 78:15
**together** [5] - 28:6, 40:25, 41:1, 57:23, 58:6
**took** [3] - 23:17, 35:8, 35:19
**total** [6] - 8:8, 19:22, 58:4, 59:20, 73:12,

74:19
**totaling** [1] - 30:7
**tourism** [1] - 34:9
**tracing** [1] - 48:12
**trade** [1] - 40:6
**trail** [2] - 30:14, 53:3
**train** [1] - 33:6
**transact** [3] - 19:14, 19:21, 32:8
**transaction** [7] - 19:9, 19:11, 26:4, 30:14, 52:17, 53:3, 73:19
**transactions** [18] - 19:5, 19:8, 20:22, 20:23, 21:1, 21:4, 22:5, 22:8, 27:10, 30:7, 30:9, 30:10, 30:21, 39:2, 50:12, 51:4, 51:6, 52:18
**transferred** [2] - 22:10, 49:3
**transmission** [1] - 48:18
**transmitted** [3] - 19:6, 23:22
**trash** [1] - 34:11
**trauma** [1] - 10:18
**travel** [3] - 33:12, 34:14, 82:10
**traveling** [2] - 81:13, 82:21
**Treasury** [3] - 20:9, 21:8, 48:20
**treatment** [1] - 10:15
**trial** [15] - 3:12, 12:4, 12:20, 13:4, 13:7, 13:8, 13:11, 13:21, 14:10, 14:14, 17:7, 17:11, 17:16, 70:4, 71:7
**trials** [1] - 58:3
**tried** [1] - 62:25
**triggered** [1] - 20:23
**trip** [2] - 33:15, 34:18
**trips** [3] - 33:3, 34:5, 34:9
**true** [8] - 28:23, 33:23, 43:6, 43:11, 43:13, 43:14, 44:2, 45:5
**truthfully** [3] - 7:21, 69:3, 70:3
**try** [1] - 82:11
**trying** [3] - 29:19, 47:15, 48:23
**turn** [2] - 54:7, 69:16
**turned** [3] - 36:20, 37:17, 38:2
**turning** [1] - 37:24
**two** [13] - 7:8, 11:9, 28:6, 50:6, 54:18,

55:13, 57:22, 58:6, 58:22, 60:4, 60:20, 61:22, 61:25
**type** [2] - 10:15, 69:2
**typically** [4] - 19:3, 19:12, 32:21, 33:5

## U

**U.S** [11] - 20:9, 27:20, 31:21, 31:23, 34:14, 35:3, 35:5, 48:19, 63:8, 69:4, 73:2
**U.S.-based** [6] - 20:2, 26:16, 26:18, 30:17, 30:20, 31:19
**U.S.C** [1] - 20:21
**Ukraine** [2] - 33:4, 34:5
**Ukrainian** [3] - 26:15, 32:20, 33:11
**ultimately** [3] - 8:18, 35:6, 67:6
**unable** [1] - 16:23
**unauthorized** [3] - 22:8, 23:20, 24:15
**unaware** [1] - 25:12
**unconstitutional** [3] - 15:8, 15:10, 15:17
**under** [17] - 7:19, 7:20, 15:17, 15:18, 20:3, 22:10, 28:23, 36:12, 48:18, 58:21, 59:20, 60:1, 61:14, 63:4, 72:6, 73:18, 80:12
**undercover** [1] - 69:9
**undermine** [2] - 27:10, 71:21
**understood** [4] - 25:22, 82:4, 82:7, 83:11
**unhosted** [2] - 19:23, 27:9
**uniform** [1] - 57:7
**United** [13] - 3:3, 3:13, 3:16, 8:4, 20:5, 23:22, 23:25, 33:13, 35:10, 48:4, 54:1, 78:12, 78:21
**unlawful** [11] - 15:18, 16:7, 16:9, 25:16, 39:2, 39:10, 39:13, 41:7, 45:18, 46:3, 55:10
**unless** [3] - 14:6, 16:9, 18:10, 37:18, 58:17
**unlock** [1] - 37:6
**unrelated** [2] - 10:20, 39:21
**unspecified** [1] -

25:16
**up** [45] - 5:21, 6:19, 7:11, 7:13, 11:24, 12:14, 15:2, 15:4, 17:5, 17:11, 25:9, 26:3, 28:4, 30:4, 30:5, 30:14, 30:19, 31:4, 31:18, 32:5, 33:20, 33:23, 46:13, 46:17, 47:24, 52:5, 57:6, 57:8, 61:3, 62:13, 63:2, 70:23, 71:4, 71:8, 71:19, 71:23, 72:6, 72:22, 73:6, 74:15, 76:12, 80:23, 82:8, 83:10
**upfront** [1] - 68:16
**USD** [1] - 27:19
**USDC** [1] - 27:19
**USDT** [1] - 27:19
**user** [1] - 24:19
**users** [1] - 19:22
**USFI** [3] - 40:10, 40:11, 48:3
**USFIs** [5] - 20:2, 26:3, 28:22, 38:8, 38:13
**utilizing** [1] - 30:9

