UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>Defendants. | Case No. 23-cr-239 (CKK) |

**VERIFIED PETITION FOR DETERMINATION OF
<u>THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)</u>**

Petitioner Allan Newman ("Petitioner" or "Mr. Newman"), by his counsel Davis+Gilbert LLP, having offices at 1675 Broadway, New York, New York 10019, submits this verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

**PRELIMINARY STATEMENT**

1. On or about August 2, 2016, Defendants Ilya Lichtenstein and Heather Morgan hacked into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), stealing approximately $9 billion in digital assets from account holders.

2. Either as direct result of the Hack, and/or due to the cryptocurrency exchange's effort to "generalize" losses across account holders, 8.76586537 Bitcoin (BTC) and 22.113265451 Litecoin (LTC) (the "Lost Assets") were removed from Mr. Newman's account.

3. On February 1, 2022, the U.S. Government seized the cryptocurrency illegally obtained by Defendants.

4.      Mr. Newman now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371. ECF. No 1. The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information"). *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. Nos. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant. *See* ECF. Nos. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A." *Id.* at 2. The attachment, as amended and corrected, among other assets, identifies "approximately" 94,643.29837084 bitcoins (the "Recovered Assets") that were "seized from wallets recovered from Defendants' online storage account." *See* ECF. No. 198-1 at 1.

9.      In connection with the Second Amended Preliminary Order of Forfeiture, on December 17, 2024, the U.S. Department of Justice issued a notice (the "DOJ Notice") directing any person intending to assert an interest in any of the properties subject to forfeiture to file an

Ancillary Proceeding within 30 days of receipt of the DOJ Notice. Mr. Newman received the DOJ Notice on December 17, 2024.

## RELEVANT FACTS

10. Mr. Newman was a customer Bitfinex, an online cryptocurrency platform headquartered in Hong Kong. To transact business on the platform, customers of Bitfinex were each provided his/her own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her assets (both virtual and actual currency) for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11. The assets in these wallets belonged solely and exclusively to the respective customer. At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your multi-signature wallets belong to and are owned by you [the customer]." *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), *available at* https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/ (last accessed: Jan. 15, 2025) (quoting Bitfinex's terms of service).

12. Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices. *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available at* https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange ("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting

3

Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: Jan. 15, 2025).

13. In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader. Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket Nos. 16-19, at 3 (June 2, 2016).

14. In other words, bitcoins held in a customer's segregated wallet on the Bitfinex platform rightly belonged to the customer only.

15. Immediately following the hack, Bitfinex decided unilaterally "that losses must be generalized across all accounts and assets." See Security Breach - Update 3 (Aug. 6, 2016), available at https://www.bitfinex.com/posts/129 (last accessed: Jan. 15, 2025). As result, all Bitfinex customers "experienced a generalized loss percentage of 36.067%."

    A.    **The Recovered Assets**

16. The U.S. Government has now seized the Recovered Assets (including more than 94,643.29837084 bitcoins) from Defendants. *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11. In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred all of the contents of the Defendants' cryptocurrency wallets to a virtual currency wallet held by the U.S. Government.

**B.     The Lost Assets**

17.     In August 2016, as part of the Hack, the Defendants transferred billions of dollars in digital assets to their own cryptocurrency wallets.

18.     Upon information and belief, the Lost Assets were transferred to and remained in the Defendants' wallets until the U.S. Government seized them.

19.     Alternatively, upon information and belief, Bitfinex removed the Lost Assets, from Mr. Newman's account in an effort to generalize losses. Bitfinex did not provide sufficient information regarding whether it – *i.e.*, Bitfinex – or the Defendants, took control or possession of the Lost Assets and to-date has not been made to account for the Lost Assets taken from Petitioner. To the extent the Lost Assets were employed in the generalization of losses, and as a result reduced the claims of other Bitfinex account holders to forfeited property, Petitioner should succeed to the right, title and interest of such account holders in such property.

20.     In the Government's Supplemental Motion Regarding Restitution, filed on January 14, 2025, the U.S. Government stated its position that the Recovered Assets should be returned to Bitfinex "as in-kind restitution." ECF No. 202 at 5. Given the unilateral taking of Mr. Newman's assets by Bitfinex as described above, the Court should determine that Mr. Newman has a valid prior interest in the Recovered Assets. At a minimum, such interest is an equitable interest to the extent of the amount of the Lost Assets.

## RELIEF SOUGHT

21.     Mr. Newman has a legal right, title and/or interest in the Recovered Assets to the extent of the Lost Assets.

22. Mr. Newman's ownership interest in the Lost Assets were fully vested prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of Bitfinex, the Defendants, and the U.S. Government in the Lost Assets.

23. The U.S. Government has not returned the Lost Assets to Mr. Newman.

24. Mr. Newman therefore seeks to assert his ownership interest in, and obtain prompt return of the Lost Assets.

Dated: January 16, 2025

GREENSTEIN DELORME & LUCHS, P.C.

By: */s/James D. Sadowski*
James D. Sadowski, DC Bar. #446635
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400
Fax: 202.452-1400
Email: JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Petitioner*

**VERIFICATION**

Allan Newman, being duly, sworn deposes and says:

I am the Petition in this Ancillary Proceeding; I have read the foregoing Verified Petition and know the contents thereof; and the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Allan Newman

Sworn to before me this
16th day of January 2025

NOTARY PUBLIC

TERRY MORELAND
Notary Public
Massachusetts
My Commission Expires
Aug 29, 2025

*[Verification - Ancillary Petition]*