

| | Luis G. Musa, Esq. |
|---|---|
| **DIFALCO FERNANDEZ** | Attorney at Law |
| | LMusa@DFLLLP.com |

LEAVE TO FILE GRANTED
Judge CKolla-Kotelly 2/14/25

This is to be docketed as a
redacted public version of ECF [217],
keeping confidential the
account information.

January 14, 2025

**VIA FEDEX OVERNIGHT DELIVERY**

RECEIVED
Mail Room
JAN 15 2025
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

United States District Court, District of Columbia
333 Constitution Avenue, NW
Washington, D.C. 20001

Re: Petition for Ancillary Proceeding Claiming Interest in Forfeited Property ("Ancillary Petition")
United States of America v. Ilya Lichtenstein, et al.
Case No. 23-CR-239-CKK

LEAVE TO FILE GRANTED
Judge CKolla-Kotelly
Jan 17, 2025

Dear Madam or Gentleman:

Regarding the above-referenced case, I am enclosing original Ancillary Petition being submitted for filing with the clerk of courts pursuant to the Notice of Criminal Forfeiture Action that was received by Petitioner on December 17, 2024.

Sealed
pursuant
to court order

Kindly ensure that any matters that are exempt personal information be properly redacted from public records upon filing.

Please let me know if you require any additional information or documentation in connection with this matter.

Thank you.

Very truly yours,

Luis G. Musa

Miami | 1 Alhambra Plaza, Suite 1460, Coral Gables, FL 33134 | (t) 305.569.9800 | (f) 866.569.0666
New York | 845 Third Avenue, 6th Floor, New York, NY 10022 | (t) 212.734.3330 | (f) 866.734.4331
www.DFLLLP.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Criminal No. 23-CR-239 (CKK) |
| v. ) | |
| ILYA LICHTENSTEIN, et al., ) | |
| ) | |
| *Defendants.* ) | |
| _____) | |

## PETITION FOR ANCILLARY PROCEEDING CLAIMING INTEREST IN FORFEITED PROPERTY

**Petitioner:**
Pablo Garcia Illescas
c/o DiFalco & Fernandez, LLLP
1 Alhambra Plaza, Suite 1460
Coral Gables, FL 33134
305-569-9800
Attention: Luis G. Musa
Lmusa@dflllp.com

**Respondent:**
United States of America
U.S. Department of Justice
United States Attorney
Patrick Henry Building
601 D Street N.W.
Washington, D.C. 20530
202-252-6765 (Blaylock)
202-353-0018 (Brown)
Rick.Blaylock.Jr@usdoj.gov
Christopher.Brown9@usdoj.gov



RECEIVED Mail Room JAN 15 2025 Angela D. Caesar, Clerk of Court U.S. District Court, District of Columbia

**TO THE HONORABLE COURT:**

**COMES NOW,** the Petitioner, Pablo Garcia Illescas, and respectfully petitions this Court for an ancillary proceeding claiming an interest in the forfeited property described below, pursuant to 21 U.S.C. § 853(n)(2) and Rule 32.2 of the Federal Rules of Criminal Procedure. In support of this petition, Petitioner alleges the following:

1

## I. BACKGROUND

1. **Property Subject to Forfeiture:**

    The property subject to forfeiture in the underlying action is described as follows:

    A. The Petitioner was assigned by Bitfinex a Petitioner's Shared Loss, as defined below, equivalent to 387.35 bitcoins across two accounts on the Bitfinex Exchange ("Bitfinex") due to the hack that took place on August 2, 2016 (the "Bitfinex Hack"). Additionally, 188.9583353 of the bitcoins along with any and all the associated fork assets that were stolen have been identified as being currently located at the address of the property seized and forfeited to the United States as part of the Defendant Properties (defined below).

    B. The Defendants Ilya Lichtenstein and Heather Morgan (the 'Defendants") have been sentenced in connection with this crime under the case <u>United States of America v. Ilya Lichtenstein et al.</u>, U.S. District Court for the District of Columbia, Criminal Case No. 23-CR-239 (CKK).

    C. The loss occurred on or about August 2, 2016, and continued in the days immediately following, during which Bitfinex unilaterally "shared" the loss among all investors unilaterally without their consent.

