REDACTED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ILYA LICHTENSTEIN and<br>HEATHER RHIANNON MORGAN,<br><br>Defendants. | Criminal No. 1:23-cr-239 (CKK) |

## PETITION AND REQUEST FOR ANCILLARY HEARING AND RELATED RELIEF PURSUANT TO 21 U.S.C. § 853(N)

David W. T. Daniels (D.C. Bar No. 457524)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211
DDaniels@perkinscoie.com

Kevin R. Feldis (D.C. Bar No. 433530)*
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350
KFeldis@perkinscoie.com

*admission pending*

*Attorneys for Petitioner* ▮

On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture (Dkt. 178) condemning and forfeiting certain property, including property identified in the Second Amended Attachment A, to the United States of America in the above-styled case. On December 11, 2024, the Court entered the Corrected Second Amended Attachment A (Dkt. 198-1), included herewith as <u>Exhibit 1</u>, identifying property with respect to the Second Amended Preliminary Order of Forfeiture. On December 17, 2024, the United States provided notice of that order to Petitioner ▇▇▇▇▇▇ (Account Holder 1 ["AH-1"] or "Petitioner") and issued a Public Notice of the Order ("Notice of Forfeiture"), which was posted to the government's website, https://forfeiture.gov, included herewith as <u>Exhibit 2</u>. Petitioner, by and through undersigned counsel, hereby timely petitions this Court for an ancillary hearing to adjudicate his interests in the below described forfeited property and to amend the Preliminary Order of Forfeiture entered herein on November 14, 2024, pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2. In support of his petition, Petitioner states as follows:

1. Petitioner hereby asserts his interest in a portion of the Bitcoin ("BTC"), Ether ("ETH"), and U.S. Dollars seized by the U.S. government, forfeited by Defendants Lichtenstein and Morgan, and addressed in the Second Amended Preliminary Order of Forfeiture (Dkt. 178), and more particularly described as set forth in the Corrected Second Amended Attachment A (Dkt. 198-1), Ex.1.

**FACTUAL BACKGROUND**

*The Bitfinex Hack and Initial Response*

2. On August 2, 2016, Bitfinex, a cryptocurrency exchange, experienced a significant security breach (the "Hack") during which approximately 119,754 BTC was stolen from its customers' accounts.[1] Petitioner had a Bitfinex account at the time of the Hack where he held personal assets—identified with the username "▇▇▇▇" and the user email address "▇▇▇▇▇▇▇▇▇"—and he was subsequently assigned the rights to assets held in a second

---

[1] Def. Heather Morgan's Statement of the Offense and Related Conduct at 5 (Dkt. 100).

Bitfinex account—identified with the user email address "███████████"—(referred to collectively hereafter as "Petitioner's Accounts").[2] Substantial assets were removed from Petitioner's Accounts and stolen directly from Petitioner's Accounts as a result of the Hack. As such, Petitioner is among the account holders who were directly and proximately harmed by the Hack. The hackers, Defendants Ilya Lichtenstein and Heather Morgan, purportedly gained unauthorized access to Bitfinex's and account holders' private keys (including Petitioner's), which enabled the Defendants to fraudulently authorize over 2,000 transactions that transferred Bitcoin stolen from Petitioner's Accounts, and the accounts of others, to an external wallet that the Defendants controlled.[3] The Defendants' criminal actions included transferring Bitcoin from blockchain addresses designated and segregated exclusively for Petitioner's Accounts and owned by Petitioner to blockchain addresses controlled by Defendants.[4]

3. In response to the Hack, Bitfinex imposed additional losses across *all* customer accounts—a 36.067% reduction in the value of every account on the platform.[5] This resulted in a redistribution of losses so that every account holder lost 36.067% of the assets in his or her account. At the same time as reducing the value of assets for all account holders, Bitfinex issued a new fungible token ("BFX") and deposited BFX into Petitioner's accounts (as well as the accounts of

---

[2] The middle characters, all except the first and last, of the personally identifiable information of username and email address have been omitted to protect the personally identifiable information, safety, and security of the account holders.

[3] Criminal Complaint at 2 (Dkt. 1).

