## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>*Defendants*.<br><br>*************<br><br>XYZ INC.<br><br>*Intervenor, Claimant, and*<br>*Third-Party Petitioner.* | Case No. 23-cr-239 (CKK)<br><br>**UNDER SEAL** |

### XYZ INC.'S SEALED MOTION TO INTERVENE AND OBJECTION TO PROPOSED RESTITUTION ORDER

███████ (pseudonymously "XYZ Inc." or "XYZ"), by and through undersigned counsel and consistent with Federal Rule of Criminal Procedure 32.2(c), 21 U.S.C. § 853(n), 18 U.S.C. §§ 3663A, 3771, hereby moves to intervene in the above-captioned case.[1] XYZ is a victim of Defendants' crimes and holds a superior interest in specific property that is subject to this Court's Second Amended Preliminary Consent Order of Forfeiture dated November 14, 2024 ("Forfeiture Order"). It intends to assert that interest through an ancillary petition, as provided for by 21 U.S.C. § 853(n). As a victim under the Crime Victims' Rights Act, XYZ has rights enumerated at 18 U.S.C. § 3771(a), including the "right to be reasonably heard at any public proceeding" and to "full and timely restitution." Restitution to XYZ is also mandatory under the

---

[1] XYZ is a BVI corporation with an office at ███████████████████████████████. XYZ is the successor in interest to ████████, which was the verified account holder of a Bitfinex account as of August 2, 2016.

Mandatory Victim Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663A. XYZ intends to furnish information and seek relief necessary to protect its rights as a victim. *See* 18 U.S.C. § 3771(d)(3) ("The district court shall take up and decide any motion asserting a victim's right forthwith."). XYZ's rights are under imminent threat because the government has proposed to transfer certain forfeited assets that rightly belong to XYZ to non-party Bitfinex.

Specifically, the government has suggested that rather than return forfeited Bitcoin ("BTC") to the account holders who, like XYZ, lost their digital assets as a direct result of Defendants' hack, this Court could instead approve a multibillion-dollar windfall to Binfinex. *See* Consent Motion, ECF No. 141. Bitfinex is a foreign crypto exchange that operated as a custodian for the actual victims. Bitfinex is *not* the rightful owner of all of the stolen, laundered, and now-forfeited BTC. XYZ and other accountholders owned most (if not all) of that BTC. Yet the government has announced its intent to give the vast majority of recovered assets to Bitfinex.

**I.     XYZ HAS A RIGHT TO INTERVENE AND OBJECT**

Courts have long exercised their inherent authority to permit intervention when necessary to safeguard third-party interests. *See, e.g.*, *United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980); *United States v. Martoma*, 962 F. Supp. 2d 602, 605-06 (S.D.N.Y. 2013) (citing *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008)); *see also* Minute Order Granting Motions to Intervene, *United States v. Sussmann*, No. 1:21-cr-582-CRC (D.D.C. Apr. 26, 2022) (granting third parties' motion to intervene to oppose a Government motion). This Court already indicated that such intervention may be appropriate here when it provided a deadline for third parties to move to intervene and to raise objections to the proposed restitution order. *See* Order, ECF No. 185.

As a victim directly harmed in the course of Defendants' scheme, XYZ is appearing to assert its right as provided for by 18 U.S.C. §§ 3663A, 3771, including its right to be heard and to "full and timely restitution." *See United States v. Chalupnik*, 514 F.3d 748, 753-54 (8th Cir. 2008);

*United States v. Griffin*, No. 3:17-cr-235-01-SI, 2018 WL 2320943, a *5 (D. Or. May 22, 2018). XYZ timely informed the Attorney General of its interest in assets that the government has obtained from Defendants, and XYZ is appearing consistent with the MVRA and the Crime Victims' Rights Act to further object to the "voluntary restitution order" by which the parties have suggested that the government may transfer assets that rightly belong to XYZ to Bitfinex.

XYZ is concurrently filing a third-party petition pursuant to 21 U.S.C. § 853(n)(2), which provides:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice [pursuant to 21 U.S.C. § 853(n)(1)], whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

21 U.S.C. § 853(n)(7) further provides that the United States has title to "property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee" only after "the court's disposition of all petitions filed under this subsection." The government has recognized that accountholders like XYZ may properly pursue title to assets forfeited by Defendants. But the government wrongly contends that accountholders may pursue title to only a small share of the assets it seized, and that this excludes 94,643.29837084 BTC (worth nearly $10 billion), which account for the vast majority of the approximately 120,000 BTC that Defendants stole and subsequently forfeited. *See* Govt's Supp. Mot. re Restitution at 5, ECF No. 202. Contrary to the government's contention, such forfeited assets cannot be transferred to Bitfinex if they are subject to a petition pursuant to 21 U.S.C. § 853(n), which XYZ will file.

