IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

ILYA LICHTENSTEIN, *et al.*,

Defendants.

Case No. 23-CR-239 (CKK)

**THIRD-PARTY PETITIONERS IFINEX INC. AND BFXNA INC.'S REPLY
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN
<u>CLAIMANTS' ANCILLARY PETITIONS</u>**

Dated: New York, New York
      May 16, 2025

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................. 1

**ARGUMENT** .................................................................................................................................. 2

    I.      XYZ AND DOE FAIL TO PLAUSIBLY ALLEGE THAT THEY HAVE A LEGAL INTEREST IN ANY BITCOIN STOLEN IN THE HACK ................. 2

    II.     XYZ CANNOT PLAUSIBLY ASSERT A HAIRCUT-BASED LEGAL INTEREST IN BITCOIN THAT WAS NOT STOLEN FROM IT ....................... 7

          A.     Third-Party Forfeiture Petitioners Cannot Plausibly Assert a Legal Interest That Arose After the Hack and Not in Specific Property Subject to Forfeiture ................................................................................ 7

          B.     XYZ's Alternative Legal Theories Are Meritless ...................................... 9

    III.    THE COURT SHOULD DISMISS PETITIONER ILLESCAS' HAIRCUT CLAIM ............................................................................................ 12

**CONCLUSION** ........................................................................................................................... 13

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................5

*Baz v. U.S. Dep't of Homeland Sec'y*,
  2019 WL 5102827 (D.D.C. Oct. 11, 2019) ..........................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................4, 5

*DSI Assocs. LLC v. United States*,
  496 F.3d 175 (2d Cir. 2007) ..........................................................................3, 7, 8

*Lucas v. United States*,
  775 F.3d 544 (2d Cir. 2015) ................................................................................10

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ................................................................................5

*United States v. Arcaro*,
  2024 WL 40213 (S.D. Cal. Jan. 3, 2024) ..............................................................6

*United States v. BCCI Holdings (Luxembourg) S.A.*,
  46 F.3d 1185 (D.C. Cir. 1995) ..............................................................................8

*United States v. Currency Totaling $48,318.08*,
  609 F.2d 210 (5th Cir. 1980) ..............................................................................10

*United States v. Daugerdas*,
  892 F.3d 545 (2d Cir. 2018) ..................................................................................3

*United States v. Eldick*,
  223 F. App'x 837 (11th Cir. 2007) ..................................................................3, 12

*United States v. Emor*,
  785 F.3d 671 (D.C. Cir. 2015) ............................................................................12

*United States v. Lavin*,
  942 F.2d 177 (3d Cir. 1991) ................................................................................12

*United States v. Matusko*,
  2023 WL 5319259 (9th Cir. Aug. 18, 2023) .........................................................5

*United States v. Preston*,
  123 F. Supp. 3d 108 (D.D.C. 2015) ......................................................................5

*United States v. Ribadeneira*,
  105 F.3d 833 (2d Cir. 1997) ..................................................................................9

*United States v. Rose*,
   2017 WL 6459893 (E.D. Tenn. Apr. 5, 2017) ..................................................................6, 7

*United States v. Sharma*,
   2021 WL 861353 (S.D.N.Y. Mar. 8, 2021) ..........................................................................6

*United States v. Watkins*,
   320 F.3d 1279 (11th Cir. 2003) ..........................................................................................12

*United States v. White*,
   675 F.3d 1073 (8th Cir. 2012) ..............................................................................................8

**Statutes**

21 U.S.C. § 853(c) ..........................................................................................................................8

21 U.S.C. § 853(n)(6)(A) ...........................................................................................................3, 8

iFinex Inc. and BFXNA Inc. (together, "**Bitfinex**"), through its attorneys at Gibson, Dunn & Crutcher LLP and Kirkland & Ellis LLP, respectfully submits this reply memorandum of law in support of its motion to dismiss certain third-party ancillary petitions and forfeiture claims in *United States v. Ilya Lichtenstein and Heather Morgan*, No. 23-cr-239-CKK (D.D.C.), and in response to multiple oppositions, *see* XYZ Opposition to Bitfinex's Motion to Dismiss ("XYZ Opp."), ECF No. 325; Doe Opposition to Bitfinex's Motion to Dismiss ("Doe Opp."), ECF No. 328; Illescas Opposition to Bitfinex's Motion to Dismiss ("Illescas Opp."), ECF No. 330.

