**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

v.

ILYA LICHTENSTEIN, et al.,

　　　　　　　　Defendants.

Case No.  23-cr-239 (CKK)

---

**MOTION TO FILE AMENDED VERIFIED ANCILLARY PETITION**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), movant Hjalmar Peters ("Mr. Peters"), by and through his undersigned counsel, respectfully submits this motion to file the amended verified ancillary petition pursuant to 21 U.S.C. § 853(n), annexed hereto as **<u>Exhibit 1</u>** (the "Amended Petition"), seeking an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, dated November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order").

## <u>INTRODUCTION</u>

1.　　　On January 16, 2025, Mr. Peters filed a timely ancillary petition in which Mr. Peters asserts a claim with respect to 12.9448505 Bitcoin (BTC) that is subject to the Preliminary Forfeiture Order.  *See* ECF No. 204 at ¶ 1.

2.　　　On January 29, 2025, this Court granted Mr. Peters' motion to intervene in these proceedings.  *See* ECF No. 230.

3.　　　As a result of further investigation, including a review of information filed and/or made available by Bitfinex in connection with these proceedings, Mr. Peters identified additional accounts and assets belonging to him "included among those Bitfinex accounts that were hacked."

*See* Memorandum Opinion, dated April 4, 2025, ECF No. 300 at 16; *see also id.* at 19 ("[T]he Court notes that the tracing of the accounts in a cryptocurrency case involving hacking is in and of itself complex.").

4.      Accordingly, Mr. Peters seeks to file the Amended Petition to supplement his claim and revise the total amount of his lost assets to 17.5071 BTC (as defined in the Amended Petition, the "Lost Assets").  Attached as **<u>Exhibit 2</u>** is a redline comparing the Amended Petition against Mr. Peters' original petition.

5.      Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); *United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (permitting petitioner to amend to plead additional facts because, "if such facts exist[ed], . . . re-pleading would not be futile" and thus "denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns"); *see also In re Forfeiture Ord. of Tim Leissner*, No. 23-MC-1505 (MKB), 2024 U.S. Dist. LEXIS 182231, at *20 (E.D.N.Y. Oct. 5, 2024) (granting leave to amend ancillary petition filed pursuant to Section 853(n) where amendment would "not be futile" or "result in undue prejudice").

6.      Here, Mr. Peters' motion to amend should be granted because he has pled sufficient facts to establish his ownership over the 17.5071 BTC in Lost Assets.  *See* Ex. 1 ¶¶ at 15-22. Accordingly, the amendment is neither futile nor will it cause any party any prejudice.

7.      Further, these proceedings remain in its preliminary stages.  Motions to dismiss are pending, and discovery has not yet begun.  *See* Opinion, dated May 20, 2025, ECF No. 347 at 1. Notably, no motions to dismiss are pending against Mr. Peters' original petition.

8.       The Court has recently granted another petitioner's motion for leave to file an amended ancillary petition, setting a deadline of May 30, 2025, for the petitioner to file.  Minute

Order, dated May 12, 2025 (granting motion for leave to amend).  The Court noted that, as here, such "Petitioner filed a timely ancillary petition, and now seeks leave to amend it."  *Id.*

WHEREFORE, Mr. Peters respectfully requests that the Court grant him leave to file his Amended Petition, annexed hereto as **<u>Exhibit 1</u>**, together with such other and further relief as the Court deems just and proper.  A proposed order is annexed hereto as **<u>Exhibit 3</u>**.

Dated: May 30, 2025                                    GREENSTEIN DELORME & LUCHS, P.C.

By: */s/ Alexandria J. Smith*
James D. Sadowski, DC Bar #446635
Alexandria J. Smith DC Bar #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400
Fax:  202/452/1410
Email:  JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Movant Hjalmar Peters*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of May, 2025, I filed the foregoing Motion, and a copy should be served by Notice of Electronic Filing on all persons designated to receive electronic notice in this case.  I further certify that I caused a service copy of the foregoing to be sent via email to the persons listed below who may not be included on the CM/ECF service list:

Rafal Bielenia

Petitioner "A.B."