## V

**vacated** [2] - 70:23, 70:24
**valid** [1] - 35:4
**valuable** [1] - 66:10
**value** [3] - 19:2, 46:11, 46:18
**valued** [1] - 22:12
**values** [1] - 46:6
**variance** [2] - 63:24, 64:9
**variety** [1] - 30:12
**various** [5] - 21:13, 25:7, 52:20, 54:11, 72:6
**vary** [1] - 64:5
**VCE** [32] - 22:1, 22:6, 24:15, 24:18, 24:23, 24:24, 25:1, 25:19, 25:23, 28:24, 28:25, 38:14, 39:19, 39:23, 40:1, 40:4, 40:6, 40:15, 42:7, 42:8, 42:16, 43:18, 43:22, 48:3, 48:12
**VCE's** [3] - 23:18, 23:25, 24:16
**VCEs** [7] - 20:2, 26:3, 28:22, 30:12, 38:8, 38:13, 48:17
**vendors** [1] - 28:8

**venue** [5] - 49:14, 49:16, 54:21, 54:22, 70:13
**verification** [1] - 42:7
**verified** [2] - 28:7, 28:19
**verify** [2] - 20:19, 39:25
**via** [3] - 19:6, 26:25, 33:5
**victim** [21] - 22:1, 22:6, 22:9, 23:18, 23:24, 24:15, 24:16, 24:18, 25:1, 25:19, 25:23, 38:14, 40:15, 43:22, 48:12, 50:10, 50:20, 52:15, 57:15, 75:1
**view** [1] - 69:5
**viewed** [2] - 69:12, 70:6
**violation** [2] - 35:7, 55:21
**violations** [1] - 66:4
**viral** [1] - 26:23
**virtual** [24] - 18:25, 19:2, 19:4, 19:12, 19:13, 19:14, 19:15, 19:17, 19:18, 20:2, 22:1, 22:6, 22:7, 24:20, 24:22, 26:25, 27:21, 30:15, 30:16, 40:7, 42:17, 50:10, 50:20, 52:15
**virtually** [1] - 47:9
**visible** [1] - 19:8
**visit** [1] - 81:13
**voice** [2] - 46:13, 52:5
**void** [1] - 70:24
**volatility** [1] - 27:21
**voluntarily** [3] - 5:18, 78:2, 78:17
**voluntariness** [2] - 7:16, 76:19
**vote** [1] - 66:10

## W

**waiting** [2] - 80:21, 80:23
**waive** [4] - 12:13, 15:4, 15:23, 49:16
**waived** [2] - 16:24, 54:20
**waiver** [1] - 15:5
**waivers** [2] - 70:12, 80:7
**waives** [1] - 49:14
**waiving** [2] - 15:2, 16:12

**wallet** [7] - 19:13, 19:15, 22:10, 25:7, 27:3, 27:7, 51:14
**Wallet** [1] - 22:11
**wallets** [7] - 19:14, 19:17, 19:18, 19:19, 19:21, 19:23, 27:9
**warrant** [4] - 36:9, 36:11, 37:11, 37:13
**Washington** [1] - 21:9
**web** [1] - 31:5
**website** [1] - 20:11
**weigh** [1] - 62:12
**whole** [1] - 52:18
**wholly** [1] - 20:4
**willful** [1] - 45:16
**willing** [1] - 12:13
**winter** [2] - 21:24
**wire** [1] - 23:23
**wired** [2] - 8:17, 78:24
**wiring** [1] - 67:6
**wise** [1] - 31:8
**wish** [4] - 5:3, 5:4, 5:24, 78:25
**wishes** [1] - 4:13
**withdraw** [7] - 33:13, 34:15, 67:18, 67:25, 68:21, 70:7, 75:10
**withdrawing** [3] - 26:16, 30:13, 52:23
**withdrawn** [1] - 71:23
**withdrew** [1] - 26:17
**witness** [3] - 72:20, 76:3, 76:5
**witnesses** [2] - 13:13, 13:16
**woozy** [1] - 9:20
**words** [6] - 5:16, 13:17, 37:5, 39:9, 59:5, 68:24
**worldwide** [1] - 19:7
**worth** [1] - 24:24
**writing** [4] - 6:9, 69:24, 76:13, 82:16
**writings** [1] - 23:23
**written** [1] - 69:8
**wrote** [1] - 42:8

## X

**XMR** [2] - 26:24, 27:11

## Y

**year** [4] - 59:12, 60:21, 61:22, 66:5
**years** [3] - 43:20, 55:12, 55:16
**York** [3] - 34:16, 36:10
**you-all** [1] - 61:12

**yourself** [3] - 3:4, 10:9, 13:24

## §

**§** [2] - 20:7, 20:21