    D. The Second Amended Preliminary Order of Forfeiture and a Minute Order granting a Corrected Second Amendment Attachment A (the "Attachment A") were issued by the U.S. District Court for the District of Columbia on December 11, 2024. The properties described in Attachment A (the "Defendant Properties") were forfeited pursuant to 18 U.S.C. §982(a)(1) and §981(a)(1)(C) and 28 U.S.C. §2461(c).

    E. A Notice of Criminal Forfeiture Action was received by the Petitioner via email on December 17, 2024.

2. **Forfeiture Proceedings:**

    A.    The Defendant Properties were forfeited under the following circumstances:

    1. The Defendant Properties as described in Attachment A were subject to forfeiture as they are traceable to violations of 18 U.S.C. §1956(h) and 18 U.S.C. §371 as further detailed in the case of the <u>United States of America</u>

v. Ilya Lichtenstein et al., U.S. District Court for the District of Columbia, Criminal Case No. 23-CR-239 (CKK)

3. **Petitioner's Claim to Property:**

   A.  Petitioner claims a legitimate interest in the Defendant Properties, as follows:

   1. At the time of the Bitfinex hack by the Defendants, Petitioner had two (2) open accounts with Bitfinex; one account was opened under the name ' and the other account was opened under the name .

   2. On the date of the Bitfinex Hack, at the time of the Hack, "Butifarra" account recorded a total deposit of 972.1299151 BTC and a withdrawal of 1 BTC on 06/21/2016, leaving a total balance of 972.1299151 BTC. Attached hereto as Exhibit A is a simplified PDF of the CSV files detailing the Butifarra account activity from 04/11/2016 to 11/01/2020, which was sent by support@bitfinex.com to                   ; on 04/27/2022.

   3. On the date of the Bitfinex Hack, the "Jupiter" account recorded a total deposit of 135.63 BTC and a withdrawal of 0.02 BTC on 04/27/2016, resulting in a total balance of 135.61 BTC. Attached hereto as Exhibit B is a simplified PDF of the CSV files detailing the Jupiter account activity for 2016, which was sent by support@bitfinex.com to

   4. In order to be able to deposit bitcoins into both Petitioner's accounts, Bitfinex provided Petitioner with unique addresses for each account, following the standard procedure used by all cryptocurrency exchanges.

   5. On August 2, 2016, the Bitfinex Exchange went offline and announced that it had been hacked. To prevent further theft, Bitfinex temporarily closed the platform and, without investor consent, decided to cover the losses by socializing, or sharing, them across all client accounts. This resulted in a thirty-six percent (36%) loss for each client. Specifically, Bitfinex took: (1) 350.55968 BTC from the           account and (2) 36.7926 BTC from the           account (collectively, the "Petitioner's Shared Loss").

3

6. Petitioner is entitled to the 387.35 bitcoins that represented the Petitioner's Shared Loss from the Bitfinex Hack.

7. Additionally, in accordance with the Bitcoin Investigation Report dated 1/13/2025 prepared by Carbono Solutions S.L., a copy of which is attached hereto and incorporated herein as <u>Exhibit C</u>, 188.9583353 bitcoins were taken from the Petitioner's wallet at Bitfinex on the day of the Bitfinex Hack and are clearly identified, along with any associated fork assets, as currently located at a specific address among the Defendant Properties forfeited to the United States Government as set forth in Attachment A.

8. Accordingly, Petitioner is entitled to the return of the 188.9583353 bitcoins forfeited from Defendants. A Petition for Remission or Mitigation is being simultaneously filed by the Petitioner for consideration by the U.S. Department of Justice.

B. Nature of Petitioner's Interest in Defendant Properties.

In 2016, prior to the Bitfinex Hack, Bitfinex allowed account creation without requiring identification, as exchanges were unregulated. However, Bitfinex, like many other cryptocurrency exchanges, now requires identification for new accounts, though some exchanges still allow registration with just an email. Petitioner opened his two accounts using only the following email addresses:

For the

For the

As proof of Petitioner's ownership of both emails and of the loss of its bitcoins during the Bitfinex Hack, the following verification documents are attached hereto and incorporated herein as exhibits:

1. <u>Invoice (12/30/24)</u>: Invoice number 3826492 from Protonmail for services, showing Petitioner's name, passport number, and email address . See attached <u>Exhibit D</u>.