[4] Def. Heather Morgan's Statement of the Offense and Related Conduct at 4, ¶ 14 (Dkt. 100) ("Morgan Statement of Offense"); Def. Ilya Lichtenstein's Statement of the Offense and Related Conduct at 4, ¶ 14 (Dkt. 95) ("Lichtenstein Statement of Offense"); Bitfinex, *Terms of Service*, § 5.1 (as of June 9, 2016) (https://web.archive.org/web/20160609181027/https://www.bitfinex.com/terms) (before the Hack) ("Pre-Hack Terms"), included herewith as Exhibit 4; Bitfinex, *Terms of Service*, § 5.1 (as of August 8, 2016) (https://web.archive.org/web/20160808165440/https://www.bitfinex.com/terms) (after the Hack) ("Post-Hack Terms"), included herewith as Exhibit 5.

[5] Letter to Judge Kollar-Kotelly at 3 (November 12, 2024) ("Letter of Nov. 12"), included herewith as Exhibit 3; Bitfinex, *Interim Update: Incident Report for Bitfinex*, (Aug. 6, 2016) (https://bitfinex.statuspage.io/incidents/8qd35qxs01mm) ("Bitfinex Update of Aug. 6").

other customers) without obtaining Petitioner's prior consent.[6] Importantly, the token was issued to Petitioner "without reduction of or other release or waiver of any claims you may have against the Bitfinex Group," according to the terms set out by Bitfinex.[7] Bitfinex offered customers three options. First, customers were informed they could sell their BFX tokens on the secondary market for the prevailing market price. Sometime thereafter, customers were given the additional options of either redeeming their BFX tokens for a cash payment from Bitfinex at a rate of $1 per BFX token, or exchanging their BFX tokens for shares of iFinex Inc., Bitfinex's parent company, valuing BFX tokens at $1 per token.[8] Additionally, customers who chose to exchange their BFX tokens for iFinex stock received fungible cryptocurrency tokens known as Recovery Right Tokens ("RRTs"), which were redeemable for up to $1 of recovered stolen funds if sufficient funds were ever recovered.[9]

### *Petitioner's Losses and Subsequent Actions*

4. Petitioner's Accounts were two of the accounts *specifically and individually* targeted during the Hack. As a result of the Hack to Petitioner's Accounts, 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD were stolen.[10] These assets belonged to Petitioner. Bitfinex used "individualized, multi-signature wallets"[11] to hold Petitioner's assets and acknowledged the assets in the individualized wallets associated with Petitioner's Accounts belonged to Petitioner. Bitfinex's terms of service also explicitly stated that all account holders, including Petitioner, owned the assets in their accounts: "Notwithstanding the distribution of the private keys and

---

[6] Letter of Nov. 12 at 3, Ex. 3; Bitfinex Update of Aug. 6.

[7] Bitfinex, *BFX Token Terms*, (as of November 3, 2016) (https://web.archive.org/web/20161103084718/https://www.bitfinex.com/bfx_token_terms) ("Token Terms"), included herewith as Exhibit 6.

[8] Letter of Nov. 12 at 3–4, Ex. 3; Bitfinex Update of Aug. 6; Token Terms, Ex. 6; Consent Motion for Order Authorizing Alternative Notification Procedures at 3–4 (Dkt. 141) ("Alt. Notice Motion").

[9] Alt. Notice Motion at 3–4.

[10] Transaction Ledgers of Petitioner's Accounts (showing sums of Bitcoin ("BTC"), Ether (here designated at "ETC"), and U.S. dollars ("USD") being removed from both of Petitioner's Accounts) ("Petitioner's Account Ledgers"), included herewith as Exhibit 7.

[11] Pre-Hack Terms, ¶ 2, Ex. 4; Post-Hack Terms, ¶ 2, Ex. 5.

subject to any valid liens, encumbrances, and pending settlements, all bitcoins in your Multi-Signature Wallets belong to and are owned by you."[12] And Bitfinex is not alone in recognizing the stolen funds from the Hack belonged to account holders—both the U.S. government and Defendants acknowledged the same fact: "LICHTENSTEIN ultimately gained access to the keys, or credentials, used to authorize transactions involving virtual currencies held by [Bitfinex], *including funds belonging to customers of [Bitfinex]*.[13] Thus, Bitfinex, the U.S. government, and Defendants all acknowledged that the funds stolen from Petitioner's Account were owned by Petitioner at the time of the Hack and prior to any laundering of the stolen assets.