## II. XYZ IS A VICTIM OF THE CRIME OF CONVICTION UNDER THE MVRA

The government has taken the position that there are no victims of the offenses of conviction in this proceeding. Not so. As XYZ will demonstrate, it was among the largest

3

accountholders on Bitfinex and thus among the Bitfinex customers who Defendants targeted in connection with their theft and laundering of approximately 120,000 BTC. Because XYZ also owned other non-BTC assets held in its Bitfinex account, XYZ was also injured when Bitfinex forcibly sold its non-BTC assets (including Litecoin ("LTC") and a U.S. dollar-denominated balance) as part of Bitfinex's effort to "socialize" the harm Defendants' crimes caused to its accountholders. XYZ lost thousands of BTC that have a present value amounting to hundreds of millions of dollars. That loss was a direct consequence of Defendants' criminal scheme.

Defendants in this case pleaded guilty to conspiracy to commit money laundering and not the actual hack of Bitfinex, apparently because the applicable statute of limitations had run before the identification and apprehension of Defendants. According to the government, that means that there are no victims "of the offense" under the MVRA since the money-laundering took place after the hack itself.

This is an overly crimped reading of the MVRA. The term "victim" under the MVRA "means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered *including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern*." 18 U.S.C. § 3663A(a)(2) (emphasis added). XYZ and other accountholders fit that definition. *See, e.g.*, Statements of Offense, ECF Nos. 95; *see also United States v. Brown*, 665 F.3d 1239, 1253 (11th Cir. 2011); *United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007); *United States v. Pole*, Case No. 09-354 (EGS), 2024 WL 756781, at *30 (D.D.C. Feb. 23, 2024) (citing *United States v. Dickerson*, 370 F.3d 1330, 1339 (11th Cir. 2004)).

As alleged by the government and agreed by all parties during the plea proceedings in this matter, Defendant Lichtenstein launched Defendants' scheme before, and it necessarily required, the theft of funds that belonged to Bitfinex accountholders like XYZ. *See* Sealed Complaint Statement of Facts, ECF No. 1-1 ¶ 4; Statement of Offense, ECF No. 95 ¶¶ 12, 14. During Defendant Lichtenstein's plea colloquy, the parties again confirmed that "Lichtenstein ultimately gained access to the keys, or credentials, used to authorize transactions involving virtual currencies held by victim VCE, including ***funds belonging to customers*** *of victim VCE*. In or about August 2016, Lichtenstein used his access to victim VCE's keys to fraudulently authorize more than 2,000 transactions in which approximately 119,754 BTC was transferred from victim VCE's wallets to an outside wallet, Wallet 1CGA4s, under Lichtenstein's custody and control." 8/3/24 Tr. at 24:5-13, ECF No. 110 (emphasis added). Defendant Lichtenstein's plea colloquy also confirms that Defendants' long running "scheme to defraud" began "around late winter and early spring of 2016"—months before the hack and theft of customer assets. *See id.* at 22:8-11. And Defendant Morgan's plea colloquy confirms that Defendants knowingly laundered the stolen funds to "conceal [Lichtenstein's] involvement in the hack." 8/3/23 Sentencing Tr. 24:7-8, ECF 111.

In other words, Defendants' scheme necessarily included the hack of Bitfinex, followed by the transfers of assets from accountholders' accounts at Bitfinex to what the government terms the "Bitfinex Hack Wallet" and, for a portion of the assets, to other accounts and financial instruments. Thus, Bitfinex accountholders were the victims of the money-laundering conspiracy, the offense of conviction, as well as the hack itself. Courts have held that victims of the money laundering are the same as the victim of the underlying crime in these circumstances. *See, e.g.*, *United States v. Wilson*, 98 F.3d 281, 283 (7th Cir. 1996) ("[T]he money laundering in this case served to perpetuate the very scheme that produced the laundered funds."); *United States v. Cordo*, 324 F.3d

5

223, 231-32 (3d Cir. 2003) (recognizing that money laundering had identifiable victims where it was part of a scheme aimed at investors); *United States v. Onimole*, No. 23-11740, 2024 WL 1232089, at *7 (11th Cir. Mar. 22, 2024) ("Courts have agreed that, in light of the expanded statutory language, restitution orders for conduct closely related to the offense of conviction are appropriate under [the MVRA.]" (cleaned up)).