## PRELIMINARY STATEMENT

Petitioners XYZ Inc. and John Doe all but confirm in their oppositions that they have no basis to assert a property interest in any of the stolen Bitcoin that is now subject to forfeiture. That failure requires the dismissal of their petitions. The Court has recognized that "[p]etitioners must be able to demonstrate that their accounts were included among those Bitfinex accounts that were hacked[,]" ECF No. 300 at 16, and that the "ancillary forfeiture proceeding is not for litigating any damages claimed by Bitfinex accountholders that are attributable to Bitfinex's 36% across-the-board haircut and contract disputes related thereto[,]" *id.* at 18 (emphasis in the original). XYZ and Doe nonetheless argue that they need not plausibly allege that their Bitcoin was stolen during the Hack. These arguments are meritless.

*First*, Doe and XYZ argue that they need discovery to allege that their accounts were hacked, but other petitioners, including *pro se* petitioners, have made such allegations based on rudimentary blockchain analysis and without discovery. XYZ, controlled by ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, certainly would not need discovery to allege that its account had been hacked, if it had actually happened.

1

*Second*, Doe and XYZ claim that they, not Bitfinex, "owned" Bitcoin in their accounts before the Hack. But, while Bitfinex disagrees, who owned Bitcoin in their accounts is irrelevant given XYZ and Doe's failure to allege that their accounts were hacked.

*Third*, XYZ concocts convoluted legal theories for why, *after* the Hack and because of the Haircut, it purportedly gained property interests in Bitcoin stolen from the Bitfinex wallets of *other* accountholders. But those theories cannot rescue XYZ's deficient claims because they are inconsistent with this Court's holdings and D.C. Circuit precedent.

There is no dispute among the parties that the bar for pleading a legal interest is low and that the question of who has a superior legal interest in the Bitcoin that the other petitioners' claim is one for later in the proceeding. But XYZ and Doe's failure to offer anything but speculation that their Bitcoin were stolen during the Hack is fatal to their petitions at the pleading stage. This is particularly true given the ease with which these sophisticated parties could use publicly available tools to trace transactions into and out of their purported wallets. Bitfinex respectfully requests that the Court dismiss the XYZ and Doe petitions, dismiss Petitioner Illescas' Haircut claim, and dismiss any other claims based on the Haircut rather than the Hack.

## ARGUMENT

I. **XYZ AND DOE FAIL TO PLAUSIBLY ALLEGE THAT THEY HAVE A LEGAL INTEREST IN ANY BITCOIN STOLEN IN THE HACK**

XYZ and Doe do not and cannot dispute that they lack a basis to claim their Bitcoin were stolen in the Hack and that they are seeking Bitcoin based on purported losses attributable to Bitfinex's actions in the Haircut. *See* Bitfinex Memorandum of Law in Support of Motion to Dismiss ("Bitfinex Mot."), ECF No. 308-1 at 13-22. For that reason alone, their petitions must be dismissed.

It is black letter law that a petitioner seeking to recover in an ancillary proceeding pursuant

2

to 21 U.S.C. § 853(n)(6)(A) must assert a "legal interest" in a particular asset that is subject to forfeiture, and that the interest must "*precede*[] the commission of the crime that gave rise to the forfeiture of that property." *United States v. Eldick*, 223 F. App'x 837, 840 (11th Cir. 2007) (emphasis in original); *see United States v. Daugerdas*, 892 F.3d 545, 548, 557 (2d Cir. 2018) (explaining that the legal interest must arise before the offense); *see also DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (finding no standing where petitioner failed to assert an interest in a particular asset "that is, or is part of, the forfeited property").  Thus, to state a claim in this ancillary proceeding, a petitioner must allege that it had a legal interest in Bitcoin that were stolen by the Defendants during the Hack, seized by the Government, and are now subject to the Court's forfeiture order.  Or as this Court put it, petitioners can participate in the ancillary proceeding only "[i]f [they] can show that their accounts were included among the Bitfinex hacked accounts." ECF No. 300 at 17.  XYZ and Doe simply have not done so.