Pablo Garcia Illescas' Attorney

Francisco Cavazos

Jonas Paasch

Louis Zuijderwijk

/s/ Alexandria J. Smith
Alexandria J. Smith

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>ILYA LICHTENSTEIN, ET AL.,<br><br>        DEFENDANTS. | CASE NO.  23-CR-239 (CKK) |

**AMENDED VERIFIED PETITION FOR DETERMINATION OF**
**THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)**

Petitioner Hjalmar Peters ("Petitioner" or "Mr. Peters"), by his counsel Davis+Gilbert LLP, having offices at 1675 Broadway, New York, New York 10019, submits this amended verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

## PRELIMINARY STATEMENT

1.      On or about August 2, 2016, after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), Defendants Ilya Lichtenstein and Heather Morgan stole 17.5071 Bitcoin (the "Lost Assets") from Mr. Peters.

2.      Defendants accomplished this theft by directly transferring the Lost Assets from Mr. Peters' own Bitcoin wallet on a cryptocurrency exchange into Defendants' virtual wallet.

3.      For years, the Lost Assets sat in Defendants' virtual wallet, until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

1

4.      Mr. Peters now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.  ECF. No 1.  The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information").  *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. No. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant.  *See* ECF. No. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A."  *Id.* at 2.  The attachment, as amended and corrected, identifies in paragraph e. "approximately" 94,643.29837084 Bitcoin (the "Recovered Bitcoin") that were "seized from wallets recovered from Defendants' online storage account."  *See* ECF. No. 198-1 at 1.

## RELEVANT FACTS

9.      Mr. Peters is the owner of the Lost Assets, which can be directly traced from Mr. Peters' multi-signature Bitcoin wallet to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

10.    Mr. Peters was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong.  To transact business on the platform, customers of Bitfinex were each provided with her/his own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her Bitcoin for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11.    The Bitcoin in these multi-signature wallets belonged solely and exclusively to the respective customer.  At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your Multi-Signature Wallets belong to and are owned by you [the customer]."  *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/   (last accessed: January 15, 2025) (quoting Bitfinex's terms of service).

12.    Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices.  *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available at* https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange ("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: January 15, 2025).

13.    In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus

settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader.  Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 16-19, at 3 (June 2, 2016).

14.    In other words, the Bitcoin held in a customer's segregated multi-signature wallet on the Bitfinex platform rightly belonged to the customer only.

**A.  Ownership of the Lost Assets**

15.    Bitfinex created a multi-signature wallet for Mr. Peters (which had the deposit address ********************).  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 20.  From May 14, 2016 through July 20, 2016, Mr. Peters made seven Bitcoin deposits to this address: 9.9999 BTC on May 14, 2016; 5.9999 BTC on May 18, 2016; 5.9995 BTC on May 23, 2016; 5.8995 BTC on May 24, 2016; 5.9999 BTC on May 25, 2016; 4.9995 BTC on June 23, 2016; and 9.9995 BTC on July 20, 2016.

16.    Mr. Peters' multi-signature wallet did not consist solely of his deposit address. Annexed hereto as Exhibit A is a flowchart (the "Flowchart") illustrating the Bitcoin movements associated with Mr. Peters' multi-signature wallet.  The Flowchart demonstrates how, with each transfer from the multi-signature wallet to Bitfinex's hot wallet (represented by green boxes), or to a withdrawal address (purple box), Bitfinex transferred certain remaining Bitcoin to a new change address.  *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶¶ 17, 26, 67-68.  These change addresses also form part of Mr. Peters' multi-signature wallet.  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 15 (providing that a single wallet may include many wallet

4

addresses).

17.     In August 2016, during the course of the Hack, Defendants completely emptied Mr. Peters' multi-signature wallet by transferring 20.4086 BTC to their address ********************* (red box in the Flowchart).    This transaction (the "Peters Hack Transaction") bears the transaction hash ********************* and is shown in red text in the Flowchart.    The Peters Hack Transaction comprises 11 input UTXOs (Unspent Transaction Outputs).[1]    *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶ 17 (explaining UTXOs).