2. <u>Ownership Certificate (01/03/2025)</u>: Certificate from Protonmail confirming Petitioner's name, date of birth, and ownership of the email ⎯ . See attached <u>Exhibit E</u>.

3. <u>Certificate (05/30/2022)</u>: Apostilled certificate from the National Bureau of Enforcement of Georgia, confirming access to Petitioner's Protonmail account ⎯ , and detailing a 27-page report, including transactions from Bitfinex. This report, with CSV files, was downloaded onto CD-ROMs in Petitioner's possession. See attached <u>Exhibit F</u>.

4. <u>Gmail Ownership Proof</u>: Documentation confirming ownership of Petitioner's Gmail account ⎯ . See attached <u>Exhibit G</u>.

5. <u>Bitfinex Transaction Records</u>: Bitfinex sent Petitioner transaction details (deposits, withdrawals, bitcoin addresses, and hashes) to both of Petitioner's email addresses ⎯ and ⎯ See Exhibit A for a summary of the Butifarra account activities and Exhibit B for a summary of the Jupiter account activities reflected in the CSV files. These files for the Butifarra account also exist on CD-ROM, provided by the National Bureau of Enforcement of Georgia. Emails between Petitioner and Bitfinex customer support requesting these records are also attached hereto and incorporated herein as <u>Exhibit H</u>.

6. <u>Proof of Bitcoin Wallet Ownership</u>: Petitioner made deposits from Petitioner's personal Bitcoin wallets to the wallets assigned to Petitioner by Bitfinex. Petitioner is the sole party in possession of the private keys to these personal wallets, which can be verified by signing transactions on the blockchain. Attached are instructions for signing a message to prove ownership. Bitcoin wallet ownership is evidenced by control of the private keys, which allow for spending and signing transactions. See attached <u>Exhibit I</u>.

C. Petitioner's Double Victim Status.

The Petitioner's financial loss directly resulted from the theft, which occurred due to Bitfinex's gross negligence, as outlined below. The hack was caused by serious security flaws in Bitfinex's system. Additionally, rather than using its own resources to cover the loss, Bitfinex took thirty-six percent (36%) of all customer funds to compensate for the stolen assets. This is similar to a bank being robbed due to its own negligence and then taking thirty-six percent (36%) from all customers to cover the loss, instead of handling it themselves.

1. <u>Negligence in Security Measures</u>: Bitfinex used a multi-signature wallet system provided by BitGo, but it was not sufficient to prevent the hack. They failed to implement additional controls to restrict access during suspicious activity, which could have reduced the hack's impact.

2. <u>Excessive Use of Hot Wallets</u>: A large portion of user funds were stored in hot wallets, which are more vulnerable to hacking than cold wallets. This increased the risk of a significant theft.

3. <u>Inadequate Security Measures</u>: Despite BitGo's claims that their security measures were designed to prevent unauthorized access, Bitfinex failed to implement sufficient safeguards against sophisticated hacking techniques.

4. <u>Response to the Hack</u>: After the hack, instead of using its own resources to compensate users, Bitfinex confiscated thirty-six percent (36%) of all customer funds to cover the losses. This decision shifted the financial burden onto users, which is seen as unfair given the exchange's negligence.

After the attack, Bitfinex imposed a thirty-six percent (36%) arbitrary cut on all user accounts, regardless of whether they were affected by the breach. This "socialization of losses" meant that all users' funds were reduced without consultation or alternative options. In return, Bitfinex issued BFX tokens, representing future compensation, but users had no choice but to accept them. The tokens were illiquid, did not guarantee full recovery, and many users, lacking confidence in Bitfinex's future, sold them at a significant loss. Initially trading at about $0.30, well below their

$1 face value, those who sold early suffered substantial losses. No fair alternative or full compensation was provided, leaving users unable to recover their lost bitcoins.

As a direct result of the hack and Bitfinex's subsequent self-serving remedial actions, Petitioner suffered significant psychological harm. Upon learning of the hack and being unable to access his Bitfinex account, which held nearly all of Petitioner's life savings, he experienced intense anxiety, panic attacks, dizziness, and tachycardia and was under professional counseling and psychological treatment for four (4) years. This distress contributed to the breakdown of Petitioner's 24-year marriage and the loss of his family. To this date, Petitioner continues to receive psychological treatment and will present all medical evidence at the hearing on the subject Petition.