5.  Petitioner never agreed that BFX deposited in Petitioner's Accounts in any way compensated him for the assets stolen from the accounts; indeed, Petitioner has never been compensated for the loss of the assets in his accounts.[14] There is also a substantial question as to whether the issuance of BFX tokens was legal and in compliance with U.S. securities laws. Petitioner disposed of the BFX tokens as soon as practicable, leaving his accounts at a significant net deficit. The financial impact of this action was substantial—BFX tokens did not hold anywhere near the same value as the original assets, and moreover, could not compensate Petitioner for loss of the specific assets in his accounts.[15]

6.  On May 4, 2022, Petitioner, through prior counsel, notified the Department of Justice ("DOJ") of his losses and asserted his claim to the assets seized in connection with the Hack. He reiterated his status as a victim during a meeting with the DOJ on August 29, 2024, and through subsequent communications with the DOJ. At that time, Petitioner provided detailed evidence of his ownership of the stolen assets, including transaction logs from his Bitfinex accounts and documentation of the losses incurred.[16] These transaction logs, which were

---

[12] Pre-Hack Terms, § 5.1, Ex. 4; Post-Hack Terms, § 5.1, Ex. 5.
[13] Morgan Statement of Offense at 4, ¶ 14 (Dkt. 100); Lichtenstein Statement of Offense at 4, ¶ 14 (Dkt. 95) (emphasis added).
[14] Letter of Nov. 12 at 3–4, Ex. 3.
[15] *Id*.
[16] Petitioner's Account Ledgers, Ex. 7.

downloaded from his Bitfinex accounts, show the specific transactions where Bitfinex replaced the assets in Petitioner's Accounts with BFX tokens after applying the significant reduction described above.[17]

*Government Seizure and Legal Proceedings*

7.     Following an extensive investigation, the U.S. government traced the stolen bitcoins to multiple accounts controlled by Lichtenstein and Morgan.[18]  On January 31, 2022, law enforcement gained access to the primary wallet used in the Hack, seizing approximately 94,643 BTC, worth $3.629 billion at the time.[19]  Additional assets, including various cryptocurrencies and physical items, were also seized from the Defendants' accounts and storage locations.  These assets included an additional 19,957.7 BTC, 7221.0 ETH, and $3,084,377.52, along with other cryptocurrencies and physical items.[20]  Lichtenstein and Morgan were subsequently charged with conspiracy to commit money laundering and conspiracy to defraud the United States.  Both Defendants entered into plea agreements, admitting to the Hack and subsequent money laundering activities.

8.     Despite the government's awareness of victim account holders (including Petitioner) whose assets were stolen and laundered by Defendants, the plea agreements only identified and required Defendants to "to pay restitution to Bitfinex," ignoring (and perhaps misunderstanding) the harm to individual account holders such as Petitioner who were directly targeted and impacted by the Hack.[21]  Indeed, the government elsewhere acknowledged that the Hack authorized "transactions involving virtual currencies held by [Bitfinex], *including funds belonging to customers of [Bitfinex]*."[22]

---

[17] *Id.*
[18] Criminal Complaint at 3 (Dkt. 1).
[19] *Id.* at 2.
[20] *See* Corrected Second Amended Attachment A (Dkt. 198-1), Ex. 1; Notice of Forfeiture, Ex. 2.
[21] Plea Agreement as to Ilya Lichtenstein at 10 (Dkt. 96); Plea Agreement as to Heather Morgan at 10 (Dkt. 101).
[22] Morgan Statement of Offense at 4, ¶ 14 (Dkt. 100); Lichtenstein Statement of Offense at 4, ¶ 14 (Dkt. 95) (emphasis added).

*Petitioner's Claim to Seized Assets*

9.     Petitioner asserts his claim to the seized assets based on the direct losses he suffered because of the Hack.  He is a victim of the crimes committed by Lichtenstein and Morgan because his assets were stolen and laundered by them.  As described above, Petitioner has provided detailed evidence of his ownership of the stolen assets, which included his 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD.[23]  Significantly, Bitfinex's issuance of BFX tokens and replacement of Petitioner's assets were deposited in his account as partial compensation for stolen assets without his consent, and neither compensated him for his losses nor waived his claims to the stolen assets. Indeed, Bitfinex explicitly acknowledged by its own BFX token terms that it issued the BFX tokens to Petitioner "without reduction of or other release or waiver of any claims."[24]  And Bitfinex, the U.S. government, and Defendants have all acknowledged that Petitioner, as an account holder, owned the stolen assets that were specifically held in his account.[25]

**LEGAL BASIS**

*Requirements under 21 U.S.C. § 853(n)*

10.     "Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  To satisfy the requirements of § 853(n), the petition "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."  § 853(n)(3).  The petition must be signed by the petitioner.  *Id*.