Even if the money-laundering conspiracy did not start until the assets had been removed from accounts belonging to the victims, they were still victims of the conspiracy, which was designed to, and did, make it more difficult to track, identify, and recover the stolen assets.

There should be no confusion that XYZ and other accountholders suffered the loss associated with the stolen BTC, and thus are victims under the MVRA. When property is stolen from a bailee, like Bitfinex, the owner of that property is the most immediate victim under the MVRA. *See Chalupnik*, 514 F.3d at 753-54 (finding that theft from the United States Parcel Service qualified the owner of the stolen property as the victim under the MVRA); *Griffin*, 2018 WL 2320943 at *5 ("When a person steals property belonging to another, even from the custody of a third party, the owner of the property is the victim."). Here, the categories of victims were broadened by Bitfinex's response to the hack that spread the loss among its customers and used its customers' (including XYZ's) non-BTC assets to buy up additional BTC to partially replenish customers' BTC losses.

The government's apparent confusion about who rightfully has a claim to the stolen BTC is new. Defendants pleaded guilty to conspiracy to commit money laundering on August 3, 2023. The parties agreed that Defendants' conspiracy began before and necessarily required the theft of funds that belonged to Bitfinex accountholders like XYZ. *See* 8/3/24 Tr. at 24:5-13, ECF No. 110

(emphasis added).  Yet the government is now crediting Bitfinex with the right to recover billions of dollars in its customers' BTC for which Bitfinex was merely a custodian.

The fact that XYZ and other accountholders, not Bitfinex, owned the assets in their Bitfinex accounts is confirmed not only by the parties' agreements, but also by Bitfinex's Terms of Use, which are detailed by XYZ's Verified Petition (being filed simultaneously with this motion). Thus, to the extent there is any confusion about who owned the stolen BTC—and there should not be, given the plea colloquies and Bitfinex's own recognition that its customers' assets were stolen—that ambiguity could be resolved by reference to Bitfinex's terms of service, which made clear that customers like XYZ owned BTC that Bitfinex held as a custodian.  *Cf. Merrill Lynch Mortg. Capital, Inc. v. F.D.I.C.*, 293 F.Supp.2d 98 (D.D.C. 2003); *In re Lehman Bros. Holdings, Inc.*, 439 B.R. 811, 824-25 (Bankr. S.D.N.Y. 2010) (looking to the parties' mutual intent to determine that they created a special deposit account).

The restitution order in this case must award XYZ the loss in BTC that it incurred as a direct result of Defendants' hack.  The MVRA permits monetary restitution in lieu of the return of the property only when the "return of the property under subparagraph (A) is impossible, impracticable, or inadequate." 18 U.S.C. 3663A(b)(1)(B); *see also United States. v. Rosabal*, 2014 WL 3672895, at *2 (D. Or. Jul. 22, 2014) ("The MVRA provides that restitution involving damage or loss of property requires the return of such property.").  There is no reason why it would be "impossible or impracticable" here for BTC to be returned to accountholders who were injured, rather than using it to provide a windfall to Bitfinex.  And to the extent there is any dispute about whose claim is superior, XYZ has the right to present evidence on its ownership claim and have that dispute resolved on a "preponderance of the evidence" standard *before* those assets are

disposed of. *See* 18 U.S.C. § 3664(3); *see also In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012); *United States v. Boutros*, No. 20-cr-82, 2020 WL 6683064, at *2 (D.D.C. Nov. 12, 2020).

### III. THE COURT SHOULD NOT AWARD RESTITUTION TO NON-VICTIM BITFINEX

Instead of using restitution to make the actual victims whole, the government proposes to give Bitfinex itself most of the assets it has seized, including "94,643.29837084 Bitcoin recovered by the government from the Bitfinex Hack Wallet" and certain other crypto assets "as restitution in kind." *See* Gov't's Supp. Mot. Re. Restitution at 1, ECF No. 202. The government contends that it may do so under the MVRA because the plea agreement reached with the Defendants includes a provision allowing restitution to Bitfinex in particular. The government further proposes that Bitfinex be awarded this $10 billion windfall *before* the Court has a chance to determine whether Bitfinex or the accountholders have a superior ownership claim to the assets, which the government asserts should take place in an ancillary proceeding after restitution is settled.