According to its own petition, XYZ "held 2,705.40228 BTC in its Bitfinex account prior to the Hack," XYZ Ancillary Petition, ECF No. 289-4 ¶ 17, which is the exact same amount of Bitcoin held in its account *after* the Hack, *id.* at 6, Fig. 1 (demonstrating XYZ's post-Hack, pre-Haircut account balance to be 2,705.40228); *see also* Bitfinex Mot. at 16.  Doe, for his part, seeks to recover a total of 670.68637 Bitcoin in the ancillary proceeding.  Doe Ancillary Petition, ECF No. 285 at 2.  But in his motion to intervene, Doe sought to collect the very same Bitcoin, explaining that he suffered a "net loss of 670.68637 **after the reallocation**" that was "unilaterally implemented **by Bitfinex after the hack**."  Doe Motion to Intervene, ECF No. 286 at 11 n.1 (emphases added); *see also* Bitfinex Mot. at 18-19.  Both XYZ and Doe, by their own admission, leave no doubt that they are seeking to recover Bitcoin they allegedly lost during the Haircut—not Bitcoin that were stolen as part of the Hack.

3

XYZ and Doe argue that they need discovery from Bitfinex in order to even allege whether Bitcoin were stolen from their accounts. *See, e.g.*, XYZ Opp. at 11 ("Discovery from Bitfinex is necessary to trace XYZ's assets to the stolen assets[.]"); Doe Opp. at 10 (arguing discovery from Bitfinex is needed to determine the "traceability" of his claims). But that is not true. Because the Bitcoin blockchain contains a public record of every Bitcoin transaction, virtually anyone can trace the history of the Bitcoin that was stolen as part of the Hack. Declaration of Matthew Price ("Price Decl."), ECF No. 219-1, Ex. A., ¶¶ 59–70. By simply analyzing the Bitcoin blockchain, law enforcement was able to trace a significant portion of the stolen Bitcoin and identify all 2,072 wallet addresses in the Hack Wallet. Statement of Facts, ECF No. 1–1, ¶¶ 5, 19–20, 51–52. And using the same publicly available method, several petitioners in this ancillary proceeding, including those without legal counsel, were able to plead that Bitcoin were stolen from their Bitfinex account wallet addresses in the Hack based on rudimentary tracing analyses. *See* Price Decl. ¶ 16; Bielenia Mot. to Intervene, ECF No. 238 at 1; Exhibit to Cavazos Mot. to Intervene, ECF No. 190-1. That two sophisticated petitioners represented by legal counsel, one of which is controlled by ▬▬▬▬▬▬▬▬▬, failed to do the same further exposes the implausibility of their allegations.

Discovery could not possibly cure XYZ and Doe's fatally flawed petitions. Moreover, the fact that these petitioners claim that they cannot allege if any Bitcoin were stolen from their Bitfinex accounts is fatal to their claims. The mere allegation that Bitcoin in their accounts—rather than some other Bitcoin—*might* have been stolen and *might* be subject to forfeiture does not raise their claims "above the speculative level," as is required at the pleading stage. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (cleaned

4

up); *see also United States v. Preston*, 123 F. Supp. 3d 108, 113 (D.D.C. 2015) (applying *Twombly* pleading standard to an ancillary petition); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (plaintiff must allege right to relief that "is likely, as opposed to merely speculative").