18.     All 11 input UTXOs in the Peters Hack Transaction either originate directly from Mr. Peters' deposit address, or can be traced back to it by following the arrows in the Flowchart in reverse (i.e., reaching a blue-yellow box in the Flowchart).    For example, the 1.1346 BTC UTXO (blue box in the lower-right section of the Flowchart) belongs not to the deposit address itself, but to the change address *******, which received its UTXO from the change address *******. That address, in turn, received its UTXO from change address *******, which directly received its UTXO from Mr. Peters' deposit address.    The fact that each of the Peters Hack Transaction's input UTXOs originates either  directly or indirectly from Mr. Peters' deposit address demonstrates that only Mr. Peters' multi-signature wallet — and no other wallet — was affected by the Peters Hack Transaction.

19.     The Hack comprised over 2,000 individual transactions.    *See* ECF. No. 95 (Defendant Ilya Lichtenstein's Statement of the Offence and Related Conduct) at ¶ 14.    An examination of several individual cases indicates that each of these transactions targeted a distinct multi-signature wallet.    This conclusion is supported not only by blockchain tracing analysis, but

---

[1] Due to space constraints, in the Flowchart, only seven of the eleven input UTXOs are shown with their full transaction paths.  The remaining four are collectively represented in a single box at the lower-right corner, without depiction of their respective branches.

also the fact that, upon information and belief, for multiple petitioners the amount transferred precisely matches the petitioners' account balance on the Bitfinex platform at the time of the Hack.

20.     At the time of the Hack, Mr. Peters' Bitcoin account balance on the Bitfinex platform was 17.5071 BTC.  Unlike in other cases, this amount does not match exactly the 20.4086 BTC stolen in the Peters Hack Transaction.  The discrepancy arises because Bitfinex reconciled user account balances with the Bitcoin blockchain only periodically, and Mr. Peters had been actively trading and maintaining open margin positions shortly before the hack.  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 21 (explaining reconciliation process).

21.     Mr. Peters does not seek to benefit from Bitfinex's delayed reconciliation. Accordingly, he asserts a claim only for the 17.5071 BTC (Lost Assets) — the amount representing his actual account balance at the time of the hack — out of the total 20.4086 BTC stolen from his wallet.

22.     The 20.4086 BTC stolen in the Peters Hack Transaction — including the Lost Assets — remained at the Defendants' address ***** until they were seized by the U.S. Government.  *See, e.g.*, Complaint, at ¶¶ 6, 7(a).

**B.  The Recovered Bitcoin**

23.     The U.S. Government has now seized more than 94,643.29837084 Bitcoin from the Defendants.  *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11.  In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred the 20.4086 BTC stolen from Mr. Peters' multi-sig wallet, including the Lost Assets, from Defendants' address ***** to a virtual currency wallet controlled by the U.S. Government (address *********************; tx hash *********************; not depicted in the Flowchart).

24.     The Lost Assets are thus part of the Recovered Bitcoin.

**RELIEF SOUGHT**

25.     As owner, Mr. Peters has a right, title and interest in and to the Lost Assets, which is specific property that can be identified as having been taken from Mr. Peters' Wallet, transferred directly to the Defendants' Bitcoin address ***** and then seized by the U.S. Government.

26.     Mr. Peters' ownership interest in the Lost Assets existed prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of the Defendants (and the U.S. Government) in the Lost Assets.

27.     The U.S. Government has not returned to Mr. Peters the Lost Assets, which, as part of the Recovered Bitcoin, remain subject to forfeiture under the Second Amended Preliminary Forfeiture Order.

28.     Mr. Peters therefore seeks to assert his ownership interest in, and obtain prompt return of, 17.5071 Bitcoin of the Recovered Bitcoin and all corresponding fork coins (e.g., Bitcoin Cash, Bitcoin Gold, Bitcoin SV, etc.) that were derived from the Lost Assets.


Dated: May 29, 2025                          GREENSTEIN DELORME & LUCHS, P.C.