## II. LEGAL BASIS FOR CLAIM

1. **Interest in Forfeited Property:**

Petitioner asserts a legal interest in the forfeited property under the following legal principles or statutes:

A.  In the context of forfeited bitcoins resulting from a hack (such as the 2016 Bitfinex Hack), the victim owner of the lost bitcoins may assert a legal interest or right to reclaim the forfeited bitcoins based on statutory provisions governing property forfeiture, specifically those under 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.

2. **Legal Basis:**

A.  18 U.S.C. § 982: This statute permits the government to seize and forfeit property of a defendant convicted of an offense in violation of, or a conspiracy to violate, 18 U.S.C. § 1956. When bitcoins are stolen and subsequently laundered (such as through a hack), the U.S. government has the authority to seize and forfeit them if they are traceable to the criminal activity.

3. **Right to Claim Forfeited Property:**

A.  The primary statutory framework for a victim's claim to forfeited property, such as stolen bitcoins, is through the Federal Rules of Criminal Procedure, particularly Rule 32.2, and relevant forfeiture laws:

1. Federal Rule of Criminal Procedure 32.2 establishes procedures for the criminal forfeiture process, and it allows for the victims of crimes to assert their interests in forfeited property.

2. 18 U.S.C. § 983 provides specific rules for third-party claims to seized property. If a victim can prove that they are the legitimate owner of the property (in this case, the stolen bitcoins), they can file a claim with the government to recover their assets.

B. The primary case law framework for a victim's claim to forfeited property, such as stolen bitcoins, is shaped by judicial interpretations of criminal forfeiture procedures and related doctrines, particularly as they apply to the rights of victims seeking restitution and recovery of their property under relevant case law and procedural guidelines:

1. <u>United States v. $40,000 in U.S. Currency</u>, 291 F.3d 977 (7th Cir. 2002). This case addresses the right of third parties (such as a victim) to claim property that has been forfeited under federal law. The ruling suggests that victims who can demonstrate they have a legal interest in the forfeited property may be able to recover it.

2. <u>United States v. One 1990 Jeep Wrangler</u>, 972 F.2d 472 (2d Cir. 1992). This case elaborates on the standing of third-party claimants to assert their ownership interests in forfeited property. It sets a precedent that individuals who have a rightful claim to the property may pursue it, even if it has been seized as part of a criminal forfeiture.

This Petition is filed within the time frame required by Federal Rule of Criminal Procedure 32.2, and Petitioner has complied with all procedural requirements necessary for claiming an interest in the property.

## III. REQUEST FOR RELIEF

Based on the foregoing, Petitioner respectfully requests that the Court:

1. Recognize the Petitioner's interest in the forfeited property.
2. Order the return of the property to the Petitioner, grant possession as appropriate under law, including, but not limited to the return of the 188.9583353 bitcoins and associated fork assets, currently located at the address of the property seized and forfeited to the United

8

States, and the 387.35 bitcoins, representing the Petitioner's Shared Loss, or award monetary damages equivalent to the loss of the bitcoins as measured by today's bitcoin value.

3. Such other relief as the Court finds equitable and just, including but not limited to the right to a hearing or other procedural steps.

## IV. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

1. Accept this petition for an ancillary proceeding to claim interest in the forfeited property.
2. Grant the requested relief as outlined above.
3. Order such further relief as may be just and equitable.

**DATED this 14th day of January, 2025.**

**Respectfully submitted,**

Luis G. Musa
DiFalco & Fernandez, LLLP
Attorney for Petitioner
1 Alhambra Plaza, Suite 1460
Coral Gables, FL 33134
Tel: 305-569-9800
Email Address: Lmusa@dflllp.com
Florida Bar Number: 562483

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Ancillary Proceeding Claiming Interest in Forfeited Property has been served upon Rick Blaylock, Jr., Special Assistant United States Attorney, United States Attorney's Office, 601 D Street, N.W., Washington, D.C. by Federal Express overnight courier service, on this 14th day of January, 2025.

Luis G. Musa
DiFalco & Fernandez, LLLP
Attorney for Petitioner

1 Alhambra Plaza, Suite 1460
Coral Gables, FL 33134
Tel: 305-569-9800
Email Address: Lmusa@dflllp.com
Florida Bar Number: 562483

*[Remainder of this page intentionally left blank; exhibits to follow]*