---

[23] Petitioner's Account Ledgers, Ex. 7.
[24] Token Terms, Ex. 6.
[25] Pre-Hack Terms, § 5.1, Ex. 4; Post-Hack Terms, § 5.1, Ex. 5; Morgan Statement of Offense at 4, ¶ 14 (Dkt. 100); Lichtenstein Statement of Offense at 4, ¶ 14 (Dkt. 95) (emphasis added).

REDACTED

11.     To succeed in the petition, Petitioner must "establish[] by a preponderance of the evidence" his "legal right, title, or interest in the property." § 853(n)(6).  Petitioner must show that his "right, title, or interest was vested in the [P]etitioner rather than the [D]efendant[s] or was superior to any right, title, or interest of the [D]efendant[s] at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." § 853(n)(6)(A); *see United States v. Preston*, 123 F. Supp. 3d 117, 125–27 (D.D.C. 2015) (addressing requirements for a successful claim under § 853(n)(6)).  By such as showing, Petitioner "renders the order of forfeiture invalid in whole or in part". § 853(n)(6)(A).

*Petitioner's Claim Satisfies § 853(n)*

12.     Pursuant to 21 U.S.C. § 853(n)(6)(A), Petitioner has a vested or superior interest in the property or assets described herein and said interest "was vested in the [P]etitioner rather than the [D]efendant[s] or was superior to any right, title, or interest of the [D]efendant[s] at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." The Hack occurred on August 2, 2016.  The money laundering occurred after the Hack, but the conspiracy to commit money laundering naturally encompasses the planning, preparation, and acts involved in obtaining the assets to be laundered.  The conspiracy necessarily began, at the latest, when Defendants stole the assets via the Hack, which directly harmed Petitioner, and then continued with the laundering of these stolen assets in order to hide those assets and prevent tracing and recovery by account holders and Bitfinex.  Defendant Lichtenstein, who certainly understood that he would be unable to use the assets obtained from the Hack without laundering the assets obtained through the Hack, logically and necessarily began planning and conspiring with others to launder the assets at or prior to the Hack.  Indeed, the phrase, "acts which gave rise to the forfeiture" is broader than the specific act of money laundering and must encompass the illicit act of obtaining the assets to be laundered through the Hack—the very assets now subject to the forfeiture. The statute also is clear in requiring that this phrase "shall be liberally construed to effectuate its remedial purposes." § 853(o).  Accordingly, Petitioner established his vested and superior interest at the time of the Hack, or August 2, 2016.

13. In addition, to satisfy § 853(n)(6)(A), Petitioner must show he had a vested interest that "was superior to any right, title, or interest" of the Defendants prior to the Hack on August 2, 2016. Petitioner had such a vested superior interest. As explained above in ¶¶ 4, 8, 9, Bitfinex, the U.S. government, and Defendants all acknowledged that on the date of the Hack, Petitioner, as an account holder, owned the assets that were stolen and removed from his accounts. Indeed, Defendants have consented to the finality of the forfeiture as to their own interests in the assets subject to forfeiture, as noted in the Second Amended Preliminary Order of Forfeiture, at 4 (Dkt. 178), and they are in no position to claim a superior interest to the assets even if they had a basis for doing so. Petitioner's right, title, and interest extends prior to the Hack because he either owned the assets in his accounts at the time they were deposited into his Bitfinex account and subsequently grew through his trading activity, all prior to the Hack, or via assignment has stepped into the place of the owner of a second account which similarly had assets that were deposited in the account and grew through trading activity, all prior to the Hack. Therefore, in total Petitioner owned 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD that were stolen from Petitioner's Accounts on the date of the Hack. Bitfinex has transaction IDs for each transaction associated with the assets owned by Petitioner and maintained in his accounts. The Bitfinex transaction IDs associated with Petitioner's Accounts demonstrate the loss of Petitioner's assets as follows: 122928858 (loss of 165.42 BTC), 123121002 (loss of 1441.23 ETH), and 122928854 (loss of $17,969.33), all removed from Petitioner's personal account; and 122935700 (loss of 226.56 BTC), 123117424 (loss of 1714.90 ETH), and 122935696 (loss of $30,355.01), all removed from the account assigned to Petitioner.[26] These Bitfinex transaction IDs demonstrate that the assets owned by Petitioner were lost as a result of the Hack.