The government has it backwards. The Court must determine to whom the assets in the Bitfinex Hack Account belong *before* any are awarded to Bitfinex. Any attempt to recover these assets from Bitfinex would be costly and uncertain, given that Bitfinex is a foreign entity that has already indicated that it intends to fight any attempt by accountholders to recover their funds once in Bitfinex's possession. *See* Letter from Counsel for Bitfinex, ECF No. 175-1 at 2-14 (claiming that "Defendant Lichtenstein stole approximately 119,754 Bitcoins directly from Bitfinex," notwithstanding that those Bitcoins did not belong to Bitfinex, and asserting the right to all of the recovered assets as the "only potential victim of Defendants' offenses."); Letter from Counsel for iFinex Inc., ECF No. 175-1 at 6 of 14 (claiming that Bitfinex ensured "that any losses from the Hack would ultimately be borne by Bitfinex and its shareholders alone" immediately before

8

explaining that Bitfinex "allocated the losses from the Hack pro rata across all customer accounts")). Bitfinex asserts, in essence, that it alone is entitled to all of the appreciation of the stolen BTC because it issued and then redeemed certain "'BFX' cryptocurrency 'worth $1'" for each dollar of "reduction (or haircut) to the value of each customer account." But its customers had elected to own, and did in fact own, the stolen BTC. Bitfinex had no right to eliminate their interest in the upside of owning those assets (including as victims in this criminal proceeding) by unilaterally issuing IOUs with a *potential* value that eliminated any upside associated with the appreciation of BTC—which is what Bitfinex did.

More fundamentally, the MVRA does not allow the government, by virtue of making an agreement with criminal defendants, to award a party restitution comprised of the assets of other parties. And, as set forth in XYZ's, Remission Submission, attached at **Exhibit A**, these assets belong to it and other accountholders, not Bitfinex.

The government seems to believe that: (1) XYZ's loss should be measured by the value of the BTC on the date of the theft, rather than by reference to the present value of the property stolen by Defendants; and (2) that Bitfinex can be credited as the holder of all losses, presumably because the government believes either that Bitfinex made XYZ and other account holders whole or purchased their rights to recover as victims by bona-fide contract. Both points are factually and legally wrong. XYZ was never made whole and never conveyed away its right to restitution as a victim of Defendants' scheme.[2] Moreover, the government's arguments are contrary to its recognition in other notable crypto cases that even when victims are repaid the value of stolen

---

[2] The government seems to contend that Bitfinex is entitled to all forfeited funds in part because it issued certain so-called recovery rights tokens to customers whose assets were stolen and then, apparently, bought its own tokens up at severely depressed values. The tokens appear to have been a sleight of hand, intended to provide Bitfinex with some justification for the stunning $10 billion windfall that it is now pursuing. Regardless, those tokens did not make XYZ whole.

9

crypto as of the date of the theft (which XYZ has not been), those persons remain victims who suffered a loss. *See* Gov't's Sentencing Memo. 39-40, 101-09, *United States v. Bankman-Fried*, Case No. 1:22-cr-673 (S.D.N.Y.), ECF No. 410; 3/28/24 Sentencing Tr. 4:10-11, *Bankman-Fried*, ECF No. 426 (rejecting the defense argument that because accountholders at crypto exchange FTC might recover the dollar value of their accounts as of the day of the exchange's bankruptcy, these victims suffered "no actual loss").

## CONCLUSISON

For the foregoing reasons, XYZ requests that it be recognized as an intervenor, and that it be granted leave to file any matter reasonably necessary to assert or protect its rights and interests consistent with Federal Rule of Criminal Procedure 32.2(c), 21 U.S.C. § 853(n), or 18 U.S.C. § 3771. XYZ objects to any transfer or conveyance of assets forfeited by Defendants. At a minimum, no such conveyance should be permitted until XYZ's ancillary petition is resolved.

Date: January 28, 2025

Respectfully submitted,

/s/ Aitan D. Goelman
Aitan D. Goelman (DC Bar 446636)
Christopher R. MacColl (DC Bar 1049153)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
AGoelman@zuckerman.com
CmacColl@zuckerman.com

*Attorneys for Intervenor, Claimant, and Third-Party Petitioner XYZ Inc.*