XYZ's claim that it was a large Bitfinex accountholder prior to the Hack, XYZ Opp. at 6, does not make it likely rather than speculative that Bitcoin from its accounts were stolen. *See United States v. Matusko*, 2023 WL 5319259, at *2 (9th Cir. Aug. 18, 2023) (striking civil forfeiture claim for lack of standing because petitioner, a large Bitcoin holder in a digital marketplace, "provides no supporting evidence and nothing beyond speculation that his claimed bitcoin was stolen" from the marketplace). Indeed, XYZ's principal, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[1] And Doe's mere allegation that he had fewer Bitcoin after the Hack than before the Hack—when it is undisputed that Bitfinex almost immediately applied a Haircut to customer accounts and provided non-Bitcoin compensation—hardly shows that any Bitcoin were stolen from his account during the Hack. Doe Opp. at 9; *cf. Baz v. U.S. Dep't of Homeland Sec'y*, 2019 WL 5102827, at *3 (D.D.C. Oct. 11, 2019) ("[W]hen evaluating whether a claim is plausible, the Court need not ignore an 'obvious alternative explanation' [] for the alleged injury: 'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 567 and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Doe is also wrong to suggest that he does not need to plead traceability. *See* Doe Opp. at 10–13. As this Court has explained, "a petitioner's claim will depend on tracing a claim of ownership to one or more items of specific property itemized in the Second Amended Preliminary Order of Forfeiture and Corrected Second Amended Attachment A." ECF No. 278, at 10. Doe may not have to *prove* traceability in his petition, but he still has to *plead* it, and he "must allege facts demonstrating an ability to trace [his] purported interest to a specific property" to survive a motion to dismiss. *United States v. Arcaro*, 2024 WL 40213, at *11 n.5 (S.D. Cal. Jan. 3, 2024); *see also United States v. Sharma*, 2021 WL 861353, at *6 (S.D.N.Y. Mar. 8, 2021) (dismissing ancillary petitions because petitioner "must demonstrate a legal interest in particular and specific forfeited assets" and their "conclusory statement that blockchain records can show the transfer of some" cryptocurrency was inadequate to survive a motion to dismiss).

*Arcarco* is illustrative. That case involved the forfeiture of the proceeds of a cryptocurrency Ponzi scheme to defraud investors in BitConnect. The court emphasized that petitioners must "allege facts demonstrating an ability to trace their purported interest to a specific forfeited property." *Arcaro*, 2024 WL 40213, at *11 n.5. The Court then dismissed numerous petitions by alleged BitConnect investors, including where the petitioner "failed to put forth any facts to support his ability to trace his interest to the specific forfeited properties," *id*. at *13, or "failed to provide any information about transactions with BitConnect that would allow agents to verify the transactions through blockchain analysis," *id*. at *6.

In contrast, the sole case Doe cites regarding traceability, *United States v. Rose*, 2017 WL 6459893, at *3 (E.D. Tenn. Apr. 5, 2017), shows the inadequacy of Doe's pleading. Doe Opp. at 10. There, a *pro se* petitioner plausibly alleged a legal interest in "cash seized from the safe in her marital home," and the question of whether the petitioner owned the cash was for later in the

6

proceedings. *Rose*, 2017 WL 6459893 at *3. In contrast, here, it is undisputed that the stolen Bitcoin came from Bitfinex, and Doe, in contrast to other petitioners, offers nothing beyond speculation that some of the Bitcoin stolen from Bitfinex might have come from his account. That is not enough to survive dismissal.

* * *

XYZ and Doe do not and cannot plausibly allege that Bitcoin in their Bitfinex accounts—rather than Bitcoin in other Bitfinex wallets—were stolen by Defendant Lichtenstein and are subject to forfeiture. Mere speculation that one's Bitcoin *might* have been stolen falls short of the pleading standard. The Court should not let sophisticated claimants conduct a fishing expedition in search of evidence for alternative legal theories while delaying the recovery of other petitioners.

### II.     XYZ CANNOT PLAUSIBLY ASSERT A HAIRCUT-BASED LEGAL INTEREST IN BITCOIN THAT WERE NOT STOLEN FROM IT

In an attempt to overcome its failure to allege a legal interest in the Bitcoin stolen from Bitfinex and subject to forfeiture, XYZ (but not Doe) offers scattershot alternative theories for how it somehow gained legal interests in Bitcoin stolen from *other* Bitfinex wallets *after* the Hack. These theories are inconsistent with this Court's orders, forfeiture law, and D.C. Circuit precedent.