                                             By: /s/ James D. Sadowski
                                             James D. Sadowski, DC Bar #446635
                                             801 17th Street, N.W., Suite 1000
                                             Washington, D.C. 20006
                                             Phone:  202.452.1400
                                             Fax:  202/452/1410
                                             Email:  JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Petitioner Hjalmar Peters*



## VERIFICATION

PETERS Hjalmar Dirk, being duly, sworn deposes and says:

I am the Petitioner in this Ancillary Proceeding; I have read the foregoing Amended Verified petition and know the contents thereof; and the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____

PETERS Hjalmar Dirk

Sworn to before me this

29 day of May 2025

**NOTAIO PASQUALE EDOARDO MERLINO**

ROMA – 00187 Via Boncompagni n. 93

Email: pmerlino@notariato.it, studionotaiomerlino1@gmail.com

tel. 06.42011066

**********************

Authentic of underwriting, according to the Presidential Decree of the Italian Republic

no. 445 of 28 December 2000

I hereby certify,

Attorney Pasquale Edoardo Merlino, Notary of the Italian Republic, with my office in Rome (Italy),  in Via Boncompagni n. 93,

that

Mr. PETERS Hjalmar Dirk, born in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of whose identity I, Notary, ensured by means of verification with feedback on the exhibited Identity Card,  issued by the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

affixed the above extended underwriting to my presence, on the end and on the marginal paper above, on the day on the twenty-ninth (29th) of May two thousand and twentyfive (29 May 2025)

In Rome, in Via Boncompagni n. 93, on the twenty-ninth (29th) of May two thousand and twentyfive (29 May 2025)



NOTARY PUBLIC

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>ILYA LICHTENSTEIN, ET AL.,<br><br>DEFENDANTS. |

CASE NO.  23-CR-239 (CKK)

**AMENDED VERIFIED PETITION FOR DETERMINATION OF**
**THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)**

Petitioner Hjalmar Peters ("Petitioner" or "Mr. Peters"), by his counsel Davis+Gilbert LLP, having offices at 1675 Broadway, New York, New York 10019, submits this amended verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

**PRELIMINARY STATEMENT**

1.      On or about August 2, 2016, after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), Defendants Ilya Lichtenstein and Heather Morgan stole 12.94485805 17.5071 Bitcoin (the "Lost Assets") from Mr. Peters.

2.      Defendants accomplished this theft by directly transferring the Lost Assets from Mr. Peters' own Bitcoin wallet on a cryptocurrency exchange into Defendants' virtual wallet.

3.      For years, the Lost Assets sat in Defendants' virtual wallet, until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

4.      Mr. Peters now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.  ECF. No 1.  The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information").  *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. No. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant.  *See* ECF. No. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A."  *Id.* at 2.  The attachment, as amended and corrected, identifies in paragraph e. "approximately" 94,643.29837084 Bitcoin (the "Recovered Bitcoin") that were "seized from wallets recovered from Defendants' online storage account."  *See* ECF. No. 198-1 at 1.

9. In connection with the Second Amended Preliminary Order of Forfeiture, on December 17, 2024, the U.S. Department of Justice issued a notice (the "DOJ Notice") directing any person intending to assert an interest in any of the properties subject to forfeiture to file an Ancillary

~~Proceeding within 30 days of receipt of the DOJ Notice. Mr. Peters received the DOJ Notice on December 17, 2024.~~

**RELEVANT FACTS**

9.    ~~10.~~ Mr. Peters is the owner of the Lost Assets, which can be directly traced from ~~one of~~ Mr. Peters' multi-signature Bitcoin ~~wallets~~wallet to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

10.    ~~11.~~ Mr. Peters was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong. To transact business on the platform, customers of Bitfinex were each provided with her/his own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her Bitcoin for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11.    ~~12.~~ The Bitcoin in these multi-signature wallets belonged solely and exclusively to the respective customer. At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your Multi-Signature Wallets belong to and are owned by you [the customer]." *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), ~~https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/~~https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/ (last accessed: January 15, 2025) (quoting Bitfinex's terms of service).