14. To the extent that only Bitcoin was stolen from Petitioner's Accounts, but Bitfinex's rebalancing caused Petitioner's loss of 3,156.14 ETH and $48,324.34 USD, Petitioner asserts his interest in the assets identified in the Corrected Second Amended Attachment A (Dkt.

---

[26] Petitioner's Account Ledgers, Ex. 7.

198-1), Ex. 1, and the Notice of Forfeiture published on the government's website, https://forfeiture.gov, on December 17, 2024, Ex. 2, in the amount of Bitcoin equivalent to the loss of his 3,156.14 ETH and $48,324.34 USD at the time of the Hack and rebalancing in addition to the 391.98 BTC he lost as a result of the Hack.

15. Petitioner lost 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD from Petitioner's Accounts. And the U.S. government seized and submitted for forfeiture approximately 114,601.00 BTC, 7221.03 ETH, and $3,084,376.52, in addition to other cryptocurrencies and physical items as set forth in the Corrected Second Amended Attachment A (Dkt. 198-1). Petitioner claims a superior interest under § 853(n)(6)(A) in the specifically identified Bitcoin, Ether, and U.S. dollars identified in the Corrected Second Amended Attachment A (Dkt. 198-1) and the Notice of Forfeiture published on the government's website, https://forfeiture.gov, on December 17, 2024, including at least the following assets 22-IRS-000070, 23-FBI-007297, 23-FBI-007298, 23-FBI-007299, 23-FBI-007306, 23-FBI-007439, 23-FBI-007440, 25-FBI-000217, 25-FBI-000218, 25-FBI-000219, 25-FBI-000220, 25-FBI-000221, 25-FBI-000222, 25-FBI-000223, 25-FBI-000225, 25-FBI-000226, 25-FBI-000227, 23-FBI-007511, 24-FBI-008265, 23-FBI-007302, 23-FBI-007307, 23-FBI-007308, 23-FBI-007509, 25-FBI-000224, 25-FBI-000228, 23-IRS-000901, 23-IRS-000902, 23-IRS-000903, 22-IRS-000074, along with any other identifiable Bitcoin, Ether, and U.S. dollars assets. More generally, Petitioner claims an interest in all assets identified in the Corrected Second Amended Attachment A (Dkt. 198-1), Ex. 1, and the Notice of Forfeiture published on the government's website, https://forfeiture.gov, on December 17, 2024, Ex. 2, which are subject to the Second Amended Preliminary Order of Forfeiture (Dkt. 178).

16. As the U.S. government explained, the property subject to forfeiture and identified in the Corrected Second Amended Attachment A (Dkt. 198-1), including the Bitcoin, Ether, and U.S. dollars, was involved in, traceable to, or derived from the charged money laundering of the assets acquired by Defendants through the Hack.[27] Thus, the 114,601.00 BTC, 7221.03 ETH, and

---

[27] Second Amended Preliminary Order of Forfeiture at 3–4 (Dkt. 178).

$3,084,376.52 was involved in, traceable to, or derived from the money laundering conspiracy for the assets from the Hack, including Petitioner's 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD, which were lost through the Hack. Petitioner's claim to these assets subject to forfeiture is "superior to any right, title, or interest of the [D]efendant[s]" and "renders the order of forfeiture invalid" as to the 391.98 BTC, 3,156.14 ETH, and $48,324.34 USD that he lost. § 853(n)(6)(A); *see United States v. Preston*, 123 F. Supp. 3d 117, 125–27 (D.D.C. 2015). Moreover, among the assets identified in the Corrected Second Amended Attachment A (Dkt. 198-1), the U.S. government seized approximately 94,643.298 BTC from the Bitfinex Hack Wallet that the government has identified as specific property lost as a result of the Hack.[28] This approximately 94,643.298 BTC—along with the alternate Bitcoin forked assets generated from hard forks in the interim[29]—is directly linked to Petitioner's stolen Bitcoin—including the 391.98 BTC and the amount of Bitcoin equivalent at that time to the 3,156.14 ETH and $48,324.34 USD he lost as a result of the Hack. Petitioner's claim to the approximately 94,643.298 BTC is "superior to any right, title, or interest of the [D]efendant[s]" and "renders the order of forfeiture invalid" as to the Bitcoin that he lost. § 853(n)(6)(A).