#### A.     Third-Party Forfeiture Petitioners Cannot Plausibly Assert a Legal Interest That Arose After the Hack and Not in Specific Property Subject to Forfeiture

As a threshold matter, neither XYZ's petition nor any of its theories identifies a legal interest in *specific* Bitcoin subject to forfeiture. *See DSI Assocs. LLC*, 496 F.3d at 184 ("Without possessing such an interest 'in' a 'particular, specific asset' that is, or is part of, the forfeited property, [the claimant] does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n)."). Instead, XYZ asserts that Bitfinex owes it a "debt" because of the Haircut, and that the debt can be resolved by conveyance of substitute fungible assets. XYZ Opp. at 13. But XYZ is essentially claiming that it is an unsecured creditor of Bitfinex. And mere

creditor status does not confer a cognizable legal interest in forfeiture, as courts, including this one, have uniformly recognized. *See, e.g.*, ECF No. 278 at 10 ("A central issue in a third-party ancillary proceeding is whether petitioners have an interest in *specific* forfeited property, as opposed to a general claim of an unsecured creditor.") (citing *United States v. BCCI Holdings (Luxembourg) S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995)) (emphasis in original); *United States v. White*, 675 F.3d 1073, 1080 (8th Cir. 2012) ("[A] general creditor does not have standing to claim an interest in a particular forfeited asset."); *DSI Assocs. LLC*, 496 F.3d at 184 ("As a general creditor…[petitioner] does not possess a legal right, title or interest in the property that was forfeited as required for standing…") (internal quotation marks and citation omitted). XYZ's claim as a purported Bitfinex creditor is not a viable legal interest in specific property stolen from Bitfinex and subject to forfeiture.

Moreover, XYZ cannot assert a legal interest in the stolen Bitcoin based on a purported assignment that occurred after the Hack. The Court has made clear that only petitioners who "show that their accounts were included among the Bitfinex hacked accounts," may participate in the ancillary proceeding, while Bitfinex customers who merely received non-Bitcoin compensation as part of the Haircut cannot. ECF No. 300 at 17. This is because petitioners who did not have a prior legal interest in specific Bitcoin stolen in the Hack will not be able to prove that they had an interest in the property superior to the Government or Defendants at the time of the commission of the act giving rise to forfeiture—i.e., the Hack. 21 U.S.C. § 853(c), (n)(6)(A); *see also BCCI Holdings (Luxembourg), S.A.*, 46 F.3d at 1190–91 (explaining that "a third party's claim is to be measured not as it might appear at the time of litigation, but rather as it existed at the time the illegal acts were committed" because "Congress…devised a statutory remedial scheme that reaches *back to the time of the criminal acts* to forfeit the property to the United States") (emphasis

8

in original).

XYZ contends that it could have gained a superior legal interest to the Government in the stolen Bitcoin after the Hack because the Government's interest did not vest until the formation of Defendants' conspiracy. *See* XYZ Opp. at 15. But the initial act giving rise to forfeiture was Defendant Lichtenstein's wire fraud scheme in which he stole 119,754 Bitcoin from Bitfinex, including 94,643 Bitcoin that are subject to forfeiture and were never laundered by Defendants. Information, ECF No. 89 at 2–5. XYZ's reliance on civil forfeiture cases that do not implicate 21 U.S.C. § 853 to argue that an interest in property subject to forfeiture can be assigned after the acts giving rise to forfeiture are inapposite. XYZ Opp. at 15 n.11.

XYZ must, but cannot, show that it had a legal interest before the Hack in specific Bitcoin subject to forfeiture, not that it gained some legal right as a supposed Bitfinex creditor to unspecified Bitcoin after the Hack because of the Haircut.

**B.     XYZ's Alternative Legal Theories Are Meritless**

Even if XYZ could assert a legal interest as a creditor that purportedly arose after the Hack, its theories would be meritless.

*First*, XYZ advances the novel theory that it is the "assignee" of Bitcoin from other Bitfinex customers who lost Bitcoin in the Hack, based on the premise that XYZ's assets were improperly "conveyed" to these customers as part of the Haircut. XYZ Opp. at 13–14. But this theory falters for a basic reason: XYZ still fails to identify any "*specific forfeited property*," ECF No. 278 at 10 (emphasis added), that was allegedly transferred from XYZ to "other customers" writ large, *see* XYZ Opp. at 14. To establish statutory standing, the "legal interest 'in' property must be an interest in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account." *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997). This type of generalized claim—asserting that some Bitcoin, somewhere in Bitfinex's exchange, must belong

9

to XYZ—is exactly what XYZ pleads here. Without tracing any identifiable property from XYZ to the Court's forfeiture order, XYZ's theory amounts to nothing more than an attempt to relabel its general creditor status. That is not enough.