12.    ~~13.~~ Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices. *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3,

2015), *available at* https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchangehttps://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange

("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: January 15, 2025).

13.    14. In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader. Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 16-19, at 3 (June 2, 2016).

14.    15. In other words, the Bitcoin held in a customer's segregated multi-signature wallet on the Bitfinex platform rightly belonged to the customer only.

**A. Ownership of the Lost Assets**

16. On or about July 20, 2016, Mr. Peters transferred 9.9995 Bitcoin from his wallet on another platform into his segregated multi-signature wallet associated with his "margin wallet" on Bitfinex (txid ********************** ██████) ("Mr. Peters' Wallet"). At the time of the Defendants' Hack, Mr. Peters' Wallet also contained certain "unspent transaction outputs" owned

by Mr. Peters in the amount of 2.94526084 Bitcoin and 0.00009721 Bitcoin.  These 12.94485805 Bitcoin are the Lost Assets belonging to Mr. Peters.

15.    Bitfinex created a multi-signature wallet for Mr. Peters (which had the deposit address ********************).  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 20.  From May 14, 2016 through July 20, 2016, Mr. Peters made seven Bitcoin deposits to this address: 9.9999 BTC on May 14, 2016; 5.9999 BTC on May 18, 2016; 5.9995 BTC on May 23, 2016; 5.8995 BTC on May 24, 2016; 5.9999 BTC on May 25, 2016; 4.9995 BTC on June 23, 2016; and 9.9995 BTC on July 20, 2016.

16.    Mr. Peters' multi-signature wallet did not consist solely of his deposit address.  Annexed hereto as Exhibit A is a flowchart (the "Flowchart") illustrating the Bitcoin movements associated with Mr. Peters' multi-signature wallet.  The Flowchart demonstrates how, with each transfer from the multi-signature wallet to Bitfinex's hot wallet (represented by green boxes), or to a withdrawal address (purple box), Bitfinex transferred certain remaining Bitcoin to a new change address.  *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶¶ 17, 26, 67-68.  These change addresses also form part of Mr. Peters' multi-signature wallet.  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 15 (providing that a single wallet may include many wallet addresses).

17.    In August 2016, ~~as part~~during the course of the Hack, ~~the~~ Defendants ~~transferred the Lost Assets from~~completely emptied Mr. Peters' ~~Wallet directly to Bitcoin wallet~~multi-signature wallet by transferring 20.4086 BTC to their address ********************███ ~~(txid~~ (red box in the Flowchart).  This transaction (the "Peters Hack Transaction") bears the transaction hash ********************███ ~~)  (the "Specified Defendants' Bitcoin Address")~~ ~~among the hundreds or thousands employed by the Defendants during the Hack.~~ and is shown in

red text in the Flowchart.   The Peters Hack Transaction comprises 11 input UTXOs (Unspent Transaction Outputs).[1]  *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶ 17 (explaining UTXOs).

18.    All 11 input UTXOs in the Peters Hack Transaction either originate directly from Mr. Peters' deposit address, or can be traced back to it by following the arrows in the Flowchart in reverse (i.e., reaching a blue-yellow box in the Flowchart).  For example, the 1.1346 BTC UTXO (blue box in the lower-right section of the Flowchart) belongs not to the deposit address itself, but to the change address *******, which received its UTXO from the change address *******. That address, in turn, received its UTXO from change address *******, which directly received its UTXO from Mr. Peters' deposit address.  The fact that each of the Peters Hack Transaction's input UTXOs originates either  directly or indirectly from Mr. Peters' deposit address demonstrates that only Mr. Peters' multi-signature wallet — and no other wallet — was affected by the Peters Hack Transaction.

19.    The Hack comprised over 2,000 individual transactions.   *See* ECF. No. 95 (Defendant Ilya Lichtenstein's Statement of the Offence and Related Conduct) at ¶ 14.   An examination of several individual cases indicates that each of these transactions targeted a distinct multi-signature wallet.  This conclusion is supported not only by blockchain tracing analysis, but also the fact that, upon information and belief, for multiple petitioners the amount transferred precisely matches the petitioners' account balance on the Bitfinex platform at the time of the Hack.