17. In sum, Petitioner's interest in the seized property arises from the 391.98 BTC, 3,156.14 ETH and $48,324.34 USD Petitioner lost, and can be addressed by the Bitcoin recovered from the Bitfinex Hack Wallet and directly traceable to the Hack (either directly in BTC or in equivalent amounts of ETH and USD),[30] as well as the Bitcoin, Ether, U.S. dollars, and other cryptocurrencies and assets identified in the Corrected Second Amended Attachment A (Dkt. 198-1), Ex. 1, and the Notice of Forfeiture, https://forfeiture.gov, Ex. 2, which represents assets involved in, traceable to, or derived from the money laundering in which Defendants engaged using assets from the Hack. To the extent more precise tracing of assets is necessary, Petitioner respectfully requests discovery from Bitfinex of the internal records of Bitfinex necessary to

---

[28] Government's Motion for Downward Departure and Memorandum in Aid of Sentencing at 28 (Dkt. 146).
[29] *Id*.
[30] *Id*.

REDACTED

identify the blockchain addresses of Petitioner's wallets, to examine the blockchain record of transactions around and including the Hack, and to trace the on-chain movements of Bitcoin held in both of his accounts.

*Relief Requested*

18. Petitioner is a victim of the Hack and conspiracy to launder his stolen assets, which are the acts that underly the forfeiture of property addressed above and identified in the Corrected Second Amended Attachment A (Dkt. 198-1). He is entitled to recovery of the assets seized by the government.

19. For the reasons stated above, Petitioner seeks relief of forfeiture, and requests that the Court hold a hearing ancillary to the criminal proceeding at which Petitioner may testify and present evidence and witnesses on their own behalf pursuant to 21 U.S.C. § 853(n)(5). Petitioner further requests that this Court amend its preliminary order of forfeiture dated November 14, 2024, to fully recognize Petitioner's interest as set forth herein.

REDACTED

Dated:  January 16, 2025.                    Respectfully submitted,

                                                                  */s/ David W.T. Daniels*

                                                                  David W. T. Daniels (D.C. Bar No. 457524)
                                                                  **PERKINS COIE LLP**
                                                                  700 Thirteenth Street, N.W., Suite 800
                                                                  Washington, D.C. 20005-3960
                                                                  Telephone: 202.654.6200
                                                                  Facsimile: 202.654.6211
                                                                  DDaniels@perkinscoie.com

                                                                  Kevin R. Feldis (D.C. Bar No. 433530)*
                                                                  **PERKINS COIE LLP**
                                                                  3150 Porter Drive
                                                                  Palo Alto, CA 94304-1212
                                                                  Telephone: 650.838.4300
                                                                  Facsimile: 650.838.4350
                                                                  KFeldis@perkinscoie.com

                                                                  **admission pending*

                                                                  *Attorneys for Petitioner* ▮

REDACTED

## **DECLARATION PURSUANT TO 21 U.S.C. § 853(n)(3)**

I, ███████████, was an account holder at the time of the Bitfinex Hack. Pursuant to 21 U.S.C. § 853(n)(3) and 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the facts set forth in this petition are true and correct to the best of my knowledge, information and belief.

Executed on January 16, 2025, in ███████████████████.

REDACTED

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2025, I caused a true and correct copy of the foregoing to be electronically filed via the Court's CM/ECF system which will accomplish service on all parties who are registered users.

I further certify that on March 19, 2025, I caused a service copy of the foregoing to be sent via email to the persons listed below who may not be included on the CM/ECF service list:

Francisco Cavazos
frankiecavazos@outlook.com

Louis Zuijderwijk
le.zuijderwijk@gmail.com

Jonas Paasch
jonas-paasch@proton.me

Rafal Bielenia
rafal@bielenia.pl

Pablo Garcia Illescas
lmusa@dfllp.com

*/s/ David W. T. Daniels*
David W. T. Daniels