Even setting aside this fatal deficiency, the premise of XYZ's assignment theory—that there was in fact an assignment—is pure fiction. XYZ nowhere alleges that Bitfinex or other customers assigned XYZ rights in other customers' stolen Bitcoin. XYZ relies entirely on two cases for the proposition that a vested legal interest in forfeited property can be assigned to another party, XYZ Opp. at 15 n.11; but in each case, there was an *express assignment* of such property. *See Lucas v. United States*, 775 F.3d 544, 549 (2d Cir. 2015) ("Justin's assignment to Nicholas was made in writing and signed…"); *United States v. Currency Totaling $48,318.08*, 609 F.2d 210, 212 (5th Cir. 1980) ("A formal written document titled 'Assignment of Seized Funds' was executed on December 27, 1976."). There was no such assignment here.

*Second*, XYZ cannot salvage its assignment theory by claiming it has subrogation rights under BVI law. That theory appears to be based entirely on XYZ's alleged status as a Bitfinex creditor after the Haircut and, for the reasons discussed above, is barred as a matter of law. *See supra* at 6-9; *see also* Burkitt Decl., ECF No. 325-1 at 5 (acknowledging that many "decisions concerning subrogation involve the payment by the claimant of another's debt"). XYZ seemingly acknowledges this problem and argues that the D.C. Circuit's *BCCI* decision, which rejected a "constructive trust" theory of standing in forfeiture cases, was "wrongly decided." XYZ Opp. at 12 n.8. But *BCCI* remains binding precedent and bars XYZ's theory.

XYZ's conclusory declaration from a foreign lawyer on foreign law cannot trump binding D.C. Circuit precedent. But it is self-defeating in any event. XYZ admits that it is premature to "wade into these issues of foreign law." *Id.* at 14. And the foreign law declarant acknowledges

10

that there are no cases supporting XYZ's position. Burkitt Decl. at 7. His speculation that XYZ nevertheless might have gained a post-Hack "equitable right" simply repeats, rather than remedies, XYZ's pleading deficiencies. *Id.* at 7.[2]

In any event, the declaration should be discounted for the simple reason that the declarant admits he has not reviewed any documents except XYZ's own petition and its attached exhibit. *Id.* at 2. Indeed, a premise of the declaration is that subrogation rights often arise under law in Commonwealth jurisdictions (other than BVI) "where a claimant's assets are misapplied without his knowledge and consent and used to discharge another party's secured debt. . . ." *Id*. at 6. But XYZ's assets were not "misapplied without [its] knowledge and consent." To the contrary, XYZ's principal, ███████████████████████████████████████████████
███████████████████ ███████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████

*Third*, XYZ's last-ditch effort to recast its entire theory of recovery by asserting that it is a "bona fide purchaser" of the stolen Bitcoin under Section 853(n)(6)(B) is meritless. XYZ Opp. at 16–17. XYZ seems to suggest that it "became a 'bona fide purchaser'" when XYZ's Bitcoin was "used to replace stolen bitcoins" of other Bitfinex customers. XYZ Opp. at 16. But as its name clearly suggests, a bona fide purchaser is someone "who has *purchased property* for value without

---

[2] Bitfinex intends to submit BVI expert legal testimony regarding its own legal interest in the stolen Bitcoin and believes it is premature to engage in expert discovery on the superiority of legal interests at the pleading stage. However, should it assist the Court, Bitfinex can submit a BVI legal expert declaration upon the Court's request to respond to XYZ's declaration or explain the BVI law applicable to Bitfinex's own position.

11

notice of any defects in the title of the seller.[]" *United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003) (emphasis added, internal citations omitted). A quintessential example is someone who purchases a stolen painting believing they were making a legitimate purchase. *See United States v. Lavin*, 942 F.2d 177, 186–87 (3d Cir. 1991).

XYZ, by contrast, never actually purchased any of the stolen Bitcoin. If anything, XYZ's nebulous theory hinges on the contention that XYZ had to *relinquish* Bitcoin as part of the across-the-board Haircut, which is not at issue in this proceeding. Thus, XYZ is not a bona fide purchaser, which, contrary to XYZ's contention, is entirely consistent with Congress's intent for "criminal forfeiture to punish criminal defendants, not crime victims." *United States v. Emor*, 785 F.3d 671, 678–79 (D.C. Cir. 2015). Indeed, XYZ does not and cannot claim that any of its Bitcoin were stolen or seized and therefore it cannot possibly be a "crime victim[]" as it suggests it is here. XYZ Opp. at 16.

### III.  THE COURT SHOULD DISMISS PETITIONER ILLESCAS' HAIRCUT CLAIM

Mr. Illescas effectively admits that his claim as to 387.35 BTC accounts for losses attributable to the Haircut and not the Hack, and this Court has ruled as such. *See* Illescas Opp. at 4 ("By addressing the 'shared loss' or 'Haircut' claim…[Illescas] seeks judicial recognition of a proportionate, vested interest. . . ."); Illescas Pet., ECF No. 217 at 4 ¶¶ 5–6; ECF No. 300 at 18 n.11 (limiting Illescas's claim to the 188.9583353 Bitcoin he claims are traceable to the Hack). Illescas now contends that dismissing his "petition solely because it includes a Haircut [sic] when a claimant has a legitimate interest in the forfeited property raises due process concerns." Illescas Opp. at 5. There is no fairness concern here—Bitfinex moved to dismiss only Illescas' Haircut claim, not his claim based on the Hack, because he does not and cannot assert a legal interest in the forfeited property with respect to the Haircut claim. *See United States v. Eldick*, 223 F. App'x at 839–40. Thus, his Haircut claim should be dismissed.

12

## **CONCLUSION**

Bitfinex respectfully requests that the Court dismiss the petitions of XYZ Inc. and John Doe, and dismiss in part the petition of Pablo Garcia Illescas.

Dated:  New York, New York
         May 16, 2025

                                            GIBSON, DUNN & CRUTCHER LLP

                                            By:   */s/ Barry H. Berke*
                                                  Barry H. Berke (admitted *pro hac vice*)
                                                  Daniel M. Ketani (admitted *pro hac vice*)
                                                  Trevor Gopnik (admitted *pro hac vice*)
                                                  200 Park Avenue
                                                  New York, New York 10166
                                                  Tel: (212) 351-4000
                                                  bberke@gibsondunn.com
                                                  dketani@gibsondunn.com
                                                  tgopnik@gibsondunn.com

                                                  Stephanie L. Brooker (D.C. Bar No. 475321)
                                                  Nick Harper (D.C. Bar No. 144707)
                                                  1700 M Street N.W.
                                                  Washington, D.C. 20036
                                                  Tel: (202) 955-8500
                                                  sbooker@gibsondunn.com
                                                  nharper@gibsondunn.com

                                            KIRKLAND & ELLIS LLP

                                                  Mark C. Holscher (admitted *pro hac vice*)
                                                  555 S. Flower Street
                                                  Los Angeles, California 90071
                                                  Tel: (213) 680-8190
                                                  mark.holscher@kirkland.com

                                                  Laura Vartain (admitted *pro hac vice*)
                                                  555 California Street
                                                  San Francisco, California 94104
                                                  Tel: (415) 439-1400
                                                  Laura.vartain@kirkland.com

                                            *Attorneys for Third-Party Petitioners iFinex Inc. and BFXNA Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Columbia on all parties registered for CM/ECF in the above-captioned matter. I further certify that I caused a service copy of the foregoing to be sent via email and/or mail to the persons listed below who may not be included on the CM/ECF service list. *Pro se* petitioner "A.B." was not served by email or mail because neither his email address nor physical address has been provided.

Louis Zuijderwijk

Jonas Paasch

Rafal Bielenia

Pablo Garcia Illescas

Francisco Cavazos

*/s/ Barry H. Berke*
Barry H. Berke