20.    At the time of the Hack, Mr. Peters' Bitcoin account balance on the Bitfinex platform was 17.5071 BTC.  Unlike in other cases, this amount does not match exactly the 20.4086 BTC stolen in the Peters Hack Transaction.   The discrepancy arises because Bitfinex reconciled

---

[1] Due to space constraints, in the Flowchart, only seven of the eleven input UTXOs are shown with their full transaction paths.  The remaining four are collectively represented in a single box at the lower-right corner, without depiction of their respective branches.

user account balances with the Bitcoin blockchain only periodically, and Mr. Peters had been actively trading and maintaining open margin positions shortly before the hack. *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 21 (explaining reconciliation process).

21.    Mr. Peters does not seek to benefit from Bitfinex's delayed reconciliation. Accordingly, he asserts a claim only for the 17.5071 BTC (Lost Assets) — the amount representing his actual account balance at the time of the hack — out of the total 20.4086 BTC stolen from his wallet.

22.    18.  Upon  information  and  belief,The  20.4086  BTC  stolen  in  the  Peters  Hack Transaction — including the Lost Assets — remained inat the Specified Defendants' Bitcoin Addressaddress ***** until they were seized by the U.S. Government seized them. *See, e.g.,* Complaint, at ¶¶ 6, 7(a).

**B. The Recovered Bitcoin**

23.    19. The U.S. Government has now seized more than 94,643.29837084 Bitcoin from the Defendants. *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11.  In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred all of the contents of the Specified Defendants' Bitcoin Addressthe 20.4086 BTC stolen from Mr. Peters' multi-sig wallet, including upon information and belief the Lost Assets, from Defendants' address ***** to a virtual currency wallet controlled by the U.S. Government (address ********************██; txidtx hash ********************██; not depicted in the Flowchart).

24.    20. The Lost Assets are thus part of the Recovered Bitcoin.

**RELIEF SOUGHT**

25. ~~21.~~ As owner, Mr. Peters has a right, title and interest in and to the Lost Assets, which is specific property that can be identified as having been taken from Mr. Peters' Wallet, transferred directly to the ~~Specified~~ Defendants' Bitcoin ~~Address~~address \*\*\*\*\* and then seized by the U.S. Government.

26. ~~22.~~ Mr. Peters' ownership interest in the Lost Assets existed prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of the Defendants (and the U.S. Government) in the Lost Assets.

27. ~~23.~~ The U.S. Government has not returned to Mr. Peters the Lost Assets, which, as part of the Recovered Bitcoin, remain subject to forfeiture under the Second Amended Preliminary Forfeiture Order.

28. ~~24.~~ Mr. Peters therefore seeks to assert his ownership interest in, and obtain prompt return of, ~~12.9448580~~17.5071 Bitcoin of the Recovered Bitcoin and all corresponding fork coins (e.g., Bitcoin Cash, Bitcoin Gold, Bitcoin SV, etc.) that were derived from the Lost Assets.


Dated: ~~January 16~~May 29, 2025                    GREENSTEIN DELORME &
LUCHS, P.C.

        By: */s/ James D. Sadowski*
        James D. Sadowski, DC Bar #446635
        801 17th Street, N.W., Suite 1000
        Washington, D.C. 20006
        Phone:  202.452.1400
        Fax:  202/452/1410
        Email:  JDS@gdllaw.com

        DAVIS+GILBERT LLP
        Joseph Cioffi
        H. Seiji Newman
        Joel Melendez
        Adam Levy

1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Petitioner Hjalmar Peters*

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.  23-cr-239 (CKK) |
| ILYA LICHTENSTEIN, et al., | |
| Defendants. | |

## **ORDER**

Upon consideration of the Motion for Leave to Amend submitted on May 30, 2025, by petitioner Hjalmar Peters (the "Movant"), it is hereby:

ORDERED that the Movant's Motion to Amend is GRANTED for purposes of allowing the Movant to file his amended verified ancillary petition.

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE